**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

Raymond Kessler, individually and on                   :
behalf of all others similarly situated,                   :
                                                                           :     Case No. 24-cv-526
                          Plaintiff,                              :
v.                                                                       :
                                                                           :
                                                                           :
The Quaker Oats Company,                              :     **CLASS ACTION COMPLAINT**
                                                                           :
                          Defendant.                           :     <u>**JURY TRIAL DEMANDED**</u>
                                                                           :
                                                                           :
                                                                           :
———————————————————————— x

Plaintiff Raymond Kessler (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1. This action seeks to remedy the deceptive and misleading business practices of The Quaker Oats Company (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Granola Bars and Granola Cereal products throughout the state of New York (hereinafter the "Products"):

- Quaker Big Chewy Bars Chocolate Chip;

- Quaker Big Chewy Bars Peanut Butter Chocolate Chip;

- Quaker Big Chewy Bars Variety Pack;

- Quaker Chewy Bars and Dipps Variety Pack;

- Quaker Chewy Bars Chocolate Chip;

- Quaker Chewy Bars Chocolate Chip Cookie Dough;

1

- Quaker Chewy Bars Chocolate Chip Holiday Minis;

- Quaker Chewy Bars Chocolate Chip Halloween Minis;

- Quaker Chewy Bars Chocolate Chip Spring Minis;

- Quaker Chewy Bars Chocolate Chip Valentine Minis;

- Quaker Chewy Bars Dark Chocolate Chunk;

- Quaker Chewy Bars Chocolate Chunk;

- Quaker Chewy Bars Less Sugar Chocolate Chip;

- Quaker Chewy Bars Less Sugar Cookies & Cream;

- Quaker Chewy Bars Less Sugar Peanut Butter Chocolate Chip;

- Quaker Chewy Bars Less Sugar Variety;

- Quaker Chewy Bars Oatmeal Raisin;

- Quaker Chewy Bars Peanut Butter Chocolate Chip;

- Quaker Chewy Bars S'mores;

- Quaker Chewy Bars Variety Pack;

- Quaker Chewy Dipps Chocolate Chip;

- Quaker Chewy Dipps Peanut Butter;

- Quaker Chewy Dipps Variety Pack;

- Quaker Chewy Mini Dipps Birthday Blast;

- Quaker Chewy Mini Dipps Summer Night S'mores;

- Quaker Puffed Granola Apple Cinnamon Cereal;

- Quaker Puffed Granola Blueberry Vanilla Cereal;

- Quaker Simply Granola Oats, Honey & Almonds Cereal (2PK);

- Quaker Simply Granola Oats, Honey & Almonds Cereal;

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal;

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal (2PK);

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal (69oz)

- Quaker Protein Granola Oats, Chocolate & Almonds Flavor;

- Quaker Chocolatey Favorites Snack Mix;

- Quaker On The Go Snack Mix;

- Frito-Lay Snacks Variety Pack with Quaker Chewy;

- Frito-Lay Chips and Quaker Chewy Granola Bars Variety Pack;

- Crunchy & Chewy Snacks, Frito-Lay Chips, Cookies, Nuts and Quaker Bars Variety Pack;

- Lunch Box Mix, Frito Lay Chips, Cookies and Quaker Chewy Bars Variety Pack;

- Frito-Lay Popped & Baked Chips with Cookies, Nuts and Quaker Chewy Bars Variety Pack;

- Tasty Snacks, Frito-Lay Chips, Nuts, Cookies and Quaker Chewy Bars Variety Pack;

- Ultimate Flavor Snack Care Package, Variety Assortment of Chips, Cookies, Crackers & More;

- Quaker Chewy Granola Bars (Fruity Fun) Amazing Apple;

- Quaker Chewy Granola Bars (Fruity Fun) Splendid Strawberry;

- Quaker Chewy Granola Bars (Fruity Fun) Amazing Apple and Splendid Strawberry Variety Pack;

- Quaker Chewy Granola Bars Yogurt Strawberry Flavor;

- Quaker Chewy Granola Bars Yogurt Blueberry Flavor;

- Quaker Chewy Granola Bars Yogurt Variety Packs;

- Cap'n Crunch Treats Crunch Berries Cereal Bar;

- Cap'n Crunch Treats Bars Variety Pack;

- Cap'n Crunch Treats Peanut Butter Crunch Cereal Bar;

- Cap'n Crunch Treats Original Crunch Cereal Bars;

- Quaker Chewy Granola Breakfast Cereal Chocolate & Strawberry Variety Pack;

- Quaker Chewy Granola Breakfast Cereal Chocolate;

- Quaker Chewy Granola Breakfast Cereal Strawberry;

- Quaker Oatmeal Squares Cinnamon;

- Quaker Oatmeal Squares Brown Sugar;

- Quaker Oatmeal Squares Honey Nut;

- Cap'n Crunch OOPS! All Berries Cereal;

- Cap'n Crunch Cinnamon Crunch Cereal;

- Cap'n Crunch Sea Berry Crunch Cereal;

- Gamesa Marias Cereal;

- Cap'n Crunch Instant Oatmeal;

- Cap'n Crunch OOPS! All Berries Instant Oatmeal;

- Gatorade Protein Bar Peanut Butter Chocolate;

- Munchies Snack Mix (Munch Mix).

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that consumption of the Products may increase the risk of contracting *Salmonella*.

4

3.      As described in further detail below, the Products contain *Salmonella*, which could lead to serious and life-threatening adverse health consequences.

4.      Defendant specifically lists the ingredients in the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Salmonella*.

5.      A few representative examples of Defendant's lack of disclosure on the Products are depicted below:













6.      *Salmonella* is recognized to be a dangerous substance.  *Salmonella* can cause nausea, vomiting, diarrhea, or bloody diarrhea, abdominal cramping, and fever.[1]

7.      Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Salmonella*.

8.      Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

9.      Unfortunately for consumers, like Plaintiff, the food Products they purchased contain *Salmonella*.

10.      In fact, Defendant recently conducted a product recall on December 15, 2023[2], and then an expanded recall on January 11, 2024[3] (collectively as the "Recall").

11.      Independent testing confirmed and demonstrated the presence of *Salmonella* in the Products.

12.      Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain *Salmonella*.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Salmonella*.

13.      Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/quaker-recalls-granola-bars-and-granola-cereals-due-possible-health-risk
[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/quaker-recalls-granola-bars-and-granola-cereals-due-possible-health-risk
[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/update-quaker-issues-revised-recall-notice-additional-products-due-possible-health-risk

product that is safe for oral ingestion and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Salmonella.*

14.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Salmonella*, which is dangerous to one's health and well-being.  Nevertheless, Defendant does not list or mention *Salmonella* anywhere on the Products' packaging or labeling.

15.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

16.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated with a known bacterium that is harmful to consumers' health.

17.     That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

18.     As set forth below, food products, such as Defendant's Products, are in no way safe for dogs and cats and are entirely worthless.

19.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

20.    Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products.

21.    Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

22.    Defendant manufactures, markets, advertises, and sells food products.

23.    Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

24.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Salmonella*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

25.    The Products' packaging does not identify *Salmonella*.  Indeed, *Salmonella* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Salmonella* in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Salmonella*.

26.    However, the Products contain, or are at risk of containing, *Salmonella*.

27.    *Salmonella* infection (salmonellosis) is a common bacterial disease that affects the intestinal tract.  Salmonella bacteria typically live in animal and human intestines and are shed

through stool (feces).  Humans become infected most frequently through contaminated water or food.[4]

28.     Independent testing confirmed and demonstrated the presence of *Salmonella* in the Products.

29.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the Products.

30.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Salmonella* contamination.

31.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

32.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

33.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Salmonella* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

34.     Defendant's misrepresentation and omission were material and intentional because people are concerned with what is in the products that they ingest.  Consumers such as Plaintiff

---

[4] https://www.mayoclinic.org/diseases-conditions/salmonella/symptoms-causes/syc-20355329

and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained *Salmonella*, then Plaintiff and the Class would not have purchased the Products at all.

35.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

36.     Consumers rely on marketing and information in making purchasing decisions.

37.     By omitting that the Products include *Salmonella* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful bacterium.

42.     Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

44.     Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

45.    In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without *Salmonella* over comparable products not so marketed.

46.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for Products that were not what Defendant represented;

b.    Paid a premium price for Products that were not what Defendant represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e.    They ingested a substance that was of a different quality than what Defendant promised; and

f.    Were denied the benefit of the properties of the Products Defendant promised.

47.    Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

48.    Plaintiff and the Class Members paid for Products that do not contain *Salmonella*. Since the Products do indeed contain *Salmonella*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

49.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

50.     Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful bacterium (i.e. *Salmonella*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant The Quaker Oats Company is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

53.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

54.     Plaintiff Raymond Kessler is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that contained *Salmonella*, including Products that were subject to the Recall.  More specifically, during the class period Plaintiff purchased Quaker Big Chewy Bars Chocolate Chip granola bars at Speedway in Dutchess County, New York during the Class Period.

55.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worthless because they contain the known harmful substance, *Salmonella*.  Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

42.     Defendant, The Quaker Oats Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

43.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

44.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

45.     The Class is defined as all consumers who purchased the Products in the state of New York at any time during the Class Period.

46.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

47.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

48.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.   Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

49.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

50.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

51.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

52.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

        i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

53.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and Class Members)**

54.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

56.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and Class Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

57.    There is no adequate remedy at law.

58.    Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

59.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Salmonella*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

60.     Plaintiff and Class Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and Class Members received less than what they bargained and paid for.

61.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and Class Members to buy Defendant's Products.

62.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and Class Members have been damaged thereby.

63.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Class Members)**

64.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

65.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

66.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

67.   Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Salmonella*.

68.   Plaintiff and Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless.   Accordingly, Plaintiff and Class Members received less than what they bargained and paid for.

69.   Defendant's advertising, packaging, and Products' labeling induced Plaintiff and Class Members to buy Defendant's Products.

70.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

71.   Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

72.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

73.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

74.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor the individual health and diagnose at an early stage any ailments associated with exposure to *Salmonella*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: January 24, 2024

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
*sultzerj@thesultzerlawgroup.com*
*markowitzd@thesultzerlawgroup.com*

Nick Suciu III, Esq.
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
*nsuciu@milberg.com*

*Counsel for Plaintiff and the Class*