**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,

|                      |                                    |
|----------------------|------------------------------------|
| Plaintiffs,          |                                    |
| v.                   | Case No.: 7:24-cv-00526            |
|                      | **AMENDED CLASS ACTION**           |
|                      | **COMPLAINT**                      |
| The Quaker Oats Company, | **FOR SETTLEMENT PURPOSES**    |
| Defendant.           | **JURY TRIAL DEMANDED**            |

----------------------------------------------------------x

Plaintiffs Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1.       This action seeks to remedy the deceptive and misleading business practices of The Quaker Oats Company (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Granola Bars and Granola Cereal products throughout the state of New York (hereinafter the "Products", "Granola Products" or "Recalled Products"):

- Quaker Big Chewy Bars Chocolate Chip;

- Quaker Big Chewy Bars Peanut Butter Chocolate Chip;

- Quaker Big Chewy Bars Variety Pack;

- Quaker Chewy Bars and Dipps Variety Pack;

- Quaker Chewy Bars Chocolate Chip;

1

- Quaker Chewy Bars Chocolate Chip Cookie Dough;

- Quaker Chewy Bars Chocolate Chip Holiday Minis;

- Quaker Chewy Bars Chocolate Chip Halloween Minis;

- Quaker Chewy Bars Chocolate Chip Spring Minis;

- Quaker Chewy Bars Chocolate Chip Valentine Minis;

- Quaker Chewy Bars Dark Chocolate Chunk;

- Quaker Chewy Bars Chocolate Chunk;

- Quaker Chewy Bars Less Sugar Chocolate Chip;

- Quaker Chewy Bars Less Sugar Cookies & Cream;

- Quaker Chewy Bars Less Sugar Peanut Butter Chocolate Chip;

- Quaker Chewy Bars Less Sugar Variety;

- Quaker Chewy Bars Oatmeal Raisin;

- Quaker Chewy Bars Peanut Butter Chocolate Chip;

- Quaker Chewy Bars S'mores;

- Quaker Chewy Bars Variety Pack;

- Quaker Chewy Dipps Chocolate Chip;

- Quaker Chewy Dipps Peanut Butter;

- Quaker Chewy Dipps Variety Pack;

- Quaker Chewy Mini Dipps Birthday Blast;

- Quaker Chewy Mini Dipps Summer Night S'mores;

- Quaker Puffed Granola Apple Cinnamon Cereal;

- Quaker Puffed Granola Blueberry Vanilla Cereal;

- Quaker Simply Granola Oats, Honey & Almonds Cereal (2PK);

- Quaker Simply Granola Oats, Honey & Almonds Cereal;

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal;

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal (2PK);

- Quaker Simply Granola Oats, Honey, Raisins & Almonds Cereal (69oz)

- Quaker Protein Granola Oats, Chocolate & Almonds Flavor;

- Quaker Chocolatey Favorites Snack Mix;

- Quaker On The Go Snack Mix;

- Frito-Lay Snacks Variety Pack with Quaker Chewy;

- Frito-Lay Chips and Quaker Chewy Granola Bars Variety Pack;

- Crunchy & Chewy Snacks, Frito-Lay Chips, Cookies, Nuts and Quaker Bars Variety Pack;

- Lunch Box Mix, Frito Lay Chips, Cookies and Quaker Chewy Bars Variety Pack;

- Frito-Lay Popped & Baked Chips with Cookies, Nuts and Quaker Chewy Bars Variety Pack;

- Tasty Snacks, Frito-Lay Chips, Nuts, Cookies and Quaker Chewy Bars Variety Pack;

- Ultimate Flavor Snack Care Package, Variety Assortment of Chips, Cookies, Crackers & More;

- Quaker Chewy Granola Bars (Fruity Fun) Amazing Apple;

- Quaker Chewy Granola Bars (Fruity Fun) Splendid Strawberry;

- Quaker Chewy Granola Bars (Fruity Fun) Amazing Apple and Splendid Strawberry Variety Pack;

- Quaker Chewy Granola Bars Yogurt Strawberry Flavor;

- Quaker Chewy Granola Bars Yogurt Blueberry Flavor;

- Quaker Chewy Granola Bars Yogurt Variety Packs;

- Cap'n Crunch Treats Crunch Berries Cereal Bar;

- Cap'n Crunch Treats Bars Variety Pack;

- Cap'n Crunch Treats Peanut Butter Crunch Cereal Bar;

- Cap'n Crunch Treats Original Crunch Cereal Bars;

- Quaker Chewy Granola Breakfast Cereal Chocolate & Strawberry Variety Pack;

- Quaker Chewy Granola Breakfast Cereal Chocolate;

- Quaker Chewy Granola Breakfast Cereal Strawberry;

- Quaker Oatmeal Squares Cinnamon;

- Quaker Oatmeal Squares Brown Sugar;

- Quaker Oatmeal Squares Honey Nut;

- Cap'n Crunch OOPS! All Berries Cereal;

- Cap'n Crunch Cinnamon Crunch Cereal;

- Cap'n Crunch Sea Berry Crunch Cereal;

- Gamesa Marias Cereal;

- Cap'n Crunch Instant Oatmeal;

- Cap'n Crunch OOPS! All Berries Instant Oatmeal;

- Gatorade Protein Bar Peanut Butter Chocolate;

- Munchies Snack Mix (Munch Mix).

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its

packaging that consumption of the Products may increase the risk of contracting *Salmonella*.

3.        As described in further detail below, the Products contain *Salmonella*, which could lead to serious and life-threatening adverse health consequences.

4.        Defendant specifically lists the ingredients in the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Salmonella*.

5.        A few representative examples of Defendant's lack of disclosure on the Products are depicted below:













6.      *Salmonella* is recognized to be a dangerous substance.  *Salmonella* can cause nausea, vomiting, diarrhea, or bloody diarrhea, abdominal cramping, and fever.[1]

7.      Consumers like Plaintiffs trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Salmonella*.

8.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

9.      Unfortunately for consumers, like Plaintiffs, the food Products they purchased contain *Salmonella*.

10.     In fact, Defendant recently conducted a product recall on December 15, 2023[2], and then an expanded recall on January 11, 2024[3] (collectively as the "Recall").

11.     Independent testing confirmed and demonstrated the presence of *Salmonella* in the Products.

12.     Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain *Salmonella*.  This omission leads reasonable consumers to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Salmonella*.

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/quaker-recalls-granola-bars-and-granola- cereals-due-possible-health-risk

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/quaker-recalls-granola-bars-and-granola- cereals-due-possible-health-risk

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/update-quaker-issues-revised-recall-notice- additional-products-due-possible-health-risk

13.    Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Salmonella.*

14.    Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain or may contain, *Salmonella*, which is dangerous to one's health and well-being as it may cause bodily injuries.  Nevertheless, Defendant does not list or mention *Salmonella* anywhere on the Products' packaging or labeling.

15.    Plaintiffs and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

16.    Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a food product that was, or may be, contaminated with a known bacterium that is harmful to consumers' health.

17.    That is because Defendant's Products contain, or may contain, a known dangerous substance have no value.

18.    As set forth below, food products, such as Defendant's Products, are in no way safe for human consumption and are entirely worthless.

19.    Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiffs and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

20.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350 and the consumer protection laws of Connecticut and Ohio. Defendant also breached and continues to breach its warranties regarding the Products.

21.     Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

22.     Defendant manufactures, markets, advertises, and sells food products.

23.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendant, have capitalized on consumers' desire for food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

24.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains or may contain unsafe substances, such as *Salmonella*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or may contain on the Products' packaging or labels.

25.     The Products' packaging does not identify *Salmonella*.  Indeed, *Salmonella* is not listed in the ingredients section, nor is there any warning about the inclusion (or the potential inclusion) of *Salmonella* in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Salmonella*.

26.     However, the Products contain, or may contain, *Salmonella*.

27.     *Salmonella* infection (salmonellosis) is a common bacterial disease that affects the intestinal tract.  Salmonella bacteria typically live in animal and human intestines and are shed through stool (feces).  Humans become infected most frequently through contaminated water or food and

infected humans may suffer bodily injuries.[4]

28.     Independent testing confirmed and demonstrated the presence of *Salmonella* in the Products.

29.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the Products.

30.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Salmonella* contamination.

31.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

32.     Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

33.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products that contain or may contain *Salmonella* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

34.     Defendant's misrepresentation and omission were material and intentional because people are concerned with what is in the products that they ingest.  Consumers such as Plaintiffs

and the Class Members are influenced by the marketing and advertising campaign, the Products

---

[4] https://www.mayoclinic.org/diseases-conditions/salmonella/symptoms-causes/syc-20355329

labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained or may have contained *Salmonella*, then Plaintiffs and the Class would not have purchased the Products at all.

35.    Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

36.    Consumers rely on marketing and information in making purchasing decisions.

37.    By omitting that the Products include *Salmonella* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contains or may contain a harmful bacterium.

38.    Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

39.    Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

40.    Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

41.     In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without *Salmonella* over comparable products not so marketed.

42.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

    a.    Paid a sum of money for Products that were not what Defendant represented;

    b.    Paid a premium price for Products that were not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

    e.    They ingested a substance that was of a different quality than what Defendant promised; and

    f.    Were denied the benefit of the properties of the Products Defendant promised.

43.     Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiffs and the Class Members would not have been willing to purchase the Products.

44.     Plaintiffs and the Class Members paid for Products that do not contain *Salmonella*. Since the Products do indeed contain *Salmonella*, a harmful bacterium, the Products that Plaintiffs and the Class Members received were worth less than the Products for which they paid.

45.     Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

46.     Plaintiffs and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiffs and Class Members known the truth about the Products, i.e., that it contains a harmful bacterium (i.e. *Salmonella*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

47.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of New York, South Carolina, Connecticut, and Ohio, and Defendant The Quaker Oats Company is a citizen of Illinois; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

48.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

49.     Venue is proper because Plaintiffs Kessler and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Class's claims occurred in this district.

## PARTIES

### PLAINTIFFS

### Plaintiff Raymond Kessler

50.     Plaintiff Raymond Kessler is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that contained or may have contained *salmonella*, including Products that were subject to the Recall. More specifically, Plaintiff purchased Quaker Big Chewy Bars Chocolate Chip granola bars at Speedway in Dutchess County, New York during the Class Period.

### Plaintiff Barbara Abreu

51.     Plaintiff Barbara Abreu is a citizen and resident of New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Products that contained or may have contained salmonella, including Products that were subject to the Recall.

### Plaintiff Teresa Herendeen

52.     Plaintiff Teresa Herendeen is a citizen of the State of South Carolina and resides in Conway, South Carolina. Conway is located within Horry County, South Carolina. Plaintiff purchased Defendant's Products as part of her normal routine and diet, and specifically enjoyed Defendant's Chewy Holiday Minis. On November 28, 2023, Plaintiff Herendeed purchased one of Defendant's Recalled Products.

### Plaintiff Hartence Hill

53.     Plaintiff Hartence Hill is and at all times relevant to this action has been, a resident of Connecticut. In February 2023, Ms. Hartence purchased Quaker Chewy Granola Bars, 3 Flavor Variety Pack, 58 Count on Amazon, which was delivered to her home in Oakville, Connecticut. The Product Ms. Hill purchased was subject to Defendant's recall and contained or may have contained Salmonella.

**Plaintiff Lazaro Rodriguez**

54.     Plaintiff Lazaro Rodriguez is, and at all times relevant to this action has been, a citizen of the State of Ohio and a resident of Ravenna, Ohio. During the last year or so, Plaintiff Rodriguez has made recurring purchases (approximately two boxes per month) of the following Granola Products from several local Walmart stores: Quaker Big Chewy Bars, Peanut Butter Chocolate Chip; Quaker Big Chewy Bars, Chocolate Chip; and Quaker Simply Granola Oats, Honey & Almonds Cereal.

55.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiffs would not have been willing to purchase the Products. Plaintiffs purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiffs received were worthless because they contained or may have contained the known harmful substance, *Salmonella*. Alternatively, Plaintiffs paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiffs were injured in fact and lost money as a result of Defendant's improper conduct.

**DEFENDANT**

56.     Defendant, The Quaker Oats Company is an Illinois corporation with its principal place of business in Chicago, Illinois.

57.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

**CLASS ALLEGATIONS**

58.     Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

59.     The Class is defined as all consumers who purchased the Products in the United States at any time during the Class Period.

60.     Plaintiffs also seek certification, to the extent necessary or appropriate, of subclasses of individuals who purchased the Products in the following states at any time during the Class Period (collectively "Subclasses"):

> **<u>New York Subclass:</u>** All consumers who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

> **<u>Connecticut Subclass:</u>** All consumers who purchased the Products in the state of Connecticut at any time during the Class Period (the "Connecticut Subclass").

> **<u>Ohio Subclass:</u>** Subclass All consumers who purchased the Products in the state of Ohio at any time during the Class Period (the "Ohio Subclass").

61.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

62.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

63.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

> a.  Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

> b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

c. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

d. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members?

64.     Typicality: Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

65.     Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

66.     Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

67.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

68.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiffs Kessler and Abreu nd the New York Subclass Members)**

69.     Plaintiffs reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of

any service in this state . . .”

71.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs Kessler and Abreu and the New York Subclass Members seek monetary damages against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

72.     There is no adequate remedy at law.

73.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Products to consumers.

74.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products contain or may contain *Salmonella*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

75.     Plaintiffs Kessler and Abreu and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs Kessler and Abreu and the New York Subclass Members received less than what they bargained and paid for.

76.     Defendant's advertising and Products' packaging and labeling induced Plaintiffs Kessler and Abreu and New York Subclass Members to buy Defendant's Products.

77.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Kessler and the New York Subclass have been damaged thereby.

78.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs Kessler and Abreu and the New York Subclass are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by

means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff Kessler and the New York Subclass Members)**

79.    Plaintiff Kessler realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

80.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or
> commerce or in the furnishing of any service in this state is
> hereby declared unlawful.

81.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity,
> or of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material
> respect. In determining whether any advertising is misleading,
> there shall be taken into account (among other things) not only
> representations made by statement, word, design, device, sound
> or any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment
> to which the advertising relates under the conditions proscribed
> in said advertisement, or under such conditions as are customary
> or usual . . .

82.    Defendant's labeling and advertisements contain untrue and materially misleading

statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe

for use and does not list that the Products contain or may contain *Salmonella*.

83.    Plaintiffs Kessler and Abreu and the New York Subclass Members have been

injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products

that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiffs Kessler and Abreu and

the New York Subclass Members received less than what they bargained and paid for.

84.    Defendant's advertising, packaging, and Products' labeling induced Plaintiffs

Kessler and Abreu and the New York Subclass to buy Defendant's Products.

85.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

86.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

87.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

88.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

89.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs Kessler and Abreu and the New York Subclass are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of Plaintiffs and All Class Members)

90.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

91.     Defendant marketed and sold the Recalled Products into the stream of commerce with the intent that the Recalled Products would be purchased by Plaintiffs and the Class.

92.     Defendant expressly represented and warranted that the Recalled Products were safe for consumption by all persons.

93.     Defendant made these express warranties regarding the Recalled Products' quality, ingredients, and fitness for consumption in writing on the Recalled Products' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Recalled Products.

25

94.     Defendant's advertisements, warranties and representations were made in connection with the sale of the Recalled Products to Plaintiffs and the Class. Plaintiff and the Class Members relied on Defendant's advertisements, warranties, and representations regarding the Recalled Products in deciding whether to purchase the Recalled Products.

95.     Defendant's Recalled Products do not conform to Defendant's advertisements, warranties, and representations in that the Recalled Products are not safe or appropriate for human consumption, and contain, or may contain, harmful Bacteria.

96.     Defendant were on notice of this breach, as they were aware of the possibly included Salmonella bacteria in the Recalled Products, as reflected in their own recall.

97.     The risk that the Recalled Products may have contained unsafe levels of *Salmonella* Plaintiffs and the Class would not have purchased the lesser value Recalled Products had they known of the risk of sickness due to such contamination. Plaintiffs and the Class Members purchased the Recalled Products due to the false or misleading representations and warranties and would not have purchased such Recalled Products if true facts had been disclosed.

98.     Privity exists because Defendant expressly warranted to Plaintiffs and the Class Members through the warranting, packaging, marketing, and labeling that the Recalled Products were perfect for consumption and failed to make any mention of the presence or potential presence of Salmonella or other harmful ingredients. All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Class.

99.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Recalled Products that were worth less than the price they paid, given the presence of harmful ingredients, or risk thereof.

100.    Plaintiff and the Class Members also would not have purchased the Recalled Products at all, had they known of the risk and/or presence of Salmonella, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

101.    Had Defendant properly designed, manufactured, or implemented a system in which Defendant's products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased contaminated or potentially contaminated granola products.

102.    As such, this Court should issue injunctive relief as to require Defendant to design and implement a new monitoring system in which Defendant will adequately monitor the bacteria levels in their products.

103.    Plaintiffs and the Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available due to Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and All Class Members)**

104.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

105.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through purchase of the Recalled Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

106.    Defendant either knew or should have known that the payments rendered by

107.    Plaintiffs and the Class were given and made with the expectation that the Recalled Products would have the qualities, characteristics, ingredients, and suitability for consumption, as represented and warranted by Defendant. As such, it would be unjust for Defendant to retain the benefit of the payments under the circumstances.

108.    Had Defendant properly designed, manufactured, or implemented a system in which Defendant's products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased contaminated or potentially contaminated products. As such, this Court should issue injunctive relief as to require Defendant to

27

design and implement a new monitoring system in which Defendant will adequately monitor the bacteria

levels in their granola products.

109.    Defendant's acceptance and retention of these benefits under the alleged

circumstances is inequitable.

110.    Plaintiffs and the Class are entitled to recover all amounts wrongfully collected and

improperly retained by Defendant, plus interest thereon.

111.    Plaintiffs and the Class seek actual damages, injunctive relief, declaratory relief,

attorneys' fees, costs, and any other just and proper relief available.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Plaintiffs and All Class Members)**

112.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

113.    Defendant's actions and omissions alleged herein constitute negligent

misrepresentation.

114.    Defendant misrepresented material facts concerning the safety, suitability, and

quality of its Granola Products, including that the Granola Products were nutritious, healthful, and

suitable for human consumption.

115.    Defendant has no reasonable grounds for believing that its misrepresentations were

true.  Among other things, Defendant represented that the Granola Products were of high quality, healthy,

safe, and suitable for consumption. Defendant knew or should have known but failed to disclose that,

contrary to its representations, the Granola Products were or could be contaminated with salmonella that

could cause injury to consumers.

116.    Defendant made such misrepresentations with the intent to induce Plaintiffs and

Class members to rely on its misrepresentations and purchase Granola Products containing dangerous

levels of salmonella.

117. Plaintiffs and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class members purchased the Granola Products containing dangerous levels of salmonella.

118. As a direct and proximate consequence, Plaintiffs and Class members suffered harm. Among other things, they would not have purchased Defendant's Granola Products, or would have paid less had they known of the presence, or the potential presence, of dangerous levels of salmonella.

119. Plaintiffs and Class members are therefore entitled to damages and relief, as prayed for hereunder.

**SIXTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and All Class Members)**

120. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

121. Defendant is a merchant engaging in the manufacturing and sale of goods that were purchased by Plaintiffs and members of the Class.

122. At all times mentioned herein, Defendant manufactured or supplied the Recalled Products and prior to the time the Recalled Products were purchased by Plaintiffs and the Class, Defendant impliedly warranted to Plaintiffs and Class Members that the Recalled Products were of merchantable quality, fit for their ordinary use (consumption by all ages of persons), and conformed to the promises and affirmations of fact made on the Recalled Products' containers and labels.

123. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Recalled Products.

124. The Recalled Products were not fit for their ordinary use and did not conform to Defendant's affirmations of fact and promises as they contain or may contain, or were at risk of containing, Salmonella or other non-conforming ingredients.

125.     Defendant breached their implied warranties by selling Recalled Products that failed to conform to the promises or affirmations of fact made on the container or label as each product contained or may have contained Salmonella or contaminants that do not conform to the packaging.

126.     Defendant was on notice of its breach, as Defendant was aware of the risks of bacterial contamination in the Recalled Products. Further, Defendant's awareness is demonstrated by the recall issued by Defendant. Had Defendant been unaware of such breach, Defendant would not have issued such a recall.

127.      Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through their warranting, packaging, advertising, marketing, and labeling that the Recalled Products were suitable for consumption and failed to make any mention of bacterial contamination.

128.     Had Defendant properly designed, manufactured, or implemented a system in which Defendant's products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased potentially contaminated granola products. As such, this Court should issue injunctive relief as to require Defendant to design and implement a new monitoring system in which Defendant will adequately monitor the bacteria levels in their products.

129.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Recalled Products that are now worth less than the price they paid, given the risk of and/or actual contamination of Recalled Products.

130.     Plaintiffs and the Class would not have purchased the Recalled Products at all, had they known of the bacterial contamination issues.

131.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available as a result of Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## SEVENTH CAUSE OF ACTION
### Fraudulent Misrepresentation
### (On Behalf of Plaintiffs and All Class Members)

132.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

133.    Defendant expressly represented and warranted that the Recalled Products were safe for consumption, especially by physically vulnerable persons.

134.    Defendant intentionally, knowingly, and recklessly made misrepresentations to induce Plaintiffs and the Class to purchase its Recalled Products.

135.    Defendant knew that its representations about the Recalled Products were false in that the Recalled Products contained, or may contain unsafe levels of Salmonella or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

136.    More specifically, Defendant's website advertises its products as a good choice for digestive health. However, Defendant's products contain, or may contain, Salmonella which actually destroys the digestive system can cause bodily injury.

137.    Plaintiffs and the Class relied on these misrepresentations and purchased the Recalled Products to their detriment, given the lesser value of the product. Given the deceptive way Defendant advertised, represented, and otherwise promoted the Recalled Products,

138.    Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

139.    Had Defendant properly designed, manufactured, or implemented a system in which Defendant's products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased contaminated or potentially contaminated granola products. As such, this Court should issue injunctive relief as to require Defendant to design and implement a new monitoring system in which Defendant will adequately

monitor the bacteria levels in their products.

140.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased the Recalled Products that are worth less than the price they paid. Plaintiffs and the Class were marketed a safe product, and would not have purchased at all had they known of the presence, or risk of thereof, of Salmonella.

141.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

### EIGHTH CAUSE OF ACTION
### Fraud by Omission
### (On Behalf of Plaintiffs and All Class Members)

142.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

143.     Defendant knowingly, intentionally, and materially misrepresented and omitted concealed from, and failed to disclose to Plaintiffs and the Class that its Recalled Products contained, or may contain Salmonella, or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

144.      Defendant had a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients, suitability, and risks of the Recalled Products because:

(1) Defendant was in a superior position to know the true state of facts about the Recalled Products;

(2) Defendant was in a superior position to know the actual ingredients, characteristics and suitability of the Recalled Products for consumption by all ages of persons, particularly those seeking a healthy supplement; and

(3) Defendant knew that Plaintiffs and the Class could not have reasonably been expected to learn or discover that the Recalled Products were misrepresented in the packaging, labels, advertising and websites prior to purchasing the Recalled Products.

145.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material because a reasonable consumer would consider the safety of a product quite important when deciding whether to purchase Defendant's Recalled Products.

146.    Plaintiffs and the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the recall notice and true qualities, characteristics, and ingredients of the Recalled Products. All true qualities, characteristics, and ingredients of the Recalled Products are inferior in comparison to Defendant's advertisements and representations of the Recalled Products.

147.    Had Defendant properly designed, manufactured, or implemented a system in which Defendant's granola products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased contaminated or potentially contaminated products. As such, this Court should issue injunctive relief as to require Defendant to design and implement a new monitoring system in which Defendant will adequately monitor the bacteria levels in their granola products.

148.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Recalled Products that are worth less than the price they paid given the potential harm to the consumer and that they would not have purchased at all had they known of the presence or risk of dangerous levels of Salmonella.

149.    Plaintiffs and the Class seek actual damages, injunctive relief, declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## NINTH CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiffs and All Class Members)

150.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

151.    Defendant produces and distributes granola products throughout the country.

152.    At all times relevant, Defendant had a duty to provide Plaintiffs and the general

public with a safe product.

153.   Specifically, Defendant has a duty to provide granola that is safe for human consumption to its potential consumers.

154.   Defendant breached this duty by failing to ensure the safety of its Recalled Products. Defendant's Recalled Products contain or may contain harmful, even deadly, Salmonella Bacteria.

155.   As a result of Defendant's breach, Plaintiffs were harmed in that they suffered economic injury and lost their benefit of the bargain relating to their purchase price of the Products.

156.   Defendant's breach of its duty caused Plaintiffs' damages both proximately and factually.

157.   Had Defendant properly designed, manufactured, or implemented a system in which Defendant's Recalled Products had been properly examined and tested for Bacteria prior to sale, Plaintiffs would not have been injured and/or damaged as Plaintiffs would not have purchased contaminated granola products. As such, this Court should issue injunctive relief as to require Defendant to design and implement a new monitoring system in which Defendant will adequately monitor the bacteria levels in their products.

### TENTH CAUSE OF ACTION
### Violations of the Connecticut Unfair Trade Practices Act § 42-110b
### (On Behalf of Plaintiff Hill and the Connecticut Subclass)

158.   Plaintiff Hill realleges all preceding paragraphs as if fully set forth herein.

159.   The acts of Defendant, as described above, and each of them, constitute unfair and deceptive acts and practices.

160.   Defendant's failure to disclose that the Products contain or may contain Salmonella that can affect human health is misleading and induced Plaintiff Hill and Connecticut Subclass members to purchase the Products when they otherwise would not have.

161.   CUTPA § 42-110b(a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

162.   CUTPA § 42-110a(4) defines "trade" and "commerce" as: "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."

163.   Defendant advertises and sells their products within Connecticut, and therefore is within the intended ambit of § 42-110b(a).

164.   Defendant's labeling, which failed to reveal material facts with respect to its Products, as described above, constitute deceptive acts and practices in violation of § 42-110b(a).

165.   Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff Hill and the members of the Connecticut Subclass.

166.   As a consequence of Defendant's deceptive marketing scheme, Plaintiff Hill and the other members of the Connecticut Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products and/or would have purchased fewer of the Products; moreover, as a result of Defendant's conduct, Plaintiff Hill and the other members of the Connecticut Subclass received Products of less value than what they paid for.

167.   By reason of the foregoing, Plaintiff Hill and the Connecticut Subclass members are entitled to actual damages and/or statutory damages and reasonable attorneys' fees, pursuant to § 42-110g.

**ELEVENTH CAUSE OF ACTON**
**Violation of The Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02(A)**
**(On Behalf of Plaintiff Rodriguez and the Ohio Subclass Members)**

168.   Plaintiff Rodriguez realleges all preceding paragraphs as if fully set forth herein.

169.   The Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02(A) ("OCSPA")

35

provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

170.    The OCSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A).

171.    Defendant's sales of the Granola Products were "consumer transactions" as defined by the OCSPA.

172.    In the course of its business, Defendant made affirmative misrepresentations regarding the Granola Products that were deceptive and/or unconscionable. Specifically, Defendant represented that the Granola Products were suitable for human consumption and provided targeted nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Granola Products contained, or might contain, salmonella resulting in injury to consumers; and (2) Defendant failed to properly inspect and test Granola Products and ingredients for contaminants. Defendant had a duty to disclose these material facts because the Granola Products were unsafe and because Defendant made affirmative representations about the Granola Products.

173.    If Plaintiff Rodriguez had known that the Granola Products contain or may contain salmonella contaminants, or that Defendant failed to inspect and test the Granola Products and ingredients for contaminants adequately, Plaintiff Rodriguez would not have purchased the Granola Products.

174.    Plaintiff Rodriguez and the Ohio Subclass members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Ohio Subclass members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding salmonella contaminants.

175.     Defendant thus violated the OCSPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Granola Products were safe and suitable for consumption. Defendant also failed to disclose and warn that the Granola Products were unsafe and unsuitable for consumption; that the Granola Products contain or may contain salmonella, resulting in injury to consumers; and that Defendant failed to properly inspect and test the Granola Products for toxins and contaminants.

176.     Defendant intentionally and knowingly misrepresented material facts regarding the Granola Products with intent to mislead Plaintiff Rodriguez and the Ohio Subclass.

177.     Defendant knew or should have known that its conduct violated the OCSPA.

178.     Defendant owed Plaintiff Rodriguez and the Ohio Subclass a duty to disclose the true and unsafe nature of the Granola Products.

179.     Defendant's concealment of the true characteristics of the Granola Products was material to Plaintiff Rodriguez and the Ohio Subclass.

180.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Rodriguez and the Ohio Subclass Class, about the true nature of the Granola Products.

181.     Defendant's violations present a continuing risk to Plaintiff Rodriguez, the Ohio Subclass, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

182.     Plaintiff Rodriguez and the Ohio Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

183.     As a direct and proximate result of Defendant's violations of the OCSPA, Plaintiff and the Ohio Subclass have suffered injury-in-fact and/or actual damage.

184.    Pursuant to Ohio Rev. Code § 1345.09(A), Plaintiff Rodriguez and the Ohio Subclass seek monetary relief against Defendant to recover (1) actual economic damages or statutory damages; (2) an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; (3) reasonable attorney's fees and costs; and (4) punitive damages and/or any other relief which the court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as class representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding monetary damages and treble damages;

(c) requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: May 24, 2024

REESE LLP
*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

Jason P. Sultzer, Esq.
SULTZER & LIPARI, PLLC
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
*sultzerj@thesultzerlawgroup.com*

Nick Suciu III, Esq.
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
*nsuciu@milberg.com*

Paul Doolittle
POULIN WILLEY ANASTAPOULO
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: *pauld@akimlawfirm.com*

Charles E. Schaffer
LEVIN SEDRIN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: *cschaffer@lfsblaw.com*

Joshua Arisohn
BURSOR & FISHER, P.A.
1330 A venue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
*jarisohn@bursor.com*

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
*jgoldenberg*@gs-legal.com

Jeffrey K. Brown
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*jbrown@leedsbrownlaw.com*

*Counsel for Plaintiffs and the Class*