**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara Abreu**
**individually and on behalf of all**
**others similarly situated,**

        **Plaintiffs,**

**v.**                                      **Case No.: 7:24-cv-00526**

**The Quaker Oats Company,**

        **Defendant.**

------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY**
**CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

Dated:  June 24, 2024

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

**REESE LLP**

Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

Nick Suciu III, Esq.
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
*nsuciu@milberg.com*

**POULIN WILLEY ANASTAPOULO**

Paul Doolittle
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: *pauld@akimlawfirm.com*

**LEVIN SEDRAN & BERMAN LLP**

Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**

Joshua Arisohn
1330 Avenue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
*jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**

Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
*jgoldenberg@gs-legal.com*

**LEEDS BROWN LAW, P.C.**

Jeffrey K. Brown
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*jbrown@leedsbrownlaw.com*

*Attorneys for Plaintiffs and the Settlement Class*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..i-ii

Table of Authorities……………………………………………………………..iii-vii

INTRODUCTION………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND………………………………………3

I.     THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS……………...3

II.    SETTLEMENT NEGOTIATIONS………………………………………………...5

III.   THE TERMS OF THE PROPOSED SETTLEMENT………………………………..7

     A.  The Settlement Class……………………………………………………………7

     B.  Relief for the Settlement Class Members…………………………………………8

     C.  Non-Monetary Relief……………………………………………………...9

     D.  The Release………………………………………………………………9

     E.  Attorneys' Fee, Cost, and Service Award………………………………………...9

     F.  Settlement Administration and The Notice Plan………………………………...10

ARGUMENT………………………………………………………………...…..11

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE……...13

     A.  The *Grinnell* Factors………………………………………………...……13

        1.  *The Complexity, Expense, And Likely Duration Of The Litigation*………….13

        2.  *The Reaction of The Class To The Settlement*………………………………14

        3.  *The Stage of The Proceedings and The Amount of Discovery Completed*…..14

        4.  *The Risks of Establishing Liability and Damages*…………………………...15

        5.  *The Risk of Maintaining Class Action Status Through Trial*………………...16

        6.  *The Ability of Defendant to Withstand Greater Judgment*…………………...17

7.  *The Range of Reasonableness of The Settlement in Light of The Best Possible Recovery and In Light of All The Attendant Risks of Litigation*...…17

B.  The Rule 23(e)(2) Factors…………………………………………………………18

1.  *Class Counsel and Plaintiffs Adequately Represented the Class*……………18

2.  *The Settlement Was Negotiated at Arm's Length*……………………………19

3.  *The Settlement Provides Adequate Relief to The Class*……………………...19

4.  *The Settlement Treats All Case Members Equally*…………………………...20

II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS………………………………………………………………………………21

A.  The Settlement Class Meets All Prerequisites of Rule 23(a) Of The Federal Rules Of Civil Procedure……………………………………………………21

1.  *Numerosity*……………………………………………………………………...21

2.  *Commonality*…………………………………………………………………21

3.  *Typicality*……………………………………………………………………..22

4.  *Adequacy*……………………………………………………………………..22

B.  The Settlement Class Meets the Requirements Of Rule 23(b)………………....23

1.  *Common Legal and Factual Questions Predominate In This Action*………...23

2.  *A Class Action Is The Superior Means To Adjudicate Plaintiffs' Claims*…...24

III.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN………....24

CONCLUSION………………………………………………………………………………26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................................23

*Asare v. Change Group N.Y., Inc.*,
    2013 U.S. Dist. LEXIS 165935 (S.D.N.Y Nov. 15, 2013).....................................15

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,
    461 F.3d 219 (2d Cir. 2006)....................................................................................23

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................16

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.*,
    1:22-cv-00291-BMC (E.D.N.Y.)............................................................................20

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*,
    Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) ........................................15

*Banyai v. Mazur*,
    2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ..........................................................15

*Bodon v. Domino's Pizza, LLC*,
    2015 WL 5886656 (E.D.N.Y. Jan. 16, 2015) .........................................................17

*Castagna v. Madison Square Garden, L.P.*,
    U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ..................15

*Catalano v. Lyons Magnus, LLC*,
    Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.) ..........................................3, 15, 20

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013)......................................................................18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)……………………………………………………...16

*D.S. v. New York City Dep't of Educ.*,
    255 F.R.D. 59 (E.D.N.Y. 2008) ..............................................................................14

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................13

*Marisol A. ex rel. Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)........................................................................21, 22

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982)...........................................................................................17

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)..........................................................19, 20

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................................22

*Herendeen v. The Quaker Oats Company*,
   No. 1:23-cv-17103 (N.D. Ill.) .....................................................................3, 4, 26

*Hernandez v. Merrill Lynch & Co.*,
   2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) ...................................15

*Hill v. The Quaker Oats Company*,
   No. 1:24-cv-02609 (N.D. Ill.) ........................................................................4, 26

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) .......................................................................12

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
   20-cv-6527, 2004 WL 2397190, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct.
   26, 2004) (Cote, J.) ...........................................................................................15

*Kessler v. The Quaker Oats Company*,
   No. 7:24-cv-00526 (S.D.N.Y.).......................................................................4, 26

*Manley v. Midan Rest. Inc.*,
   2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ..............................................12, 14

*Mayhew, v. KAS Direct LLC*,
   Case No. 16-cv-6981 (S.D.N.Y.) (Briccetti, J)............................................15, 20

*Mayhew, v. KAS Direct LLC*,
   Case No. 16-cv-6981 (VB) .................................................................................20

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009)...............................................................................11

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)..................................................13, 14, 21, 24

*Mills v. Capital One, N.A.*,
  2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .........................................................17

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .....................................................................................20

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d at 227–28 ...................................................................................................24

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) .........................................................22

*Patora v. Colgate-Palmolive Co.*,
  Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.) .....................................15, 20

*Patora v. Tarte, Inc.*,
  Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J) ...........................................15, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) .....................................................................14

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................18, 19, 21

*Rapoport-Hecht v. Seventh Generation*,
  Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) ...............................................15, 20

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)......................................................................................22

*Rosi v. Aclaris Therapeutics, Inc.*,
  2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ...........................................................18

*Shaya Eidelman v. Sun Prods. Corp.*,
  2022 U.S. App. LEXIS 15480 (2d Cir. 2022) .........................................................16

*In re Sinus Buster Prods. Consumer Litig.*,
  2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)..........................................................17

*Swetz v. The Clorox Company*,
  Case No. 22-CV-9374 (S.D.N.Y.) ..............................................................................5

*Swetz v. The Clorox Company*,
  Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.)...............................................15, 20

*Swetz v. GSK Consumer Health, Inc.*,
  7:20-cv-04731-NSR (S.D.N.Y) (Roman, J)........................................................15, 20

*Tart v. Lions Gate Ent. Corp.*,
2015 WL 5945846 (S.D.N.Y, Oct. 13, 2015) ................................................................23, 24

*Vargas v. Capital One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ...................................................................................25

*Viafara v. MCIZ Corp.*,
2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014) ...............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .....................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ...............................................................................12, 17, 25

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ...............................................................14

**Statutes**

28 U.S.C. §1715 ...................................................................................................................11

Connecticut Unfair Trade Practices Act ..............................................................................4

Fed. R. Civ. P. 23(a)(2) ................................................................................................21, 22

Fed. R. Civ. P. 23(a)(3) ......................................................................................................22

Fed. R. Civ. P. 23(a)(4) ......................................................................................................22

Fed. R. Civ. P. 23(c) ............................................................................................................3

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) ........................................................................................19

Federal Rules Of Civil Procedure Rule 23(a) .....................................................................21

Federal Rules of Civil Procedure Rule 23(e)(2) ........................................................ *passim*

New York General Business Law Sections 349 and 350 .......................................................4

Order: (1) .............................................................................................................................3

Rule 23(a)(1) .......................................................................................................................21

Rule 23(a) and Rule 23(b)(3) .............................................................................................21

Rule 23(b) ...........................................................................................................................23

Rule 23(b)(1), (2) ...............................................................................................................23

Rule 23(b)(1), (b)(2) ..................................................................................................24

Rule 23(b)(3) ..............................................................................................................23

Rule 23(c)(2)(B) ........................................................................................................25

Rule 23(c)(3) ..............................................................................................................25

Rule 23(e) ...................................................................................................................12

Rule 23(e)(1)(B) .........................................................................................................24

Rule 23(e)(3) ...................................................................................................13, 19, 20

*Grice v. Pepsi Bevs.* ...................................................................................................18

363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019) ..........................................................18

Plaintiffs Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.[1]

## **INTRODUCTION**

After months of litigation, Plaintiffs are proud to report that the parties have reached an agreement on a proposed class-wide settlement of this matter, which will provide extraordinary relief to Plaintiffs and the class. This settlement would resolve the claims of purchasers of certain of Defendant the Quaker Oats Company's ("Quaker" or "Defendant") Granola Bar and Granola Cereal Bar products (the "Covered Products"), who allege that they were deceived into purchasing products which were at risk of potentially containing the harmful bacteria *Salmonella*.[2] As part of the settlement, Defendant will establish a Settlement Fund of $6.75 million, with no right to reversion, that will compensate Class Members' Claims, pay Notice and Other Administrative Costs, pay Court-approved reasonable attorneys' fees and costs, and pay any Court-approved Service Awards to the Class Representatives. *See* § 1.33. Importantly, this settlement will expand upon the recall initiated by Quaker on December 15, 2023 and expanded on January 11, 2024 (the "Recall"), by providing monetary relief to Class Members who did not receive a refund through the Recall. Moreover, Defendant has agreed to pay a $100,000 Initial Settlement Administration Payment for the purposes of covering notice and administration costs, so that the costs of providing

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason P. Sultzer In Support of Plaintiffs' Motion for Preliminary Approval (the "Sultzer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[2] The "Covered Products" are defined in § 1.11 of the Settlement Agreement and listed in Exhibit D to the Settlement Agreement.

notice and administering the settlement likely will not deplete the funds available for the proposed class members.

In addition to obtaining substantial monetary relief for the Class, Plaintiffs also obtained significant non-monetary relief.  Specifically, after the first Action in the Litigation was filed, Defendant made a modifications to its practices and procedures regarding bacterial contamination, and also expanded the Recall to include additional products that were potentially contaminated with *Salmonella*.  Moreover, Defendant closed the plant in Danville, Illinois that manufactured the recalled food and was a source of potential contamination. In addition, Defendant is continuing to diligently implement its food safety programs to reduce the potential future risk of bacterial contamination.

To that end, this settlement also serves an important public good by deterring corporations from allowing potentially harmful product contamination and encouraging stricter testing protocols.  *See* Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019) at Chapter 8.

As demonstrated below, the Settlement satisfies the relatively low threshold required for preliminary approval.   The parties reached the Settlement after significant arm's-length negotiations with the assistance of a highly respected mediator and retired federal Magistrate Judge, Jay C. Gandhi of JAMS.  Judge Gandhi is particularly experienced and adept at the resolution of consumer class actions and, as such, his involvement in the process speaks volumes about the fairness of this result. [3]   This settlement is even stronger than the $3.5 million common

---

[3] Judge Gandhi (Ret.) served for eight (8) years as a United States Magistrate Judge for the Central District of California and oversaw the Court's Alternative Dispute Resolution program. Judge Gandhi has extensive experience in class action litigation, as a mediator, judge, and litigator.  Before the bench, Judge Gandhi was a partner at Paul Hastings LLP and he spent 12 years litigating MDL/class actions in a variety of state and federal jurisdictions across the country. As a judge, Judge Gandhi presided over the $1 billion public-entity settlement involving PG&E and the California wildfires, the $725 million class action settlement accusing Facebook of allowing third parties, including Cambridge Analytica, to access users' private information, and the $648 million class action settlement over environmental contamination from polychlorinated biphenyls, or PCBs, made by the Monsanto Company.

fund Your Honor approved in *Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.), especially given the significant non-monetary relief provided to consumers.

Accordingly, Plaintiffs respectfully request the Court enter an Order: (1) preliminarily approving the proposed Settlement Agreement, including the exhibits attached thereto; (2) preliminarily certifying a proposed national class for settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process and are the best notice practicable under the circumstances pursuant to Fed. R. Civ. P. 23(c)); and (4) .

## FACTUAL AND PROCEDURAL BACKGROUND

## I.     THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS

On December 15, 2023, in coordination with the Food and Drug Administration, Defendant announced the recall of approximately ninety (90) Quaker products, mostly cereals and granola bars, due to the potential for contamination with *Salmonella*, a harmful bacterium. On or around December 27, 2023, Plaintiff Teresa Herendeen filed a Recall-related putative nationwide class action lawsuit against Quaker, captioned *Herendeen v. The Quaker Oats Company,* No. 1:23-cv-17103 (N.D. Ill.) (The "*Herendeen Action*") asserting claims for negligence, breach of express warranty, breach of implied warranty of merchantability, fraudulent misrepresentation, fraud by omission and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Herendeen* Action").

On January 11, 2023, Defendant expanded its recall to include additional products. As part of its recall of the Covered Products, Defendant offered a full refund, in the form of coupons for Quaker products, to any consumer who submitted proof of purchase. To date, Quaker has issued refunds of over $2.6 million in connection with this recall in the form of coupons, cash,

check and/or gift cards, all of which was paid to consumers following the initiation of this Litigation by Plaintiffs.

On or about January 24, 2024, Plaintiff Kessler filed a Recall-related putative nationwide class action lawsuit against Quaker, captioned *Kessler v. The Quaker Oats Company,* No. 7:24-cv-00526 (S.D.N.Y.) asserting claims for violation of New York General Business Law Sections 349 and 350 in connection with his alleged purchase of one or more recalled products (the "*Kessler* Action"). On or about March 5, 2024, Plaintiff Hill filed Recall-related putative nationwide class action lawsuit against Quaker, which was subsequently removed to federal court, captioned *Hill v. The Quaker Oats Company,* No. 1:24-cv-02609 (N.D. Ill.), asserting claims for violation of the Connecticut Unfair Trade Practices Act, breach of implied warranty of merchantability and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Hill* Action"). On or about March 13, 2024, counsel Jeffrey S. Goldenberg sent Quaker a pre-suit notice letter threatening a Recall-related putative class action lawsuit on behalf of Plaintiff Lazaro Rodriguez, to be filed by Goldenberg Schneider, LPA and Levin Sedran & Berman, LLP, asserting claims in connection with his alleged purchase of one or more recalled products (the "*Rodriguez* Action"). On or about April 9, 2024 counsel Jeffrey Brown informed Quaker that he had been retained to commence a Recall-related putative class action lawsuit on behalf of Plaintiff Barbara Abreu, to be filed by Leeds Brown Law, P.C, asserting claims in connection with her alleged purchase of one or more recalled products (the "*Abreu* Action," and together with the *Herendeen, Kessler, Hill* and *Rodriguez* Actions, the "Litigation").

On April 26, 2024, the Parties informed the Court that they had reached a resolution on the matter and requested permission to file a consolidated amended complaint and a motion for

preliminary approval, which the Court granted.  (Dkts. 7 & 8).  On May 24, 2024, Plaintiffs filed

a consolidated amended complaint for the purposes of settlement.  (Dkt. 9).

The Settlement Agreement resolves the claims asserted in the Consolidated Amended

Complaint.  Class Counsel worked cooperatively to coordinate the Litigation and to save judicial

time and resources, to coordinate the multiple similar litigations without a protracted battle for

lead counsel, and to lead the case to mediation and an early resolution.  Sultzer Decl. ¶ 14.[4]

## II.    SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations between the

Parties and counsel, facilitated by a mediation with a respected and highly experienced JAMS

mediator, Magistrate Jay C. Gandhi, on April 11, 2024.  Before and during these settlement

discussions and mediation, the Parties had arm's-length exchanges of sufficient information to

permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to

meaningfully conduct informed settlement discussions.  The Parties did not discuss Attorneys'

Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of

this settlement.  Sultzer Decl. ¶ 20.  Defendant denies all Plaintiffs' allegations and all charges of

wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions

alleged, or that could have been alleged against it, in the Litigation.

Class Counsel worked together to thoroughly analyze the legal landscape, including

conducting research into the various state consumer protection laws and available remedies, and

evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to

---

[4] See Swetz v. The Clorox Company, Case No. 22-CV-9374 (S.D.N.Y.) (Tr. Final Approval Hearing) (Judge Halpern stated "I'm delighted that you were able to resolve this. I think very highly of lawyers who actually take on these matters. And I noticed, with the Court's approval, there was a fair amount of self-organization at the beginning of this I think that kind of approach to a District Court Judge is so superior to the other approach which I have run into on occasion, which is the lawyers are fighting and bickering over who should be lead counsel, who should be Class Counsel. And the sniping and the unnecessary commenting about the other's abilities or experience is less enjoyable than dealing with you. So I very much appreciate what you've done. I think you did an excellent job.").

a potential early resolution.  Sultzer Decl. ¶ 14.

Class Counsel conducted a detailed and extensive analysis of the claims alleged in the Complaints, including labeling claims for the Covered Products, the relevant regulations concerning labeling and advertising disclosure requirements for these types of products, regulatory and scientific guidelines regarding the presence of *Salmonella* in consumer products, and the scientific research concerning the dangers of *Salmonella*.  Sultzer Decl. ¶ 14.  In addition, Class Counsel hired an independent laboratory to conduct their own testing on certain of the Covered Products for the presence of *Salmonella*.  *Id*. ¶ 15.  Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.  *Id*. ¶ 16.  Class Counsel also conducted research into the relevant marketplace to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the consumer products industry.  *Id.* ¶ 17.

Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with a private mediator.  *Id.* ¶ 18.  In connection with the mediation, Class Counsel requested significant mediation discovery to evaluate the claims and to position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Defendant produced confidential documents and information regarding the sales data of Covered Products throughout the Class Period, details about the incident that led to one Quaker product being contaminated with *Salmonella* and the control procedures put in place to deter future, similar incidents, and information pertaining to the Recall and reimbursement claims process.  *Id*. Plaintiffs also conducted their own due diligence regarding the measures Defendant put in place after the contamination was discovered.  This information was critical to Plaintiffs' determination that the cause of the contamination has been contained and procedures were put in place to prevent

future contamination.

The settlement negotiations were conducted at arm's-length over a period of several weeks. *Id*. ¶ 19. On April 11, 2024, the Parties participated in an all-day mediation with Judge Gandhi. *Id*. ¶ 21. With Judge Gandhi's assistance, the Parties reached an agreement in principle at the mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations. *Id*. ¶ 22.

The Settlement Agreement resolves claims for economic harm regarding Defendant's use of allegedly misleading labels on Quaker Covered Products, and the marketing and promotion concerning the presence and potential presence of *Salmonella* in the Covered Products and provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $6.75 million and other non-monetary relief that resulted from the Litigation, including expanding the Recall and the closure of a plant that was a potential source of contamination. The Settlement Agreement excludes the release of any claims for personal or bodily injury.

## III. THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed upon exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members. Sultzer Decl., Ex 1.

### A. The Settlement Class

The Parties agree to certify a nationwide Settlement Class for settlement purposes, defined as follows:

> all natural persons who, between the earliest date of distribution of any Covered Product and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale, except for any Excluded Persons.

§ 1.32.

**B.**    **Relief for the Settlement Class Members**

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $6.75 million, which will be exhausted to pay all Valid Claims, as well as any attorneys' Fee Award and Costs, Service Awards, and Notice and Other Administrative Costs that are approved by the Court.  §1.33.  In addition, Quaker has agreed to pay a $100,000 Initial Settlement Administration Payment for the purposes of covering notice and administration costs that is separate and apart from the Settlement Fund so that the costs of providing notice and administering the settlement likely will not deplete the funds available for the proposed class members.  § 4.1. Class Members who submit a Valid Claim that is not accompanied by Proof of Purchase shall receive the total of the average retail price for up to two (2) Covered Products claimed per household, with Quaker to provide the average retail prices of the Covered Products to the Class Administrator. §4.6.2.  Class Members who submit a Valid Claim that is accompanied by Proof of Purchase of a Class Product shall be entitled to receive a full refund of the amount of money he or she spent on the Class Products that is documented by Proof of Purchase. §4.6.1. If a Settlement Class Member or any person in that Settlement Class Member's Household received Recall Reimbursement from Defendant, as reflected on the Settlement Class Member's Claim Form or in the records of Defendant, the amount of that Settlement Class Member's payment shall be reduced by the amount of Recall Reimbursement that Settlement Class Member or persons in that Settlement Class Member's Household have received (provided that the payment shall not be reduced below $0.00). § 4.6.3.  Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.  § 4.6.4.    In the event any checks issued to pay valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to a *cy pres* charity

to be agreed upon by the parties and approved by the Court.  § 4.10.  All of this ensures that *no settlement funds* will revert to Defendant.

### C.    Non-Monetary Relief

In addition to the monetary relief provided by the Settlement Agreement, after the first Action in the Litigation was filed, Defendant made a number of modifications to its practices and procedures regarding bacterial contamination including, but not limited to, expanding the Recall to include additional products that had the potential to be contaminated with *salmonella*. Moreover, Defendant closed a plant in Danville, Illinois that was a source of potential contamination.  In addition, as a result of the Litigation, Defendant is continuing to diligently test its products to reduce the risk of potential bacterial contamination in the future.  These modifications significantly benefit consumers, including Settlement Class Members who wish to purchase Defendant's products in the future.  § 4.14.

### D.    The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendant from any and all claims arising out of or related to the Litigation, including claims related to the presence of *Salmonella* or any other bacteria or contaminant in the Covered Products that were, or could have been, asserted in this Litigation and any claims arising from alleged omissions or misrepresentations concerning the presence of *Salmonella* in the Covered Products, other than claims for  alleged physical or bodily injuries arising from any Class Member's use of or exposure to the Covered Products.  § 8.1.  The specific details of the release are set forth more fully in the Settlement Agreement.  *Id.*

### E.    Attorneys' Fee, Cost, and Service Award

Prior to the scheduled hearing on Final Approval and in accordance with the Court's regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their

Attorneys' Fees and Costs.  § 7.1.  In addition, prior to the scheduled hearing on Final Approval and in accordance with the Court's regular motion requirements, the Class Representatives may apply to the Court for a Service Award payable from the Settlement Fund of up to $500 each as compensation for the time and effort undertaken in and risks of pursuing this Litigation.  § 7.2. Defendant will have an opportunity to object to the application should it so desire.

### F.    Settlement Administration and The Notice Plan

The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan.  Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.  Sultzer Decl. ¶ 26.  The Parties selected Angeion based on its reputation for excellent work and its breadth of experience administering other similar consumer class actions.  *Id*. ¶ 27.

The Claim Administrator shall establish the Settlement Website, which shall contain a complete list of Covered Products as set forth in Exhibit D to the Settlement Agreement; the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel; the operative Class Action Complaint; the Agreement; the signed Preliminary Approval Order; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Costs and/or an application for Incentive Awards. § 5.2.1; Sultzer Decl. Ex. 2.

Angeion, with the assistance of the Parties, developed the Notice Plan, which includes: (1) a Notice of Settlement and Claim Form; (2) digital/internet publication designed to target

10

purchasers of the Covered Products; (3) a dedicated Settlement Website though which Settlement Class Members can obtain more detailed information about the settlement and access case documents; (4) a toll-free telephone number through which Settlement Class Members can obtain additional information about the settlement and that will direct them to the Settlement Website; and (5) all required notices in accordance with Defendant's obligations pursuant to 28 U.S.C. §1715. *See* Sultzer Decl. Ex. 2; Settlement Agreement Exs. B & C.

Angeion analyzed the demographic and media usage of potential Settlement Class Members to ensure the notice effectively targets the Settlement Class.  *See* Sultzer Decl. Ex. 2 ¶¶ 21-28. Specifically, Angeion designed a media campaign that is estimated to reach at least 75.14% of potential Settlement Class Members. *Id*. ¶¶ 41-43.; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members).  The media campaign will consist of a digital effort utilizing a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States, to provide notice of the Settlement to Class Members.  *Id.* ¶¶ 20-31.  The media plan will also include a campaign on the top social media sites (Facebook and Instagram) and a paid search campaign on Google.  *Id.* The digital effort utilizes best practices in targeting the Settlement Class and will directly link users to the Settlement Website where they can access more information, as well as file an online claim.  *Id*. ¶¶ 32-35.

## ARGUMENT

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Second Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*,

588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")).  A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).  "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016).  "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Id.*

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of

any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The *Grinnell* Factors

#### 1.    The Complexity, Expense, And Likely Duration Of The Litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See*, *e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). Should the Court decline to approve the proposed settlement and litigation were to resume, it would be costly, complex, and time-consuming.

At the class certification stage, Defendant would argue that this case is unsuited to class-wide treatment because Plaintiffs' claims require individualized inquiries into whether each of the Covered Products was actually contaminated *Salmonella* and whether the purchasing Plaintiffs suffered an economic injury as a result. Although Plaintiffs are confident that they would succeed in certifying a class, Defendant would undoubtedly require Plaintiffs to expend significant resources litigating a contested class certification motion and opposing Defendant's efforts to decertify the class and/or appeal the class certification ruling. Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about whether a reasonable consumer would expect the Covered Products to be free from *Salmonella*; the extent to which the Covered Products contained *Salmonella*; whether Plaintiffs and/or any potential class members sustained any damages; and the reliability of competing damages models, as well as the reliability of consumer surveys and statistical analysis employed to derive the price premium consumers paid for each

13

alleged falsely advertised product attribute. Each step towards trial would be subject to Defendant's vigorous opposition. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which also would take significant time and resources.

Moreover, Defendant would likely offer substantial defenses at trial concerning its lack of knowledge regarding the potential for *Salmonella* in the Covered Products and the efforts it took to remedy the bacterial contamination through its voluntary Recall. Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . .. . .through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9. "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.* For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### 2. The Reaction of The Class To The Settlement

It is premature to address the reaction of the Settlement Class at the preliminary approval stage. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

### 3. The Stage of The Proceedings and The Amount of Discovery Completed

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . .and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013). As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Covered Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the *Salmonella* contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur. Sultzer Decl. ¶ 18. *See D.S. v. New York*

*City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.").

Courts in this district routinely approve settlements of class actions at the early stages of class actions because it allows the class members to recover without the delay that such complex cases usually entail, especially where, as here, the settlements were brought about by the skill and diligence of Class Counsel in evaluating the claims and damages on the litigation.[5]

### 4.    The Risks of Establishing Liability and Damages

"[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007). In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the

---

[5] *See Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, *55 (S.D.N.Y Nov. 15, 2013) (granting final approval of class action settlement where "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."); *Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681, *14 (S.D.N.Y. Mar. 21, 2013) ("courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."); *Castagna v. Madison Square Garden, L.P.*, U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement).  Judges in the Southern District of New York have also recognized the benefits of settling cases in the early stages of litigation in the context of awarding attorneys' fees.  *See e.g. Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 20-cv-6527, 2004 WL 2397190 at *12, 2004 U.S. Dist. LEXIS 21429, at *35-37 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so."); Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) (***I think there is definitely a premium to be taken for the fact that the case was settled at an early stage***. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. ***And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts***.").  *See also Catalano v. Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Patora v. Tarte, Inc.,* Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation,* Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC,* Case No. 16-cv-6981 (S.D.N.Y.) (Briccetti, J); *Swetz v. GSK Consumer Health, Inc.,* 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Patora v. Colgate-Palmolive Co.*, Case No.  7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) (all granting attorneys' fees of one-third of the settlement fund in consumer class actions cases in this Court that were settled at similar procedural stages).

settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).   Plaintiffs recognize that, as with any litigation, uncertainties exist.   Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal.

Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Covered Products could potentially contain *Salmonella*, a jury might not agree.   In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to extent of *Salmonella* contamination or risk of contamination, the amount of bacteria in each contaminated product (if any), the health effects of exposure to *Salmonella*, and the calculations of damages. For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages at trial and on appeal strongly support preliminary approval. Additionally, Defendant has maintained that damages in this matter would be limited because only a fraction of the Covered Products were actually at risk of being contaminated, and a significant portion of the potentially contaminated products never made t into the hands of consumers.   Sultzer Decl. ¶ 6.

5.    *The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. § 2.1.   As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form of a class-wide price premium.   While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, as a number of Courts in this Circuit have noted (*see Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing

16

that the plaintiff paid a price premium")), this proposed settlement eliminates the unavoidable risk

that they cannot.  Furthermore, even if the Court were to certify a litigation class, the certification

would not be set in stone.[6]

### 6.    The Ability of Defendant to Withstand Greater Judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the

other *Grinnell* factors, especially where the other factors weigh in favor of approving the

settlement." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov.

10, 2014).  Thus, Defendant's "ability to withstand a greater judgment, standing alone, does not

suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y.

Apr. 30, 2014).  Therefore, at worst, this factor is neutral.

### 7.    The Range of Reasonableness of The Settlement in Light of The Best Possible Recovery and In Light of All The Attendant Risks of Litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes

the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119.  "In other words,

the question for the Court is not whether the settlement represents the highest recovery possible .

. . but whether it represents a reasonable one in light of the many uncertainties the class faces."

*Bodon v. Domino's Pizza, LLC*, 2015 WL 5886656, at *6 (E.D.N.Y. Jan. 16, 2015).  Indeed, courts

within this Circuit have approved settlements providing a small fraction of the total estimated

---

[6] *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").  Given the risks, this factor weighs in favor of preliminary approval. *See, e.g.*, *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *14 (S.D.N.Y. Sept. 30, 2015) ("[V]ictory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position.").

recovery in light of the risks of litigation.[7] [8]

Here, the relief which the Settlement Agreement provides is within the range of reasonableness, especially considering the best possible recovery and all the attendant risks of litigation.  The gravamen of the Litigation is that Defendant deceived consumers by failing to disclose that the Covered Products may contain *Salmonella*.  The cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial.  Given that only a limited number of the Covered Products were actually at risk of contamination and considering the non-monetary relief, the settlement provides substantial relief, strongly supporting preliminary approval.  *See* Sultzer Decl. ¶ 6.

### B.  The Rule 23(e)(2) Factors

#### 1.    *Class Counsel and Plaintiffs Adequately Represented the Class*

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019).  As discussed below, Plaintiffs and Class Counsel have adequately represented the Class.  Argument IV.A.4, *infra*.

---

[7] *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379-80 (S.D.N.Y. 2013) (awarding requested fees where recovery amounted to 24% of total damages and noting "[t]hough the recovery here . . . represents only a fraction of the possible recovery estimated by plaintiffs' damages experts . . . that fraction is still an impressive result."); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7 (S.D.N.Y. Dec. 9, 2021) ("The $2.65 million gross recovery for the settlement class returns approximately 14% of Lead Plaintiff's estimated damages. Given the risks presented by the case, the Court views this as a favorable recovery for the class."); *Grice v. Pepsi Bevs.* Co., 363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019) ("[T]he class members are receiving only approximately 5% of their maximum potential recovery.  But considering the factual and legal hurdles that the class would have had to overcome before securing a favorable judgment, the current settlement represents a good result for the class members.")

[8]     *See* comprehensive study of class action settlements and medium recoveries: https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--actionlitigation--2022-full-.html, at 19 (finding that the median securities fraud class action between 2013 and 2022 settled for between 1.5% and 2.5% of the most common measure of investor losses, depending on the year)

2.      *The Settlement Was Negotiated at Arm's-Length*

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id*. Here, both Class Counsel and counsel for Defendant are experienced in class action litigation. Sultzer Decl. ¶¶ 29-30, Exs. 3-9. Moreover, the parties participated in a mediation before Judge Gandhi and engaged in protracted settlement discussions. *Id*. ¶¶ 21-22.

3.      *The Settlement Provides Adequate Relief to The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors . . .including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement meets each of these *Grinnell* factors. Argument I.A.

As to "the effectiveness of any proposed method of distributing relief to the class," the Notice Plan outlined below was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695; *see also* Argument III.

As to "the terms of any proposed award of attorney's fees," As to "the terms of any proposed award of attorneys' fees," in the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account - among other substantive considerations stated in the rule - the proposed attorneys' fees and incentive awards." *Moses v. N.Y. Times Co*., 79 F.4th 235, 243 (2d Cir. 2023).  Plaintiffs' Counsel plans to apply for attorneys' fees in the amount of one-third of the Settlement Fund. Sultzer Decl. ¶ 20.  This Court has approved fees of one-third of the settlement fund in cases that have settled in a similar procedural posture.[9]  In addition, courts have recently approved settlements and attorneys' fees requests in similar product contamination cases.[10]

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement.

>    4.    *The Settlement Treats All Class Members Equally*

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of

---

[9] *See Patora v. Tarte, Inc*., Case No. 18-cv-11760-KMK (S.D.N.Y.)  (awarding a third of settlement fund for attorneys' fees and costs in a consumer fraud case); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (same); *Mayhew, v. KAS Direct LLC*, Case No. 16-cv-6981 (VB) (same); *Swetz v. GSK Consumer Health, Inc*., 7:20-cv-04731-NSR (S.D.N.Y) (same).

[10] *See Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc*., 1:22-cv-00291-BMC (E.D.N.Y.) (approving attorney's fee award of 32% of the common fund in a benzene contamination case; *Catalano v. Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Patora v. Tarte, Inc.,* Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation,* Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC,* Case No. 16-cv-6981 (S.D.N.Y.) (Briccetti, J); *Swetz v. GSK Consumer Health, Inc.,* 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Patora v. Colgate-Palmolive Co.*, Case No.  7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) (all granting attorneys' fees of one-third of the settlement fund in consumer class actions cases).

the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 47. The Settlement distributes relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable. *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (a *pro rata* distribution plan "appears to treat the class members equitably").

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As Plaintiffs set forth below, and although Defendant reserves all its arguments to the contrary should this Settlement not be approved, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Settlement Class Meets All Prerequisites of Rule 23(a) Of The Federal Rules Of Civil Procedure

The Settlement Class meets each prerequisite of Rule 23(a) which include: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation.  Fed. R. Civ. P. 23(a).

#### 1.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Second Circuit has found numerosity met where a proposed class is "obviously numerous."  *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Here, there is no dispute that at least thousands of consumers nationwide purchased the Covered Products during the Class Period.  Numerosity is easily satisfied.  *See id.*

#### 2.    Commonality

Under Fed. R. Civ. P. 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist.  Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable

21

of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359. Here, common questions include, but are not limited to, whether Defendant's failure to disclose that the Covered Products potentially contained *Salmonella* was likely to deceive reasonable consumers. Resolving this common question would require evaluating the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) Thus, commonality is satisfied.

### 3. *Typicality*

Fed. R. Civ. P. 23(a)(3) requires that the proposed class representatives' claims "are typical of the [class's] claims." Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013). Here, typicality is met because the same allegedly unlawful conduct by Defendant was directed at, or affected, Plaintiffs and Settlement Class Members. *Robidoux*, 987 F.2d at 936-37.

### 4. *Adequacy*

Under Fed. R. Civ. P. 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

Here, Plaintiffs possess the same interests as the proposed Settlement Class Members

because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly misleading conduct concerning the Covered Products. *See Charron*, 731 F.3d at 249.    Moreover, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into prosecuting the Litigation and possess a long and proven track record of successfully prosecuting class actions, including false advertising cases, and numerous appointments as class counsel. *See* Sultzer Decl. ¶¶ 29-30 , Exs. 3-9.

### B.    The Settlement Class Meets the Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Legal and Factual Questions Predominate In This Action

The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227-28 (2d Cir. 2006).  In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Id.* at 620.  As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Ent. Corp.*, 2015 WL 5945846, at *4 (S.D.N.Y, Oct. 13, 2015).

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant's failure to disclose the potential presence of *Salmonella* in the Covered Products was likely to deceive reasonable consumers and whether the omissions were material. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28.

   2. *A Class Action Is the Superior Means To Adjudicate Plaintiffs' Claims*

Here, the class action mechanism is superior to individual actions for numerous reasons. *First*, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661. *Second*, a class action is superior because the "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5. *Finally*, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiff[s], class members, and Defendant to resolve all claims . . . at once." *Id*. For all the foregoing reasons, a class action is superior to individual suits.

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by

reasonableness." *Visa*, 396 F.3d at 113.  Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).

Here, the robust proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure.  The proposed methods Plaintiffs identified above for providing notice to the Settlement Class Members are reasonable, designed to reach 75.14% of the Settlement Class, and utilize the best practicable and economically efficient means to notify consumers of the proposed Settlement.  *See* Ex. 2, ¶ 42.[11] A website and tollfree number will be established to inform consumers of the Settlement, and a digital advertising campaign targeting Settlement Class Members will be used to drive them to the Settlement Website.  *Id.* ¶¶ 32-35.

Substantively, Rule 23(c)(2)(B) requires, and the Notice of Settlement provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and they describe in detail the monetary relief of the Settlement, including the procedures for allocating and distributing the Settlement Fund among the Settlement Class Members, Plaintiffs, Class Counsel, and the Settlement Administrator.  Sultzer Decl. Ex. 2; *see also* Exs. B & C to the Settlement Agreement.

---

[11] *See* JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) ("It is reasonable to reach between 70-95%.").

They also plainly indicate the time and place of the Final Approval, and explain the methods for objecting to, or opting out of, the settlement. *Id.* They detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Class Counsel. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs in the *Herendeen*, *Kessler*, *Hill*, *Rodriguez*, and *Abreu* Actions as the class representatives and their counsel as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the Notice Plan; and (4) set a date and time for the Final Approval Hearing.

Dated: June 24, 2024                          Respectfully submitted,

                                              By: */s/ Jason P. Sultzer*
                                                    Jason P. Sultzer

                                              **SULTZER & LIPARI, PLLC**
                                              Jason P. Sultzer, Esq.
                                              Jeremy Francis, Esq.
                                              85 Civic Center Plaza, Suite 200
                                              Poughkeepsie, NY 12061
                                              Tel: (845) 483-7100
                                              Fax: (888) 749-7747
                                              E-Mail: sultzerj@thesultzerlawgroup.com
                                                      francisj@thesultzerlawgroup.com

                                              **REESE LLP**
                                              Michael R. Reese
                                              100 West 93rd Street, 16th Floor
                                              New York, New York 10025
                                              Tel: (212) 643-0500
                                              *mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
Nick Suciu III, Esq.
6905 Telegraph Road, Suite 115 Bloomfield Hills,
Michigan 48301
Tel: (313) 303-3472
*nsuciu@milberg.com*

**POULIN WILLEY ANASTAPOULO**
Paul Doolittle
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: *pauld@akimlawfirm.com*

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**
Joshua Arisohn
1330 A venue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
*jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
*jgoldenberg@gs-legal.com*

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
Andrew Costello
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*jbrown@leedsbrownlaw.com*

*Attorneys for Plaintiffs and the Settlement Class*

27