UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

**Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu individually and on behalf of all others similarly situated,**

                 **Plaintiffs,**

v.                                                          Case No.: 7:24-cv-00526

**The Quaker Oats Company,**

                 **Defendant.**

-----------------------------------------------------------x

**DECLARATION OF JASON P. SULTZER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF <u>NOTICE PLAN</u>**

      I, Jason Sultzer, submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan, and affirm that the following is truthful and accurate:

      1.      I am an attorney duly admitted before this Court. I am a partner at Sultzer & Lipari, PLLC, which, along with Milberg Coleman Bryson Phillips Grossman, PLLC, Reese LLP, Poulin Willey Anastapoulo, LLC, Levin Sedran & Berman LLP, Bursor & Fisher, P.A., Goldenberg Schneider, L.P.A., and Leeds Brown Law, P.C., are counsel for Plaintiffs in the above-captioned action.

      2.      I am one of the attorneys principally responsible for handling this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

1

3. On December 15, 2023, in coordination with the Food and Drug Administration, Defendant announced the recall of approximately ninety (90) Quaker products, mostly cereals and granola bars, due to the potential for contamination with Salmonella, a harmful bacterium.

4. On or around December 27, 2023, Plaintiff Teresa Herendeen filed a Recall-related putative nationwide class action lawsuit against Quaker, captioned *Herendeen v. The Quaker Oats Company*, No. 1:23-cv-17103 (N.D. Ill.) (The "*Herendeen* Action") asserting claims for negligence, breach of express warranty, breach of implied warranty of merchantability, fraudulent misrepresentation, fraud by omission and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Herendeen* Action").

5. On January 11, 2023, Defendant expanded its recall to include additional products.

6. As part of its recall of the Covered Products, Defendant offered a full refund, in the form of coupons for Quaker products, to any consumer who submitted proof of purchase. To date, Quaker has issued refunds of approximately $2.6 million in connection with this recall in the form of coupons, cash, check and/or gift cards, all of which was paid to consumers following the initiation of this Litigation by Plaintiffs. Defendant has maintained that only a fraction of the Covered Products were actually contaminated (which Plaintiffs have verified though their own independent testing). In addition, the informal discovery Defendant provided to Plaintiffs demonstrates that a significant portion of the potentially contaminated Covered Products never made their way into the hands of consumers.

7. On or about January 24, 2024, Plaintiff Kessler filed a Recall-related putative nationwide class action lawsuit against Quaker, captioned *Kessler v. The Quaker Oats Company*, No. 7:24-cv-00526 (S.D.N.Y.) asserting claims for violation of New York General Business Law

Sections 349 and 350 in connection with his alleged purchase of one or more recalled products (the "*Kessler* Action").

8.  On or about March 5, 2024, Plaintiff Hill filed Recall-related putative nationwide class action lawsuit against Quaker, which was subsequently removed to federal court, captioned *Hill v. The Quaker Oats Company*, No. 1:24-cv-02609 (N.D. Ill.), asserting claims for violation of the Connecticut Unfair Trade Practices Act, breach of implied warranty of merchantability and unjust enrichment in connection with her alleged purchase of one or more recalled products (the "*Hill* Action").

9.  On or about March 13, 2024, counsel Jeffrey S. Goldenberg sent Quaker a pre-suit notice letter threatening a Recall-related putative class action lawsuit on behalf of Plaintiff Lazaro Rodriguez, to be filed by Goldenberg Schneider, LPA and Levin Sedran & Berman, LLP, asserting claims in connection with his alleged purchase of one or more recalled products (the "*Rodriguez* Action").

10. On or about April 9, 2024 counsel Jeffrey Brown informed Quaker that he had been retained to commence a Recall-related putative class action lawsuit on behalf of Plaintiff Barbara Abreu, to be filed by Leeds Brown Law, P.C, asserting claims in connection with her alleged purchase of one or more recalled products (the "*Abreu* Action," and together with the *Herendee*n, *Hill*, and *Rodriguez* Actions, the "Litigation").

11. On April 26, 2024, the Parties informed the Court that they had reached a resolution on the matter and requested permission to file a consolidated amended complaint and a motion for preliminary approval, which the Court granted. (Dkts. 7 & 8).

12. On May 24, 2024, Plaintiffs filed a consolidated amended complaint for the purposes of settlement. (Dkt. 9).

13. The Settlement Agreement resolves the economic claims asserted in the Consolidated Amended Complaint (the "Litigation").

14. Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources, without a protracted battle for lead counsel, and to lead the case to mediation and an early resolution. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution. Class Counsel conducted a detailed and extensive analysis of the claims alleged in the Consolidated Amended Complaint, including labeling claims for the Covered Products, and the scientific research concerning the dangers of *Salmonella*.

15. In addition, Class Counsel hired an independent lab to conduct testing on certain of the Covered Products for the presence of *Salmonella*.

16. Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

17. In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.

18. Based on the Parties' exchange of information to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with a private mediator. In connection with the mediation, Class Counsel requested significant mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.

Specifically, Class Counsel requested, and Defendant produced, documents and information regarding the sales data of the Covered Products throughout the Class Period, details about the incident that led to Quaker products contaminated with *Salmonella,* the control procedures put in place to deter future, similar incidents, and information pertaining to the recall and claims process. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. Plaintiffs also conducted their own due diligence regarding the testing protocols and procedures that Defendant put in place after the contamination was discovered to ensure that a contamination would not reoccur. This information was critical to Plaintiffs' determination that the cause of the contamination has been resolved. In addition, Class Counsel conducted their own testing of the Covered Products which allowed them to estimate the percentage of Covered Products that were actually contaminated.

19. The settlement negotiations were conducted at arm's-length over a period of several weeks. Before and during these settlement discussions and mediation, the Parties had arm's-length exchanges of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

20. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. Class Counsel anticipates applying for fees in the amount of one-third of the Settlement Fund.

21. On April 11, 2024 the Parties participated in an all-day mediation with highly experienced JAMS mediator and former Magistrate Judge for the Central District of California, Jay C. Gandhi. Judge Gandhi is particularly experienced and adept at the resolution of consumer class actions and, as such, his involvement in the process speaks volumes about e fairness of the

result.[1]

22.     With the assistance of Judge Gandhi (Ret.), the Parties reached an agreement in principle at the mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations.

23.     The Settlement Agreement resolves claims regarding Defendant's use of allegedly misleading labels on, and marketing and promotion concerning, the Covered Products. The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $6.75 million. In addition, Quaker has agreed to pay a $100,000 Initial Settlement Administration Payment for the purposes of covering notice and administration costs that is separate and apart from the Settlement Fund so that the costs of providing notice and administering the settlement likely will not deplete the funds available for the proposed class members.

24.     In addition to obtaining substantial monetary relief for the Class, Plaintiffs also obtained significant non-monetary relief. Specifically, after the first Action in the Litigation was filed, Defendant made a modifications to its practices and procedures regarding bacterial contamination, and also expanded the Recall to include additional products that were potentially contaminated with Salmonella. Moreover, Defendant closed the plant in Danville, Illinois that manufactured the recalled food and was a source of potential contamination. In addition,

---

[1] Judge Gandhi (Ret.) served for eight (8) years as a United States Magistrate Judge for the Central District of California and oversaw the Court's Alternative Dispute Resolution program. Judge Gandhi has extensive experience in class action litigation, as a mediator, judge, and litigator. Before the bench, Judge Gandhi was a partner at Paul Hastings LLP and he spent 12 years litigating MDL/class actions in a variety of state and federal jurisdictions across the country. As a judge, Judge Gandhi presided over the $1 billion public-entity settlement involving PG&E and the California wildfires, the $725 million class action settlement accusing Facebook of allowing third parties, including Cambridge Analytica, to access users' private information, and the $648 million class action settlement over environmental contamination from polychlorinated biphenyls, or PCBs, made by the Monsanto Company.

6

Defendant is continuing to diligently implement its food safety programs to reduce the potential future risk of bacterial contamination. While these measures do not directly provide monetary relief to the Class Members, they nevertheless represent a significant benefit that Plaintiffs estimate are worth millions of dollars, inasmuch as they help ensure that Defendant's products that consumers purchase in the future are not contaminated.

25. All parties executed the Settlement Agreement on or before June 24, 2024.

26. The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan. Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.

27. The Parties selected Angeion based on its reputation for excellent work and its breadth of experience administering other similar consumer class actions.

28. Class Counsel have reviewed the proposed notice plan and are satisfied that it is the best notice practicable.

29. Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into prosecuting the Litigation and possess a long and proven track record of successfully prosecuting class actions, including false advertising cases, and numerous appointments as class counsel.

30. Sultzer & Lipari has substantial experience with consumer class actions in general, and with consumer fraud and false advertising, specifically. I have prosecuted and been appointed as lead counsel in numerous consumer fraud class actions throughout the country (including before Your Honor) in which I have recovered millions of dollars and obtained injunctive relief on behalf

of consumers. My significant experience representing consumers in class action litigation is detailed more fully in my firm resume attached hereto as Exhibit 3.

31. Attached hereto as **Exhibit 1** is the Settlement Agreement with exhibits in this action.

32. Attached hereto as **Exhibit 2** is the Notice Plan proposed by Angeion for providing notice of the settlement and claims procedure to the Class Members.

33. Attached hereto as **Exhibit 3** is Sultzer & Lipari PLLC's firm resume.

34. Attached hereto as **Exhibit 4** is Levin Sedran & Berman LLP's firm resume.

35. Attached hereto as **Exhibit 5** is Milberg Coleman Bryson Phillips Grossman, PLLC's firm resume.

36. Attached hereto as **Exhibit 6** is Poulin, Willey, Anastapoulo, LLC's firm resume.

37. Attached hereto as **Exhibit 7** is Bursor & Fisher, P.A.'s firm resume.

38. Attached hereto as **Exhibit 8** is Goldenberg Schneider, L.P.A's firm resume.

39. Attached hereto as **Exhibit 9** is Leeds Brown Law P.C.'s firm resume.

40. Attached hereto as **Exhibit 10** is Reese LLP's firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of June, 2024 in Poughkeepsie, New York.

/s/ *Jason P. Sultzer*
Jason P. Sultzer, Esq.
Sultzer & Lipari, PLLC
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Phone: (845) 483-7100
Facsimile: (888) 749-7747