**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara Abreu**
**individually and on behalf of all**
**others similarly situated,**

        **Plaintiffs,**

**v.**                                          **Case No.: 7:24-cv-00526**

**The Quaker Oats Company,**

        **Defendant.**

------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated:  July 14, 2025

        **SULTZER & LIPARI, PLLC**
        Jason P. Sultzer, Esq.
        Jeremy Francis, Esq.
        85 Civic Center Plaza, Suite 200
        Poughkeepsie, NY 12061
        Tel: (845) 483-7100
        Fax: (888) 749-7747
        sultzerj@thesultzerlawgroup.com
        francisj@thesultzerlawgroup.com

      **REESE LLP**
        Michael R. Reese
        100 West 93rd Street, 16th Floor
        New York, New York 10025
        Tel: (212) 643-0500
        mreese@reesellp.com

      **MILBERG COLEMAN BRYSON PHILLIPS**
      **GROSSMAN, PLLC**
        Nick Suciu III, Esq.
        6905 Telegraph Road, Suite 115
        Bloomfield Hills, Michigan 48301

Tel: (313) 303-3472
nsuciu@milberg.com

**POULIN WILLEY ANASTAPOULO**
Paul Doolittle
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: pauld@akimlawfirm.com

**LEVIN SEDRIN & BERMAN**
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: cschaffer@lfsblaw.com

**BURSOR & FISHER, P.A.**
Joshua Arisohn
1330 Avenue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
jarisohn@bursor.com

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
jgoldenberg@gs-legal.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Settlement Class*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………..i-ii

Table of Authorities………………………………………………………....….iii-vii

I.    INTRODUCTION…………………………………………………………..1

II.    FACTUAL AND PROCEDURAL BACKGROUND………………………………...3

    A.  Factual Background…………………………………………………………..3

    B.  Procedural History and Settlement Negotiations…………………………………..3

III.    KEY TERMS OF THE SETTLEMENT……………………………………………5

    A.  Class Definition……………………………………………………………5

    B.  Monetary Relief………………………………………………………………6

    C.  Non-Monetary Relief…………………………………………………………6

    D.  The Release……………………………………………………………...7

    E.  Attorneys' Fees, Costs and Service Awards……………………………………7

IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE………7

    A.  Numerosity………………………………………………………………8

    B.  Commonality………………………………………………………………8

    C.  Typicality…………………………………………………………………..9

    D.  Adequacy………………………………………………………………10

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)…………11

        1.  *Common Legal and Factual Questions Predominate In This Action*……………...11

        2.  *A Class Action Is A Superior Mechanism For Adjudication*………………………12

V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS……………………….......13

VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
    AND SHOULD BE FINALLY APPROVED BY THE COURT………………………….15

i

A. The *Grinnell* Factors………………………………………………………………..16

   1. *Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)*.16

   2. *The Reaction Of The Class Is Overwhelmingly Positive (Grinnell Factor 2)* ………17

   3. *The Stage of The Proceedings And The Amount of Discovery Completed*…………..18

   4. *The Risks of Establishing Liability And Damages*…………………………………...19

   5. *The Risk of Maintaining Class Action Status Through Trial*………………………...20

   6. *The Ability of Defendant to Withstand Greater Judgment*…………………………...20

   7. *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*……………………..21

B. The Rule 23(e)(2) Factors………………………………………………………………..22

   1. *Class Counsel and Plaintiffs Adequately Represented The Class*…………………...22

   2. *The Settlement Was Negotiated At Arm's Length*……………………………………23

   3. *The Settlement Provides Adequate Relief To The Class*……………………………..23

   4. *The Settlement Treats All Class Members Equally*…………………………………..25

VII. CONCLUSION…………………………………………………………………………25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
271 F. App'x 41 (2d Cir. 2008) ...................................................................13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................11, 12

*Ansari v. New York University*,
2018 WL 3715273 (S.D.N.Y. 1998) .............................................................9

*Asare v. Change Group N.Y., Inc.*,
2013 U.S. Dist. LEXIS 165935 (S.D.N.Y Nov. 15, 2013) ....................................19

*Augustin v. Jablonsky*,
461 F.3d 219 (2d Cir. 2006)........................................................................11

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................16, 19

*Bangoura v. Beiersdorf, Inc.*,
Case No. 1:22-cv-00291-BMC (E.D.N.Y) ................................................2, 18

*Castagna v. Madison Square Garden, L.P.*,
U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ..................19

*Catalano v. Lyons Magnus, LLC*,
Case No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) ..................................2, 18, 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................ *passim*

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)………………………………………………………...16

*D.S. v. New York City Dep't of Educ.*,
255 F.R.D. 59 (E.D.N.Y. 2008) ..................................................................18

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)................................................................................13

*Ferrick v. Spotify USA Inc.*,
2018 WL 2324076 (S.D.N.Y. May 22, 2018) ..................................................24

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................9, 12, 21

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982)..........................................................................................10

*Goldstein v. Henkel Corporation et al.*,
  Case No. 3:22-cv-00164-AWT (D. Conn.)....................................................2, 22

*Gordon v. Vanda Pharmaceuticals Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...................................................25

*Grayson v. GE*,
  2020 U.S. Dist. LEXIS 134657 (D. Conn. Jul. 27, 2020)....................................1

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)...............................................................................12

*Grice v. Pepsi Bevs. Co.*,
  363 F. Supp. 3d 401 (S.D.N.Y. 2019)................................................................22

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)...........................................................22, 23

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3pd ...............................................................................................24

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) .........................................................9

*Herendeen v. The Quaker Oats Company*,
  No. 1:23-cv-17103 (N.D. Ill.) ..............................................................................4

*Hernandez v. Merrill Lynch & Co.*,
  2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) .................................19

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)......................................................24

*Hill v. The Quaker Oats Company*,
  No. 1:24-cv-02609 (N.D. Ill.) ..............................................................................5

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019).........................................................................15

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
  20-cv-6527, 2004 WL 2397190, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct.
  26, 2004) (Cote, J.) ............................................................................................19

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ........................................................25

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..........................................................................8, 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009). Notice............................................13

*Massiah v. MetroPlus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y. 2012)....................................................................17

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)........................................................................21, 24

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) .........................................................................11

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)..............................................................12, 25

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................17

*Millien v. Madison Square Garden Co.*,
2020 U.S. Dist. LEXIS 141633 (S.D.N.Y. Aug. 7, 2020).....................................1, 17

*Moses v. Apple Hospitality Reit, Inc.*,
2018 U.S. Dist. LEXIS 50786 (E.D.N.Y. Mar. 17, 2028).....................................1, 17

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ...............................................................................21

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...............................................................................21

*In re PaineWebber*,
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................19

*Patellos v. Hello Products, LLC*,
2022 WL 2159566 (S.D.N.Y. June 15, 2022) ........................................................25

*Patora v. Colgate-Palmolive Co.*,
No. 7:23-cv-01118-VB (S.D.N.Y.)..........................................................................2

*Patora v. Tarte, Inc.*,
Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J).................................................18

v

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................................18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........................................................15

*In re Petrobas Sec.*,
    862 F.3d at 268 ........................................................................................................12

*Rapoport-Hecht v. Seventh Generation*,
    Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) ....................................................18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................................9, 10

*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ..........................................................22

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)...................................................................................11

*Shaya Eidelman v. Sun Prods. Corp.*,
    2022 U.S. App. LEXIS 15480 (2d Cir. 2022) .......................................................20

*In re Sinus Buster Prods. Consumer Litig.*,
    2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)........................................................20

*Swetz v. The Clorox Company*,
    Case No. 22-CV-9374 (S.D.N.Y.) ..........................................................................18

*Swetz v. The Clorox Company*,
    No. 7:22-cv-9374 (S.D.N.Y.).....................................................................................2

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982)................16

*Trinidad v. Pret a Manger (UDS) Ltd.*,
    2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)........................................................24

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014)........................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...................................................................................12

*In re Vitamin C*,
    2012 WL 5289514 ...................................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................................8

Wal-*Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................1, 13, 15, 17

*Willix v. Healthfirst, Inc.*,
    2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011).........................................................19

**Statutes**

CAFA.......................................................................................................................................14

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 23(a)(4).........................................................................................................10

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................13, 17

New York General Business Law Sections 349 and 350 ............................................4

Rule 23(a).......................................................................................................7, 8, 10, 11

Rule 23(a)(1)...........................................................................................................................8

Rule 23(a)(2).......................................................................................................................8, 9

Rule 23(a)(3)..........................................................................................................................9

Rule 23(b)(3)..................................................................................................................8, 11, 12

Rule 23(e)...........................................................................................................................15

Rule 23(e)(2)...........................................................................................................15, 21, 22, 25

Rule 23(e)(2)(C)(i-iv) ...........................................................................................................24

Rule 23(e)(3)…………………………………………………………………………………………..24

Plaintiffs Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu (collectively "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter the "Motion").

## I.    INTRODUCTION

On March 13, 2025, this Court preliminarily approved the class action settlement between Plaintiffs and Defendant The Quaker Oats Company ("Quaker" or "Defendant") and directed that notice be sent to the Settlement Class. ECF No. 34. The settlement administrator, Angeion Group ("Angeion") has implemented the Court-approved notice plan and direct notice has reached an estimated 79.6-85.96% of the Settlement Class.[1]  The reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 140,712 Settlement Class Members that made Valid Claims, only one objected,[2] and only fifteen made valid requests to be excluded. The Settlement is an excellent result for the class and the Court should grant final approval.

---

[1] The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

[2] Notably, the lone objection did not challenge the relief to the Class by the Settlement or any substantive portion of the Settlement, only certain procedural and administrative aspects of the claims process. Moreover, the fact that there has been only one single objection (to other aspects of the Settlement) out of hundreds of thousands of class members is strong evidence of the fairness of a settlement. *See Millien v. Madison Square Garden Co.*, 2020 U.S. Dist. LEXIS 141633, *14 (S.D.N.Y. Aug. 7, 2020) (approving class action settlement where only one member of the class filed an objection because "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quoting Wal-*Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 118 (2d Cir. 2005));   *Moses v. Apple Hospitality Reit, Inc*., 2018 U.S. Dist. LEXIS 50786, *20-21 (E.D.N.Y. Mar. 17, 2028) (holding that "[a] very low number of objections and exclusions ordinarily evinces a class's tacit acceptance of a settlement" and approving settlement with one objector); *Grayson v. GE*, 2020 U.S. Dist. LEXIS 134657, *11 (D. Conn. Jul. 27, 2020) (approving class action settlement where "the one objection from a Class Member did not challenge the fairness of the terms of the Settlement to the Class.").  Moreover, as will be set forth in greater detail in Class Counsel's response to the objection, the objection is not meritorious.  First, the objector has not demonstrated that he is a member of the class with standing to file such an objection, as required by the procedures set forth in the notice and Settlement Agreement. The objector does not appear to have purchased a Covered Product that was subject to the recall, or to have selected the method of payment (debit card) that he takes issue with in his objection.  Second, the objector's complaint that Class Members' due process rights are violated by the Court-appointed Claims Administers' fraud detection process are meritless.  Indeed, Angeion's fraud detection process has been approved by other federal courts.  Contrary to the objectors complaints, Class Members whose claims are rejected for potential fraud are informed that they can resubmit their claims or contact the Claims Administrator or Class Counsel for further information and assistance.  Moreover, per the Settlement Agreement, Class Counsel (who has a duty to protect the interests of Class Members) and the Court both retain oversight over the claims process, including which claims are accepted or rejected and why.  The objector's additional complaints regarding the online claims process,

The Settlement's strength speaks for itself: it creates a $6.75 million non-reversionary common fund from which each Settlement Class Member who submits a Valid Claim will receive a cash payment. Notably, this Settlement falls squarely within or above the range established by previous, similar settlements concerning the contamination of consumer products, including before Your Honor and other courts in the Southern and Eastern District of New York. For example, Your Honor recently approved a $3.5 million common fund in a similar bacterial contamination case. *See Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024).[3]

Moreover, Settlement Class Members submit valid claims will receive a substantial recovery as a result of the Settlement Agreement. 140,712 Class Members made Valid Claims made as a result of the Notice Program, *See* Declaration of Steven Weisbrot submitted herewith, ¶ 26. The average purchase price of the Covered Products is approximately $6.92. On average, Class Members who made Valid Claims will recover substantially more than that amount. Moreover, Class Members are receiving cash with and without proof of purchase.

As set forth below, in addition to obtaining substantial monetary relief for the Class, Plaintiffs also obtained significant non-monetary relief which will help prevent bacterial contamination in Defendant's food products in the future. Because settlements like these require companies to pay millions of dollars that ultimately impacts profitability, it deters corporations from allowing potentially harmful product contaminations from entering the stream of commerce and encourages stricter testing protocols and to maintain cleaner facilities. Here, Plaintiffs obtained significant non-monetary relief. Specifically, after the first Action in the Litigation was filed, Defendant made

---

unclaimed moneys, and cy pres distribution are similarly meritless and will be fully addressed in Class Counsel's written response to the objection.

[3] *See, also, Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-00291-BMC (E.D.N.Y) ($2.3MM common fund); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) ($1.95MM common fund); *Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.) ($5.65 million common fund); *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.) ($1.925 common fund.).

modifications to its practices and procedures to prevent future bacterial contamination, and also expanded the Recall to include additional products that were potentially contaminated with Salmonella.  Moreover, Defendant closed the plant in Danville, Illinois that manufactured the recalled food. In addition, Defendant is continuing to diligently implement its food safety programs to reduce the future risk of bacterial contamination.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiffs are purchasers of Defendant's food Products, mostly cereals and granola bars, that were recalled for potential contamination with the harmful bacteria, *Salmonella*.  ("Covered Products").  In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendant manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing or at the risk of containing dangerous *Salmonella*. (Dkt. 9). Defendant denies liability. Nevertheless, Defendant has agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and interference with its ongoing business operations, and to dispose of burdensome litigation.  § 9.1.

### B.    Procedural History and Settlement Negotiations

Before commencing the Litigation, Class Counsel discussed the case with hundreds of potential named plaintiffs and extensively investigated and analyzed, among other things, Defendant's marketing campaign, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for nutritional beverages and related products, FDA guidelines regarding the presence of *Salmonella* in consumer products, the scientific research concerning the dangers of

*Salmonella*, and research regarding how Defendant should have known the Products were at risk of containing *Salmonella*, and improvements that could be made to Defendant's manufacturing facilities.    *See* Declaration of Jason Sultzer submitted herewith, ¶ 18.

Prior to the filing of the actions, and throughout the litigation, Plaintiffs' Counsel undertook an extensive investigation into the bacterial contamination or risk of contamination with bacteria in the Covered Products, issues relating to how the Covered Products were not adequately tested and screened for *Salmonella* and prepared for protracted litigation. Sultzer Decl. ¶ 19. Among other things, Plaintiffs' Counsel's investigation and due diligence included, inter alia, reviewing publicly available documents, conducting research on claims and federal regulations governing Defendant's products including limits for contaminants like Salmonella, interviewing and conferring with experts pertaining to sourcing of ingredients, testing/screening for Salmonella and considering viable economic damages models. *Id.*  Importantly, Class Counsel also conducted extensive testing of the products to determine the scope of potential contamination. *Id.*

On or around December 27, 2023, Plaintiff Teresa Herendeen filed a Recall-related putative nationwide class action lawsuit against Quaker, captioned *Herendeen v. The Quaker Oats Company,* No. 1:23-cv-17103 (N.D. Ill.) asserting claims for negligence, breach of express warranty, breach of implied warranty of merchantability, fraudulent misrepresentation, fraud by omission and unjust enrichment in connection with her alleged purchase of one or more recalled products.  Plaintiff Kessler filed the instant action on or about January 24, 2024, asserting claims for violation of New York General Business Law Sections 349 and 350 in connection with his alleged purchase of one or more recalled Products.  Subsequently, an additional action was filed in the Northern District of Illinois (*Hill v. The Quaker Oats Company,* No. 1:24-cv-02609 (N.D. Ill.), and two other Plaintiffs (Plaintiffs Rodriguez and Abreu) sent pre-suit notice letters threatening a Recall-related putative class action lawsuits and asserting claims in connection with the alleged purchase of one or more recalled

4

Products. Class Counsel took it upon themselves to self-organize and coordinate the actions so that all the cases would proceed before this Court, eliminating duplication for the parties and the Courts and limiting the expense to both sides. This coordination also avoided a potentially lengthy leadership fight among counsel for Plaintiffs in the three actions. On May 24, 2024, Plaintiffs filed a consolidated amended complaint for the purposes of settlement. (Dkt. 9).

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel, facilitated by a mediation with a respected mediator, the Honorable Judge Jay C. Gandhi (Ret.), on April 11, 2024. Sultzer Decl. ¶¶ 21-22. Before and during these settlement discussions and mediation, the Parties exchanged sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. *Id.* ¶ 18. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. *Id.* ¶ 24.

On June 24, 2024, Plaintiffs filed their Motion to Preliminarily Approve the Settlement and Certification of the Settlement Class. (Dkt. 10). This Court held proceedings on March 12, 2025, and the next day, issued its order granting preliminary approval of the settlement. (Dkt. 34).

## III.    KEY TERMS OF THE SETTLEMENT

### A.    Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as: all natural persons who, between the earliest date of distribution of any Covered Product and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale. § 1.32.

### B.    Monetary Relief

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $6.75 million, which will be exhausted to pay all Valid Claims, as well as any attorneys'

Fee Award and Costs, Service Awards, and Notice and Other Administrative Costs that are approved by the Court.  §1.33.  In addition, Quaker has agreed to pay a $100,000 Initial Settlement Administration Payment for the purposes of covering notice and administration costs that is separate and apart from the Settlement Fund so that the costs of providing notice and administering the settlement likely will not deplete the funds available for the proposed class members.  § 4.1.  Class Members who submit a Valid Claim that is not accompanied by Proof of Purchase shall receive the total of the average retail price for up to two (2) Covered Products claimed per household, with Quaker to provide the average retail prices of the Covered Products to the Class Administrator. §4.6.2. Class Members who submit a Valid Claim that is accompanied by Proof of Purchase of a Class Product shall be entitled to receive a full refund of the amount of money he or she spent on the Class Products that is documented by Proof of Purchase. §4.6.1.[4] Each Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.  § 4.6.4

## C.    Non-Monetary Relief

In addition to the significant monetary relief provided by the Settlement Agreement, after the first Action in the Litigation was filed, Defendant made a number of modifications to its practices and procedures regarding bacterial contamination including, but not limited to, expanding the Recall to include additional products that had the potential to be contaminated with *salmonella*. Moreover, Defendant closed a plant in Danville, Illinois that was a source of potential contamination.  In addition, as a result of the Litigation, Defendant is continuing to diligently test

---

[4] If a Settlement Class Member or any person in that Settlement Class Member's Household received Recall Reimbursement from Defendant, as reflected on the Settlement Class Member's Claim Form or in the records of Defendant, the amount of that Settlement Class Member's payment shall be reduced by the amount of Recall Reimbursement that Settlement Class Member or persons in that Settlement Class Member's Household have received (provided that the payment shall not be reduced below $0.00). § 4.6.3.

its products to reduce the risk of potential bacterial contamination in the future. These modifications also significantly benefit consumers, including Settlement Class Members who wish to purchase Defendant's products in the future. § 4.14.

### D. The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendant from any and all claims arising out of or related to the Litigation, including claims related to the presence of *Salmonella* or any other bacteria or contaminant in the Covered Products that were, or could have been, asserted in this Litigation and any claims arising from alleged omissions or misrepresentations concerning the presence of *Salmonella* in the Covered Products, other than claims for alleged physical or bodily injuries arising from any Class Member's use of or exposure to the Covered Products. § 8.1.

### E. Attorneys' Fees, Costs, and Service Awards

Per the Settlement Agreement, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs and the Class Representatives may apply to the Court for a Service Award payable from the Settlement Fund of up to $500 each as compensation for the time and effort undertaken in and risks of pursuing this Litigation. §§ 7.1 & 7.2.

## IV. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified the class for settlement purposes. (ECF No. 34). Under Fed. R. Civ. P. 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

7

"Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted). The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

### A.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that thousands of people nationwide purchased the Covered Products during the proposed class period. Numerosity is easily satisfied, and joinder of so many class members is impractical. *Id*.

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id*. at 359.

Here, there are common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement, including, among other things: whether Defendant's failure to disclose the presence or the risk of *Salmonella*, or any other bacteria in the Covered Products was likely to deceive

8

reasonable consumers; whether Defendant: (1) violated the consumer statutes set forth in the consolidated amended complaint, (2) breached express warranties with regard to the Covered Products; and (3) breached the implied warranty of merchantability; (4) whether members of the Settlement Class were injured and the proper measure of their losses as a result of those injuries; (5) whether members of the Settlement Class are entitled to damages and the amount of such damages (including compensatory, exemplary, statutory damages, and/or punitive damages); and (6) whether members of the Settlement Class are entitled to declaratory, injunctive, or other equitable relief.

Resolution of these common questions target the same alleged conduct by Defendant and would require evaluation of the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller and suffered the same economic harm.").

### C.    Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

In the Second Circuit, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *accord Ansari v. New York University*, 2018 WL 3715273, at *115 (S.D.N.Y. 1998). Here, the alleged injuries to Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct by Defendant, and liability for this conduct is predicated on the same legal theories. *Robidoux*, 987 F.2d 931, 936-37 (2d Cir. 1993). Like Plaintiffs, each member of the Settlement Class

was exposed to the same allegedly deceptive marketing practices and purchased Products that contained or were at risk of containing *Salmonella* without intending to do so. Plaintiffs and members of the Settlement Class suffered the same harm because the Covered Products were falsely marketed as safe for normal use when, in reality, they contained or were at the risk of containing *Salmonella*.

**D.    Adequacy**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol*, 126 F.3d 372, 378 (2d Cir. 1997).

Plaintiffs and their counsel are adequate. Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs possess the same interests as members of the proposed Settlement Class because they have incurred the same alleged injuries, which occurred in the same manner and based on the same allegedly misleading conduct concerning the Covered Products.

Likewise, Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Sultzer Decl. ¶ 30. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by this Court and other courts throughout the country and has substantial experience prosecuting actions that involve deceptive labeling of consumer products. *Id.*; *see also* ECF Docs. 13-3 through 13-10.

### E.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

#### 1.    Common Legal and Factual Questions Predominate In This Action

Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  In this case, Plaintiffs allege that there was a common course of conduct engaged in by Defendant. The central legal issues in this case include whether the Covered Products contain or were at risk of containing *Salmonella* (and if so, whether the Covered Products contained or were at risk of containing harmful levels of *Salmonella*), whether Defendant knew or should have known of the alleged risk of *Salmonella* contamination, whether Defendant's failure to disclose the presence or risk of *Salmonella* in the Covered Products was likely to deceive reasonable consumers, and whether the omissions were material. For settlement purposes, these central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *Augustin v. Jablonsky*, 461 F.3d 219, 227-28 (2d Cir. 2006).

## 2.    *A Class Action Is A Superior Mechanism For Adjudication*

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[5]

Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues. Importantly, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5. In addition, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendant to resolve all claims … at once." *Id.*

---

[5] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobas Sec.*, 862 F.3d at 268 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

## V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections*." In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B).  At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("Visa U.S.A.") (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010). The notice plan here easily meets these standards, as it reached approximately 79.6-85.96% of the Settlement Class. *See* Weisbrot Decl.  ¶ 16.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 34. The Plan has now been fully carried out by professional settlement administrator, Angeion Group, LLC ("Angeion"). Pursuant to the

Settlement, Angeion implemented a comprehensive media notice program consisting of "internet banner advertisement notice, social media notice via Facebook and Instagram, [and] a paid search campaign via Google." *See id.* ¶¶ 6-9.[6]  These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit an election form online to receive payment electronically; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions. The Settlement Administrator also maintained a toll-free telephone line to provide information and answer questions. *See id.* ¶ 21 The success of the Notice Plan is clear, given that more than 140,700 Settlement Class Members submitted valid claims in this matter. *See id.* ¶ 27.[7]

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Visa U.S.A.*, 396 F.3d at 116 (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("Grinnell"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery

---

[6] In addition to the above-described notice efforts, Angeion implemented a customized and strategic Claims Stimulation program consisting of sponsored listings on a leading class action settlement website, and additional internet banner advertisements, social media notice, and a paid search campaign.  The Claims Stimulation program used simplified messaging specifically designed to drive Settlement Class Members to the Settlement Website and ultimately submit a claim. *See* Weisbrot Decl.  ¶¶ 10-15.

[7] On July 3, Angeion also notified the appropriate state and federal officials pursuant to CAFA. *See* Weisbrot Decl. ¶ 5. No objection has been received from any state or federal official.

completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery;

and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil

Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel,*

*Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal

was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal

treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).[8]

A.    The *Grinnell* Factors

1.    *Litigation Through Trial Would be Complex, Costly, And Long (Grinnell*
       *Factor 1)*

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense

and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them." *In re*

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the

proposed settlement is clearly inadequate, its acceptance and approval are preferable to the

continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western*

*Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982).

---

[8] "There is significant overlap between the Rule 23(e)(2) and Grinnell factors, which complement, rather than displace
each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14
(E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

This case is no exception. As discussed herein, the Parties have engaged significant discovery and settlement negotiations. Sultzer Decl. ¶¶ 18-23. The next steps in the litigation would have been resolution by the Court of Defendant's anticipated Motion to Dismiss, Plaintiffs' forthcoming motion for class certification, and Defendant's forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and create the risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all. Defendant is represented by one of the largest law firms in the world which is well-versed in class action litigation, and Defendant has indicated that they would continue to assert numerous defenses on the merits. Plaintiffs and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendant, leaving Plaintiffs and Class Members empty-handed.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

>    2.    *The Reaction Of The Class Is Overwhelmingly Positive (Grinnell Factor 2)*

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotations omitted).

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements

of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 34). *See generally* Weisbrot Decl. Our understanding is that to date only one Class Member objected to the Settlement (as will be briefed separately, this Class Member refused to validate his identity and does not have standing to make his objection), and only fifteen made valid requests to opt out. *Id.* ¶ 28. This reaction from the Settlement Class leaves no question that the Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").[9]

3.    *The Stage of The Proceedings And The Amount of Discovery Completed*

The third Grinnell factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013). As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Covered Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the *Salmonella* contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur. Sultzer Decl. ¶ 18. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. *Id.* In addition, Class Counsel conducted their own testing of the Products that allowed them to estimate the percentage of

---

[9] *See also Millien v. Madison Square Garden Co.*, 2020 U.S. Dist. LEXIS 141633, *14 (S.D.N.Y. Aug. 7, 2020) (approving class action settlement where only one member of the class filed an objection because "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quoting Wal-*Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005));   *Moses v. Apple Hospitality Reit, Inc.*, 2018 U.S. Dist. LEXIS 50786, *20-21 (E.D.N.Y. Mar. 17, 2028) (holding that "[a] very low number of objections and exclusions ordinarily evinces a class's tacit acceptance of a settlement" and approving a settlement with one objector);

Products that were actually contaminated. *See* Sultzer Decl. ¶ 20. Thus, Plaintiffs had sufficient

information to evaluate the claims of the class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D.

59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel

'sufficient information to act intelligently on behalf of the class in reaching a settlement."). In fact, a

number of consumer class actions cases in this Court were settled and granted final approval at similar

procedural stages, (including before Your Honor).[10]

4.    *The Risks of Establishing Liability And Damages*

"The fourth, fifth, and sixth Grinnell factors all relate to continued litigation risks," i.e., the

risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin*

*C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011

WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126

(S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits."

---

[10] *See Catalano v. Lyons Magnus, LLC,* Case No. 7:22-cv-06867 (S.D.N.Y.) (Karas, J.); *Patora v. Tarte, Inc*., Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation*, Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *See also* Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) (*I think there is definitely a premium to be taken for the fact that the case was settled at an early stage*. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. *And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts*."); *See Swetz v. The Clorox Company*, Case No. 22-CV-9374 (S.D.N.Y.) (Tr. Final Approval Hearing) (Judge Halpern stated "I'm delighted that you were able to resolve this. I think very highly of lawyers who actually take on these matters. And I noticed, with the Court's approval, there was a fair amount of self-organization at the beginning of this I think that kind of approach to a District Court Judge is so superior to the other approach which I have run into on occasion, which is the lawyers are fighting and bickering over who should be lead counsel, who should be Class Counsel. And the sniping and the unnecessary commenting about the other's abilities or experience is less enjoyable than dealing with you. So I very much appreciate what you've done. I think you did an excellent job."); *Asare v. Change Group N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, *55 (S.D.N.Y Nov. 15, 2013) (granting final approval of class action settlement where "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."); *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, *14 (S.D.N.Y. Mar. 21, 2013) ("courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."); *Castagna v. Madison Square Garden, L.P.,* U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement)*; Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 20-cv-6527, 2004 WL 2397190 at *12, 2004 U.S. Dist. LEXIS 21429, at *35-37 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so.").

*Id.* In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendant continues to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendant will vigorously defend itself on the merits, at each stage of litigation and likely on appeal. Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Covered Products contain or risked containing *Salmonella*, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to the alleged *Salmonella* levels and the calculations of damages. Thus, "while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendant], they also recognize the risks and uncertainties inherent in pursuing the action through [the pleadings,] class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. The proposed Settlement alleviates these risks and provides a substantial benefit to the Settlement Class Members in a timely fashion. Accordingly, these *Grinnell* factors are met.

*5. The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. § 2.1. As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form a class-wide price premium. While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, as a number of Courts in this Circuit have (*See Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium")), this proposed settlement eliminates the unavoidable risk that they

19

cannot. Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022). Given the risks, this factor weighs in favor of final approval.

6.    *The Ability of Defendant To Withstand Greater Judgment*

"Courts have recognized that a [defendant's] ability to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.,* 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014). Thus, Defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014). Thus, at worst, this factor is neutral.

7.    *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Further, in the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief made available to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423,

20

437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."). "Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account - among other substantive considerations stated in the rule - the proposed attorneys' fees and incentive awards." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the Litigation is that Defendant is a deceiving consumer by failing to disclose that the Covered Products may contain *Salmonella.* As set forth at length in Plaintiffs' memorandum of law in support of their motion for attorneys' fees (filed contemporaneously herewith), the $6.85 million settlement (including the $100,000 Quaker has paid for notice an administration costs) represents between approximately 25% (total disgorgement theory of damages) and 74% (price premium theory of damages) of Plaintiffs' potential recovery. Thus, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial. The substantial relief afforded strongly supports final approval.

This range is not only well within, but far exceeds, the range of reasonableness (even on the low end) found by Courts in this Circuit where final approval was granted.[11] For example, in *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867, (S.D.N.Y. April 10, 2024) (Karas, J) (ECF No. 38), Your Honor approved a settlement in a similar product contamination litigation that

---

[11]*See also* comprehensive study of class action settlements and medium recoveries: https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--actionlitigation--2022-full-.html, at 19 (finding that the median securities fraud class action between 2013 and 2022 settled for between 1.5% and 2.5% of the most common measure of investor losses, depending on the year)

represented a recovery in the range of approximately 31% of the maximum potential damages under a full disgorgement theory.[12]

**B.    The Rule 23(e)(2) Factors**

*1.    Class Counsel and Plaintiffs Adequately Represented The Class*

As set forth in Argument § IV.D. *supra*, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).   "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (internal quotations omitted).   Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Dkt. 13 Ex. 3-10 (docket entries for Firm Resumes of Class Counsel).

*2.    The Settlement Was Negotiated At Arm's Length*

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id*.  Here, both Class Counsel and counsel for Defendant are experienced in class action litigation. Sultzer Decl. ¶¶ 30 & 38. Moreover, the parties participated in a mediation before former Chief Magistrate

---

[12] *See also Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *7 (S.D.N.Y. Dec. 9, 2021) (holding a settlement providing 14% of Lead Plaintiff's estimated damages was a favorable recovery for the class."); *Grice v. Pepsi Bevs. Co*., 363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019) (5% of the maximum potential recovery "represents a good result for the class members."); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) (approving settlement that represented a recovery in the range of approximately 9% (full disgorgement) and 30% (price premium) of maximum damages) (ECF No. 98).

Judge Gandhi and engaged in protracted settlement discussions. *Id.* ¶ 17. Judge Gandhi's experience as a mediator was invaluable as he is one of the most highly respected mediators in the country.[13]

### 3. *The Settlement Provides Adequate Relief To The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement has met each of these *Grinnell* factors. Argument I.A.

As to "the effectiveness of any proposed method of distributing relief to the class," Class Members need only submit a simple claim form to receive significant monetary relief. This is a reasonable method of distributing relief to Settlement Class Members. *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018).

---

[13] Judge Gandhi (Ret.) served for eight (8) years as a United States Magistrate Judge for the Central District of California and oversaw the Court's Alternative Dispute Resolution program. Judge Gandhi has extensive experience in class action litigation, as a mediator, judge, and litigator. Before the bench, Judge Gandhi was a partner at Paul Hastings LLP and he spent 12 years litigating MDL/class actions in a variety of state and federal jurisdictions across the country. As a judge, Judge Gandhi presided over the $1 billion public-entity settlement involving PG&E and the California wildfires, the $725 million class action settlement accusing Facebook of allowing third parties, including Cambridge Analytica, to access users' private information, and the $648 million class action settlement over environmental contamination from polychlorinated biphenyls, or PCBs, made by the Monsanto Company.

"The terms of any proposed award of attorneys' fees." In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. Here, Class Counsel has petitioned the Court for ------ - in fees and expenses. This is one-third of the $6.75 million in monetary relief that Class Counsel has made available, which is reasonable under this Circuit.[14]

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3pd at 696, no such agreement exists in this case other than the Settlement.

### 4.    *The Settlement Treats All Class Members Equally*

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.

Here, although Class Members with Proof of Purchase will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably.[15] Further, all

---

[14] *See Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

[15] *See Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member.").

24

Class Members' claims are subject to upward or downward pro rata adjustment. A *pro rata* distribution has been found by courts in this Circuit to be equitable.[16]

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.


Dated: July 14, 2025                    Respectfully submitted,

By: */s/ Jason P. Sultzer*
                Jason P. Sultzer

**SULTZER & LIPARI, PLLC**
                Jason P. Sultzer, Esq.
                Jeremy Francis, Esq.
                85 Civic Center Plaza, Suite 200
                Poughkeepsie, NY 12061
                Tel: (845) 483-7100
                Fax: (888) 749-7747
                sultzerj@thesultzerlawgroup.com
                francisj@thesultzerlawgroup.com

**REESE LLP**
                Michael R. Reese
                100 West 93rd Street, 16th Floor
                New York, New York 10025
                Tel: (212) 643-0500
                *mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                Nick Suciu III, Esq.
                6905 Telegraph Road, Suite 115
                Bloomfield Hills, Michigan 48301
                Tel: (313) 303-3472
                *nsuciu@milberg.com*

---

[16]*See  Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda Pharmaceuticals Inc*., 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

**POULIN WILLEY ANASTAPOULO**
> Paul Doolittle
> 32 Ann St,
> Charleston, SC 29403
> Telephone: (800) 313-2546
> Email: *pauld@akimlawfirm.com*

**LEVIN SEDRIN & BERMAN**
> Charles E. Schaffer
> 510 Walnut Street, Suite 500
> Philadelphia, Pa. 19106
> Telephone: (215) 592-1500
> Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**
> Joshua Arisohn
> 1330 A venue of the Americas, 32 Floor
> New York, NY 10019
> Telephone: 646-837-7103
> *jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**
> Jeffrey S. Goldenberg
> 4445 Lake Forest Drive, Suite 490
> Cincinnati, Ohio 45242
> Telephone: 513-345-8297
> *jgoldenberg@gs-legal.com*

**LEEDS BROWN LAW, P.C.**
> Jeffrey K. Brown
> One Old Country Road, Suite 347
> Carle Place, NY 11514
> Telephone: (516) 873-9550
> *jbrown@leedsbrownlaw.com*

> *Attorneys for Plaintiffs and the Settlement Class*

26