**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara Abreu**
**individually and on behalf of all**
**others similarly situated,**

        **Plaintiffs,**

**v.**                                           **Case No.: 7:24-cv-00526**


**The Quaker Oats Company,**

        **Defendant.**

-------------------------------------------------------------x



**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS**

Dated:  July 14, 2025

        **SULTZER & LIPARI, PLLC**
        Jason P. Sultzer, Esq.
        Jeremy Francis, Esq.
        85 Civic Center Plaza, Suite 200
        Poughkeepsie, NY 12061
        Tel: (845) 483-7100
        Fax: (888) 749-7747
        sultzerj@thesultzerlawgroup.com
        francisj@thesultzerlawgroup.com

    **REESE LLP**
        Michael R. Reese
        100 West 93rd Street, 16th Floor
        New York, New York 10025
        Tel: (212) 643-0500
        mreese@reesellp.com

    **MILBERG COLEMAN BRYSON PHILLIPS**
    **GROSSMAN, PLLC**
        Nick Suciu III, Esq.
        6905 Telegraph Road, Suite 115

Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
nsuciu@milberg.com

**POULIN WILLEY ANASTAPOULO**
Paul Doolittle
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: pauld@akimlawfirm.com

**LEVIN SEDRIN & BERMAN**
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: cschaffer@lfsblaw.com

**BURSOR & FISHER, P.A.**
Joshua Arisohn
1330 Avenue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
jarisohn@bursor.com

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
jgoldenberg@gs-legal.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Settlement Class*

### TABLE OF CONTENTS

Table of Contents…………………………………………………………………………..i-ii

Table of Authorities………………………………………………………………….....iii-viii

PRELIMINARY STATEMENT……………………………………………………………….1

SUMMARY OF SETTLEMENT AND OVERVIEW OF LEGAL ANALYSIS………………...2

ARGUMENT……………………………………………………………………………....6

I.      LEGAL STANDARD………………………………………………………………....6

      A. Federal Rule of Civil Procedure 23(h) and the Goldberger Factors………………6

      B. The Percentage of the Fund Method is the Typical Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit…………………..6

II.     CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE UNDER *GOLDBERGER* AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE OF THE FUND……………………………………………………...8

      A. The Fee Request is Reasonable Under the Goldberger Factors…………………...8

          1. Class Counsel Invested Substantial Time and Resources……………………..8

          2. This Class Action Included Complex Legal Issues…………………………..13

          3. The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation……………………………………………………………………..14

          4. Class Counsel Provided (and Continues to Provide) High-Quality Representation...16

          5. The Fee Request is Reasonable in Relationship to the Settlement…………………..18

          6. Public Policy Supports Approval of the Fee…………………………………...20

      B. The Requested Fee Represents a Reasonable Percentage of the Fund…………………..22

      C. A Lodestar Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsel's Requested Fee…………………………………………………………...22

      D. The Reaction of Class Members Supports Class Counsel's Fee Request………………..24

III.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION

COSTS IS REASONABLE……………………………………………………………………..24

IV.    PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS REASONABLE……...25

CONCLUSION……………………………………………………………………………………..25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asare v. Change Grp. of N.Y., Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ..........................................................................23

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.*,
1:22-cv-00291-BMC (E.D.N.Y.) ..........................................................................................2, 12

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*,
Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) .............................................12, 17, 22

*Bangoura v. Beiersdorf, Inc.*,
No. 1:22-cv-00291-BMC (S.D.N.Y.) ....................................................................................8, 18

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................................................................13, 23

*Catalano v. Lyons Magnus, LLC*,
Case No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) ...............................................................2, 5

*Catalano v. Lyons Magnus*,
LLC, No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) (Karas, J) .............................................8, 17

*Catalano v. Lyons Magnus, LLC*,
No. 7:22-cv-06867 (S.D.N.Y) (Karas, J) ..............................................................................18, 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)........................................................................................................7

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................................16

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013)........................................................................................13

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................................................23

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................................23

*Copley v. Bactolac Pharm., Inc.*,
2023 WL 2470683 (E.D.N.Y. Mar. 13, 2023) ...........................................................................5

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...................................23

*Declid, et al. v. Helen of Troy, Ltd., et al.*,
  1:21-cv-09569-DLC (S.D.N.Y.) .......................................................................................4

*DeLeon v. Wells Fargo Bank, N.A.*,
  2015 WL 2255394 (S.D.N.Y. May 11, 2015) .........................................................25

*deMunecas v. Bold Food, LLC*,
  No. 09-CIV-00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010)............11

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................25

*Edwards v. N. Am. Power & Gas, LLC*,
  No. 3:14-CV-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018)............................15

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  62 F.4th 704 (2d Cir. 2023) .................................................................................14

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...........................17, 25

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) .....................................................................7

*Fox v. Vice*,
  563 U.S. 826 (2011)...........................................................................................23

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................16, 20

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ...............................................................................21

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................14

*Globus v. L. Rsch. Serv., Inc.*,
  418 F.2d 1276 (2d Cir. 1969)...............................................................................21

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................... *passim*

*Goldstein v. Henkel Corporation et al.*,
  Case No. 3:22-cv-00164-AWT (D. Conn.)..................................................5, 11, 20

*Goldstein v. Henkel Corporation*,
No. 3:22-cv-00164-AWT (D. Conn.) ...............................................................8, 20

*Grayson v. GE*,
2020 U.S. Dist. LEXIS 134657 (D. Conn. Jul. 27, 2020).......................................19

*Grice v. Pepsi Bevs. Co.*,
363 F. Supp. 3d 401 (S.D.N.Y. 2019).......................................................................5

*Hesse v. Godiva Chocolatier, Inc.*,
2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022)......................................23

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................24

*Hicks v. Morgan Stanley & Co.*,
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ......................................23

*In re Holocaust Victim Assets Litig.*,
2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) ..........................................................14

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-2548-VSB, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ........................20

*Jermyn v. Best Buy Stores, L.P.*,
2012 WL 2505644 (S.D.N.Y. June 27, 2012) ........................................................16

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig*,
2023 U.S. Dist. LEXIS 32691 (S.D. Fla. Feb. 27, 2023)........................................13

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
20-cv-6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) (Cote, J.)....................12

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
No. 15-CV-1113 (VAB), 2016 WL 6542707 .................................................11, 13

*Luib v. Henkel Consumer Goods, Inc.*,
2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018)...................................18, 22

*Luib v. Henkel Consumer Goods Inc.*,
No. 1:17-cv-03021-BMC (E.D.N.Y.) (Cogan, J.) ..................................................17

*Maley v. Dale Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................23

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)......................................................................................7

*Mayhew, v. KAS Direct LLC*,
  Case No. 16-cv-6981 (S.D.N.Y.) (Briccetti, J) ............................................................2

*Mayhew, v. KAS Direct LLC*,
  No. 16-cv-6981 (S.D.N.Y.).....................................................................................8, 13

*Mayhew, v. KAS Direct LLC*,
  No. 16-cv-6981-VB (S.D.N.Y.) (Karas, J.) ...............................................................17

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)........................................................................................6

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................16

*Millien v. Madison Square Garden Co.*,
  2020 U.S. Dist. LEXIS 141633 (S.D.N.Y. Aug. 7, 2020) ........................................19

*Moses v. Apple Hospitality Reit, Inc.*,
  2018 U.S. Dist. LEXIS 50786 (E.D.N.Y. Mar. 17, 2028) ........................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................14

*Patora v. Colgate-Palmolive Co.*,
  Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.).......................................2, 22

*Patora v. Colgate-Palmolive Co.*,
  No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.).............................................17, 18

*Patora v. Tarte, Inc.*,
  Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J)....................................2, 8, 22

*Patora v. Tarte, Inc.*,
  No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J) ...................................................12, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .......................................................................17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)....................................................................................................20

*Price v. L'Oreal USA, Inc.*,
  2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018) .........................................4

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996) ..............................................................................13

*Rapoport-Hecht v. Seventh Generation*,
　Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) ..........................................................2, 18, 22

*Rapoport-Hecht v. Seventh Generation*,
　No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) ..........................................................................8, 17

*In re RJR Nabisco, Inc. Sec. Litig.*,
　1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ..........................................................................23

*Rosi v. Aclaris Therapeutics, Inc.*,
　2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ............................................................................5

*Savoie v. Merchants Bank*,
　166 F.3d 456 (2d Cir. 1999).................................................................................................7, 8

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
　2012 WL 3589610 (D. Conn. Aug. 20, 2012) ........................................................................23

*In re Sumitomo Copper Litig.*,
　74 F. Supp. 2d 393 (S.D.N.Y. 1999).........................................................................................7

*Swetz v. The Clorox Company*,
　Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.)....................................................2, 5, 13, 22

*Swetz v. The Clorox Company*,
　No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) ......................................................................17, 18

*Swetz v. GSK Consumer Health, Inc.*,
　7:20-cv-04731-NSR (S.D.N.Y) (Roman, J)..........................................................................2, 13

*Swetz v. GSK Consumer Health, Inc.*,
　No. 7:20-cv-04731 (S.D.N.Y)...................................................................................................8

*Swetz v. GSK Consumer Health, Inc.*,
　No. 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J).....................................................................17

*Taft v. Ackermans*,
　No. 02-cv-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...............................................16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
　2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................................14

*Torres v. Gristedes Operating Corp.*,
　519 F. App'x 1 (2d Cir. 2013) ...............................................................................................22

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
　No. 12 Civ. 9412, 2016 U.S. Dist. LEXIS 165268 (S.D.N.Y. Nov. 30, 2016) ......................24

*Vincent, Wesley, et al. v. People Against Dirty, PBC. and Method Products, PBC.*,
No. 7:16-cv-06936 (S.D.N.Y.) (Roman, J.) ............................................................17

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................................................25

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
No. 16 Civ. 5766, 2018 U.S. Dist. LEXIS 102224 (S.D.N.Y. May 24, 2018) ...................24

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .....................24

*Wal-Mart Stores Inc. v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005) ....................................................................................7, 19

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................7, 21

**Statutes**

Federal Food, Drug, and Cosmetic Act ......................................................................13

Federal Rule of Civil Procedure 23(h) ....................................................................6, 24

Plaintiffs Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu (collectively "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Service Awards, requesting $2,250,000 for attorneys' fees and expense reimbursement, and a $500 Service Award for each Class Representative.

## PRELIMINARY STATEMENT

In this class action case involving contaminated food products that were sold throughout the country, Class Counsel's efforts have resulted in a hard-fought Settlement[1] mediated by former Magistrate Judge in the Central District of California and mediator Jay C. Gandhi of JAMS. The settlement creates a $6.75 million non-reversionary Settlement Fund for class members. Class Counsel achieved this proposed settlement because of their extensive experience in consumer fraud class action cases like this and because they invested considerable time, effort, and resources into prosecuting this case. By any measure, Class Counsel's efforts have been an unqualified success, and the Class Members have responded in kind, with 140,712 Valid Claims submitted, a single objection[2], and only fifteen (15) valid requests for exclusion. In light of the recovery obtained, the time and effort devoted to this case by Class Counsel, the skill and expertise required, and the risks that counsel undertook, Class Counsel's fee request for one-third of the common fund is appropriate. As discussed below, the requested $2,250,000 fee was negotiated after the other material terms of the settlement had already been agreed upon by the Parties. Moreover, it is well

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement (ECF No. 13, Exh. 1). References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason P. Sultzer in Support of Plaintiffs' Motion for Preliminary Approval (the "Sultzer Decl.") (ECF No. 13). All Settlement Agreement exhibits are referred to as "Exh __."

[2] The lone objection to the Settlement takes issue with certain procedural aspects of the claims process, but does not object to Class Counsel's requests for fees or incentive awards, or to the adequacy of the relief provided to the Class. Moreover, for reasons that Class Counsel will set forth in greater detail in their separate response to the objection, the objection is meritless.

within the range of fees that courts in this District, in this Circuit, and throughout the country have awarded in similar common fund class action settlements. For example, in *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867 (S.D.N.Y. April 10, 2024) Your Honor awarded one third of a $3.5 million settlement fund for attorneys' fees in a similar bacterial contamination class action.[3]

### SUMMARY OF SETTLEMENT AND OVERVIEW OF LEGAL ANALYSIS

The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $6.75 million, which will be exhausted to pay all Valid Claims, as well as any attorneys' fees and costs, service awards, and notice and other administrative costs that are approved by the Court. §1.33. In addition, Class Counsel negotiated and Quaker agreed to pay a $100,000 Initial Settlement Administration Payment to fund notice and administration costs that is separate and apart from the $6.75 million Settlement Fund. So, Quaker's collective financial obligations for this Settlement is $6.85 million. § 4.1.

Class Members who submit a Valid Claim that is not accompanied by Proof of Purchase shall receive the total of the average retail price for up to two (2) Covered Products claimed per household, with Quaker to provide the average retail prices of the Covered Products to the Class Administrator. §4.6.2. Class Members who submit a Valid Claim accompanied by Proof of Purchase of a Covered Product shall be entitled to receive a full refund of the amount of money he or she spent on the Covered Products that is documented by Proof of Purchase. §4.6.1. Each

---

[3] *See also Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc*., 1:22-cv-00291-BMC (E.D.N.Y.) (Cogan, J.) (approving attorney's fee award of 32% of the common fund in a benzene contamination case); *Patora v. Tarte, Inc.,* Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation,* Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC,* Case No. 16-cv-6981 (S.D.N.Y.) (Briccetti, J); *Swetz v. GSK Consumer Health, Inc.,* 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Patora v. Colgate-Palmolive Co.*, Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) (all granting attorneys' fees of one-third of the settlement fund in consumer class actions cases).

Settlement Class Member's payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 4.6.4.[4]

  1. The Settlement achieved by Class Counsel benefits individual Class Members who submitted claims in a number of ways. First, besides putting money directly in their pockets, it has significantly expanded the scope of Defendant's recall/refund program. Under the terms of the Settlement, individual class members receive either the full purchase price of the Products they bought, or the average price of the Products for up to two products, if they do not have proof of purchase. *See* Declaration of Jason Sultzer ("Sultzer Decl.") ¶ 6. This is compensation that was not available through Defendant's recall of the Products at issue in the litigation, which required proof of purchase in order to receive reimbursement under certain circumstances. In addition, the comprehensive notice plan initiated by Class Counsel expanded on and reached a far greater number of consumers, resulting in 140, 712 Valid Claims, compared to the approximately $2.6 million in refunds distributed by Quaker as part of the Recall. Sultzer Decl. ¶ 9. Moreover, On average, Class Members who made Valid Claims will recover substantially more than the average purchase price of the Covered Products ($6.92).

  Second, the Settlement benefits the entire Class as a whole, whether Class Members submitted a claim or not, because it provides for a high percentage of the total possible recovery in this litigation in the event the case was successfully tried to conclusion. The total sales of the Products that are the subject of the litigation and which are potentially contaminated and potentially reached consumers' hands during the relevant time period is approximately $27.6 million (using a 5% contamination rate, which is likely higher than the actual contamination rate

---

[4] "Available Settlement Funds" means that the Settlement Fund net of any Notice and Administration costs, Service Awards and Attorneys' Fee and Expense Payment. § 1.3.

based on Defendant's representations and Plaintiffs' own testing).  *See* Sultzer Decl. ¶ 10.  The $6.85 million recovery for the Class under the settlement represents approximately 25% of Defendant's potential liability under a disgorgement theory.  *Id.*   This alone is a very significant recovery, especially considering the difficulty in successfully litigating these types of cases, the risks of losing before or at trial, and how efficiently this Settlement was achieved.

However, the full disgorgement theory would have been challenged by Defendant at trial and may not have succeeded, as Defendant likely would argue that even contaminated products are not completely worthless.  *Id.* at ¶ 11.   As a result, Plaintiffs' damage model may have been limited to the premium class members paid over what they would have paid had they known about the contamination or risk of contamination.  This kind of "price-premium" damages analysis is widely accepted in consumer deception cases in this Circuit.[5]

Based on Class Counsel's experience in these kinds of consumer product contamination cases, as well as discussions with an economic expert who frequently uses conjoint analysis to calculate damages in similar cases, the best-case, price-premium scenario for products like this is generally around 30% of the purchase price. *See* Sultzer Decl. ¶ 12.  Here, the Settlement Class's best day under a 30% price premium model would be $9.2 million dollars, and the Settlement Agreement provides 74% of this value. *Id*. Thus, the class here is recovering somewhere between approximately 25% of what it might have recovered at trial (full disgorgement) and 74% of the price premium.  Even on the low end, this is a significant recovery. *Id*.

 This range is not only well within, but far exceeds, the range of reasonableness (even on

---

[5] *See e.g. Price v. L'Oreal USA, Inc.*, 2018 U.S. Dist. LEXIS 138473, *28 (S.D.N.Y. Aug. 15, 2018); *see also Declid, et al. v. Helen of Troy, Ltd., et al.*, 1:21-cv-09569-DLC (S.D.N.Y.) (ECF No. 99) (Declaration of statistician and economist Stefan A. Boedeker explaining the widely accepted methodologies for calculating a price premium in a deceptive advertising case).

the low end) found by Courts in this Circuit where fee requests for a third or more were granted.[6] For example, in *Catalano v. Lyons Magnus, LLC*, Case No. 7:22-cv-06867, (S.D.N.Y. April 10, 2024) (Karas, J) (ECF No. 38)   Your Honor approved a settlement in a similar product contamination litigation that represented a recovery in the range of approximately 31% of the maximum potential damages under a full disgorgement theory.[7]

Another significant factor supporting the fee request is the social benefit for consumers and society as a whole.  Because settlements like these require companies to pay millions of dollars that ultimately impacts profitability, it deters corporations from allowing potentially harmful product contaminations from entering the stream of commerce and encourages stricter testing protocols and to maintain cleaner facilities.[8]   Here, Plaintiffs obtained significant non-monetary relief.  Specifically, after the first Action in the Litigation was filed, Defendant made modifications to its practices and procedures to prevent future bacterial contamination, and also expanded the Recall to include additional products that were potentially contaminated with Salmonella. Moreover, Defendant closed the plant in Danville, Illinois that manufactured the recalled food. In addition, Defendant is continuing to diligently implement its food safety programs to reduce the future risk of bacterial contamination. Despite such significant non-monetary relief, Class Counsel

---

[6] *See also* comprehensive study of class action settlements and medium recoveries: https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--actionlitigation--2022-full-.html, at 19 (finding that the median securities fraud class action between 2013 and 2022 settled for between 1.5% and 2.5% of the most common measure of investor losses, depending on the year)

[7] *See also Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) (granting final approval in a similar product contamination case where the settlement fund represented 22.6% of the maximum potential recovery for the class under a full disgorgement theory); *Rosi v. Aclaris Therapeutics, Inc.,* 2021 WL 5847420, at *7 (S.D.N.Y. Dec. 9, 2021) (holding a settlement providing 14% of Lead Plaintiff's estimated damages was a favorable recovery for the class.*"); Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 408-09 (S.D.N.Y. 2019) (5% of the maximum potential recovery "represents a good result for the class members."); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) (approving settlement that represented a recovery in the range of approximately 9% (full disgorgement) and 30% (price premium) of maximum damages) (ECF No. 98).

[8] *See* Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (2019) at Chapter 8. *See also Copley v. Bactolac Pharm., Inc.*, 2023 WL 2470683, at *10 (E.D.N.Y. Mar. 13, 2023) ("Presumably, the class settlement will incentivize Defendants to be more vigilant about the safety and cleanliness of their product in the future, and others in their industry will be encouraged to do the same.").

is not seeking an additional fee above one-third of the Settlement Fund, but are instead leaving those funds for Class Members, who are recovering more than the average purchase price of the Covered Products.

Finally, the reaction of the Class to the Settlement has been overwhelmingly positive. To date, 140,712 Valid Claims have been submitted, and only one objection has been received. This amplifies that Class Members overwhelmingly endorse the Settlement and do not oppose Plaintiffs' counsel fee request. Against this backdrop, and as explained more fully below, Class Counsel respectfully request that this Court grant this motion in its entirety.

## ARGUMENT

### I.    LEGAL STANDARD

#### A.    Federal Rule of Civil Procedure 23(h) and the Goldberger Factors

Federal Rule of Civil Procedure 23(h) provides that courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In the Second Circuit, the reasonableness of requested attorneys' fees is analyzed according to the factors detailed in the seminal decision *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000): "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation … ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

#### B.    The Percentage of the Fund Method is the Typical Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit

There are two methods for determining the appropriate award of attorneys' fees from a common fund, the "percentage of the fund" method and the "lodestar" method. *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citations omitted). Under the percentage

method, the court calculates the fee award as some percentage of the settlement fund. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Under the lodestar method, the court assesses the number of hours reasonably billed and then multiplies them by an appropriate hourly rate. *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015) (citations omitted).

In cases such as this, where a settlement fund has been created, courts in the Second Circuit favor the use of a 'percentage of the fund' approach in awarding attorney's fees. *See Wal-Mart Stores Inc. v. Visa U.S.A.,* 396 F.3d 96, 122 (2d Cir. 2005) (noting the trend in the Second Circuit toward the percent of fund method of assessing attorneys' fees and the use of lodestar as a "cross-check" to a percentage award). In such cases, under Second Circuit precedent, the fees awarded are based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007).

Courts in this circuit have found numerous advantages to using the percentage method of awarding fees in common fund cases. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve a case efficiently and to create the largest total value for the class. *Wal-Mart Stores, Inc.*, 396 F.3d at 122. Second, this method is aligned with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999). Third, the percentage method promotes efficiency and early resolution, as it eliminates any incentive plaintiffs' lawyers may have to run up billable hours—one of the most significant downsides to using the lodestar approach. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999). Fourth, the percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial....". *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

Finally, the percentage method preserves judicial resources because it relieves the "cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchants Bank*, 166 F.3d at 461 n.4 (quoting *Court Awarded Attorney Fees: Report of the Third Circuit Task Force,* 108 F.R.D. 237, 242 (1986)).

## II.   CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE UNDER *GOLDBERGER* AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE OF THE FUND

Class Counsel requests a fee award of $2,250,000 to be paid from the $6.75 million Settlement Fund. This equals one-third of the Settlement Fund, which is well within the range typically awarded by courts in this Circuit in similar consumer fraud class actions, including recently in a similar case before Your Honor.[9]  *See Catalano v. Lyons Magnus,* LLC, No. 7:22-cv-06867, (S.D.N.Y. April 10, 2024) (Karas, J) (ECF No. 38) (granting final approval and awarding attorneys' fees of one-third of common fund in a consumer product contamination case).[10]  The requested fee award adequately compensates Class Counsel for their investment of time, expertise, and capital, which produced a successful outcome for the Class in a case that was both complex and high-risk.

### A.   The Fee Request is Reasonable Under the Goldberger Factors

#### 1.   Class Counsel Invested Substantial Time and Resources

As detailed in the concurrently filed Declarations, Class Counsel have dedicated their time, effort, and expense to this litigation, and they have done so entirely on a contingent basis with no guarantee of compensation or even reimbursement of expenses.  To date, Class Counsel have

---

[9] The $2,250,000 fee request represents 32.8% of the $6.85 million Defendant is obligated to pay pursuant to the Settlement Agreement, and also includes Class Counsel's out-of-pocket expenses totaling $72,003.41 and the non-monetary relief detailed above.

[10] *See also Bangoura v. Beiersdorf, Inc.,* No. 1:22-cv-00291-BMC (S.D.N.Y.) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a consumer product contamination case); *Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J) (same); *Goldstein v. Henkel Corporation,* No. 3:22-cv-00164-AWT (D. Conn.) (same)  (ECF No. 98); *Rapoport-Hecht v. Seventh Generation*, No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) (same); *Mayhew, v. KAS Direct LLC*, No. 16-cv-6981 (S.D.N.Y.) (same); *Swetz v. GSK Consumer Health, Inc.*, No. 7:20-cv-04731 (S.D.N.Y) (same).

dedicated 1,485.49 hours of attorney and other legal professional time prosecuting this Litigation. Class Counsel have also incurred $72,003.41 reasonable and necessary litigation expenses in prosecuting this Litigation.

Class Counsel began their investigation around December 15, 2023, when Defendant announced the recall of certain Quaker food products due to the potential for contamination with *Salmonella*. Sultzer Decl. ¶ 17. As part of their investigation, Class Counsel reviewed publicly available information regarding the Quaker products*,* and the hazards of bacteria in consumer products such as Defendant's products. Sultzer Decl.  ¶ 18.   Class Counsel also spent significant time and resources investigating claims by individuals throughout the country who had purchased the contaminated products, including people who alleged that they had been injured after using the recalled products.   Class counsel researched possible claims, drafted pleadings (including the complaints in the cases), and began formulating their strategy for litigating claims for individuals and putative  class members.  *Id*. Class Counsel also worked with various experts regarding damage theories and testing of the Defendant's products in order to determine the scope of the contamination.  *Id*.  Class Counsel also retained experts to conduct extensive testing to determine the contamination rate of the Covered Products.

Between December 27, 2023 and March 5, 2024, three separate actions were filed -- two in the Northern District of Illinois (*Hill* and *Herendeen*) and one in this Court (*Kessler*) -- asserting similar claims resulting from the alleged presence of bacteria in the Covered Products.  Sultzer Decl.  ¶¶ 19-23.  In addition, Plaintiffs Rodriquez and Abreu, through counsel, sent pre-suit letters to Defendant threatening Recall-related putative class actions.   Class Counsel took it upon themselves to self-organize and coordinate the actions so that all the cases would proceed before this Court, eliminating duplication for the parties and the Courts and limiting the expense to both sides.  This coordination also avoided a potentially lengthy leadership fight among counsel for

Plaintiffs in the three actions. *Id*. at ¶ 26.

Throughout this Litigation, Class Counsel conducted significant legal research and investigated industry reports, scientific and epidemiological studies, and literature regarding the dangers of *Salmonella* and other bacteria, and the Covered Products' market segment, including as follows:

- Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation, researching potential claims, state consumer protection laws, and available remedies, and evaluating class certification issues.

- Class Counsel analyzed Defendant's advertising campaigns and relevant regulations and guidelines concerning labeling and advertising disclosure requirements for consumer products, including and other regulations and guidelines regarding the presence of hazardous and dangerous substances such as bacteria in consumer products. Class Counsel reviewed scientific research and literature concerning the dangers of bacteria (including *Salmonella*), and investigated how Defendant should have known the Covered Products contained bacteria.

- Class Counsel consulted with industry experts regarding, *inter alia,* the presence of bacteria in consumer products and manufacturing facilities, potential sources of bacteria in consumer products, and testing and screening for bacteria in consumer products.

- Class Counsel analyzed the chain of distribution of the Covered Products, focusing on pricing per unit to formulate Plaintiffs' damages model.

- Class Counsel consulted with experts regarding potential damages models for consumers purchasing adulterated or misbranded products contaminated with bacteria.

- Class Counsel also analyzed Defendant's market segment related to the Covered Products to understand the potential scope of the economic losses to Class Members, and marketing and sales trends, practices, and patterns.

Sultzer Decl. ¶ 27. Class Counsel also conducted testing of the products to determine the scope of potential contamination. *Id.* at ¶ 28. In addition, Class Counsel reviewed and analyzed various data from Defendant in order to prepare for the mediation, which included information about the sales, manufacturing, distribution, and marketing of the products, as well as information about why the contamination occurred and the mechanisms put in place to prevent future contamination. *Id*. at ¶ 34. Class Counsel also reviewed information pertaining to the recall/refund campaign that

Defendant initiated. In short, it was a significant task to review all of the documentation, investigate the claims, test the Products, vet thousands of potential named plaintiffs, work with experts, and coordinate three litigations, which led to the mediation and ultimately the Settlement.

It is also important to note that Class Counsel's work continues and will continue even if the Court grants final approval of the Settlement. Class Counsel will continue to spend time and resources overseeing the Settlement administration, assisting Class Members, and dealing with any other issues that may arise related to the Settlement. *See Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,* No. 15-CV-1113 (VAB), 2016 WL 6542707, at *15 (D. Conn. Nov. 3, 2016) ("'Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward'" (quoting *deMunecas v. Bold Food, LLC*, No. 09-CIV-00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010))). Indeed, during a recent final approval hearing of a similar product contamination class action lawsuit in the District of Connecticut, Judge Thompson noted that class counsel's fee award was calculated to compensate counsel for work performed "as of September 2023 and the work continued beyond that date." *Goldstein v. Henkel Corporation et al*., Case No. 3:22-cv-00164-AWT (D. Conn.) (ECF No. 98). This case will be no different as these matters take up an extraordinary amount of time even after final approval is granted.

After preliminary discussions and exchange of information, the Parties agreed to jointly retain the respected mediator and former Magistrate Judge in the Central District of California, Jay C. Gandhi of JAMS. Sultzer Decl. ¶ 33. Prior to the mediation, Defendant provided Class Counsel with pre-mediation discovery, including the necessary information they required to assess the strengths and weakness of the case and negotiate a class-wide settlement as described above. Sultzer Decl. ¶ 34. As part of the settlement negotiations, a full-day mediation session took place on April 11, 2024 with Judge Gandhi in California. *Id*. at ¶ 35. At the mediation, the Parties reached

11

an agreement in principle to settle the economic claims on a class-wide basis. *Id*.  The Parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, as well as details of the notice plan and claims administration process, which Class Counsel and Defendant's counsel did for several months thereafter.  *Id*. at ¶ 37.  Class Counsel drafted the Settlement Agreement in accordance with the term sheet.  In addition, Class Counsel sought bids from various notice providers and ultimately engaged the services of Angeion, a well-respected class action settlement administrator. Class Counsel worked to develop a Notice Plan and the notice documents that would be submitted to the Court with Plaintiffs' Motion for Preliminary Approval.  On March 13, 2025, the Court preliminarily approved the Settlement. ECF No. 34.

That Class Counsel reached an excellent and expeditious settlement is another significant factor warranting this fee request. *See Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 20-cv-6527, 2004 WL 2397190 at *12, (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so.").  Indeed, in a settlement hearing for the *Bangoura* consumer action, in which Class Counsel was involved, Judge Cogan in the Eastern District of New York commented:

> With regard to the attorneys' fees, I agree with everything counsel has said. ***I think there is definitely a premium to be taken for the fact that the case was settled at an early stage***. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. ***And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts***.

Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023).  In fact, a number of consumer class actions cases in this District have been settled at a similar procedural stage and in all of them fee requests for one-third were granted in recognition of how efficiently they were handled. *See Patora*

*v. Tarte, Inc*., No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Mayhew, v. KAS Direct LLC*, No. 16-cv-6981 (Briccetti, J.); *Swetz v. GSK Consumer Health*, Inc., 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) . Thus, this factor weighs heavily in favor of this fee application, especially given the complexity of the case and the magnitude of the recovery.

### 2. This Class Action Included Complex Legal Issues

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig*., 912 F. Supp. 97, 100 (S.D.N.Y. 1996) ("[C]lass actions 'have a well-deserved reputation as being most complex.'")); *see also Kemp-Delisser*, 2016 WL 6542707, at *16 (noting case was "complex and risky to litigate, given that it concerns an unsettled question of law…"). In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award.").

This Litigation is no exception. This case, had it not settled, would have involved complex damage methodologies and a battle of economic and scientific experts as to the damages, the fairness or falsity of the labeling, and the extent of the contamination in the Covered Products. These factors make actions such as this inherently complex and high risk. Relative to other lawsuits, Class Counsel faced numerous potential obstacles, including issues regarding standing, class certification, damages calculations, and the possibility that their claims could be preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). *See In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig,* 2023 U.S. Dist. LEXIS 32691, *33 (S.D. Fla. Feb. 27, 2023) ("if litigation had continued there would have been a 'battle of experts' with an

13

uncertain outcome. Damages could have also been highly contested based on the Parties' laboratory results.").

Thus, a fee award that accounts for prosecuting claims that were "extraordinary in both complexity and scope" is appropriate. *In re Holocaust Victim Assets Litig.*, 2007 WL 805768, at *46 (E.D.N.Y. Mar. 15, 2007); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."). The magnitude and complexity of legal issues involved in this case further reinforces the reasonableness of Class Counsel's requested fee percentage.

### 3. The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."). The Second Circuit recently emphasized the "risk of litigation" factor in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023) ("The true risk we identified in *Fresno County* was the risk that a case taken on contingency <u>will fail</u>." *Id.* (emphasis in original). Accordingly, the significant litigation risk in this case strongly supports Class Counsel's fee request.

"It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. When Plaintiffs initiated this Litigation, there were complex issues of fact and law, which presented significant risks that continue through today. In particular, the types of consumer claims asserted here have been met with strong opposition in this Court and

throughout the country.  While Class Counsel believes that the Plaintiffs' claims are meritorious, there were substantial risks through continued litigation, especially with respect to proving class-wide damages.  Had litigation continued, Defendant would likely have made the same argument advanced by defendants in similar cases: 1) Plaintiffs lack Article III standing because they have not alleged that they suffered an adverse health effect and have failed to allege that they purchased a product that actually contained bacteria; 2) Plaintiffs' state law claims fail because they do not adequately plead a misrepresentation or omission and cannot show that Defendant knew of the presence of bacteria in the Covered Products; and 3) Plaintiffs cannot pursue their claims on behalf of a class because individualized issues (i.e. whether each purchased Covered Product was contaminated) predominate over common issues.  Even if Plaintiffs were able to successfully defeat those arguments, there is risk that a jury could find that a reasonable consumer would not have been misled by the Covered Products' labels and/or that Plaintiffs did not pay a price premium for the products or that the price premium paid was insubstantial.

Moreover, allegations of product defects like those asserted here would have required expert proof about what percentage of the Covered Products contained bacteria, the health risks posed by the levels of bacteria in the Covered Products, and the amount of recoverable damages. Similarly, Plaintiffs would have had to present expert testimony from an expert economist in support of their price premium damage theory /model. As courts in this circuit have recognized, reliance on expert testimony "often increases the risk that a jury may not find liability or would limit damages." *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714 (VAB), 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018) (granting final approval).

Although Class Counsel believes that the Court would certify the proposed class, even over Defendant's objections, there has always been a risk that Defendant would have successfully opposed class certification, moved to decertify the class, or attempted to appeal a certification

decision. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Class Counsel voluntarily undertook these risks understanding that there was a significant possibility that they may not be ultimately paid for their efforts. This factor too supports Class Counsel's fee request. *See Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he risk of non-payment in cases prosecuted on a contingency basis where claims are not successful…can justify higher fees.").

Here, Class Counsel has prosecuted this action diligently from the outset, despite the considerable risks. Class Counsel took it upon themselves to self-organize and coordinate the multiple actions that were filed and then coordinate the claims that they were pursuing on behalf of consumers. Sultzer Decl. at ¶ 26. Moreover, Class Counsel engaged in arm's-length negotiations supervised by an experienced mediator during which they evaluated the benefits of achieving a non-reversionary common fund settlement ($6.75 million), along with significant non-monetary relief, against the risks and uncertainty of not prevailing and the expenses/costs of continuing, and reached a class-wide settlement.

### 4. Class Counsel Provided (and Continues to Provide) High-Quality Representation

When evaluating *Goldberger's* "quality of representation" factor, courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008); *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Class Counsel's practice focuses on complex federal civil litigation, including consumer protection and false advertising class

actions. Class Counsel have successfully litigated these types of actions in this Court and courts throughout the country for many years, achieving significant results for consumers.[11]

Moreover, "the quality of representation … may be measured in large part by the results that counsel achieved for the classes." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014). Here, Class Counsel has obtained a $6.85 million settlement on behalf of the Class, as well as significant non-monetary relief. Class Counsel's ability to obtain such a substantial recovery from a litigation savvy Defendant (represented by Hogan Lovells, LLP, one of the top defense firms in the country) is a testament to the skill with which Class Counsel have prosecuted this case. *See Fleisher v. Phoenix Life Ins. Co.,* No. 11-CV-8405 (CM), 2015 WL 10847814, at *22 (S.D.N.Y. Sept. 9, 2015) ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work.") (internal quotations omitted). Throughout the Litigation, Hogan Lovells fervently represented Defendant against Plaintiffs' claims.

As demonstrated, Class Counsel possess and utilized the necessary skill to ably provide the legal services which led to a favorable settlement. In the Order preliminarily approving the settlement, the Court assessed the qualifications of Class Counsel and recognized that Class Counsel have fairly and adequately represented and protected the interests of the absent Settlement Class Members. ECF No 34. Class Counsel's ability to obtain a favorable settlement for the Class Members despite all the risks and complexity discussed above, and in the face of formidable legal

---

[11] *See, e.g., Catalano v. Lyons Magnus,* LLC, No. 7:22-cv-06867) (S.D.N.Y.) (Karas, J); *Patora v. Tarte, Inc.,* No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J.); *Rapoport-Hecht v. Seventh Generation,* No. 7:14-cv-09087 (S.D.N.Y.) *Mayhew, v. KAS Direct LLC,* No. 16-cv-6981-VB (S.D.N.Y.) (Karas, J.); *Swetz v. GSK Consumer Health, Inc.,* No. 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J); *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (E.D.N.Y.) (Cogan, J.); *Luib v. Henkel Consumer Goods Inc.,* No. 1:17-cv-03021-BMC (E.D.N.Y.) (Cogan, J.); *Vincent, Wesley, et al. v. People Against Dirty, PBC. and Method Products, PBC.,* No. 7:16-cv-06936 (S.D.N.Y.) (Roman, J.); *Swetz v. The Clorox Company,* No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.); *Patora v. Colgate-Palmolive Co.,* No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *see also* ECF Nos.13-3 through 13-10 (Class Counsel's firm resumes).

opposition, speaks to the quality of Class Counsel.  This *Goldberger* factor too favors the requested fee award.

### 5.   The Fee Request is Reasonable in Relationship to the Settlement

The next *Goldberger* factor requires the court to compare the requested fee to the benefits of the settlement. *Goldberger*, 209 F.3d at 50.  Courts in this Circuit recognize that large, complex class action lawsuits present considerable risk and require extensive work by counsel.  As such, courts often award fees at or even above the percentage requested here. *See Catalano v. Lyons Magnus, LLC,* No. 7:22-cv-06867 (S.D.N.Y) (Karas, J) (ECF No. 38) (granting final approval and awarding attorneys' fees equal to one-third of common fund).[12]  As described more fully herein, the requested fee of one-third of the Settlement Fund falls in line with fee awards in comparable actions in the Second Circuit.  This is especially true when, as here, the Settlement resulted in tens of thousands of claims in which the Class Members will recover more than the average purchase price of the Covered Products.

Notably, the Class Members' reaction to the Settlement also supports the reasonableness of Class Counsel's fee request. Class Notice has been sent to Class Members informing them that Class Counsel would apply the Court for an award of attorneys' fees and expenses not to exceed one-third of the Settlement Fund.  Approximately 140,712 Class Members made Valid Claims and only a single objection has been received. Sultzer Decl. at ¶ 4.   Notably, the lone objection did not challenge the relief  to the Class by the Settlement or Class Counsel's request for fees and

---

[12] *See also Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar consumer product contamination action); *Swetz v. The Clorox Company*, No. 7:22-cv-9374 (S.D.N.Y.) (same); *Patora v. Colgate-Palmolive Co.*, No. 7:23-cv-01118-VB (S.D.N.Y.) ) (same); *Rapoport-Hecht*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (awarding 33.3% of $4.5 million settlement fund); *Luib v. Henkel Consumer Goods, Inc.*, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) (awarding one third of settlement fund to class counsel for attorneys' fees and expenses).

expenses.[13]  The fact that thus far no Class Members have objected to Class Counsel's fee request

and expenses is strong evidence that the fee request is reasonable and appropriate. Moreover, the

fact that there has been only one single objection (to other aspects of the Settlement) out of

hundreds of thousands of class members is strong evidence of the fairness of a settlement.  *See*

*Millien v. Madison Square Garden Co*., 2020 U.S. Dist. LEXIS 141633, *14 (S.D.N.Y. Aug. 7,

2020) (approving class action settlement where only one member of the class filed an objection

because "[i]f only a small number of objections are received, that fact can be viewed as indicative

of the adequacy of the settlement.") (quoting Wal-*Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d

96, 118 (2d Cir. 2005));  *Moses v. Apple Hospitality Reit, Inc*., 2018 U.S. Dist. LEXIS 50786, *20-

21 (E.D.N.Y. Mar. 17, 2028) (holding that "[a] very low number of objections and exclusions

ordinarily evinces a class's tacit acceptance of a settlement" and approving a settlement with one

objector); *Grayson v. GE*, 2020 U.S. Dist. LEXIS 134657, *11 (D. Conn. Jul. 27, 2020) (approving

class action settlement where "the one objection from a Class Member did not challenge the

fairness of the terms of the Settlement to the Class.").

The Settlement further benefits the Class by providing monetary compensation much

sooner than the alternative path through trial and appeals, which would be protracted, expensive,

---

[13] The Court has granted Class Counsel's request for an opportunity to respond to the lone objection in writing prior to the Fairness Hearing on August 4, 2025 (Dkt. 38).  As will be set forth in greater detail in that response, the objection is not meritorious.  First, the objector has not demonstrated that he is a member of the class with standing to file such an objection, as required by the procedures set forth in the notice and Settlement Agreement.  The objector does not appear to have purchased a Covered Product that was subject to the recall, or to have selected the method of payment (debit card) that he takes issue with in his objection. Second, the objector's complaint that Class Members' due process rights are violated by the Court-appointed Claims Administers' fraud detection process are meritless.  Indeed, Angeion's fraud detection process has never been rejected by any court and is necessary to protect the integrity of the claims process.  Contrary to the objectors complaints, Class Members whose claims are rejected for potential fraud are informed that they can resubmit their claims or contact the Claims Administrator or Class Counsel for further information and assistance.  Moreover, per the Settlement Agreement, Class Counsel (who has a duty to protect the interests of Class Members) and the Court both retain oversight over the claims process, including which claims are accepted or rejected and why.   The objector's additional complaints regarding the online claims process, unclaimed moneys, and *cy pres* distribution are similarly meritless and will be fully addressed in Class Counsel's written response to the objection.

and slow. Sultzer Decl. ¶¶ 4-7.   Class Counsel has creatively structured the payments in this case so that Class Members can easily be paid by whatever method they choose, including physical check[14] and a variety of electronic payment options.[15]   This factor therefore favors the requested fee award.

### 6.  Public Policy Supports Approval of the Fee

Public policy also supports providing attorneys' fees in class action cases, as class actions are an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). *See also In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-2548-VSB, 2019 WL 4734396, at *3 (S.D.N.Y. Sept. 23, 2019) ( "In awarding attorneys' fees in common fund cases, the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.") (internal quote omitted).

Where, as here, any individual class member's damages are relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely … be heard." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  If courts failed to award adequate attorneys' fees, "no attorneys . . . would likely be willing to take on … small-scale class actions." *Id*.  Public policy favors rewarding counsel who persevere through risky litigation and achieve favorable results for the class they represent.   Here, without private counsel taking on the risk and expense of this lawsuit, the Settlement Class would have recovered nothing, and important public interests would

---

[14] One of the grounds for the objection related to the distribution of uncashed checks to *cy pres*.   Given, however, that less than ten checks have been issued to Class Members, this is a non-issue.   Indeed, during Class Counsel's discussions with the objector, the objector appeared to agree that the very limited number of checks issued rendered this objection moot.

[15] As Judge Thompson found in approving class counsel's fees in the *Goldstein* case, "[w]ith respect to 23(e)(2)(C), I was struck by the fact that to submit -- the class members only need to submit a simple form and that they had a variety of options for the way in which they receive the settlement payment. I thought that was a very good feature of how things were structured." *Goldstein v. Henkel Corporation et al*., No. 3:22-cv-00164-AWT (D. Conn.) (ECF No. 98).

not have been vindicated. Awarding a reasonable percentage of the Settlement Fund properly motivates zealous enforcement of consumer protection laws and incentivizes skilled counsel to bring meritorious cases. *See WorldCom*, 388 F. Supp. 2d at 359. It also deters negligent conduct from defendants. *See* 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 1:8 (6th ed. 2022) ("[W]here harms are small and dispersed, the defendants can avoid liability because no individual has sufficient incentive to sue. By avoiding liability, the defendants place the social costs of their actions on others."). By "enabling small-claim suits, class actions expose the defendants to the risk of liability and thereby deter them from engaging in wrongdoing in the first place." *Id*. As such, in addition to obtaining substantial monetary relief for the Class, this Settlement also serves an important public good by deterring corporations from allowing potentially harmful product contamination and encouraging stricter testing protocols through non-monetary relief. *See* Brian T. Fitzpatrick, THE CONSERVATIVE CASE FOR CLASS ACTIONS (University of Chicago Press, 2019) at Chapter 8.

Courts within this Circuit agree that small-claims class actions are worthwhile pursuits in which class counsel should be compensated for their efforts.[16] Moreover, because of the potential for large liability exposure, consumer class actions serve as strong antidote to corporate wrongdoing. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016) ("Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources.").

Here, Class Counsel took on this case despite significant uncertainty and volatility of law in consumer class actions, especially ones seeking damages for economic loss as a result of alleged

---

[16] *See Globus v. L. Rsch. Serv., Inc.*, 418 F.2d 1276, 1285 (2d Cir. 1969) ("Compensatory damages, especially when multiplied in a class action, have a potent deterrent effect."); *deMunecas*, 2010 WL 3322580, at *8 ("Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts.").

contamination, and successfully obtained a settlement allowing the Settlement Class Members to receive meaningful cash compensation. Such a result should be rewarded. This factor, like the others, supports Class Counsel's fee request.

## B. The Requested Fee Represents a Reasonable Percentage of the Fund

In addition to being reasonable under *Goldberger,* the fee requested, one-third of the Settlement Fund, is reasonable under the percentage of the fund method and is consistent with many other fee awards granted in other class actions in this circuit and in similar litigations. *See*, *e.g.*, *Torres v. Gristedes Operating Corp.*, 519 F. App'x 1, 5-6 (2d Cir. 2013) (acknowledging one-third of common fund is benchmark in Second Circuit and affirming higher percentage – 52.2% - of settlement value for attorney fees and costs.). Indeed, in recent litigations involving alleged product contamination and other consumer fraud actions, courts have granted similar fee requests, including very recently by Your Honor. *See Catalano v. Lyons Magnus, LLC*, No.7:22-cv-06867 (S.D.N.Y., Karas, J) (ECF No. 38) (granting final approval and attorneys' fees of one-third of the common fund).[17] As discussed above, Class Counsel's' fee request is also reasonable given the complexities and risks discussed herein and is within the parameters of fee awards in similar class actions in this circuit. Therefore, Class Counsel's requested fee is reasonable under a percentage of recovery analysis.

## C. A Lodestar Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsel's Requested Fee

The lodestar fee calculation method is used in this circuit only "as a sanity check to ensure

---

[17] *See also Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar consumer product contamination action); *Rapoport-Hecht*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (awarding 33.3% of $4.5 million settlement fund); *Luib v. Henkel Consumer Goods, Inc.*, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) (awarding one third of settlement fund to class counsel for attorneys' fees and expenses); *Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J) (same); *Patora v. Colgate-Palmolive Co.*, Case No. 7:23-cv-01118-VB (S.D.N.Y.) (Briccetti, J.); *Swetz v. The Clorox Company*, Case No. 7:22-cv-9374 (S.D.N.Y.) (Halpern, J.) (same).

that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger,* 209 F.3d at 50.[18]

Here, Class Counsel collectively billed 1,485.49 hours in this Litigation.  Sultzer Decl. ¶ 67. At their usual and customary rates, and applying the rates in existence when counsel performed the work, these hours translate into approximately $1,535,306.41 (1,601,709.6 when combined with Class Counsel's $72,003.41 in expenses, which are not being separately reimbursed)  in total lodestar as of June 2025.   *Id.*  As such, Class Counsel's request for $2,250,000 in attorneys' fees represents a modest total multiplier of 1.4 applied to their lodestar.[19]  This multiplier is squarely within the range awarded by courts in this District and across the country. [20] And this figure does not factor in the many additional hours of anticipated work that Class Counsel will need to perform going forward.

---

[18] *See also In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *13 (D. Conn. Aug. 20, 2012) ("Where [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.") (internal quotation omitted); *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants.").

[19] Notably, Class Counsel will continue to spend time and resources overseeing the Settlement administration, assisting Class Members, and tending to any other issues that may arise related to the Settlement.  Accordingly, Class Counsel's lodestar multiplier will decrease as they continue to work on the litigation in advance of the final approval hearing on April 25, 2024.

[20] *See In re Credit Default Swaps Antitrust Litig.,* No. 13MD2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (6.36 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding a lodestar multiplier of 6); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *28 (S.D.N.Y. Oct. 19, 2005) ("Taking the circumstances of the case into consideration, a multiplier of 1.85 is reasonable and, as a 'cross-check,' supports counsels' fee application. In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Hesse v. Godiva Chocolatier, Inc.*, 2022 U.S. Dist. LEXIS 72641, at *40 (S.D.N.Y. Apr. 20, 2022) (approving lodestar multiplier of 1.9 as reasonable in consumer class action).

Moreover, the hourly rates charged by Class Counsel in this litigation are reasonable. The hourly rates for the attorneys range from $400 to $1,200, which are within the range of what has been found reasonable for this jurisdiction. *See, e.g.*, *Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 U.S. Dist. LEXIS 102224, at *36 (S.D.N.Y. May 24, 2018) (finding reasonable hourly partner rates between $1,165 and $1,260 and hourly associate rates between $569.02 and $753.42);*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412, 2016 U.S. Dist. LEXIS 165268, at *26 (S.D.N.Y. Nov. 30, 2016) ("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation."). Class Counsel also made every effort to work efficiently and minimize the number of billing attorneys within each firm. *See* Sultzer Decl. at ¶ 70.

### D. The Reaction of Class Members Supports Class Counsel's Fee Request

Finally, as set forth in Section II.A.5, the reaction of Class Members to the Settlement and to Class Counsel's fee and cost request, confirms the reasonableness of Class Counsel's request. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014).

## III. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS IS REASONABLE

It is axiomatic that counsel should be reimbursed for all expenses that are reasonable and necessarily incurred. Fed. R. Civ. P. 23(h); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").

In prosecuting this action, Class Counsel incurred $72,003.41 litigation expenses for which Class Counsel respectfully requests reimbursement as part of the requested $2,250,000 award. *See* Sultzer Decl. at ¶ 78. Thus, the expenses will not take away any additional recovery from the Class. All of the expenses were reasonable and necessary to prosecute this matter and represent

standard litigation costs and expenses such as mediation, expert costs, travel expenses, as well as court costs. *Id*. The expenses are itemized in further detail in the declarations submitted on this motion. None of Class Counsel's expenditures have been reimbursed to date. Indeed, "[t]he fact that Class Counsel was willing to spend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *19. There is "no reason to depart from the common practice in this circuit of granting expense requests." *In re Visa Check/Mastermoney Antitrust Litig*., 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd sub nom*., *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005).

## IV.    PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS REASONABLE

Class Counsel seeks a $500 service award for each of the named Plaintiffs for their active participation in this Litigation, which has included carefully reviewing pleadings, regular communication with Class Counsel, and reviewing the Settlement Agreement. *See* Sultzer Decl. ¶ 79. In the Second Circuit, plaintiff service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by plaintiffs." *DeLeon v. Wells Fargo Bank, N.A.*, 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015); The $500 amount sought in this case is at or below case contribution awards in other class actions. *See*, *e.g.*, *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports incentive awards of between $2,500 and $85,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court approve the request for: (i) the payment of attorneys' fees and expenses in the amount of $2,250,000; and (ii) a $500 service award for each named Plaintiff.

Dated: July 14, 2025                        Respectfully submitted,

                                        By: */s/ Jason P. Sultzer*
                                             Jason P. Sultzer

**SULTZER & LIPARI, PLLC**
                        Jason P. Sultzer, Esq.
                        Jeremy Francis, Esq.
                        85 Civic Center Plaza, Suite 200
                        Poughkeepsie, NY 12061
                        Tel: (845) 483-7100
                        Fax: (888) 749-7747
                        sultzerj@thesultzerlawgroup.com
                        francisj@thesultzerlawgroup.com

        **REESE LLP**
                        Michael R. Reese
                        100 West 93rd Street, 16th Floor
                        New York, New York 10025
                        Tel: (212) 643-0500
                        *mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
                        Nick Suciu III, Esq.
                        6905 Telegraph Road, Suite 115
                        Bloomfield Hills, Michigan 48301
                        Tel: (313) 303-3472
                        *nsuciu@milberg.com*

**POULIN WILLEY ANASTAPOULO**
                        Paul Doolittle
                        32 Ann St,
                        Charleston, SC 29403
                        Telephone: (800) 313-2546
                        Email: *pauld@akimlawfirm.com*

**LEVIN SEDRIN & BERMAN**
                        Charles E. Schaffer
                        510 Walnut Street, Suite 500
                        Philadelphia, Pa. 19106
                        Telephone: (215) 592-1500
                        Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**
                        Joshua Arisohn

1330 A venue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
*jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
*jgoldenberg*@gs-legal.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*jbrown@leedsbrownlaw.com*

*Attorneys for Plaintiffs and the Settlement Class*