**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x

RAYMOND KESSLER et al.,  :
individually and on behalf of themselves and all  :
others similarly situated,  :    Case No. 7:24-cv-00526
 :
 Plaintiffs,  :
 :    Hon. Kenneth M. Karas
v.  :
 :
 :
 :
THE QUAKER OATS COMPANY,  :
 :
 Defendants.  :

—————————————————————

**DECLARATION OF MICHAEL REESE IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS**

I.    **INTRODUCTION**

I, Michael Reese, submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Service Awards, and affirm that the following is truthful and accurate:

1.    I am an attorney duly admitted before this Court. I am the founding partner and managing partner of Reese LLP and am one of the attorneys principally responsible for handling this case for Plaintiffs and the proposed Class.

2.    I am personally familiar with the facts set forth in this Declaration. If called as a witness, I could and would competently testify to the matters stated in this Declaration.

3.    On March 13, 2025, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in this action and granted related relief. ECF No. 34 (Preliminary Approval Order). In that Order, the Court conditionally designated me and several other lawyers as Class Counsel for the Settlement Class. ECF No. 34 at 6.

4.      The proposed class action Settlement would resolve the economic claims of purchasers of certain of Defendant's food products listed in section 1.11 of the Settlement Agreement (ECF No 13-1)("Settlement")[1] that were at risk of containing *Salmonella* (the "Covered Products" or "Products") for a non-reversionary common fund in the amount of $6,750,000.00 ('Settlement Fund"). Class Counsel achieved this proposed Settlement because of their experience in cases like this and because they invested considerable time, effort, and resources into prosecuting this case.

5.      The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $6.75 million, which will be exhausted to pay all approved valid claims, as well as any attorneys' fees and expenses, services awards, and administration costs.  §1.33. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive the full purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 4.6.1.  Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive the average retail price for up to two (2) Covered Products claimed per household plus a 10% allowance for sales tax, as such price is determined in good faith by the Defendants and provided to the Claim Administrator. § 4.6.2. Settlement Class Members who obtained a Recall Reimbursement from the Defendant may be able to receive further relief from the settlement. If a Settlement Class Member submitted a claim in the Recall, the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member has received or shall receive from the Recall (provided that the payment shall not be reduced below $0.00).  § 4.6.3.

1.

---

[1] Hereafter, all "§__" are references to sections of the Settlement Agreement (ECF No. 13-1).

6.     The Settlement achieved by Class Counsel benefits Class Members in a number of ways.   First, besides putting money directly in their pockets, it has significantly expanded the scope of Defendant's recall/refund program.   Individual class members receive either the full purchase price of the Products they bought, or the average price of the Products for up to two products, if they do not have proof of purchase.

7.     Second, the settlement benefits the entire Class as a whole, whether class members submitted a claim or not, by providing a high percentage of the total possible recovery in this litigation in the event the case was successfully tried.  This alone is a very significant outcome in cases like these, especially considering the risks of losing before or at trial, and how efficiently it was done.

8.     As set forth in section 7.1 of the Class Action Settlement Agreement Plaintiffs are now applying to the Court for an award of their Attorneys' Fees and Costs. Plaintiffs are applying for attorneys' fees and expenses in the amount of one-third of the Settlement Fund as well as a service award of $500.00 for each Plaintiff, to be paid from the Settlement Fund.

## II.     BACKGROUND, PROCEDURAL HISTORY AND SETTLEMENT

### a.    Pre-Litigation Investigation, Litigation and Mediation

9.      Defendant recently conducted a product recall on December 15, 2023[2], and then an expanded recall on January 11, 2024.

10.     Before commencing the Litigation, Class Counsel extensively investigated and analyzed, among other things, Defendant's marketing campaign, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for consumer products like the Products at issue here, FDA and CDC guidelines regarding the presence of bacteria in consumer

---

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/quaker-recalls-granola-bars-and-granola-cereals-due-possible-health-risk

products, the scientific research concerning the dangers of *Salmonella*, and research regarding how Defendant should have known the Products contained *Salmonella*.

11.    On January 24, 2024, I filed the above-captioned class action on behalf of Plaintiff Raymond Kessler and a proposed class of "all consumers who purchased the Products in the state of New York at any time during the Class Period" in this Court against Defendant alleging that Defendant's Products sold in the United States were contaminated, or were at risk of contamination, of *Salmonella*, and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the Covered Products. (the "Kessler Action") (Dkt. 1).

12.    The Kessler Action alleged violations of New York General Business Law Section 349 and Section 350.  Additional class actions were also filed elsewhere.  The Kessler Action was later amended to include the plaintiffs from these other actions and allege a nationwide class of consumers who purchased the Products.

13.    Throughout this litigation, Class Counsel conducted significant legal research and investigated industry reports, scientific and epidemiological studies, and literature regarding the dangers of *Salmonella*, and the Covered Products' market segment, including as follows:

- Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation and an early resolution, including research into the various state consumer protection laws and available remedies, and evaluating class certification issues.

- Class Counsel extensively analyzed the claims alleged in the complaints, Defendant's advertising campaigns, the relevant regulations and guidelines concerning labeling and advertising disclosure requirements for consumer products, such as the contaminated Products, regulations and guidelines regarding the presence of hazardous and dangerous substances such as *Salmonella* in consumer products, the scientific research and literature concerning the dangers of *Salmonella*, and research regarding how Defendant should have known the Products contained *Salmonella.*

- Class Counsel analyzed the chain of distribution of the Products and pricing per unit to help support and determine Plaintiffs' damages model.

4

- Class Counsel conducted research into the market segment related to the Products to understand the potential scope of this matter, economic losses to Class Members, and marketing and sales trends, practices, and patterns.

14.     Class Counsel also conducted testing of the products to determine the scope of potential contamination.

15.     Class Counsel has substantial experience prosecuting class actions and, in particular, class actions involving contaminated consumer products. *See e.g. Armstrong v. Kimberly-Clark Corp.*, No. 20-cv-3150 (N.D. Texas); *Browne v. TreeHouse Foods, Inc.*, No. 24-cv-07578 (E.D.N.Y.); *Pompilio v. Boar's Head Provisions Co. Inc*., No. 24-cv-08220 (S.D.N.Y.).

16.     The parties commenced settlement negotiations in the Spring of 2024, considering the cases' strengths and weakness. As the parties' discussions progressed, they agreed to informally exchange information about the Covered Products, the possible contamination of the Covered Products, the sales information about the Covered Products, the recall of the Covered Products, and information about the scope of the claims and the possible damages at issue.  They agreed that an experienced mediator was necessary to guide the parties' settlement discussions about resolving the economic claims in this Litigation.

17.     Accordingly, the parties sought the assistance of the respected JAMS mediator and retired federal Magistrate Judge, the Honorable Hon. Jay C. Gandhi (Ret.).

18.     In connection with the mediation, Class Counsel requested, and Defendant produced, critical discovery to enable Plaintiffs to evaluate their claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.

19.     A full-day mediation session took place on April 11, 2024 with Judge Gandhi (Ret.) in Los Angeles, California. At the mediation, the experienced counsel on both sides engaged in extensive arm's-length negotiations and were able to reach an agreement in principle to settle the economic claims on a class-wide basis by creating a non-reversionary $6.75 million common fund.

20.     The Parties did not discuss attorneys' fees and expenses or any potential service awards until they first agreed on the substantive terms of this Settlement.

21.     After the mediation the Parties continued to work diligently to negotiate and prepare the Settlement Agreement and other documents necessary to formalize the Settlement and present it to the Court for preliminary approval.

22.     On April 26, 2024, the Parties informed the Court that they had reached a resolution on the matter and requested permission to file a consolidated class action complaint which the Court granted.  (ECF Nos. 7 and 8).

23.      On May 24, 2024, Plaintiffs filed the consolidated complaint, adding additional named plaintiffs and a proposed nationwide class.  (ECF No. 9).

24.     On June 24, 2024, Plaintiffs filed their motion for preliminary approval of the settlement (ECF No. 10), which this Court granted on March 13, 2025. (ECF No. 34).

25.     Before agreeing to resolve the claims in the Litigation, Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, Article III standing, preemption, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.  Indeed, Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources without a protracted battle for lead counsel and to lead the case to mediation and an early resolution.

26.      The parties selected Angeion Group as the claims administrator based on its reputation for excellent work and its breadth of experience administering other similar consumer class actions.  For example, Angeion has administered similar class action settlements regarding contaminated consumer products. *See Declid et al. v. Tcp Hot Acquisition LLC et al*., 1:21-cv-09569-DLC (S.D.N.Y); *Bangoura v. Beiersdorf, Inc*., 1:22-cv-00291-BMC (E.D.N.Y.).

6

**b.  Summary of Settlement Benefits and Risks of Continued Litigation**

27.    Class Counsel has made a non-reversionary $6.75 million Settlement Fund available to Class Members, which will be exhausted to pay all approved claims, as well as any attorneys' fees and expenses, service awards, and notice and administrative costs. §1.33.

28.    Although Plaintiffs are confident about their claims, Plaintiffs nonetheless face significant risks in establishing liability.

29.    If the Litigation were to continue, Plaintiffs would expect Defendant to defend vigorously all aspects of Plaintiffs' claims, including on the class certification motion and the summary judgment motions.

30.    The outcome of these proceedings cannot be certain, and if the Litigation were to proceed to trial, it would be a lengthy and complex affair, with appeals likely to follow.

31.    Consistent with Second Circuit jurisprudence, in settling the Litigation, Plaintiffs accounted for the estimated damages, the benefits and risks of continuing litigation against Defendant, and the range of possible outcomes should the Litigation continue.

32.    Although Plaintiffs allege that Defendant sold large quantities of the Products during the Class Period, the damages calculation is inherently complex and subject to varying interpretations as discussed above.

33.    The Settlement also will provide an immediate and certain benefit to the Settlement Class and will avoid the substantial burdens, costs, and risks that continuing to litigate would impose on the parties, non-party witnesses, and the Court.  There would be long and expensive litigation between this stage of the case and any potential verdict.

34.    Even assuming arguendo, that continued litigation might result in a larger recovery than the Settlement, it would occur only after spending hundreds of thousands of dollars (or more) that would deplete a significant portion of any increased recovery.

35.     Class Counsel undertook and litigated this case on a fully contingent basis. Class Counsel assumed a very real risk in taking on this contingent fee class action. Class Counsel has demonstrated that they were prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. If this Action had continued to be litigated and Plaintiffs were ultimately unsuccessful in their claims, Class Counsel would not be entitled to recover any attorneys' fees or costs.

36.     Even if Plaintiffs could have defeated a motion to dismiss, obtained a class certification order and proceeded to trial, victory before the trier of fact would have been uncertain. Such uncertainty, moreover, was compounded by the appeals virtually certain to have followed any verdict. In short, while Class Counsel believes that the claims are viable and strong, there can be no denying the array of serious class-wide risks, any one of which could have precluded the Class and its counsel from recovering anything at all.

37.     By any standard, this Settlement constitutes a favorable result made possible by the dedication and skill of Class Counsel under very difficult circumstances.

38.     Moreover, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into prosecuting the Litigation and possess a long and proven track record of successfully prosecuting class actions, including false labeling cases, and numerous courts have appointed them as class counsel in other consumer class actions.

## III.     CLASS COUNSEL'S QUALIFICATIONS

39.     Class Counsel are some of the nation's preeminent and most experienced class-action firms with extensive experience in consumer protection, product liability, antitrust, securities, financial, commercial and other complex class-action litigation.

40.    Reese LLP has substantial experience with consumer class actions in general, and with consumer protection and false advertising, specifically. I have prosecuted, and been appointed as lead counsel in, numerous consumer protection class action cases throughout the country in which I have recovered hundreds of millions of dollars and obtained injunctive relief on behalf of consumers. My significant experience representing consumers in class action litigation is detailed more fully in my firm resume which is attached hereto as Exhibit A.

41.    The other members of Class Counsel are similarly experienced as set forth in their accompanying firm resumes.

42.    In the process of handling these cases, Class Counsel has devoted an extensive amount of time to investigating, litigating, settling, and administering these class actions.

## IV.    SUMMARY OF CLASS COUNSEL'S SIGNIFICANT WORK AND UNREIMBURSED LITIGATION EXPENSES

43.    From the inception of this case to the present, Class Counsel vigorously investigated and pursued this litigation, committing their services and resources and advancing funds out-of-pocket to prosecute it for the Plaintiffs and the proposed Class. Class Counsel provided these services and advanced necessary litigation expenses with no assurance of compensation or repayment and have received no compensation or reimbursement of their expenses. Class Counsel's compensation and expense reimbursement has at all times in this litigation been entirely contingent upon successfully obtaining relief.

44.    In December of 2023, when Defendant announced the possible contamination of the Products, Class Counsel started investigating the contamination and Defendant's corresponding false and misleading advertising.  Class Counsel reviewed, inter alia, publicly available documents about Defendant's products, the recall, and *Salmonella*. They also interviewed numerous consumers who had purchased the Covered Products.

45.     Class Counsel diligently, skillfully and efficiently investigated and prosecuted this litigation from its inception in the face of skilled, professional and determined opposition from Defendant and their capable counsel. These efforts required researching and arguing complex legal and factual issues, and numerous meetings, extensive negotiations and other communications with defense counsel and third parties.

46.     More specifically, Class Counsel's efforts on behalf of the Settlement Class included the following:

    a)  investigating the underlying factual background regarding the contamination of the Covered Products with *Salmonella*, researching industry standards regarding sourcing of ingredients, screening and testing for bacteria, and developing legal theories of the case regarding the misbranding and adulteration of the products;

    b)  investigating and researching the applicable legal standards for product defect cases involving products such as the Covered Products;

    c)  drafting the complaint and amended complaint;

    d)  conducting legal research and analysis regarding the claims asserted buy Plaintiffs as well as certification of consumer claims on a national basis and statewide basis;

    e)  conducting informal (*i.e.* settlement) discovery pre-and post-mediation;

    f)  participating in case strategy decisions and discussions with other Class Counsel;

    g)  conducting numerous arms–length, independent settlement negotiations with the JAMS mediator, Magistrate Gandhi (Ret.);

    h)  drafting the settlement agreement along with the requisite exhibits, including claim forms, content of settlement webpage, opt out forms, long and short form notice forms, and other related documents;

    i)  researching and selecting the claims administrator (Angeion) and implementing the notice program;

    j)  developing and implementing the notice plan with claims administrator/notice provider Angeion;

k)  working with Angeion to prepare and send notice of the Settlement to putative Settlement Class Members, respond to inquiries from Settlement Class Members and others, and supervise the claims administration process;

l)  troubleshooting the claims process in conjunction with Defendant's counsel and claims administrator/notice provider Angeion;

m)  speaking with class members who contacted class counsel regarding filing of claim forms; and

n)  preparing and drafting the motion for preliminary approval of the Settlement.

47.    The chart below details the hours billed and the amount billed at current rates through June 1, 2025 for Reese LLP attorneys:

| Attorney | Total Hours | Hourly Rate | Amount |
|---|---|---|---|
| **Michael Reese** | 188.30 | $1625.00 | $305,987.50 |
|  |  |  |  |
| **Total:** | **188.30** |  | **$305,987.50** |

48.    The hourly rates for the partners and other attorneys at Reese LLP are the same as the regular, current rates that have been accepted by courts in other class litigation. Reese LLP has established hourly rates for the firm's personnel and increases those billing rates at the beginning of each calendar year. The hourly rates above are those for 2025.

49.    Reese LLP establishes the rates based on prevailing market rates for attorneys and law firms with nationwide practices that have attorneys of comparable skill, experience, and qualifications. Reese LLP obtains information concerning market rates from other attorneys in the area, as well as from information that appears in the local press and national bar publications and from orders awarding attorneys' fees. *See, e.g.,* Exhibit B for the 2024 hourly rates of Winston & Strawn LLP. The information obtained by Reese LLP demonstrates that its rates are in line with non-contingent market rates charged by attorneys of comparable experience, skill, and reputation. *Id.*; *see also* Exhibit C (partners at Cooley LLP charging $1,450-$2,290 per hour).  Indeed, the

mediator used in this manner, the Honorable Magistrate Jay Gandhi (ret.), who has essentially the years of experience as Michael Reese, bills at $2,200 per hour.  *See*  Exhibit D (hourly rate of Jay Gandhi); *and compare* Exhibit E (California State Bar page for Judge Gandhi reflecting he became a member of the bar in 1997) with Exhibit A (Reese LLP firm resume stating Michael Reese graduated from the University of Virginia School of Law in 1996).

50.     Additionally, the hourly rates charged by Class Counsel in this case are the same as the regular, current rates (adjusted for the annual increases) that have been used in the lodestar cross-check accepted by courts in other class litigation. *See, e.g., McKinley v. Conopco, Inc.*, Index No. 805260/2024E (Bronx County Supreme Court, Nov. 22, 2024) (order granting class counsel's fee request in total based upon 2024 calendar year hourly rate for Michael R. Reese of $1,600 per hour) available at *https://www.vanillaicecreamsettlement.com*; *Counts v. Arkk Food Company*, No. 1:23-cv-00236 (N.D. Ill. Sept. 26, 2024) (granting class counsel's fee request in total based upon 2024 calendar year hourly rate for Michael R. Reese of $1,600 per hour) available at *https://www.picklesettlement.com*; *Vela v. AMC Networks, Inc.*, No. 1:23-CV-02524-ALC (S.D.N.Y. May 16, 2024) (granting class counsel's fee request in total based upon 2024 calendar year hourly rate for Michael R. Reese of $1,600 per hour) available at *https://www.amcvppasettlement.com*; *Sharpe v. A&W Concentrate Co.,* No. 1:19-cv-00768-BMC (Nov. 16, 2023 E.D.N.Y.) (granting class counsel's motion for payment of fees based upon 2023 calendar rates of $1,500 per hour for class counsel Michael R. Reese and stating: "Class Counsel have done excellent work in this matter and have achieved a substantial benefit for the Class. Class Counsel are very experienced, both in class actions and in this kind of consumer litigation. Moreover, their hourly rates are commensurate with the highest quality of practice in this District and are hereby approved.").

51.     During the course of this case, Reese LLP incurred $405.00 in unreimbursed expenses. These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation. These expenses are reflected in the books and records of Reese LLP and are a true and accurate summary of the expenses for this case. The chart below details the expenses incurred by category.

| CATEGORY | EXPENSE AMOUNT |
|---|---|
| Filing Fees | $405.00 |
| | |
| **TOTAL** | **$405.00** |

52.     Further, our work on this litigation has not ended and will not end until the last settlement distribution payment is made to eligible Settlement Class Members. We expect to expend additional hours going forward, which of course are not included in Class Counsel's lodestar reported below, concerning the Settlement approval and administration processes, preparing for the Final Approval Hearing, responding to Settlement Class Members and other inquiries and, if the Court grants final approval, overseeing Settlement administration.

53.     The lodestar summary reflects Class Counsel's experience in the field, the complexity of the matters involved in this litigation, and the prevailing rate for providing such services.

54.     The number of hours that Class Counsel has devoted to pursuing this litigation is reasonable and appropriate, considering, among other factors: (a) the scope and high stake's nature of this proceeding; and b) the novelty and complexity of the claims asserted in the litigation.

55.     The requested fee is in line with the fee range commonly granted in other class action cases in the Second Circuit and elsewhere as discussed more fully in Plaintiffs' accompanying Memorandum of Law in support of their request for attorneys' fees.

**V.  SERVICE AWARDS**

56.  Class Counsel requests a service award of $500 for the Class Representative Plaintiffs.  The named Plaintiffs were subjected to an extensive vetting interview. The named plaintiffs also provided information to substantiate the purchased products. The plaintiffs took on the responsibilities of class representatives, and were willing to be deposed, provide discovery, and testify at trial.

**VI.  CONCLUSION**

For the reasons set forth in this declaration, Class Counsel respectfully requests that the Court grant Plaintiffs' Motion for an award of Attorneys' Fees, Expenses and Service Awards for Class Representative Plaintiffs**.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of June, 2025 in New York, New York.

*/s/ Michael R. Reese*_____
Michael R. Reese

# EXHIBIT A

# REESE LLP

Reese LLP represents consumers in a wide array of class action litigation throughout the nation. The attorneys of Reese LLP are skilled litigators with years of experience in federal and state courts. Reese LLP is based in New York, New York with offices also in California and Minnesota.

Recent and current cases litigated by the attorneys of Reese LLP on behalf of consumers include the following:

*In re Fairlife Milk Products Marketing and Sales Practices Litig.*, case no. 1:19-cv-03924 (N.D. Illinois)(case involving milk products allegedly mislabeled); *In re Hill's Pet Nutrition, Inc. Dog Food Products Liability Litig.*, case no. 19-md-2887-JAR-TT (D. Kansas)(case involving contaminated pet food)*; Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws); *Worth v. CVS Pharmacy, Inc.*, case no. 16-cv-00498 (E.D.N.Y.)(class action for alleged misrepresentations regarding health benefits of dietary supplement); *Roper v. Big Heart Pet Brands, Inc.*, case no. 19-cv-00406-DAD (E.D. Cal.)(class action regarding pet food); *Ackerman v. The Coca-Cola Co.*, 09-CV-0395 (JG) (RML) (E.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to health beverages); *Rapaport-Hecht v. Seventh Generation, Inc.*, 14-cv-9087-KMK (S.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to personal care products); *Berkson v. GoGo, LLC,* 14-cv-1199-JWB-LW (E.D.N.Y.)(class action regarding improper automatic renewal clauses); *Chin v. RCN Corporation*, 08-cv-7349 RJS (S.D.N.Y.)(class action for violation of Virginia's consumer protection law by I.S.P. throttling consumers' use of internet); *Bodoin v. Impeccable L.L.C.*, Index. No. 601801/08 (N.Y. Sup. Ct.)(individual action for conspiracy and fraud); *Huyer v. Wells Fargo & Co.*, 08-CV-507 (S.D. Iowa)(class action for violation of the RICO Act pertaining to mortgage related fees); *Murphy v. DirecTV, Inc.*, 07-CV-06545 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws); *Bain v. Silver Point Capital Partnership LLP,* Index No. 114284/06 (N.Y. Sup. Ct.)(individual action for breach of contract and fraud); *Siemers v. Wells Fargo & Co.*, C-05-4518 WHA (N.D. Cal.)(class action for violation of § 10(b) of the Securities Exchange Act of 1934 pertaining to improper mutual fund fees); *Dover Capital Ltd. v. Galvex Estonia OU*, Index No. 113485/06 (N.Y. Sup. Ct.)(individual action for breach of contract involving an Eastern European steel company); *All-Star Carts and Vehicles Inc. v. BFI Canada Income Fund*, 08-CV-1816 LDW (E.D.N.Y.)(class action for violation of the Sherman Antitrust Act pertaining to waste hauling services for small businesses on Long Island); *Petlack v. S.C. Johnson & Son, Inc.*, 08-CV-00820 CNC (E.D. Wisconsin)(class action for violation of Wisconsin consumer protection law pertaining to environmental benefits of household cleaning products); *Wong v. Alacer Corp.*, (San Francisco Superior Court)(class action for violation of California's consumer protection laws pertaining to deceptive representations regarding health benefits of dietary supplement's ability to improve immune system); *Howerton v. Cargill, Inc.* (D. Hawaii)(class action for violation of various consumer protection laws regarding sugar substitute); *Yoo v. Wendy's International, Inc.*, 07-CV-04515 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws pertaining to adverse health effects of partially hydrogenated oils in popular food products).

## The Attorneys of Reese LLP

### Michael R. Reese

Mr. Reese is the founding and managing partner of Reese LLP where he litigates consumer protection class actions. Prior to entering private practice, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting violent and white-collar crime.

Victories by Mr. Reese and his firm include a $21 million class settlement in *In re Fairlife Milk Products Marketing and Sales Practices Litig.*, case no. 1:19-cv-03924-RMD (N.D. Illinois); a $12.5 million dollar class settlement in *In re Hill's Pet Nutrition, Inc. Dog Food Products Liability Litig.*, case no. 19-md-2887-JAR-TT (D. Kansas) for pet owners who bought contaminated pet food; a $6.1 million class action settlement in *Howerton v. Cargill, Inc.* (D. Hawaii) for consumers of Truvia branded sweetener; a $6.4 million class action settlement in the matter of *Wong v. Alacer Corp.* (S.F. Superior Court) for consumers of Emergen-C branded dietary supplement; and, a $25 million dollar settlement for mortgagees in *Huyer v. Wells Fargo & Co.* (S.D. Iowa).

Mr. Reese and his firm are frequently appointed as co-lead counsel in multi-district litigations, including, but not limited to *In re Fairlife Milk Products Marketing and Sales Practices Litig.*; case no. 1:19-cv-03924-RMD (N.D. Illinois); *In re Hill's Pet Nutrition, Inc. Dog Food Products Liability Litig.*, case no. 19-md-2887-JAR-TT (D. Kansas); *In re Vitaminwater Sales and Marketing Practices Litig.*, case no. 11-md-2215-DLI-RML (E.D.N.Y.); and, *In re Frito-Lay N.A. "All-Natural" Sales & Marketing Litig.*, case no. 12-md-02413-RRM-RLM (E.D.N.Y.).

Mr. Reese is a frequent lecturer and author on issues of class actions. Mr. Reese is the chairperson of an annual conference on class action litigation organized by the Litigation Series; presents on class action litigation at the annual conference of the Consumer Brands Association; and, presents regularly at the Union Internationale des Advocats Annual Congress, with the most frequent presentation in Paris France.

Recent articles on class actions appear in publications by the American Bar Association; the Union Internationale des Advocats; and the Illinois State Bar Association.

Mr. Reese is also an executive committee member of the Plaintiffs' Class Action Roundtable, where he lectures on an annual basis on issues related to class actions.

Mr. Reese is a member of the state bars of New York and California as well as numerous federal district and appellate courts. Mr. Reese received his juris doctorate from the University of Virginia in 1996 and his bachelor's degree from New College in 1993.

**Sue J. Nam**

Ms. Nam is based in New York where she focuses on consumer class actions.  Ms. Nam also runs the appellate practice at the firm and has represented clients before the Second and Ninth Circuits, as well as The Court of Appeals in New York.  Ms. Nam also specialized in copyright law and represents photographers and other visual artists who have had their copyright protected works infringed.

Prior to joining the firm, Ms. Nam was the General Counsel for NexCen Brands, Inc., a publicly traded company that owned a portfolio of consumer brands in food, fashion and homeware.

Previously, Ms. Nam was Intellectual Property Counsel and Assistant Corporate Secretary at Prudential Financial, Inc., and she was an associate specializing in intellectual property and litigation at the law firms of Brobeck Phleger & Harrison LLP in San Francisco, California and Gibson Dunn & Crutcher LLP in New York, New York.

Ms. Nam clerked for the Second Circuit prior to joining private practice.

Ms. Nam received her juris doctorate from Yale Law School in 1994. She received a bachelor's degree with distinction from Northwestern University in 1991.

**Carlos F. Ramirez**

Mr. Ramirez is an accomplished trial attorney based in New York, where he focuses his practice on the litigation of consumer class actions. Prior to entering private practice in 2001, Mr. Ramirez served as an Assistant District Attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crimes.

Previous and current consumer fraud class actions litigated by Mr. Ramirez include *Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws); *Coe v. General Mills, Inc.*, No. 15-cv-5112-TEH (N.D. Cal.) (involving false advertisement claims relating to the Cheerios Protein breakfast cereal); *In re Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation*, 16-md-2695-JB/LF (D.N.M.)(involving the deceptive marketing of cigarettes as "natural" and "additive free"); and, *Lamar v. The Coca-Cola Company, et al.*, No. 17-CA-4801 (D.C. Superior Ct.) (involving the deceptive marketing of sugar drinks as safe for health).

Mr. Ramirez is a member of the state bars of New York and New Jersey. He is also a member of the bars of the U.S. District Courts for the Eastern District of New York and Southern District of New York. Mr. Ramirez received his juris doctorate from the Fordham University School of Law in 1997 and his bachelor's degree from CUNY-Joh Jay College in 1994.

## George V. Granade II

Mr. Granade is a partner at Reese LLP based in Los Angeles, California, where he focuses on consumer class actions. Cases Mr. Granade has worked on include: *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496-JAL (S.D. Fla.); *In re: Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (involving "SunChips," "Tostitos," and "Bean Dip" products labeled as "natural" and allegedly containing genetically-modified organisms); and *Martin v. Cargill, Inc.*, No. 0:13-cv-02563-RHK-JJG (D. Minn.) (involving "Truvia" sweetener product labeled as "natural" and allegedly containing highly processed ingredients).

Mr. Granade received his juris doctorate from New York University School of Law in 2011. He received a master's degree from the University of Georgia at Athens in 2005 with distinction and a bachelor's degree from the University of Georgia at Athens in 2003, *magna cum laude* and with High Honors.

Mr. Granade is a member of the state bars of Georgia, New York, and California. He is also a member of the bar of the U.S. Courts of Appeals for the Second Circuit and Ninth Circuit, as well as the bars of the U.S. District Courts for the Eastern District of New York, Southern District of New York, Western District of New York, Northern District of New York, Southern District of Illinois, Northern District of Illinois, Northern District of California, Southern District of California, Central District of California, and Eastern District of California.

## Charles D. Moore

Mr. Moore is a partner based in Minneapolis, Minnesota where he focuses on both consumer as well as employment class actions.

Mr. Moore has worked on a number of high profile class actions at Reese LLP as well as his prior firm where he worked as co-counsel with Reese LLP on numerous matters. His notable cases include: *Salerno v. Kirk's Natural LLC*, No. 1:21-cv-04987-BMC (E.D.N.Y.) (involving the deceptive claims for the country of origin of the products) *Marino v. Coach, Inc.*, Case. No. 1:16-cv-01122-VEC (OTW) (Lead) (S.D.N.Y.) (involving deceptive reference pricing in the sale of outlet merchandise); *Raporport-Hecht v. Seventh Generation, Inc.*, Case No. 7:14-cv-09087-KMK (S.D.N.Y.) (involving the deceptive advertising of household products as "natural"); *Gay v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fla.) (involving deceptive advertising of personal care products as "natural"): *Frohberg v. Cumberland Packing Corp.*, Case No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.) (involving deceptive advertising of food products as "natural"); *Baharenstan v. Venus Laboratories, Inc. d/b/a Earth Friendly Products, Inc.*, Case No. 3:15-cv-03578-EDL (N.D. Cal.) (involving deceptive advertising of household products as "natural"); *Sienkaniec v. Uber Technologies, Inc.*, Case No. 17-cv-04489-PJS-FLN (D. Minn.) (involving the misclassification of Uber drivers as independent contractors); *Dang v. Samsung Electronics Co.*, 673 F. App'x 779 (9th Cir. 2017) (*cert denied* 138 S. Ct. 203) (rejecting shrink-wrap terms in California for purposes of arbitration).

Mr. Moore is a member of the state bar of Minnesota and New York. He is also a member of the bar of the U.S. District Court for the District of Minnesota, the Southern, Eastern, and Western Districts of New York, and the Northern District of Illinois. Mr. Moore received his juris doctorate from Hamline University School of Law in 2013, and his bachelor's degree from the University of North Dakota in 2007.

**Kate J. Stoia**

Ms. Stoia is based in San Francisco, California.  Prio to joining the firm, Ms. Stoia was an associate specializing in general and corporate litigation and labor and employment in the San Francisco offices of Brobeck Phleger & Harrison LLP, Gibson Dunn & Crutcher LLP, and Clerence & Snell LLP.  Ms. Stoia clerked for the Honorable Charles A. Legge, Northern District of California, prior to joining private practice.

Ms. Stoia is admitted to the bars of several federal courts as well as the state bar of California. Ms. Stoia received her juris doctorate from UC Berkeley School of Law in 1995.  She received a bachelor's degree from Columbia University in 1989 and a Master's of Public Affairs from UC Berkeley's Goldman School of Public Policy in 2022.

# EXHIBIT B

Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com
nvyas@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Class Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF JEFFREY L. KESSLER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVES**<br><br>Date: April 7, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Claudia Wilken<br>Courtroom: 2, 4th Floor |

**Error! Unknown document property name.**

I, JEFFREY L. KESSLER, declare as follows:

1.     I am an attorney licensed before all the courts of the State of New York and am co-executive chairman and a partner of Winston & Strawn LLP ("Winston & Strawn" or "Winston"). I am co-lead Class Counsel for the Class Plaintiffs in this action. Based on personal knowledge or discussions with counsel at my firm about the matters stated herein, I could competently testify to the same if called upon to do so.

2.     This Declaration is made in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives ("Fee Motion"), and pursuant to Civil Local Rule 54-5.

3.     As detailed more fully below, for nearly four years, Winston & Strawn and co-counsel at Hagens Berman Sobol Shapiro LLP ("Hagens Berman") have been extensively involved in all aspects of the above-captioned litigation. Winston attorneys took or shared the lead on many hearings and motions during years of pretrial litigation, including: drafting briefs and filings, organizing and completing document review, drafting discovery requests and responses, corresponding with defense counsel, setting agendas and guiding negotiations for meet-and-confer discussions that governed document production, depositions, scheduling, and all other manner of discovery disputes, taking and defending depositions, working with experts, arguing class certification and other motions before the Court, and conducting arduous settlement negotiations with Defendants.

## I.     SUMMARY OF WORK PERFORMED IN THE *HOUSE* LITIGATION

4.     When the Court granted class certification to the damages classes and injunctive relief class, Winston was named co-lead counsel for all Plaintiff Classes, along with Hagens Berman. Over the course of the litigation, Winston and Hagens Berman have worked together closely to avoid duplication of effort and to prosecute this case as efficiently as possible, notwithstanding the enormous scope of this case.

5.     During discovery, Winston and Hagens Berman prepared and acted to enforce requests for production and interrogatories, as well as gathering documents from Plaintiffs and preparing Plaintiffs' responses to Defendants' requests.

6.   In response to Plaintiffs' document requests, Defendants produced nearly 200,000 documents that spanned more than 1.6 million pages. Defendants' responses to Plaintiffs' interrogatory requests were also extensive, requiring Winston and Hagens Berman to analyze hundreds of pages of documents.

7.   Further, Winston and Hagens Berman served and enforced document subpoenas on nearly 200 third parties, including all Power Five schools and several other Division I institutions. Negotiating to receive responsive information from these third parties was an arduous and time-consuming process that was critical to class certification and damages. These third parties produced more than 13,000 additional documents that spanned nearly 80,000 pages. Winston and Hagens Berman attorneys had to file motions to compel in the Southern District of Florida (against the University of Miami and Florida International University) to ultimately receive productions from these schools, which also significantly aided in Winston's and Hagens Berman's abilities to secure document productions from other schools.

8.   Winston and Hagens Berman also successfully negotiated with Defendants to deem all documents produced in *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019), *aff'd sub nom. NCAA v. Alston*, 594 U.S. 69 (2021) and *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015) as produced in the instant litigation. The parties reached a similar agreement regarding the use of depositions from the *Alston* and *O'Bannon* litigations. These agreements helped streamline the discovery process but also expanded the number of documents Winston and Hagens Berman attorneys needed to review to pursue the classes' claims.

9.   Reviewing such voluminous document productions and analyzing which documents supported Plaintiffs' case was a major undertaking. Winston and Hagens Berman devised a multi-step review protocol to efficiently identify the most useful documents. To limit cost, Winston relied heavily upon in-firm "review" attorneys who specialize in e-discovery and bill at substantially lower hourly rates than what is commonly charged in the marketplace for these services. When necessary for the proper administration of the case, Winston associate attorneys—and on a handful of tasks, Winston partner attorneys—were also involved, and Winston coordinated with co-counsel on document review

issues to avoid duplication of effort. In total, the tremendous volume of documents produced by Defendants and third parties meant that Winston attorneys spent roughly 10,500 hours working until the close of discovery, identifying the best evidence for use at depositions, as well as in pre-trial motions and for devising the case strategy.

10. Plaintiffs collectively deposed more than forty fact witnesses and defended three fact depositions. Winston attorneys acted as the "first-chair" examining or defending attorney in twenty-eight of these depositions. The depositions for which Winston assumed primary responsibility included numerous witnesses with critical knowledge about the conduct at issue, and whose testimony provided important evidence in support of Plaintiffs' claims. These witnesses included NCAA Vice President Kevin Lennon; NCAA Director of Division I Governance Jennifer Fraser; Big 12 Conference Commissioner Robert Bowlsby; former Big 10 Conference Commissioners James Delany and Kevin Warren; Atlantic Coast Conference Commissioner James Phillips; Southeastern Conference Deputy Commissioner Charlie Hussey; and Georgetown University President John DeGioia, among others.

11. Winston also first-chaired the examining or defending of seven testifying experts in this matter. Specifically, Winston deposed Defendants' economists, Dr. Gautam Gowrisankaran, Dr. Ashley Langer, and Dr. Catherine Tucker, and Defendants' media expert, Bob Thompson; and defended Plaintiffs' economist Dr. Darrell Williams, consumer survey expert Hal Poret and media expert Edwin Desser. Plaintiffs were also substantially involved in the preparation for the depositions of the other experts: Plaintiffs' economist, Daniel Rascher; and Defendants' economists Dr. Barbara Osborne and Kevin Murphy. The evidence obtained in those depositions resulted in additional crucial evidence that bolstered Plaintiffs' claims.

12. To maximize the recovery to the class and to minimize costs, Winston and Hagens Berman have leanly staffed depositions and all other projects in this case. Additionally, to minimize travel costs, Winston and Hagens Berman divided up these depositions by location, with Hagens Berman typically taking or defending depositions located on the West Coast, where the firm is based, and Winston typically taking or defending depositions located on the East Coast, where most of its attorneys working on the case are located.

13. Winston attorneys also worked closely with the experts throughout the case, retaining,

along with co-counsel, the necessary experts needed to pursue this type of high stakes antitrust litigation. Working closely with plaintiffs' experts—Dr. Rascher, Mr. Poret, Mr. Desser, and Dr. Williams—Winston & Strawn assisted Plaintiffs' experts in identifying and gathering the relevant materials for expert analysis. The firm also supported these experts as they drafted their reports and testimony, formulated their analyses, and sought additional information as the case developed. In coordination with Winston's and Hagens Berman's efforts, Dr. Rascher and Mr. Desser wrote reports that helped the Court certify Plaintiffs' Rule 23(b) injunctive-relief class and damages classes; Drs. Williams and Rascher wrote reports that helped to demonstrate the failings of Defendants' experts' merits reports; and Dr. Rascher, Mr. Poret, and Mr. Desser offered merits reports that were used persuasively in Plaintiffs' motion for summary judgment. In total, across the case, four experts were retained by Plaintiffs; they produced eleven reports spanning 1,239 pages; they were deposed seven times in total.

14.     In preparation for class certification, Winston and Hagens Berman performed significant legal research on various class certification issues, including class-wide impact, class-wide damages, and Defendants' purported defenses. Winston and Hagens Berman also worked with Plaintiffs' experts—economist Dr. Rascher, and media expert Mr. Desser—to put together expert reports in support of class certification. Plaintiffs' efforts in briefing class certification (*see* ECF Nos. 208, 289) resulted in the Court granting Plaintiffs' motion in full. *See* Class Cert. Decisions (ECF Nos. 323, 387).

15.     Winston and Hagens Berman also spent extensive time briefing Plaintiffs' summary judgment motion on liability which was filed prior to the renewed settlement discussions in May 2024. As part of summary judgment motion practice, Plaintiffs worked with four experts, who put together opening, rebuttal, and reply expert reports, and reviewed the opening, rebuttal, and reply reports of Defendants' experts Dr. Gautam Gowrisankaran, Dr. Barbara Osborne, Dr. Ashley Langer, Dr. Catherine Tucker and Dr. Kevin Murphy. The summary judgment motion relied heavily on evidence obtained during discovery and served as a crucial point of leverage for settlement discussions.

16.     I, along with Steve Berman of Hagens Berman and David Greenspan, my partner at Winston, personally handled the hard-fought settlement discussions that lasted several years. We

1    attended multiple in-person mediation sessions with Professor Eric Green and participated in telephone

2    calls with the mediator as well.

3        17.     Winston and Hagens Berman also worked with Plaintiffs' expert economist Dr. Rascher

4    in relation to considering settlement strategy and damages for all aspects of the settlement.

5        18.     During settlement negotiations, the parties were confronted with numerous difficult and

6    time-consuming issues. These negotiations have been arm's-length at all times and broke down on

7    several occasions before the parties were finally able to reach a settlement.

8        19.     The settlement establishes a common fund of $1.976 billion for the NIL claims at issue

9    in the *House* litigation—a settlement that amounts to approximately two-thirds of single damages for

10   the NIL damages claims when the parties entered into an agreement in principle. This extraordinary

11   result is the product of a thorough assessment and evaluation of the strengths and weaknesses of

12   Plaintiffs' case.

13       20.     The settlement also provides unprecedented injunctive relief to members of the

14   injunctive relief class. Under the terms of the settlement, college athletes, for the first time, will be

15   able to receive benefits directly from Division I schools on top of their cost of attendance and *Alston*

16   awards. According to conservative estimates by Plaintiffs' economic expert, Dr. Rascher, the

17   settlement will allow college athletes to receive a total of $19.4 billion over the 10-year settlement

18   period, and if non-Power Five schools, in aggregate, increase spending for athlete compensation by a

19   modest margin over the settlement period, Dr. Rascher's estimate increases to more than $20 billion.

20       21.     Since the settlement was submitted for preliminary approval, Winston has provided

21   detailed and personalized responses to class members' inquiries on this case, and continues to do so.

22       22.     Winston and Hagens Berman will also perform additional work related to the litigation

23   and settlement for the foreseeable future. The firms anticipate expending significant time drafting final

24   settlement approval papers, and litigating potential appeals of the settlement if the Court grants final

25   approval. The fees and expenses incurred for this work are not reflected in the lodestar, but this

26   additional work will require substantial time and resources from Winston and Hagens Berman

27   attorneys.

28

## II.    SUMMARY OF WORK PERFORMED IN THE *CARTER* LITIGATION

23.    On December 7, 2023, Plaintiffs DeWayne Carter, Nya Harrison, and Sedona Prince filed *Carter v. NCAA*, No. 4:23-cv-6325-RS (N.D. Cal.), which alleged that the NCAA's rules prohibiting payments for athletic services violate the antitrust laws. During injunctive relief settlement discussions in *House,* and prior to the filing of the *Carter* complaint, the parties had discussed the concept of expanding the *House* injunctive relief settlement to include the pay-for-play claims that would eventually be alleged (and were ultimately alleged in *Carter*) to globally address Defendants' compensation and benefit rules on a going-forward basis. Plaintiffs made clear that any broadening of the *House* settlement to include pay-for-play claims would require a separate, and independent, discussion of damages. Plaintiffs used Dr. Rascher to evaluate damages for those pay-for-play claims to aid the pre-*Carter* settlement discussions and to prepare for the filing of the *Carter* complaint.

24.    Winston and Hagens Berman previously brought antitrust challenges in 2014 to the NCAA's rules prohibiting payments for athletic services in *Jenkins v. NCAA*, No. 3:14-cv-01678-FLW-LHG (D. N.J.), and *Alston v. NCAA*, No. 4:14-cv-01011-CW (N.D. Cal.), respectively. Through the JPML process, the cases were brought together before this Court. *See Alston v. NCAA*, 4:14-md-02541-CW (N.D. Cal.). The parties engaged in over two years of fact and expert discovery and litigated the case through trial and appeal up to the Supreme Court. Class counsel developed a deep knowledge of the facts and legal landscape of these claims that it brought to bear to the *Carter* case when drafting the complaint and negotiating a settlement of these claims.

25.    Discovery had not formally begun in *Carter* when Plaintiffs and the NCAA resumed settlement negotiations in May 2024 to pursue a resolution of all claims challenging the NCAA's compensation restrictions.

26.    On May 30, 2024, the Court stayed all case deadlines pending resolution of the present settlement. ECF No. 421. The same day, in *Carter*, Judge Seeborg entered a stipulated order extending Defendants' deadline to respond to the complaint due to the parties' settlement negotiations. ECF No. 100, No. 3:23-cv-06325-RS (N.D. Cal.). The *Carter* claims have now been consolidated in the operative Third Amended Complaint ("Complaint"), which was filed concurrently with Plaintiffs' Supplemental Motion for Preliminary Settlement Approval. *See* ECF Nos. 533, 543.

27.     As a result of the more recent filing of the *Carter* complaint, Winston and Hagens Berman have incurred comparatively lower fees and expenses from the litigation of the *Carter* claims.

28.     However, Winston and Hagens Berman have still expended significant time and resources in litigating the claims at issue in *Carter*. For example, Winston and Hagens Berman attorneys worked extensively on briefing before the Judicial Panel on Multidistrict Litigation to avoid the case being transferred out of the Northern District of California, which has extensive experience with the rules and law at issue here. Winston and Hagens Berman attorneys also conducted arduous settlement negotiations with Defendants in an effort to settle Plaintiffs' claims.

29.     The settlement establishes a common fund of $600 million for the claims at issue in the *Carter* litigation—a settlement that amounts to approximately 31.6% of single damages for the damages claims when the parties entered into an agreement in principle. Given the pitfalls and litigation risks inherent in class actions, especially in antitrust class actions, this is an extraordinary result for class members.

30.     As a result of the comparatively less time and expense invested in litigation of the *Carter* claims, Winston and Hagens Berman seek only 10% of the $600 million *Carter* settlement fund.

## III.     SERVICE AWARDS

31.     As their accompanying declarations explain in further detail, Class representatives DeWayne Carter, Nya Harrison and Nicholas Solomon have devoted significant time and resources to, and undertook significant risk in, representing the classes.

32.     Mr. Carter, Ms. Harrison, and Mr. Solomon were responsive and available to counsel through the entire duration of their involvements in this lawsuit, providing additional information as needed and remaining engaged and actively informed on the case.

33.     Mr. Carter and Ms. Harrison played a significant role in helping Class Counsel prepare the initial *Carter* complaint, in developing Class Counsel's litigation strategy, and remained engaged during settlement negotiations and throughout the settlement approval process. Mr. Carter and Ms. Harrison regularly contacted Class Counsel with questions and ideas. Although Mr. Solomon joined this action as a class representative after the initial settlement had been reached, he has played a

significant role in assisting Class Counsel in preparing the Complaint and throughout the settlement approval process.

34. Mr. Carter and Ms. Harrison were also still competing in college under the NCAA rules when their cases began and incurred substantial risks and costs in taking on leadership roles in this high-profile litigation against the NCAA and the most prominent conferences in college sports.

35. While Mr. Solomon's collegiate athletic career had concluded by the time he joined this litigation, he placed his personal relationships developed through college athletics at risk through his involvement in this litigation.

36. In recognition of their contributions to this litigation, Plaintiffs request a service award for service awards in the amount of $10,000 for Mr. Carter and Ms. Harrison, and a service award in the amount of $5,000 for Mr. Solomon.

**IV. SUMMARY OF LODESTAR AND EXPENSES**

37. Winston's lodestar for litigating the claims in the above-captioned action is $35,973,842.50.

38. Winston's lodestar is calculated based on the current hourly rates of the firm. These hourly rates are based on regular and ongoing monitoring of prevailing market rates in the respective regions for attorneys of comparable skill, experience, and qualifications.

39. Winston has expended a total of $682,206.53 in unreimbursed litigation expenses in litigating the claims in the above-captioned action. They are the type of expenses typically billed by attorneys to paying clients in the marketplace, and include such costs as fees paid or incurred for online document repositories, document preparation for depositions and hearings, and travel in connection with this litigation.

40. The litigation expenses incurred in prosecuting this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

41. Over the course of the litigation, Winston also contributed $4,015,000.00 to a Joint Litigation Fund for the payment of costs which are not included in the above-stated expense total, but are reflected in the concurrently filed Declaration of Steve W. Berman in Support of Plaintiffs' Motion

for Attorneys' Fees, Reimbursement of Litigation Expenses and Service Awards for Class Representatives.

42. Attached hereto as **Exhibit A** is a true and correct copy of a summary lodestar chart for Winston, reflecting work done litigating the claims in the above-captioned case, including the timekeepers who worked on this matter, their total hours, their current hourly billing rates and their total lodestar based on current billing rates.

43. Attached hereto as **Exhibit B** is a true and correct copy of a report reflecting a summary of Winston's expenses incurred litigating the claims in the above-captioned case.

44. Attached hereto as **Exhibit C** is a breakdown of Winston's lodestar by task category. The task categories are as follows:

    a. **Investigation and Fact Discovery**, which includes investigation of the case, researching publicly available sources, relevant prior litigation against Defendants, and investigating potential fact witnesses.

    b. **Written Discovery**, which includes drafting, responding to, and collecting documents regarding written discovery to and from parties and to third parties.

    c. **Document Review**, which includes analyzing and reviewing documents produced by parties and third parties, and managing document review efforts.

    d. **Motion**, which includes researching, writing, filing, responding to motions, and oral argument concerning motions.

    e. **Expert**, which includes facilitating expert reports and data analysis, corresponding and conferencing with experts, and supporting expert conclusions.

    f. **Deposition**, which includes analysis and research for, preparing for, and taking and defending depositions.

    g. **Client and Class Communications**, which includes corresponding and conferencing with class representatives, and with potential and actual class members.

    h. **Settlement**, which includes settlement negotiations, mediation, and work conducted to facilitate the settlement, such as notice and administration tasks.

i. **File Maintenance**, which includes non-attorney work organizing, updating, and maintaining the litigation file.

45. Attached hereto as **Exhibit D** are materials about Winston and its antitrust and sports law practices that provide additional information about the firm's well-recognized expertise and capabilities with respect to antitrust litigations in the world of sports.

46. Attached hereto as **Exhibit E** are select biographies of Winston attorneys that provide additional background about the primary team that litigated this matter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17th day of December 2024 at New York, New York.

*/s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER

# EXHIBIT A

## EXHIBIT A

**Winston & Strawn LLP**
**LODESTAR TOTALS AT CURRENT RATES**
Inception through December 9, 2024

| Timekeeper | Position | Current Rate | Total Hours | Lodestar at Current Rates |
|---|---|---|---|---|
| Abe, Machi | Review Attorney | $75.00 | 214.50 | $16,087.50 |
| Arguello, Sofia | Partner | $1,315.00 | 51.7 | $67,985.50 |
| Balkam, Nathrawit | Paralegal | $240.00 | 43.1 | $10,344.00 |
| Benjamin, Rachel | Paralegal | $375.00 | 14 | $5,250.00 |
| Bernard, Melissa | Review Attorney | $95.00 | 137.6 | $13,072.00 |
| Blake, Joey | Associate | $980.00 | 4,005.40 | $3,925,292.00 |
| Blomquist, Kristin | Review Attorney | $75.00 | 10.8 | $810.00 |
| Bovia, Jasmine | Summer Associate | $640.00 | 12.3 | $7,872.00 |
| Calvar, Cristina | Partner | $1295.00 | 2.3 | $2,978.50 |
| Carll, Jonathan | Review Attorney | $75.00 | 150.2 | $11,265.00 |
| Chen, Deanie | Associate | $640.00 | 23 | $14,720.00 |
| Chen, Ryan | Associate | $775.00 | 9.4 | $7,285.00 |
| Choate, Ann | Litigation Support Manager | $310.00 | 3.4 | $1,054.00 |
| Cummings, Quinlan | Associate | $835.00 | 510.8 | $426,518.00 |
| Dale, Adam | Partner | $1,265.00 | 2,172.9 | $2,748,718.50 |
| DalSanto, Matthew | Partner | $1,290.00 | 217 | $279,930.00 |
| Drenon, Brent | Associate | $895.00 | 0.2 | $179.00 |
| Feher, David | Partner | $1,695.00 | 2,162.8 | $3,665,946.00 |
| Frost, Matthew | Associate | $640.00 | 31.7 | $20,288.00 |
| Gailey, Lauren | Of Counsel | $1,230.00 | 41.2 | $50,676.00 |
| Garlow, Michael | Review Attorney | $75.00 | 61.8 | $4,635.00 |
| George, Imisi | Review Attorney | $75.00 | 38.8 | $2,910.00 |
| Gillis, Lisa | Review Attorney | $75.00 | 47.7 | $3,577.50 |
| Greenspan, David | Partner | $1,540.00 | 1,823.60 | $2,808,344.00 |

| Hook, Steven | Review Attorney | $75.00 | 63.5 | $4,762.50 |
|---|---|---|---|---|
| Hughes, Timothy | Associate | $995.00 | 117.4 | $116,813.00 |
| Jurdi, Daniel | Review Attorney | $75.00 | 264.1 | $19,807.50 |
| Kessler, Jeffrey | Partner | $1,980.00 | 1,624.2 | $3,215,916.00 |
| Khrapko, Artem | Associate | $895.00 | 21.7 | $19,421.50 |
| King, Andrew | Associate | $775.00 | 24.2 | $18,755.00 |
| Knight, Blake | Review Attorney | $75.00 | 337.1 | $25,282.50 |
| Koulikov, Mikhail | Research Analyst | $245.00 | 3.6 | $882.00 |
| Kyritsopoulos, Corinne | Senior Paralegal | $400.00 | 1,960.1 | $784,040.00 |
| Leaphart, Audrey | Paralegal | $240.00 | 5.4 | $1,296.00 |
| Lerner, Lane | Docket Attorney | $590.00 | 25.7 | $15,163.00 |
| Lowe, Jolie | Paralegal | $240.00 | 5.6 | $1,344.00 |
| Mantel, Matthew | Senior Research Analyst | $245.00 | 9.1 | $2,229.50 |
| Martinez, Lindsay | Paralegal | $240.00 | 26.5 | $6,360.00 |
| Mascolo, Maria | Research Analyst | $245.00 | 0.3 | $73.50 |
| McAdams, Sarah | Paralegal | $255.00 | 1.9 | $484.50 |
| McAleavy, Kevin | Litigation Support Project Manager | $285.00 | 0.5 | $142.50 |
| Morgan, Stephen | Review Attorney | $75.00 | 614.5 | $46,087.50 |
| Neptune, Kharyne | Review Attorney | $85.00 | 1,733.2 | $147,322.00 |
| Ngyuen, Tessa | Data Analyst | $430.00 | 211 | $90,730.00 |
| Onozato, Sandra | Review Attorney | $75.00 | 82 | $6,150.00 |
| Otten, Shane | Economics Advisor | $530.00 | 204.5 | $108,385.00 |
| Oyediran, Oyedele | Paralegal | $375.00 | 1.4 | $525.00 |
| Parsigian, Jeanifer | Partner | $1,295.00 | 3,576.8 | $4,631,956.00 |
| Parsons, Molly | Review Attorney | $75.00 | 213.8 | $16,035.00 |
| Peltier, Robert | Review Attorney | $75.00 | 895.5 | $67,162.50 |
| Purpuro, Daniela | Associate | $640.00 | 2.5 | $1,600.00 |
| Riaz, Bia | Review Attorney | $75.00 | 7.5 | $562.50 |

| Richard, Mark | Review Attorney | $75.00 | 360.1 | $27,007.50 |
|---|---|---|---|---|
| Robinson, Tanya | WLS Manager | $105.00 | 8.4 | $882.00 |
| Rosario, Rick | Senior Paralegal | $400.00 | 284.4 | $113,760.00 |
| Ross, Matthew | Review Attorney | $75.00 | 36 | $2,700.00 |
| Russell, Andrea | Review Attorney | $75.00 | 150 | $11,250.00 |
| Rutledge, Madeline | Associate | $695.00 | 1.5 | $1,042.50 |
| Joshua Ryder | Graphic Designer | $180.00 | 3.5 | $630.00 |
| Saade, Michael | Review Attorney | $75.00 | 5 | $375.00 |
| Sherman, Scott | Associate | $1,190.00 | 3,877.5 | $4,614,225.00 |
| Sloan, Nick | Associate | $775.00 | 328.5 | $254,587.50 |
| Solomon, Daniel | Associate | $835.00 | 1,016 | $848,360.00 |
| Steeg, Aaron | Associate | $890.00 | 395.8 | $352,262.00 |
| Sun-Lake, Lisa | Review Attorney | $75.00 | 199.3 | $14,947.50 |
| Thompson, Michael | Trial Support Specialist | $225.00 | 27.8 | $6,255.00 |
| Ubani, Chibuenyim | Review Attorney | $75.00 | 128.6 | $9,645.00 |
| Viebrock, Sarah | Associate | $1,220.00 | 1,971.4 | $2,405,108.00 |
| Virga, Madeline | Associate | $775.00 | 15.3 | $11,857.50 |
| Vyas, Neha | Associate | $980.00 | 2,166.4 | $2,123,072.00 |
| Walz, Alan | Docket Clerk | $240.00 | 2 | $480.00 |
| Washington, Caleb | Associate | $640.00 | 3 | $1,920.00 |
| Washington, Drew | Associate | $1,070.00 | 781 | $835,670.00 |
| Wesclitz, Stephen | Senior Research Analyst | $255.00 | 2 | $510.00 |
| Wexler, Jay | Associate | $975.00 | 889.9 | $867,652.50 |
| Williams, Whitney | Associate | $940.00 | 13.1 | $12,314.00 |
| Woodward, Timothy | Senior Research Analyst | $255.00 | 5.2 | $1,326.00 |
| Yoder, John | Associate | $775.00 | 12.1 | $9,377.50 |
| Zewdie, Milcah | Associate | $640.00 | 2.5 | $1,600.00 |
| **TOTAL** | | | **36,506.1** | **$35,973,842.50** |

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PHASEBIO PHARMACEUTICALS, INC.,[1] | ) Case No. 22-10995 (LSS) |
| | ) |
| Debtor. | ) |
| | ) **Re: Docket No. 271** |

## NOTICE OF PROFESSIONAL FEE HOURLY RATES

**PLEASE TAKE NOTICE** that on December 19, 2022, the Court entered an order authorizing the above captioned debtor and debtor-in-possession (the "**Debtor**") to retain Cooley LLP ("**Cooley**") as its lead counsel effective as of October 23, 2022 (the "**Retention Order**") [Docket No. 271].

**PLEASE TAKE FURTHER NOTICE** that this Notice is being provided in accordance with paragraph 5 of the Retention Order.

**PLEASE TAKE FURTHER NOTICE** that as more fully described in Cooley's retention application, Cooley's hourly rates are subject to periodic firm-wide adjustment. Effective January 1, 2024, Cooley's customary hourly rates for attorneys, paralegals, and professional staff who may provide services to the Debtor in this chapter 11 case shall range as follows:

| Billing Category | Range |
|---|---|
| Partners | $1,450 - $2,290 |
| Counsel[2] | $1,205 - $2,375 |
| Associates | $760 - $1,395 |
| Paralegals | $215 - $670 |
| Professional Staff | $140 - $650 |

---

[1] The last four digits of the Debtor's federal tax identification number are 5697. The Debtor's registered address is 3500 S. DuPont Hwy, Dover, Delaware 19901.

[2] Includes Senior Counsel, Of Counsel, and Special Counsel timekeepers.

Date: February 9, 2024

**COOLEY LLP**

_/s/ Cullen D. Speckhart_

Cullen D. Speckhart, Esq.
Olya Antle, Esq.
**COOLEY LLP**
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Tel: (202) 842-7800; Fax: (202) 842-7899
Email: cspeckhart@cooley.com
        oantle@cooley.com

-and-

Robert L. Eisenbach III, Esq.
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, California 94111
Tel: (415) 693-2000; Fax: (415) 693-2222
Email: reisenbach@cooley.com

-and-

Philip M. Bowman, Esq.
Jeremiah P. Ledwidge, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Tel: (212) 479-6000; Fax: (212) 479-6275
Email: pbowman@cooley.com
        jledwidge@cooley.com

_Counsel to the Debtor_

# EXHIBIT D



2101 East Coast Highway, Suite 250
Corona Del Mar, California 92625

TELEPHONE (949) 760-5288
WEBSITE: www.phillipsadr.com

## ADR FEE SCHEDULE

| Mediator | Fees | |
|---|---|---|
| Hon. Jay C. Gandhi | California Flat Fee Per Day | $40,000 |
| | Travel Outside CA Flat Fee Per Day | $50,000 |
| | Hourly Follow-Up Rate | $ 2,200 |
| | Advance payment is required before any in-person mediation or arbitration sessions can begin. | |
| | Cancel/Reschedule: Once mediation/arbitration session(s) are scheduled, if it is cancelled or rescheduled 30 days or more prior to the scheduled date, there is no cancellation charge, and the flat fee will be refunded minus any travel expenses or preparation time that has been incurred.  If the session(s) are cancelled or rescheduled less than 30 days prior to the date, however, the full fee will be charged to the parties, unless Judge Gandhi is able to reschedule a new ADR matter for the date(s) that was cancelled or changed. | |
| | The Flat Fee includes all travel time and expenses, if applicable, but does not include any follow up work after the initial scheduled mediation date(s). All telephonic and email follow-up work will be billed at the current hourly rate.  All in-person follow-up mediation sessions will be billed at the applicable day rate. Weekend mediation sessions are different and will be determined on a case-by-case basis. Arbitration rates will also be determined on a case-by-case basis. | |

# EXHIBIT E

 The State Bar *of California*

**Vijay Gandhi #192613**
**License Status: Active**

Address: Phillips ADR Enterprises, 2101 E Coast Hwy, Ste 250, Corona del Mar, CA 92625-1928
Phone: 949-760-5280 | Fax: Not Available
Email: **mlettington@phillipsadr.com** | Website: **www.phillipsadr.com**

## More about This Attorney ▾

The table below shows an attorney's license status changes, disciplinary actions, and administrative actions. Some administrative suspensions are subject to automatic removal from the attorney profile page pursuant to the State Bar's **policy on removal of administrative actions**. Administrative suspensions are non-disciplinary actions resulting from noncompliance with administrative requirements, such as the requirement to pay licensing fees or comply with Minimum Continuing Legal Education. Administrative suspensions that meet the criteria in the State Bar's policy on removal of administrative actions would not be displayed below.

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|---|---|---|---|
| Present | Active | | |
| 12/10/1997 | Admitted to the State Bar of California | | |

Additional Information:
- **About the disciplinary system**

Copyright © 2025 The State Bar of California

  

# EXHIBIT F

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LASHAWN SHARPE, JIM CASTORO, and STEVE DAILEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>A&W CONCENTRATE COMPANY and KEURIG DR PEPPER<br><br>        Defendants. | Case No. 1:19-cv-00768-BMC |

# FINAL APPROVAL ORDER AND JUDGMENT

Upon consideration of the Motion of Class Representatives for an Order Certifying the Settlement Class and Granting Final Approval of the Class Settlement (ECF No. 124) ("Final Approval Motion") and their Motion for an Order Granting Payment of Class Counsel's Fees and Reimbursement of Expenses to Class Counsel and Payment of Service Awards to the Class Representatives (ECF No. 125) ("Fee Motion" together with "Final Approval Motion," "the Motions"), the hearing on the Motions before this Court on October 19, 2023 (the "Final Approval Hearing"), and the entire record herein, the Court grants final approval of the Settlement, upon the terms and conditions set forth in this Order. Capitalized terms and phrases in this Order shall have the same meaning ascribed to them in the Settlement Agreement (ECF No. 119). The Court makes the following findings:

## FINDINGS OF FACT

1. On June 5, 2023, this Court granted the motion of the Class Representatives for preliminary approval of the Settlement Agreement and certification of the Settlement Class (as defined below). *See* Preliminary Approval Order at ECF No. 121.

2. Commencing on July 18, 2023 pursuant to the notice requirements in the Settlement Agreement and the Preliminary Approval Order, Kroll Settlement Administration (the "Settlement Administrator") began providing notice to Settlement Class Members in compliance with the Settlement Agreement and Notice Plan, due process, and Rule 23 of the Federal Rules of Civil Procedure. *See* Declaration of Jeanne C. Finegan, APR of Kroll Notice Media Solutions in Connection with Implementation of Notice Plan at ECF No. 135. The notice:

   a. Fully informed Settlement Class Members about the Action and the existence and terms of the Settlement Agreement;

b. Advised Settlement Class Members of their right to request exclusion from the Settlement and provided sufficient information so that Settlement Class Members were able to decide whether to accept the settlement, opt-out and pursue their own remedies, or object to the proposed settlement;

c. Provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the Final Approval Hearing, and to state objections to the proposed settlement; and

d. Provided the time, date, and place of the Final Approval Hearing.

3. On October 19, 2023, the Court held the Final Approval Hearing to determine whether the proposed Settlement is fair, reasonable, and adequate and whether judgment should be entered dismissing this Action with prejudice. The Court reviewed the Motions, and all supporting materials, including but not limited to the Settlement Agreement, as well as the Amended Objection of Theodore H. Frank (ECF No. 133) ("Objection"). The Court also considered the oral argument of all counsel. Based on this review and the findings below the Court finds good cause to grant the Motions.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1. The Court has jurisdiction over the subject matter of this Action, all claims raised therein, and all Parties thereto, including the Settlement Class.

2. As explained herein and on the record by the Court at the Final Approval Hearing on October 19, 2023, the transcript of which is hereby incorporated by reference, the Settlement is fair, reasonable, adequate and in the best interest of Settlement Class Members under Federal Civil Procedure Rule 23(e) and under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974). *See Moses v. The New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement"). The Settlement was procedurally and substantively fair.

3.      The Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was robust. The Settlement Agreement was negotiated at arm's length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the risks inherent in litigating the Action, and with the active involvement of the Parties. The Settlement Agreement confers substantial benefits on the Settlement Class Members, is a benefit to the public interest, and will provide the Parties with repose from litigation. The Parties faced significant risks, expense, and uncertainty from continued litigation of this matter. The Settlement Agreement also treats class members equitably relative to each other. As discussed further below, the Settlement Agreement has garnered an overwhelmingly positive reaction from members of the Class with at least 2 million validated claims and only 3 opt-outs and 1 objection, and the fees and costs sought by Class Counsel are reasonable. *See* Declaration of Jeanne C. Finegan, APR of Kroll Notice Media Solutions in Connection with Implementation of Notice Plan at ECF No. 135; Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC Regarding Claim Activity at ECF No. 140.

4.      The Court grants final approval of the Settlement Agreement in full, including but not limited to the releases therein and the procedures for distribution of the Settlement Amount. All Settlement Class Members who have not excluded themselves from the Settlement Class are bound by this Final Approval Order and Judgment.

5.      The Parties shall carry out their respective obligations under the Settlement Agreement in accordance with its terms. The relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting Valid Claims, pursuant to the terms and conditions in the Settlement Agreement. The Settlement Agreement is incorporated herein in its entirety as if fully set forth herein and shall have the same force and effect as an order of this Court.

## REQUESTS FOR EXCLUSION AND ONE OBJECTION

6.      There were three people who timely requested to be excluded from the Settlement and the Settlement Class, whose names are included in Exhibit B to the Finegan Declaration at ECF No. 135 that was filed under seal (the "Opt-Out Members"). The Opt-Out Members are not bound by the Settlement Agreement or this Final Approval Order and shall not be entitled to any of the benefits afforded to Settlement Class Members under the Settlement Agreement.

7.      There was only one timely objection to the Settlement. *See* Objection. All persons who did not object to the Settlement in the manner set forth in the Settlement Agreement are deemed to have waived any objections, including but not limited to by appeal, collateral attack, or otherwise.

8.      The Objection is hereby overruled.

9.       The Objection does not object to the material terms of the Settlement with respect to what members of the Settlement Class receive; does not object to Class Counsel's being reimbursed $306,766.50 for the litigation expenses they incurred; does not object to the Service Award of $5,000 to each of the Class Representatives (for a total of $15,000); and does not object to Class Counsel's lodestar calculation.

10.      Rather, the main focus of the Objection is to the methodology used to calculate Class Counsel's fee, contending that the only methodology that can be used is based on the actual claims made in the Action. This is incorrect as there are three possible methodologies to calculate the fee, any of which by itself is sufficient to justify the amount of fees awarded here. First, the fee of $2,918,233.50 is justified by the lodestar, which is more than $3.9 million. In other words, Class Counsel are seeking a multiplier of only 0.75 (*i.e.* a negative multiplier) despite their excellent and assiduous work and significant achievement on behalf of the Class. Second, the fee is justified by the value of the settlement, which is $15 million. Class Counsel's fee is approximately 20% of this

amount. Finally, even based upon the methodology proposed by the Objection, Class Counsel's fee is, again, only 20%. There are 2,024,507 Valid Claims. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC Regarding Claim Activity at ECF No. 140. Based upon the minimum amount of $5.50 that each Claimant receives per Valid Claim pursuant to the Settlement, the total amount for Valid Claims is likely to amount to no less than $11,134,788, subject to the total Settlement Amount. When Class Counsel's fee and costs and the service awards are added together as the Objector recommends (for a total of $14,374,788), the amount of Class Counsel's fee is, again, only 20%. This is far less than the 33.33% benchmark of the Second Circuit, or the 25% that the Objector recommends.

11.     Class Counsel have done excellent work in this matter and have achieved a substantial benefit for the Class. Class Counsel are very experienced, both in class actions and in this kind of consumer litigation. Moreover, their hourly rates are commensurate with the highest quality of practice in this District and are hereby approved. The litigation was extensive, the discovery was extensive, and the factors of the time and labor extended strongly weigh in favor of the attorneys' fee award. In addition, class actions are inherently complicated, and this case in particular was complex. Class Counsel faced significant risks, expense, and uncertainty from continued litigation of this matter. Finally, the Settlement Agreement confers substantial benefits on the members of the Settlement Class and is a benefit to the public interest. Accordingly, this portion of the Objection is overruled under the totality of the factors considered under *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000): (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

12.     The Objection also claims that the Settlement Agreement has a clear-sailing agreement whereby Class Counsel and Defendants agreed that Defendants would not oppose Class Counsel seeking a fee up to a certain amount. This is incorrect, as the Settlement Agreement does not have a clear sailing provision but rather the opposite as it reserves the right of the Defendants to object to any fee sought by Class Counsel. *See* Settlement Agreement at § 5.3 ("Defendants' Rights to Oppose. Defendants reserve all rights to oppose any application by Plaintiffs' Counsel for Attorneys' Fees and Costs."). Class Counsel and Defendants came to an agreement on attorneys' fees two months after the Settlement Agreement was signed and filed with the Court after negotiations that resulted in a significant reduction in the amount of fees ultimately agreed to by the Parties from the maximum amount disclosed in the notice to the Class. *Compare* ECF No. 119-3 with ECF No. 123.

13.     The Objection also claims that the Settlement Agreement contains a segregated fee structure. Again, this is incorrect. The Settlement Agreement does not contain a segregated fees structure. Rather, the Settlement Agreement provides that the Settlement Amount of $15,000,000 will be used to pay everything associated with the Settlement, including the claims of Class Members and Class Counsel's fees, among other items. The Settlement Agreement did not insulate Class Counsel's fees from this Court's scrutiny.

14.     Finally, the Objection objects on the grounds that that the Fee Motion should have been filed at least 14 days – instead of 10 days – prior to the Objection date and that the Fee Motion did not comply with Local Rule 23.1. Both of these objections are overruled. The Fee Motion complied with Local Rule 23.1 and was timely filed.

15.     Accordingly, for these reasons stated above, in Class Counsel's Response to the Objection (ECF No. 136), and as stated on the record at the Final Approval Hearing, the Objection is hereby overruled in its entirety.

6

## CERTIFICATION OF THE SETTLEMENT CLASS

16.     Solely for purposes of the Settlement Agreement and this Final Approval Order

and Judgment, the Court hereby certifies the following Settlement Class:

> All persons who, from February 7, 2016 to June 2, 2023, purchased one or more
> A&W root beer or cream soda products labeled as "Made With Aged Vanilla" in
> the United States for personal or household use and not for resale.

> The Settlement Class specifically excludes: (a) the directors, officers, employees,
> and attorneys of Defendants and their parents and subsidiaries; (b) governmental
> entities; (c) the Court, the Court's immediate family, and Court staff; (d) the
> Honorable John Mott (Ret.) and his immediate family; (e) the Honorable Wayne
> Andersen (Ret.) and his immediate family; and (f) the three people that timely and
> properly excludes himself or herself from the Settlement Class in accordance with
> the procedures approved by the Court as identified in Exhibit B of the Finegan
> Declaration filed on October 10, 2023.

17.     The Court incorporates its preliminary conclusions in the Preliminary Approval

Order regarding the satisfaction of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

18.     The Court grants final approval to the appointment of Plaintiffs LaShawn Sharpe,

Jim Castoro and Steve Dailey as the Class Representatives and concludes that they have fairly and

adequately represented the Settlement Class and shall continue to do so.

19.     The Court grants final approval to the appointment of Michael R. Reese and Sue J.

Nam from Reese LLP and Spencer Sheehan of Sheehan & Associates, P.C. as Class Counsel for

the Settlement Class. Class Counsel have fairly and adequately represented the Settlement Class

and shall continue to do so.

**NOTICE TO THE CLASS**

20.    The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

21.    The Court finds that Defendant has satisfied the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

**ATTORNEYS' FEES AND COSTS, SERVICE AWARD**

22.    Class Counsel has applied for an award of attorneys' fees and costs incurred in this Action in the amount of $2,918,233.50 in attorneys' fees and $306,766.50 in costs, for a total of $3,225,000. For the reasons stated above, the Court finds the fee amount to be fair and reasonable and meets all the factors of both Federal Civil Procedure Rule 23 and the Second Circuit decision in *Goldberger*. Accordingly, Class Counsel's request for attorney's fees in the amount of $2,918,233.50 is granted. The Court also finds that the amount of $306,766.50 in costs – which is uncontested and includes, but is not limited to, the costs for experts and no less than nineteen (19) depositions – is also reasonable and hereby granted. Payment of the costs shall be made pursuant to Section 5.7 of the Settlement Agreement.

23.    Plaintiffs have applied for awards of service payments as Class Representatives in the amount of $5,000 to each Class Representative ("Service Awards") for a total of $15,000. The

Service Awards are uncontested. The Court finds this amount is justified by Plaintiffs' service to the Settlement Class and hereby grants the Service Awards as follows: $5,000 is awarded to LaShawn Sharpe; $5,000 to Jim Castoro; and, $5,000 is awarded to Steve Dailey for a total of $15,000. Payment of the Service Awards shall be made pursuant to Section 5.7 of the Settlement Agreement.

**RELEASES**

24.      The Court releases and forever discharges the Released Parties from each of the Released Claims, as provided in the Settlement Agreement. The Releasing Parties are permanently barred and enjoined from instituting, filing, commencing, prosecuting, maintaining, or continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory authority, or in any other court, tribunal, forum or proceeding of any kind, against any of the Release Parties that asserts any of the Released Claims. This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Final Approval Order, and the Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments. The Released Claims shall be construed as broadly as possible to ensure complete finality over this Action involving the advertising, labeling, and marketing of the Products as set forth herein. No Settlement Class Member may circumvent the spirit and intent of the release by seeking to join in any way together with and other Settlement Class Members in any action whatsoever, including any mass action under the Class Action Fairness Act or otherwise, that asserts such Released Claims. The full terms of the release described in this paragraph are set forth in Section VII of the Settlement Agreement and are specifically approved and incorporated herein by this reference.

**OTHER PROVISIONS**

25.     Defendants shall pay all amounts due under the Settlement Agreement, including without limitation sections 2.18, 3.4, 3.7, 3.11, 3.14-3.18, and 5.7 of the Settlement Agreement.

26.     The Court previously approved use of Kroll Settlement Administration as the Settlement Administrator. The Court hereby approves fees and costs to be paid to the Settlement Administrator in the amount of seven hundred and fifty thousand dollars and no cents ($750,000.00) to be used to pay (a) all costs and expenses associated with disseminating notice to the Settlement Class, including but not limited to, the Class Notice and summary Settlement Notice; and (b) all costs and expenses associated with the administration of the Settlement, including but not limited to, processing claims and fees of the Settlement Administrator.

27.     The Settlement Agreement and this Final Approval Order, and all documents, supporting materials, representations, statements and proceedings relating to the Settlement Agreement, are not, and shall not be construed as, used as, or deemed evidence of, any admission by or against either Defendant of: (a) liability, fault, wrongdoing, or violation of any law, (b) the validity or certifiability for litigation purposes of the Settlement Class, (c) the strength of any of the claims or allegations in the Complaint or any other claims that could have been asserted in the Action, or (d) the infirmity of any defenses to Plaintiffs' claims or allegations.

28.     The Settlement Agreement and this Final Approval Order, and all documents, supporting materials, representations, statements, and proceedings relating to the Settlement shall not be offered or received into evidence, and are not admissible into evidence, in any action or proceeding, except that the Settlement Agreement and this Final Approval Order may be filed in any action by either Defendant or the Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order. This Final Approval Order and the Settlement Agreement may be pleaded as a full and complete defense to any action, suit, or other proceedings that has

been or may be instituted, prosecuted, or attempted against the Released Parties in such capacity

with respect to any of the Released Claims, and may be filed, offered, received into evidence, and

otherwise used for such defense.

29.     The Court hereby dismisses the Action in its entirety with prejudice, and without

fees or costs except as otherwise provided for herein.

30.     Without affecting the finality of this Final Approval Order, the Court will retain

jurisdiction over this Action and the Parties with respect to the interpretation, implementation, and

enforcement of the Settlement Agreement for all purposes.

31.     Pursuant to Rule 54 of the Federal Rules of Civil Procedure, there is no just reason

for delay in the entry of this Final Approval Order and Judgment and immediate entry by the Clerk

of the Court is expressly directed.


NOW, THEREFORE, the Court hereby enters judgment in this matter pursuant to Rule 58

of the Federal Rules of Civil Procedure.

SO ORDERED this <u>15th</u> day of November, 2023:



_Brian M. Cogan_
**HONORABLE BRIAN M. COGAN**
**United States District Court Judge**