UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Raymond Kessler, Hartence Hill, Lazaro Rodriguez, Teresa Herendeen, and Barbara Abreu individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>The Quaker Oats Company,<br><br>Defendant. | Case No. 7:24-cv-00526 |

**DECLARATION OF PAUL J. DOOLITTLE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS**

**I.   INTRODUCTION**

I, Paul J. Doolittle, submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Service Awards, and affirm that the following is truthful and accurate:

1. I am the Chair of the Complex and Mass Action Division at Poulin, Willey, Anastopoulo, LLC, and I am one of the attorneys principally responsible for handling this case for Plaintiffs and the proposed Class. I am an attorney at law licensed to practice in the State of South Carolina, and I am admitted *pro hac vice* in this matter.

2. I am personally familiar with the facts set forth in this Declaration. If called as a witness, I could and would competently testify to the matters stated in this Declaration.

3. On March 12, 2025, the Court granted Plaintiffs' Motion to Preliminary Approve the Settlement and Certify the Class for Settlement. ECF No. 32 (Order Certifying Class)

4. The proposed class action Settlement would resolve the economic claims of purchasers of Defendant Quaker Oats Company recalled granola products (the "Class Products") for a non-reversionary common fund in the amount of $6.75 million (''Settlement Fund"). Class Counsel achieved this proposed Settlement because of their experience in cases like this and because they invested considerable time, effort, and resources into prosecuting this case.

5. The Settlement Agreement provides that Defendant will establish a Settlement Fund in the amount of $6.75 million , which will be exhausted to pay all Approved Claims, as well as any attorneys' Fee Award, Service Awards, and Notice and Other Administrative Costs that the Court approves. §1.33. Class Members who submit a Valid Claim that is not accompanied by Proof of Purchase shall receive the total of the average retail price for up to two (2) Covered Products claimed per household, with Quaker to provide the average retail prices of the Covered Products to the Class Administrator. §4.6.2. Class Members who submit a Valid Claim that is accompanied by Proof of Purchase of a Covered Product shall be entitled to receive a full refund of the amount of money he or she spent on the Covered Products that is documented by Proof of Purchase. §4.6.1. Each Settlement Class Member's payment shall be increased or decreased on a pro rata basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 4.6.4. In the event any checks issued to pay valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to a cy pres charity to be agreed upon by the parties and approved by the Court. § 4.10. All of this ensures that no settlement funds will revert to Defendant.

6. The reaction to the Settlement has been overwhelmingly favorable.

7. The Settlement achieved by Class Counsel is an excellent result for the Class and it benefits Class Members in a number of ways as detailed in the Declaration of Class Counsel

Jason Sultzer filed in support of Plaintiffs' Motion for Attorney's Fees, Litigation Expenses and Service Awards, all of which I incorporate here by reference.

8. At all times, Plaintiffs, by and through their counsel, have diligently co-prosecuted the Litigation.

9. Throughout the Litigation, Defendants have strongly contested standing, liability, damages, and class certification.

10. As outlined in the Declaration of Jason Sultzer, this Settlement materialized as a result of Class Counsels' investment.

11. The settlement provides an immediate and certain benefit to the Settlement Class and will avoid the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts. Furthermore, there are many steps between here and any potential verdict.

12. Class Counsel undertook and litigated this case on a fully contingent basis. Class Counsel assumed a very real risk in taking on this contingent fee class action. Class Counsel has demonstrated that they were prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. If this Action had continued to be litigated and Plaintiffs were ultimately unsuccessful in their claims, Class Counsel would not be entitled to recover any attorneys' fees or costs.

13. Even if Plaintiffs could have defeated a motion to dismiss, obtained a class certification order and proceeded to trial, victory before the trier of fact would have been uncertain. Such uncertainty, moreover, was compounded by the appeals virtually certain to have followed any verdict. In short, while Class Counsel believes that the claims are viable and strong, there can

be no denying the array of serious class-wide risks, any one of which could have precluded the Class and its counsel from recovering anything at all.

14. By any standard, this Settlement constitutes a favorable result made possible by the dedication and skill of Class Counsel under very difficult circumstances.

15. Moreover, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel.

## II.    QUALIFICATIONS

16. Paul Doolittle is the chair of the Complex and Mass Action Division at Poulin, Willey, Anastopoulo, LLC ("PWA") and a member in good standing of the bar of the State of South Carolina.

17. Poulin | Willey | Anastopoulo (PWA) is a civil litigation firm focused on Plaintiff's rights. With offices in South Carolina, North Carolina and Georgia, PWA lawyers have represented plaintiffs in class actions and mass tort litigation throughout the country. PWA employs over 100 dedicated legal professionals, including 27 attorneys, and is among the remaining few firms nationally that regularly tries cases to verdict. For this purpose, PWA employs an internal focus group and mock trial program that allow it to test and develop theories and case strategies from the outset.

18. PWA has served as lead counsel and in leadership steering committees in many high-profile class actions. The Firm has served as joint lead counsel on multiple state cases that were eventually consolidated to a state class action regarding *In Re OxyContin Products Liability Class Action* and served as sole lead counsel in South Carolina's first opioid state action, *Ken Love*

*et al.*, Civil Action No: 01-CP-38-01059 (SC). PWA and its attorneys served as co-lead counsel in *Day v. GEICO Cas. Co.*, et al., 5:21-cv-02103 (N.D. Cal.), *In re Columbia Univ. Tuition Refund Litig.*, 1:20-cv-03208 (S.D.N.Y.), and *Smith v. Univ. of Pennsylvania*, 2:20-cv-02086 (E.D. Pa.). We also served on leadership steering committees in *In re: Jan. 2021 Short Squeeze Tradition Litig.*, MDL 2989 (S.D. Fla.) and currently serve the same position in *In re: Recalled Abbott Instant Formula Prods. Liab. Litig.*, MDL 3037 (N.D. Ill.).

19. Further, PWA is has been appointed as interim lead or co-lead counsel in the following:

    a) *Bergeron v. Rochester Inst. of Tech.*, 6:20-cv-06283 (W.D.N.Y.)

    b) *Faber v. Cornell Univ.*, 3:20-cv-00467 (N.D.N.Y.)

    c) *Ford v. Rensselaer Polytechnic Inst.*, 1:20-cv-00470 (N.D.N.Y)

    d) *In re Univ. of Miami COVID-19 Tuition and Fee Refund Litig.*, 20-cv-60851 (S.D. Fla.)

    e) *Levin v. Bd. Of Regents of Univ. of Colorado*, 20CV31409 (St. Ct. Denver Co.)

    f) *Montesano v. Catholic Univ. of America*, 1:20-cv-cv-01496 (D.D.C.)

    g) *Qureshi v. American Univ.*, 1:20-cv-01141 (D.D.C.)

    h) *Ryan v. Temple Univ.*, 5:20-cv-02164 (E.D. Pa.)

20. To briefly summarize my experience, I have been an attorney for over 25 years and during that time, the majority of my practice has been devoted to complex litigation and class actions involving product liability, defective building products, consumer claims and personal injury matters. I have served as court-appointed class counsel in a large number of class actions.

21. My firm and I regularly prosecute complex consumer class actions involving consumers who have been victimized by unfair or deceptive practices and have one of the best track records in the country when it comes to developing practical damages methodologies,

obtaining prompt relief for consumers victimized by defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct, as well as working cooperatively with others. Through smart, efficient, strategy and tailored creative problem solving my firm and I have recovered hundreds of millions of dollars for victims of defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct. We have accomplished these outstanding global and class settlements.

22. In the process of handling these cases, PWA and Mr. Doolittle have devoted an extensive amount of time to the investigation, litigation, settlement, and administration of these class actions.

### III. SUMMARY OF PWA'S SIGNIFICANT WORK AND UNREIMBURSED LITIGATION EXPENSES

23. Jason Sultzer summarized Class Counsel's efforts leading to the Settlement including pre-suit investigation, litigation efforts and the mediation in his Declaration, all of which I incorporate herein by reference. I will summarize PWA's work in conjunction in this matter, which led to the Settlement.

24. From the inception of this case to the present, PWA vigorously pursued this litigation, committing their services and resources and advancing funds out-of-pocket to prosecute it for the Plaintiffs and the Class. PWA provided these services and advanced necessary litigation expenses with no assurance of compensation or repayment and have received no compensation or reimbursement of their expenses. PWA's compensation and expense reimbursement has at all times in this litigation been entirely contingent upon successfully obtaining relief.

25. PWA started its investigation into the contamination of Defendants' Products with *Salmonella* in December of 2023. PWA extensively investigated and analyzed, among other

things, Defendant's marketing campaign, the relevant guidelines concerning labeling and advertising disclosure requirements for consumer products like the granola products at issue here, EPA, FDA, PSC and CDC regulations and guidelines regarding the presence of *Salmonella* in consumer products, the scientific research concerning the dangers of *Salmonella* and research regarding how Defendant should have known the Products contained or were at the risk of containing bacteria (including *Salmonella*). PWA also conferred with potential experts pertaining to sourcing of ingredients, testing/screening for bacteria and economic damages model, and conferred with other counsel in advance of filing the complaint in the above captioned matter.

26. PWA diligently, skillfully and efficiently investigated and prosecuted this litigation. Class Counsel did so also in the face of skilled, professional and determined opposition from Defendants and its capable counsel. These efforts required analysis and briefing of complex legal and factual issues, numerous meetings, extensive negotiations and other communications with defense counsel and third parties.

27. More specifically, PWA' and Class Counsel's efforts on behalf of the Settlement Class included, *inter alia*, the following:

   a) Investigating the underlying factual background regarding the contamination of the Class Products with *Salmonella*, researching industry standards regarding sourcing of ingredients, screening and testing for bacteria, and developing legal theories of the case regarding the misbranding and adulteration of the products;

   b) Investigating and researching the applicable legal standards for product contamination cases;

   c) Vetting and working with experts in the field of consumer products, including sourcing of ingredients;

   d) Vetting and working with experts in the fields of economic and determining economic loss on a class-wide basis in consumer class actions;

e) drafting the complaint;

f) conducting legal research and analysis regarding the claims asserted by Plaintiffs as well as certification of consumer claims on a national basis and statewide basis;

g) conducting informal (i.e. settlement) discovery pre- and post-mediation;

h) participating in case strategy decisions and discussions with other Class Counsel;

i) engaging in meet-and-confer conferences with defense counsel regarding the proposed motion to dismiss as well as about discovery, mediation, and settlement-related issues;

j) conducting numerous arms-length, independent settlement negotiations with respected JAMS mediator Jay C. Gandhi;

k) assist in drafting settlement agreement along with the requisite exhibits, including claim forms, content of settlement webpage, opt out forms, long and short form notice forms, and other related documents;

l) assist in researching and selecting the claims administrator (Angeion);

m) developing and implementing the notice plan with claims administrator/notice provider Angeion;

n) working with Angeion to prepare and send notice of the Settlement to putative Settlement Class Members, respond to inquiries from Settlement Class Members and others, and supervise the claims administration process;

o) developing and implementing the claims process with the administrator/notice provider Angeion;

p) troubleshooting the claims process in conjunction with defendant's counsel and claims administrator/notice provider Angeion;

q) assist in preparing and drafting motion for preliminary approval

r) preparing and drafting motion for final approval, along with supporting documents

28. Further, our work on this litigation has not ended and will not end until the last settlement distribution payment is made to eligible Settlement Class Members. We expect to expend additional hours going forward, which of course are not included in Class Counsel's lodestar reported below, concerning the Settlement approval and administration processes, preparing for the Final Approval Hearing, responding to Settlement Class Members and other inquiries and, if the Court grants final approval, overseeing Settlement administration.

29. In connection with this work, Class Counsel expended a total of 107.83 hours.

30. At the prevailing market rate per the Laffey matrix, these hours translate into $53,445.31 total lodestar as of June 11, 2025. Attached, as Exhibit A, is a full billing report.

31. We can state at all times, Class Counsel took care to staff the matter efficiently and avoided unnecessary duplication of effort.

32. Class Counsel incurred $21,441.41 in reasonable and necessary litigation costs. Attached, as Exhibit A, is a full expense report.

33. These costs include all filing, general litigation, expert costs, discovery costs, travel, and mediation-related expense that were incurred in the normal course of business and were essential to the successful prosecution of this lawsuit.

34. None of Class Counsel's expenditures have been reimbursed yet.

## IV.    SERVICE AWARDS

35. Class Counsel requests a service award of $500 for the Class Representative Plaintiffs. The named Plaintiffs were subjected to an extensive vetting interview. The named plaintiffs also provided information to substantiate the purchased products. The plaintiffs took on the responsibilities of a class representative, and were willing to be deposed, provide discovery, and testify at trial.

## V.  CONCLUSION

For the reasons set forth in this declaration, Class Counsel respectfully requests that the Court grant Plaintiffs' Motion for an award of Attorneys' Fees, Expenses and Service Awards for Class Representative Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of June 2025 in Charleston, South Carolina.

/s/ Paul Doolittle
Paul Doolittle

# EXHIBIT A

|   | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | **Individual** | **Position** | **Rate** | **Time** | **Total Billables** |
| 2 | Abigail Wood | Paralegal/Clerk | 239 | 4.4 | $1,051.60 |
| 3 | Blake G. Abbott | Attorney 4-7 years | 538 | 10.7 | $5,756.60 |
| 4 | Cristine Philipose | Paralegal/Clerk | 239 | 3.1 | $740.90 |
| 5 | Coleman Hall | Paralegal/Clerk | 239 | 2 | $478.00 |
| 6 | Jacqueline Dufour | Attorney 1-3 years | 437 | 2 | $874.00 |
| 7 | Deborah Arroyo | Attorney 1-3 years | 437 | 0.53 | $231.61 |
| 8 | Julia Pirillo | Attorney 1-3 years | 437 | 2 | $874.00 |
| 9 | Madison Range | Paralegal/Clerk | 239 | 2 | $478.00 |
| 10 | Marina Wellman | Paralegal/Clerk | 239 | 15.9 | $3,800.10 |
| 11 | Marnacia Williams | Paralegal/Clerk | 239 | 4 | $956.00 |
| 12 | Neil Williams | Attorney 4-7 years | 538 | 11.5 | $6,187.00 |
| 13 | Paul Doolittle | Attorney 20+ years | 997 | 18.4 | $18,344.80 |
| 14 | Ralph D'Agostino | Attorney 4-7 years | 538 | 5 | $2,690.00 |
| 15 | Roy T. Willey, IV | Attorney 8-10 years | 777 | 7.7 | $5,982.90 |
| 16 | Tony Cifuentes | Paralegal/Clerk | 239 | 15.8 | $3,776.20 |
| 17 | Zachary Bieber | Attorney 1-3 years | 437 | 2.8 | $1,223.60 |
| 18 |  |  |  |  |  |
| 19 |  |  |  |  |  |
| 20 |  |  |  |  |  |
| 21 |  |  |  |  |  |
| 22 |  |  |  |  |  |
| 23 |  |  |  | **TOTAL:** | **$53,445.31** |

|   | A | B | C |
|---|---|---|---|
| 1 | **Expenses:** | | |
| 2 | Court fees: | $ 500.00 | |
| 3 | Admin expenses: | $ 150.00 | |
| 4 | Mediation: | $ 15,500.00 | |
| 5 | Meeting and Travel Expenses: | $ 708.00 | |
| 6 | Service: | $ 170.00 | |
| 7 | Legal Research: | $ 4,413.41 | |
| 8 | | | |
| 9 | | | |
| 10 | | **TOTAL:** | **$ 21,441.41** |