**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara**
**Abreu individually and on behalf of all**
**others similarly situated,**

        **Plaintiffs,**

**v.**                                  **Case No.: 7:24-cv-00526**

**The Quaker Oats Company,**

        **Defendant.**

----------------------------------------------------------x

## DECLARATION OF CHARLES E. SCHAFFER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

### I.    INTRODUCTION

I, Charles E. Schaffer, submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Service Awards, and affirm that the following is truthful and accurate:

1.    I am a partner at Levin Sedran & Berman, LLP, and I am one of the attorneys principally responsible for handling this case for Plaintiffs and the proposed Class. I am an attorney at law licensed to practice in the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* in this matter.

2.    I am personally familiar with the facts set forth in this Declaration. If called as a witness, I could and would competently testify to the matters stated in this Declaration.

3.    On March 12, 2025, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement in this action and granted related relief. ECF No. 34 (Preliminary Approval Order).

4.    The proposed class action Settlement Agreement resolves claims for economic harm regarding Defendants' use of allegedly misleading labels on, and marketing and promotion concerning, the potential presence of Salmonella in the Covered Products and provides

significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $6.75 million, with no right to reversion. ("Settlement Fund"). Importantly, this Settlement will expand upon the recall initiated by Quaker oats Company on December 15, 2023, and expanded on January 11, 2024 (the "Recall"), by providing monetary relief to Class Members who did not receive a refund through the Recall.  The Settlement Agreement excludes the release of any claims for personal or bodily injury.

      5.      The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $6.75 million, which will be exhausted to pay all Valid Claims, as well as any Attorneys' Fee, Cost and Incentive Awards,[1] and settlement administration costs that are approved by the Court. §1.33. In addition, Quaker has agreed to pay a $100,000 Initial Settlement Administration Payment for the purposes of covering notice and administration costs that is separate and apart from the Settlement Fund so that the costs of providing notice and administering the settlement likely will not deplete the funds available for the proposed class members. § 4.1. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive the full purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 4.6.1. Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive the average retail price for up to two (2) Covered Products claimed per household. §4.6.2. Settlement Class Members who obtained a refund from the Recall may be able to receive further relief from the settlement. If a Settlement Class Member submitted a claim in the Recall, the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member has received or shall receive from the Recall (provided that the payment shall not be reduced below $0.00). § 4.6.3. Each Settlement

---

[1] Defendants have agreed to pay service awards to the Class Representatives for up to $500 per representative (See §7.2).

Class Members' payment shall be increased or decreased on a pro rata basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 4.6.4. In the event any checks issued to pay Valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to a *cy pres* charity to be agreed upon by the parties and approved by the Court. § 4.10. All of this ensures that no settlement funds will revert to Defendants.

6.    Class Counsel achieved this proposed Settlement because of their experience in cases like this and because they invested considerable time, effort, and resources into prosecuting this case. By any measure, Class Counsels' efforts have been an unqualified success, and the Class Members have responded in kind, with thousands of Claims submitted, one objections and only 15 requests for exclusion.

7.    The reaction to the Settlement has been overwhelmingly favorable.

8.    Only one objection has been filed to the Settlement or attorneys' fees request and only 15 requests for exclusion have been received by the Claims Administrator.

9.    The Settlement achieved by Class Counsel is an excellent result for the Class and it benefits Class Members in a number of ways as detailed in the Declaration of Class Counsel Jason Sultzer filed in support of Plaintiffs' Motion for Attorney's Fees, Litigation Expenses and Service Awards, all of which I incorporate hearing by reference.

10.    At all times, Plaintiffs, by and through their counsel, have diligently co-prosecuted the Litigation.

11.    Throughout the Litigation Defendants have strongly contested standing, liability, damages, and class certification.

12.    As outlined in the Declaration of Jason Sultzer this Settlement materialized as a result of Class Counsels' investment of considerable time, effort and resources into the prosecution of this case. Through the Settlement, Class Counsel has made $6.75 million in

valuable benefits available to Class Members.

13.     The settlement provides an immediate and certain benefit to the Settlement Class and will avoid the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts.  Furthermore, there are many steps between here and any potential verdict.

14.     Class Counsel undertook and litigated this case on a fully contingent basis. Class Counsel assumed a very real risk in taking on this contingent fee class action. Class Counsel has demonstrated that they were prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. If this Action had continued to be litigated and Plaintiffs were ultimately unsuccessful in their claims, Class Counsel would not be entitled to recover any attorneys' fees or costs.

15.     Even if Plaintiffs could have defeated a motion to dismiss, obtained a class certification order and proceeded to trial, victory before the trier of fact would have been uncertain. Such uncertainty, moreover, was compounded by the appeals virtually certain to have followed any verdict. In short, while Class Counsel believes that the claims are viable and strong, there can be no denying the array of serious class-wide risks, any one of which could have precluded the Class and its counsel from recovering anything at all.

16.     By any standard, this Settlement constitutes a favorable result made possible by the dedication and skill of Class Counsel under very difficult circumstances.

17.     Moreover, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel.

## II.    QUALIFICATIONS

18.    Charles Schaffer is a partner with Levin Sedran & Berman LLP and a member in good standing of the bar of the Commonwealth of Pennsylvania.

19.    Levin Sedran is one of the nation's preeminent and most experienced Plaintiff class-action firms with extensive experience and expertise in consumer protection, product liability, antitrust, securities, financial, commercial and other complex class-action litigation. Levin Sedran has been recognized by its peers and Courts nationwide for its successful class-action leadership. As a result of its success representing consumers in complex litigation throughout the country, Levin Sedran has been distinguished as a Tier I class-action firm in the Best Law Firms rankings published in the U.S. News and World Report Best Law Firms. It also ranked Levin Sedran Tier I for personal injury and mass tort firms. Levin Sedran was also named to THE NATIONAL LAW JOURNAL'S insurance list of America's Elite Trial Lawyers. Members of Levin Sedran are listed in the LEGAL 500, LAW DRAGON 500, Martindale Hubbell's Directory of Preeminent Attorneys, as in the Best Lawyers in America. *See generally* Levin Sedran firm resume at ECF Doc. 13-4.

20.    Levin Sedran pioneered the use of class actions and mass actions in the United States and its work has resulted in numerous record-breaking recoveries over the past four decades. Just for example:

   a)   *In re: Asbestos School Litigation*, No. 83-0263 (E.D. Pa.) (Levin Sedran as member of Executive Committee and Lead Trial Counsel obtained a certification of a nationwide class and settlement on behalf of school districts);

   b)   *In re: Diet Drug Product Liability Litigation*, MDL No. 1203 (E.D. Pa.) (Levin Sedran as Co-Lead Counsel obtained a $6.75 billion-dollar settlement on behalf of consumers who ingested Fen Phen);

   c)   *In re: The Exxon Valdez*, No. 89-00095 (D. Alaska) (Levin Sedran as a member of the Trial and Discovery Committee represented fishermen, native

corporations, native villages, native claims and business claims in this mass tort. After a jury trial, Plaintiffs obtained a judgment of $5 billion in punitive damages - at the time the largest punitive damage verdict in U.S. history. Later reduced to $507.5 million by the U.S. Supreme Court);

d)  *In re: Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D. La.) (Levin Sedran as Lead Counsel obtained inter-related settlements involving various suppliers, builders, installers, insurers and manufacturers of Chinese drywall valued in excess of $1 billion);

e)  *In re: The Vioxx Product Liability Litigation*, MDL No. 1657 (E.D. La.) (As a member of the PSC and Plaintiffs' Negotiating Committee, Levin Sedran was instrumental in achieving a $4.85 billion-dollar settlement on behalf of consumers who ingested Vioxx);

f)  *In re: Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.) (As Co-Lead counsel in the decade long air cargo antitrust litigation Levin Sedran obtained 28 inter-related settlements against air cargo service providers totaling $1.2 billion dollars);

g)  *In re: Galanti v. The Goodyear Tire and Rubber Co.* ("*Entran II*"), No. 03-209 (D.N.J.) (As a member of the Executive Committee Levin Sedran was instrumental in negotiating and achieving the creation of a common fund in the amount of $344,000,000);

h)  *In re: National Football* League *Players' Concussion Injury Litigation*, MDL No. 2323 (E.D. Pa.) (As Subclass Counsel working along with Lead Counsel obtained an uncapped settlement valued in excess of $1 billion dollars on behalf of NFL football players);

i)  *In re Phillips Recalled CPAP, BI-Level PAP, Mechanical Ventilator Products Liability Litigation*, MDL No. 3014 (W.D. Pa.) (As Co-Lead Counsel Levin Sedran obtained a $1.1biilion settlement on behalf of consumers who suffered personal injuries from use of CPAP machine and a $445 million economic loss settlement to compensate consumers and third-party payers for payment for the devices);

j)   *In re East Palestine Train Derailment*, No 4:230-cv-00242 (N.D. OH.) (As member of Plaintiffs' Steering and discovery committees Levin Sedran helped achieve a $600 million settlement for residents, property owners and businesses within 20 miles of the derailment site); and

k)  In re: Aqueous Film-Forming Foams Products Liability Litigation, MDL No. 2873 (D.S.C.) (As member of the Plaintiffs' Steering Committee Levin Sedran was instrumental in developing evidence in discovery and working as a member of the trial team leading to settlements on behalf of public water systems in excess of $13 billion to remove or remediate PFAS from the public water supply).

21.    To briefly summarize my experience, I have been an attorney at Levin Sedran for over 27 years and during that time, the entirety of my practice has been devoted to complex litigation and class actions involving product liability, defective building products, consumer claims and personal injury matters. I have served as court-appointed class counsel in more than 40 class actions.

22.    My firm and I regularly prosecute complex consumer class actions involving consumers who have been victimized by unfair or deceptive practices and have one of the best track records in the country when it comes to developing practical damages methodologies, obtaining prompt relief for consumers victimized by defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct, as well as working cooperatively with others. Through smart, efficient, strategy and tailored creative problem-solving my firm and I have recovered billions of dollars for victims of defective products, unfair or deceptive practices, consumer fraud, and other corporate malfeasance such as anti-competitive conduct.[2] We have accomplished these outstanding global and class settlements while zealously prosecuting the action while minimizing costs and maximizing value.

---

[2] For example, I was instrumental in bring about settlements in *inter alia*, *In re Phillips Recalled CPAP, BI-Level PAP, Mechanical Ventilator Products Liability Litigation*, MDL No. 3014 (W.D. Pa.)($1.1biilion settlement on behalf of consumers who suffered personal injuries from use of CPAP machine and a $445 million economic loss settlement to compensate consumers and third party payers for payment for the devices); *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873 (D.S.C.) (common fund settlements on behalf of public water systems with 3M for $10.3 billion and Dupont for $1.19 billion to remove or remediate PFAS from the public water supply); *In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) ($815,000,000 nationwide settlement for purchasers of defective shingles*), In re CertainTeed Fiber Cement Siding Litigation*, MDL No: 2270 (E.D. Pa.) ($103.9 million nationwide settlement for purchasers of defective siding), *In re: JP Morgan Modification Litigation*, MDL No. 2290 (D. Mass.) (where defendant failed to offer required mortgage modifications , nationwide settlement approved by the court and valued at $506 million); *Herrera v. Wells Fargo Bank, N.A.*, No. 8:18-cv-00332 (C.D. Cal.) (nationwide settlement in excess of $300 million to repay borrowers for prepaid GAP insurance and unwarranted fees); *In re Wells Fargo Ins. Mktg. Sales Prac. Litig.*, MDL No. 2797 (C.D. Cal) ($423.5 million nationwide settlement to repay borrowers for unnecessary insurance and fees). *See also* Levin Sedran's Resume at ECF Doc. 13-4.

23.    My appointments in MDL Litigation include *inter alia*: *In re Moveit Customer Data Security Breach Litigation,* MDL 2082 (D. Mass.) (Plaintiffs' Co-lead Counsel); *In re AT&T Inc., Customer Data Breach Security Litigation,* MDL No. 3114 (N.D. Tex.) (appointed to Plaintiffs' Steering Committee); *In re Change Healthcare, Inc. Customer Data Security Breach Litigation,* MDL 3108 (D. Minn.) (appointed to Plaintiffs' Steering Committee); *In re Overby-Seawell Company Customer Data Security Breach Litigation*, MDL No. 3056 (N.D. Ga.) (appointed to Plaintiffs' Executive Committee); *In re: Chantix (Varenicline) Marketing, Sales Practices and Products Liability Litigation (No. II)* MDL No. 3050 (S.D.N.Y.) (appointed Co-Lead Counsel); *In re Phillips Recalled CPAP, BI-Level PAP, Mechanical Ventilator Products Liability Litigation (Phillips)*, MDL 3014 (W.D. Pa.) (appointed Plaintiffs' Discovery Liaison Counsel for Phillips and SoClean MDLs), *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL 2873 (D.S.C.) (Plaintiffs Steering Committee); *In In re: Apple Inc. Device Performance Litigation*, MDL 2827 (N.D. Cal.) (Plaintiffs' Executive Committee); *In re: Intel Corp. CPU Marketing Sales Practices and Products Liability Litigatio*n, MDL 2828 (D. Or.) (Plaintiffs' Steering Committee*); In re: Wells Fargo Insurance Marketing Sales Practices Litigation*, MDL No. 2797 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: JP Morgan Modification Litigation*, MDL No. 2290 (D. Mass.) (Plaintiffs' Co-lead Counsel); *In re: IKO Roofing Products Liability Litigation*, MDL No. 2104 (C.D. Ill.) (Plaintiffs' Co-lead Counsel); *In re: HardiePlank Fiber Cement Siding Litigation*, MDL No. 2359 (D. Minn.) (Plaintiffs' Executive Committee); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Executive Committee); In re: Azek Decking Sales Practice Litigation, No. 12-6627 (D.N.J.) (Plaintiffs' Executive Committee); *In re: Pella Corporation Architect and Designer Series Windows Marketing Sales Practices and Product Liability Litigation*, MDL No. 2514 (D.S.C.) (Plaintiffs' Executive Committee); *In re: Navistar Diesel Engine Products*

*Liability Litigation*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Steering Committee); *In re: CitiMortgage, Inc. Home Affordable Modification Program ("HAMP")*, MDL No. 2274 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: Carrier IQ Consumer Privacy Litigation*, MDL No. 2330 (N.D. Cal.) (Plaintiffs' Executive Committee); *In re: Dial Complete Marketing and Sales Practices Litigation*, MDL No. 2263 (D.N.H.) (Plaintiffs' Executive Committee); *In re: Emerson Electric Co. Wet/Dry Vac Marketing and Sales Litigation*, MDL NO. 2382 (E.D. Miss.) (Plaintiffs' Executive Committee*); In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D.N.H.) (Plaintiffs' Executive Committee); and *Gold v. Lumber Liquidators, Inc.*, No.3:14-cv-05373-TEH (N.D. Cal.) (Plaintiffs' Executive Committee). I have also served in leadership positions in class actions which were not consolidated in an MDL. *See* ECF Doc. 13-4 In addition, I have served as member of litigation teams where Levin Sedran was appointed to leadership positions in, *inter alia, In re Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D. La*); In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.).

24.     Of particular relevance to this litigation, I have previously served in leadership as well as a part of litigation teams in class actions representing victims of unfair trade practices and consumer fraud. For instance, I was instrumental in bringing about settlements in national class actions involving inter alia roofing shingles and siding. *See e.g. In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) (roofing shingles); *In re CertainTeed Fiber Cement Siding Litigation*, MDL No.: 2270 (E.D. Pa.) (siding) and *In re IKO Roofing Shingle Products Liability Litigation*, MDL No.: 2104 (C.D. Ill.) (roofing shingles). *See* also Levin Sedran's Firm Resume at ECF Doc. 33-5. With respect to consumer

goods and products, I was instrumental in bringing about national settlements, *inter alia*, in *In re Hills Pet Nutrition, Inc.*, *Dog Food Products Liability Litigation*, MDL No. 2887 (D. Kas.) (dog food); *In re Apple Inc. Device Performance Litigation*, MDL 2827 (N.D. Cal.) (phone); *United Desert Charities, et al v. Sloan Valve Company, et al*, No. 12-6878 (C.D. Cal.) (toilet); *In re Navistar Diesel Engine Products Liability Litigation*, MDL No. 2223 (N.D. Ill.) (engine) *In re: Azek Decking Sales Practice Litigation*, Civil Action No.: 12-6627 (D. NJ) (composite deck); *In re: Carrier IQ Consumer Privacy Litigation*, MDL No.: 2330 (N.D. Cal.) (phone); *Pollard v. Remington Arms Company, LLC*, Case No. 4:13-cv-00086-ODS (W.D. Mo.) (rifle); *Leach v. Honeywell International, Inc.*, Case 1:14-cv-12245-LTS (D. Mass) (humidifier); *In re: Dial Complete Marketing and Sales Practices Litigation*, MDL No.: 2263 (D. NH) (antibacterial soap); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Marketing and Sales Practice Litigation*, (D.N.H.) (antibacterial soap); *Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05 (N.D. Cal.) (flooring); *In re Deva Concepts Products Liability Litigation*, No. 1:20-cv-01234 (S.D.N.Y.) (shampoo), *Declid v. Tco Hot Acquisition LLC et. al.*, No., 1:21-cv-09569 (S.D.N.Y.) (aerosol spray deodorant contaminated with benzene); *Goldstein v. Henkel Corporation et al.*, No. 3:22 – CV – 00164 (D. Conn) (aerosol spray deodorant contaminated with benzene); *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*, No. 1:22-cv-00291-BMC (E.D.N.Y.) (sunscreen contaminated with benzene); *Catalano v. Lyons Magnus, LLC et. al.,* No. 7:22- cv-06867 (S.D.N.Y.) (specialty drinks contaminated with bacteria); *Swetz v. The Clorox Company*, No. 7:22-cv-09374 (S.D.N.Y.) (cleaning product contaminated with bacteria): *Barnes v. Unilever United States Incorporated,* No. 1:21-cv-06191 (N.D. Ill.) (aerosol spray deodorant contaminated with benzene); *Patora v. Colgate-Palmolive Co.,* No. 7:23-cv-01118 (S.D.N.Y.) (cleaning product contaminated with bacteria); *In re Midwestern Pet Foods Marketing Sales Practice and Product Liability Litigation*, No. 3:21-cv-00007 (S.D. Ind.) (dog food contaminated with

aflatoxin and salmonella). I have prosecuted these cases from their inception, through discovery, to certification of class(es), to settlements and in some instances to trial.

25.     In the process of handling these cases, Levin Sedran and Mr. Schaffer have devoted an extensive amount of time to the investigation, litigation, settlement, and administration of these class actions.

## III.    SUMMARY OF LEVIN SEDRAN & BERMAN LLP'S SIGNIFICANT WORK AND UNREIMBURSED LITIGATION EXPENSES

26.     Jason Sulzer summarized Class Counsel's efforts leading to the Settlement including pre-suit investigation, litigation efforts and the mediation in his Declaration, all of which I incorporate herein by reference. I will summarize Levin Sedan's work in conjunction in this matter which led to the Settlement.

27.     From the inception of this case to the present, Levin Sedran vigorously pursued this litigation, committing their services and resources and advancing funds out-of-pocket to prosecute it for the Plaintiffs and the Class. Levin Sedran provided these services and advanced necessary litigation expenses with no assurance of compensation or repayment and have received no compensation or reimbursement of their expenses. Levin Sedran's compensation and expense reimbursement has at all times in this litigation been entirely contingent upon successfully obtaining relief.

28.     Leven Sedran started its investigation into the contamination of Defendants' products with bacteria and Defendants' corresponding false and misleading advertising in early 2024. Levin Sedran extensively investigated and analyzed, among other things, Defendant's marketing campaign, the relevant guidelines concerning labeling and advertising disclosure requirements for consumer products at issue here, FDA, EPA and CDC guidelines regarding the presence of *Salmonella* and other types of bacteria in consumer products, the scientific research

concerning the dangers of bacteria (including *Salmonella*) and research regarding how Defendant should have known the Products contained or were at the risk of containing bacteria (including *Salmonella*). Levin Sedran also interviewed and conferred with experts pertaining to sourcing of ingredients, testing/screening for bacteria, dangers of bacteria from ingestion, and economic damages model, and conferred with other counsel in advance of filing the complaint in the above captioned matter.

29.    Levin Sedran diligently, skillfully and efficiently investigated and prosecuted this litigation. Class Counsel did so also in the face of skilled, professional and determined opposition from Defendants and its capable counsel. These efforts required analysis and briefing of complex legal and factual issues, numerous meetings, extensive negotiations and other communications with defense counsel and third parties.

30.    More specifically, Levin Sedran' and Class Counsel's efforts on behalf of the Settlement Class included, *inter alia*, the following:

   a)  investigating the underlying factual background regarding the contamination of the Class Products with bacteria, including *Salmonella,* researching industry standards regarding sourcing of ingredients, screening and testing for bacteria, interviewing industry and supply experts regarding sourcing of ingredients for the products as well as preservatives to use to  protect against bacterial contamination, and developing legal theories of the case regarding the misbranding and adulteration of the products;

   b)  investigating and researching the applicable legal standards for product defect cases involving food products such as the Class Products;

   c)  vetting and working with experts in the field of consumer products, including sourcing of ingredients, as well as screening and testing for bacteria;

   d)  vetting and working with experts in the fields of economics and determining economic loss on a class-wide basis in consumer class actions;

   e)  drafting the complaints;

f)  conducting legal research and analysis regarding the claims asserted by Plaintiffs as well as certification of consumer claims on a national basis and statewide basis;

g)  conducting informal (*i.e.* settlement) discovery pre-and post-mediation;

h)  participating in case strategy decisions and discussions with other Class Counsel;

i)  conducting numerous arms–length, independent settlement negotiations with the mediator,  Judge Jay C. Gandhi (Ret.);

j)  drafting the settlement agreement along with the requisite exhibits, including claim forms, content of settlement webpage, opt out forms, long and short form notice forms, and other related documents;

k)  researching and selecting the claims administrator (Angeion),

l)  developing and implementing the notice plan with claims administrator/notice provider Angeion;

m) working with Angeion to prepare and send notice of the Settlement to putative Settlement Class Members, respond to inquiries from Settlement Class Members and others, and supervise the claims administration process;

n)  developing and implementing the claims process with the administrator/notice provider Angeion;

o)  troubleshooting the claims process in conjunction with defendant's counsel and claims administrator/notice provider Angeion;

p)  speaking with class members who contacted class counsel regarding filing of claim forms;

q)  preparing and drafting the motion for preliminary approval of the Settlement;

r)  preparing and drafting the motion for attorneys' fees, litigation costs and service awards;

s)  preparing and drafting the motion for final approval of the Settlement.;

t)  analyzing and responding to opt outs from the settlement and objection to the settlement.

31.    Further, our work on this litigation has not ended and will not end until the

last settlement distribution payment is made to eligible Settlement Class Members. We expect to

expend additional hours going forward, which of course are not included in Class Counsel's lodestar reported below, concerning the Settlement approval and administration processes, preparing for the Final Approval Hearing, responding to Settlement Class Members and other inquiries and, if the Court grants final approval, overseeing Settlement administration.

32.    The chart below details the hours billed and the amount billed at current rates through July 9, 2025, for Levin Sedran attorneys.

| Attorney | Total Hours | Hourly Rate | Amount |
|---|---|---|---|
| **Charles E. Schaffer** | 188.90 | $1025 | $193,622.50 |
| **Total:** | **188.90** | | **$193,622.50** |

33.    This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by Levin Sedran.

34.    Shown above is a true and correct summary identifying the attorneys who have worked on this litigation, the number of hours those individuals have worked, their regular hourly billing rates, and their respective lodestar values. The detailed descriptions of the time spent by the attorneys and other professionals of my firm in this litigation was prepared from contemporaneous, daily time records prepared and maintained by my firm. The lodestar figure is based on the ordinary professional billing rates that my law office charges clients in class action litigation. Expenses are accounted for and billed separately, without markup, and are not duplicated in the professional billing rates. Further details regarding the litigation and trial experience of each professional can be found, to the extent available, in the firm resume. *See* ECF Doc. 13-4.

35.    The hourly rates shown in the Summary Chart above are the usual and customary lodestar rates charged in Philadelphia, and the national venues in which the firm typically handles cases for each individual doing the type of work performed in this litigation.

These rates were not adjusted, notwithstanding the complexity of this litigation, the skill and tenacity of the opposition, the preclusion of other employment, the delay in payment, or any other factors that could be used to justify higher hourly compensation. The rates reflect Levin Sedran's experience in the field, the complexity of the matters involved in this litigation and have not been adjusted.

36.    These lodestar amounts were derived from contemporaneous daily time records compiled on this matter, which are recorded in our computerized database. The firm requires regular and contemporaneous recording of time records, which occurred in this case. I oversaw the day-to-day activities in the litigation and reviewed these printouts and backup documentation when necessary. The purpose of the reviews were to confirm both the accuracy of the entries on the records as well as the necessity for, and reasonableness of the time and expenses that my firm committed to the litigation. I believe that the time reflected in the firm's lodestar calculation and the expense for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of this litigation.

37.    The lodestar summary reflects Levin Sedran's experience in the field, the complexity of the matters involved in this litigation, and the prevailing rate for providing such services.

38.    The number of hours that Levin Sedran has devoted to pursuing this litigation is reasonable and appropriate, considering, among other factors: (a) the scope and high stake's nature of this proceeding; and b) the novelty and complexity of the claims asserted in the litigation.

39.    Levin Sedran is a well-respected leader in the fields of product liability, consumer fraud, antitrust, securities, financial, commercial and other complex class-action litigation. The Levin Sedran rates, which were used for the purposes of calculating the lodestar

15

here, are based on prevailing rates for national class-action work and have been approved by multiple courts across the country. For instance, Levin Sedran's and Charles E. Schaffer's rates were approved by courts in the following cases:

    a)   *In re: Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La. 2011);

    b)   *In re: Propulsid Products Liability Litigation*, MDL No. 1355 (E.D. La);

    c)   *In re: CertainTeed Roofing Shingle Products Liability Litig.*, No. 07-MDL-1817 (E.D. Pa. 2010);

    d)   *In re: Davis v. SOH Distribution Company, Inc.*, No. 09-CV-237 (M.D. Pa.);

    e)   *In re: Wellbutrin SR Antitrust Litigation*, No. 04-5525 (E.D. Pa.);

    f)   *In re: Gwaizdowski v. County of Chester*, No. 08-CV-4463 (E.D. Pa.);

    g)   *In re: Meneghin v. The Exxon Mobile Corporation*, No. OCN-002697-07 (Superior Court, Ocean County, NJ 2012);

    h)   *In re: Melillo v. Building Products of Canada Corp.*, No. 1:12-CV-00016-JGM (D. Vt. 2012);

    i)   *In re: Vought v. Bank of America*, No. 10-CV-2052 (C.D. Ill. 2013*);*

    j)   *In re: Eliason v. Gentek Building Products, Inc.*, No. 10-2093 (N.D. Ohio. 2013); and *In re: Navistar Diesel Engine Products Liability Litigation,* MDL No. 2223 (N.D. Ill. 2013).

    40.    Numerous courts have recently approved significant fee awards for Levin Sedran and Charles E. Schaffer, based on their customary hourly rate. Twenty recent decisions are:

    a)   *Smith v. Volkswagen Group of America, Inc.*, No. 13-cv-370 (S.D. Ill. 2014);

    b)   *In re: CertainTeed Fiber Cement Siding Litigation*, MDL No. 2270 (E.D. Pa. 2014);

    c)   *In re: JP Morgan Chase Mortgage Modification Litigation*, No. 11-md-2290 (D. Mass. 2014);

d)  *United Desert Charities v. Sloan Valve Company*, No. 12-6878 (C.D. Cal. 2014);

e)  *Gulbankian v. MW Manufacturers, Inc.*, No. 10-10392 (D. Mass.);

f)  *Pollard v. Remington Arms Company*, LLC, No. 4:13-cv-00086-ODS (W.D. Mo. 2017);

g)  *Leach v. Honeywell International, Inc.*, No. 1:14-cv-12245-LTS (D. Mass);

h)  *In Re IKO Roofing Shingle Products Liability Litigation,* MDL No. 2104 (C.D. Ill.);

i)  *Newman v. Metropolitan Life Insurance Company*, No. 1:11-cv-03530 (N.D. Ill. 2019);

j)  *In re Apple Inc. Device Performance Litigation*, MDL 2827 (N.D. Cal. 2020);

k)  *Hill v. Canidae Corporation*, No. 20-1374 (C.D. Cal. 2021);

l)  *Herrera v. Wells Fargo Bank*, N.A., No. 8:18-cv-00332(C.D. Cal 2021);

m) *Erby v. Allstate Fire and Casualty Ins. Co.*, No. 2:18-cv 04944 (ECF No. 63) (approving the hourly rates ranging from $450 - $975 and the number of hours worked as reasonable);

n)  *Segebarth v. CertainTeed LLC*, No. 2:19 – CV – 05500 (E.D. Pa. 2023) (ECF No. 79) (approving hourly rates ranging from $500 to $1,250 per hour for attorneys and $110 to $475 per hour for paralegals);

o)  *Bangoura v. Beiersdorf, Inc.,* Case No. 1:22-cv-291 (E.D.N.Y. Jan. 10, 2023) (ECF No. 39) (approving hourly rates ranging from $550 to $975 per hour for attorneys and the number of hours worked as reasonable)

p)  *Goldstein v. Henkel Corp.*, Case No. 3:22-cv-164 (D. Conn. Dec. 13, 2023) (ECF No. 96) (approving hourly rates ranging from $500 to $1,025 per hour for attorneys, $500 per hour for IT specialist and the number of hours worked as reasonable);

q)  *Catalano v. Lyons Magnus, LLC and TRU Aspectics, LLC*, Case No. 3;22-cv-164 (S.D.N.Y. Apr 10, 2024) (ECF No. 52) (approving hourly rates ranging from $650 to $1,025 per hour for attorneys, $475 per hour for paralegal and the number of hours worked as reasonable);

r)  *Swetz v. The Clorox Company,* Case No. 7:22-cv-9374 (S.D.N.Y. May 24, 2024) (ECF No. 57) (approving hourly rates ranging from $750 to $1,025 per hour for attorneys, $500 per hour for IT specialist and the number of hours worked as reasonable);

    s)  *Patora v. Colgate-Palmolive Co.,* Case No. 7:23-cv-01118 (S.D.N.Y April 25, 2024) (ECF No. 42) (approving hourly rate of $1,025 per hour for attorneys and the number of hours worked as reasonable); and

    t)  *Barnes v. Unilever United States Incorporated,* 1:21-cv-06191 (N.D. Ill. September 16 ,2024) (ECF No. 137) (approving hourly rates ranging from $650 to $1025 per hour for attorneys and the number of hours worked as reasonable).

    41.    Recently, in *Barnes*, the United States District court for the Northern District of Illinois approved the 2024 rates of Charles E. Schaffer ($1,025.00), David Magagna ($750), and Nicholas Elia ($650), in *Patora,* the United States District Court for the Southern District of New York approved the 2024 rate of Charles E. Schaffer ($1,025.00), in *Catalano*, the United States District Court for the Southern District of New York approved the 2024 rates of Charles E. Schaffer ($1,025.00), David Magagna ($750), Nicholas Elia ($650), and paralegal Victoria Jennings ($475), in *Swetz,* the United States District Court for the Southern District of New York approved the 2023 rates of Charles E. Schaffer ($1,025.00), David Magagna ($750), Nicholas Elia ($650), and paralegal Victoria Jennings ($475), in *Goldstein,* the United States District Court for the District of Connecticut approved the 2023 rates of Charles E. Schaffer ($1,025.00), David Magagna ($750), Nicholas Elia ($650), Zachary Winkler ($500) and IT specialist Thomas Shrack ($500), in *Bangoura*, the United States District Court for the Eastern District of New York approved the 2022 rates of Charles E. Schaffer ($975.00) and David Magagna ($550), in *Segebarth,* the United States District Court for the Eastern District of Pennsylvania approved the 2022 rates of Charles E. Schaffer ($975.00), David Magagna ($550), Nicholas Elia ($500) and Thomas Shrack ($475),  *and* in *Erby*, the United States District Court for the Eastern District of Pennsylvania approved the 2022 rates of Charles E. Schaffer ($975.00), Daniel C. Levin ($975.00), David Magagna ($550), and Nicholas Elia ($500) finding that "Class Counsel have years of experience and are highly skilled in complex litigations such as this. And their hourly rates fall well within the range of rates charged by other attorneys practicing complex litigation

in Philadelphia. *See Whiteley*, 2021 WL4206696, at \*14 (finding that hourly rates ranging from $110 to $1,100 "well within the range of what is reasonable and appropriate in this market")). See ECF No. 79.

42.    Levin Sedran's customary rates have also been approved by courts in prior years. In *Segebarth*, the United States District Court for the Eastern District of Pennsylvania approved the 2022 rates of Charles E. Schaffer ($975.00), David Magagna ($550), Nicholas Elia ($500) and Thomas Shrack ($475).   In *Erby*, the United States District Court for the Eastern District of Pennsylvania approved the 2022 rates of Charles E. Schaffer ($975.00), Daniel C. Levin ($975.00), David Magagna ($550), and Nicholas Elia ($500). In *In re: CertainTeed Fiber Cement Siding Litigation*, the United States District Court for the Eastern District of Pennsylvania, approved the entire requested fee of $18.5 million dollars, including the 2014 rates of Charles E. Schaffer ($950.00). In *Pollard v. Remington Arms Company*, the United States District Court for the Western District of Missouri approved the entire requested fee of $12.5 million dollars, including the 2017 rates of Charles E. Schaffer ($975.00), and Sammi McCurtain (document reviewer) ($450.00), and in *Leach v. Honeywell International, Inc.*, the United States District Court for the District of Massachusetts approved the entire requested fee award of $1.15 million dollars, including the 2017 rates of Charles E. Schaffer ($975.00) and Michael MacBride (attorney) ($475.00). More recently in *In Re IKO Roofing Shingle Products Liability Litigation*, the United States District Court for the Central District of Illinois approved the entire requested fee award of $7.5 million dollars, including the 2019 rates of Charles E. Schaffer ($975.00) and Michael MacBride (attorney) ($475). In *Newman v. Metropolitan Life Insurance Company*, the United States District Court for the Northern District of Illinois approved the entire requested fee award of $5 million dollars, including the 2019 rates of Charles E. Schaffer ($975.00); and in *In re Apple Inc. Device Performance Litigation*, the United States District Court for the Northern

District of California approved the fee award of $80.6 million dollars, including the submitted rates of Charles E. Schaffer ($950), other members of the firm and paralegals. ECF No. 609 at 15.  In 2021, the United States District Court for the Central District of California in *Hill v. Canidae Corporation*, No. 20-1374 (C.D. Cal. 2021) approved the submitted rates of Charles E. Schaffer ($975) and associate David Magagna ($550). *See* ECF No. 79 at 16. (Plaintiffs also submit Class Counsel's billing rates that other courts have approved, which show that one of the partners who is counsel for Plaintiffs has consistently been approved at an hourly rate of $950.00 to $975.00 per hour, while a non-partner attorney was consistently approved at an hourly rate of $450.00 to $475.00. (Schaffer Decl. ¶ 28.) Accordingly, the Court determines that the hourly rates used to calculate the lodestar are reasonable.). In November of 2021, the United States District Court for Central District of California in *Herrera v. Wells Fargo Bank, N.A.*, No. 8:18-cv-00332 (C.D. 2021), approved the entire requested fee award of $23.1 million dollars, including the 2021 rates of Charles E. Schaffer ($975.00), associate David Magagna ($550) and IT specialist Thomas Shrack ($475). *See* ECF No. 208 adopting the Tentative Order Regarding Final Approval of Class Settlement and Final Approval of Attorneys' Fees at 21-22.

43.    During the course of this case, Levin Sedran incurred $3,620.18 in unreimbursed expenses.  These expenses were reasonably and necessarily incurred in connection with the prosecution of this litigation.  These expenses are reflected in the books and records of Levin Sedran and are a true and accurate summary of the expenses for this case. The chart below details the expenses incurred by category:

| CATEGORY | EXPENSE AMOUNT |
| --- | --- |
| Computer Research | $90.52 |
| Filing Fees | $200.00 |
| Misc.: Notary Public | $5.00 |
| Travel | $3,324.66 |
| **TOTAL** | **$3,620.18** |

### IV.    SERVICE AWARDS

44.    Class Counsel requests a service award of $500 for the Class Representative Plaintiffs.  The named Plaintiffs were subjected to an extensive vetting interview. The named plaintiffs also provided information to substantiate the purchased products. The plaintiffs took on the responsibilities of a class representative, and were willing to be deposed, provide discovery, and testify at trial.

### V.    CONCLUSION

For the reasons set forth in this declaration, Class Counsel respectfully requests that the Court grant Plaintiffs' Motion for an award of Attorneys' Fees, Expenses and Service Awards for Class Representative Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of  July  2025 in Philadelphia, Pennsylvania.

_____
Charles E. Schaffer