**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara Abreu**
**individually and on behalf of all**
**others similarly situated,**

                         **Plaintiffs,**

v.                                                             **Case No.: 7:24-cv-00526**

**The Quaker Oats Company,**

                         **Defendant.**

-----------------------------------------------------------x

**CLASS COUNSELS' RESPONSE TO THE OBJECTION OF PAT ZHEN**

I.      **Preliminary Statement**

As set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 42) the reaction of the Settlement Class to the proposed Settlement has overwhelmingly been positive. As of July 10, 2025, Angeion received approximately 140,712 (140,273 online, 439 paper) Claim Form submissions. Yet, as discussed below only one objection to the settlement, an extraordinarily infinitesimal percentage of the Class, was filed.

Following dissemination of the Court-approved notice to Class Members in this case, on July 8, 2025, Class Counsel became aware of a single objection to the Settlement made by an individual identifying himself as and purporting to be "Pat Zhen." Mr. Zhen's objection, as well as his July 11, 2025 "Supplemental Objection"[1] are annexed to the accompanying Declaration of Jason Sultzer as **Exhibits 1 and 2**, respectively.

Class action objectors "may serve an important role in protecting class interests." *In re Petrobras Secs. Litig.*, 2018 U.S. Dist. LEXIS 161898, *15 (S.D.N.Y. Sep. 19, 2018). Some objectors, however, seek to pervert the process by filing frivolous objections and appeals, not for the purpose of improving the settlement for the class, but to obtain personal payments in exchange for voluntarily dismissing their appeals. *See id.* (noting that "objector blackmail" has "increasingly interfered with the prompt and fair resolution of class litigation at a direct cost to class members, who may thereby be prevented from collecting the settlement funds owed to them for months and even years.").[2] Other objectors have an animus against class action attorneys, filing objections,

---

[1] On July 11, 2025, Mr. Zhen emailed to class counsel a "Supplemental Objection" related to the process for filing objections. This objection was received beyond the objection deadline of June 27, 2025, and as such is untimely and should not be considered by the Court. However, without waiving the objection to its untimeliness, Class Counsel addresses this objection and will demonstrate that it is baseless.

[2] *See also In re Ivan F. Boesky Sec.*, 948 F.2d 1358, 1368 (2d Cir. 1991)(discussing how objectors "constituting...an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal"); *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

like those here, that do not materially improve the settlement. Both are bad and disrupt the process of settling class action lawsuits.

Mr. Zhen's objection is not a genuine attempt to improve the Settlement. Indeed. Mr. Zhen has objected to a number of other settlements and those objection have been denied by federal courts.[3] Moreover, the objections he asserts in this matter are based on harmless technical issues, rather than the adequacy of the relief provided to the Class or Class Counsel's requested fee award. *See Grayson v. GE*, 2020 U.S. Dist. LEXIS 134657, *11 (D. Conn. Jul. 27, 2020) (approving class action settlement where "the one objection from a Class Member did not challenge the fairness of the terms of the Settlement to the Class.") Specifically, Mr. Zhen's objection principally attacks the Claims Administrator's (Angeion's) fraud detection process and this Court's procedures for filing objections. As set forth herein and in the supporting declaration of Derek Burrows of Angeion (Sultzer Decl. Ex. 6), however, Angeion employs necessary and reliable procedural safeguards (that have been lauded by courts) designed to prevent fraudulent claims from depleting the Settlement Fund at the expense of Class Members with genuine claims. Mr. Zhen's reasons for objecting to these fraud-prevention measures are suspect given that his claim was rejected, among other reasons, for exhibiting indicia of fraud, and given that Mr. Zhen refused to validate his identity after multiple requests from Angeion and Class Counsel. Finally, and most importantly, Mr. Zhen lacks standing to assert his objection inasmuch as he did not even purchase a product covered by the Settlement. Regardless, even setting aside the indicia of fraud and Mr. Zhen's lack of standing, his objections to technical procedural aspects of the claims process are meritless and should be rejected.

---

[3] *See e.g. In re Telescopes Antitrust Litig* (N.D. Cal.) (5:20-cv-03639-EJD) (Dkt 402); *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143 (Dkt. 3108).

## II.     Mr. Zhen Refuses to Validate his Identity

As an initial matter, Mr. Zhen's objection should be denied because there are strong indications that Mr. Zhen may not be who he purports to be. Indeed, an investigation by Angeion and Class Counsel's independent investigation regarding Mr. Zhen's claim denial revealed that Mr. Zhen is associated with multiple spellings of his name, physical addresses, emails, and phone numbers.

Notably, Angeion rejected Mr. Zhen's claim because it had multiple indicia for fraud. Burrows Decl. ¶ 17. First, the contact information that Mr. Zhen provided in conjunction with his claim submission differed from information he had provided in various other settlements administered by Angeion. Second, the phone number Mr. Zhen provided is different from that provided with claims submissions made by Mr. Zhen in other settlements and is not associated with a Pat Zhen but to another individual, according to Lexis and other third-party data sources. *See* Burrows Decl. ¶¶ 18-21.

Additional red flags regarding Mr. Zhen's claim submission arose during interaction with Class Counsel. When Class Counsel reached out to Mr. Zhen to discuss his objections and see if they could be resolved, he declined to meet and confer by Zoom (or any other platform where, from Class Counsel's perspective, his identity could potentially be verified), and demanded that he not be recorded in any way. Sultzer Decl. ¶ 14. Mr. Zhen did speak to Class Counsel by phone on July 10, 2025, and a second meet-and-confer was scheduled for July 14, 2025. *Id.* at ¶ 15. Following the July 10th call, Class Counsel received a phone call from an unknown individual demanding $100,000 in exchange for withdrawing Mr. Zhen's objection. *Id.* at ¶ 23. When Class Counsel informed Mr. Zhen of the phone call and again requested that the July 14th meet-and-

3

confer be held using Zoom, and that Mr. Zhen provide his identification, Mr. Zhen refused. *Id*. at ¶¶ 24 & 25. *See also* Sultzer Decl. Ex. 3.[4]

Both Class Counsel and Angeion subsequently conducted investigations into Mr. Zhen that appeared to reveal additional indicia of fraud.[5] First, a Lexis Search reflects that Mr. Zhen is associated with a number of different names, including "Pat Zhen," "Patrick Zhen," and "Pat Zen" as well as at least two physical addresses, which did not include the P.O Box referenced in Mr. Zhen's objection. *See* Declaration of Michael ("Charles Decl."), annexed to the Sultzer Declaration as Exhibit 7, ¶ 4.

Second, the phone number Mr. Zhen provided in his claim submission is connected with *Individual 1* at a different address from that provided by Mr. Zhen in this matter or any other submissions to Angeion ("Address 1"). *See* Charles Decl. ¶ 5; Burrows Decl. ¶¶ 23-24.

Third, Address 1 is listed as being owned by a deceased individual who was survived by his son *Individual 2*, who has been involved in multiple legal proceedings alleging various fraudulent or deceptive activities. Burrows Decl. ¶¶ 25-28; Charles Decl. ¶¶ 6-7.

Fourth, Pat Zhen appeared in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143. *See* Burrows Decl. ¶ 29. In that matter, Mr. Zhen filed a motion with contact information that included a telephone number registered to *Individual 2*. *Id*. The phone number Mr. Zhen provided with his claim in that matter (a different number than that provided in his motion), however, is associated with another address within the continental United States ("Address 2"). Address 2 is linked to a Pat Zhen with yet another distinct Puerto Rico address ("Address 3"),

---

[4] Class Counsel also afforded Mr. Zhen an opportunity to verify his identity in any way with which he was comfortable. Mr. Zhen responded by sending an email to all Class Counsel and defense counsel threatening to sue them. *See* Sultzer Decl. **Exhibit 4.**

[5] In order to protect Mr. Zhen's privacy, Class Counsel and Angeion are not disclosing the specific phone numbers, email addresses, physical addresses, or identities of the individuals associated with those phone numbers or addresses that were uncovered by their investigations. Should the Court deem it necessary, Class Counsel can provide additional details regarding the investigations to the Court *in camera*.

which in turn is associated with a corporation which lists *Individual 1* as its president and treasurer. Burrows Decl. ¶¶ 30-32.

Mr. Zhen also recently filed an objection in *In re Telescopes Antitrust Litig.*, which was denied. 2025 U.S. Dist. LEXIS 70066, at *30 (N.D. Cal. Apr. 11, 2025). Counsel for the class in that matter also conducted an investigation into Mr. Zhen that found indicia of fraud, the results of which are set forth in the Declaration annexed as **Exhibit 5** to the Sultzer Declaration.

Based on the investigations and findings described above, both Angeion and Class Counsel's own investigator have concluded that there is substantial information reasonably indicating that the objection filed under the name Pat Zhen is highly suspicious and was correctly rejected, especially since Mr. Zhen was unwilling to further engage in the process of validating his identity. *See* Charles Decl. ¶ 9 & Burrows Decl. ¶¶ 33 & 36. Mr. Zhen's refusal to verify his identity is, by itself, a sufficient reason to question the veracity of his claims and to deny his objections.

### III.  Mr. Zhen Does not Have Standing to Make His Objection

Regardless of whether Mr. Zhen is who he claims to be, he does not have standing to pursue his objections because he did not purchase a Covered Product and therefore is not a member of the Class. The Federal Rules of Civil Procedure unequivocally state that only class members have the ability to object to a class settlement. *See* Fed. R. Civ. Proc. 23(e)(5)(A).[6]

Mr. Zhen's claim submission claimed that he purchased two of Defendant's products: 1) the Quaker Chewy Yogurt Yogurt Variety Pack Chewy (14 Ct) (17.2 Oz) and; 2) the Quaker Assorted Chewy (48 Ct) (48.32 Oz). Sultzer Decl. ¶ 32. Crucially, neither of those products are

---

[6] *See also In re Drexel Burnham Lambert Grp., Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992) ("Only Class members have standing to object to the Settlement of a class action" because "[o]bjectors who are non-Class members lack standing to object to the fairness, reasonableness and adequacy of the Settlement.").

5

Covered Products under the Settlement Agreement, and accordingly, Mr. Zhen is not a Class Member and does not have standing to lodge his objections. *See* Dkt. 13-1, Exhibit D. Moreover, when Class Counsel questioned Mr. Zhen about the products he purchased during the July 10th call, he was confused and unable to do so with any clarity or specificity. Sultzer Decl. ¶ 16.

### IV. Mr. Zhen's Objections Are Meritless

Even if Mr. Zhen did have standing to raise his objections (which he does not), they should nevertheless be rejected by the Court because they attack necessary fraud prevention processes or complain about technical procedural issues that are largely moot.

*1. Angeion's Fraud Detection Processes*

Mr. Zhen asserts that the claims process violates due process because Angeion has unfettered discretion in denying claims and Class Members have no means to challenge claim denials. But this is plainly incorrect. The Settlement Agreement is clear that Class Counsel, Defendant, and the Court all retain oversight regarding fraud detection and the denial of claims. *See* Dkt. 13-1, § 4.8.[7] Contrary to Mr. Zhen's complaint, Angeion's fraud detection system is a necessary tool to prevent fraud and preserve funds for Class Members making genuine claims. Indeed, in recent years there has been a significant increase in the volume of attempted fraud in class action settlements, accompanied by rapidly evolving and increasingly sophisticated tactics. *See* Burrows Decl. ¶¶ 6-8.[8]

---

[7] If any fraud is detected or reasonably suspected, the Claim Administrator and Parties can require further information from the Settlement Class Member (including by cross-examination) or deny claims, *subject to the supervision of the Parties and ultimate oversight by the Court . . .* The Claims Administrator's decision as to the validity of claims shall be final and binding, *except that Class Counsel and Defendant shall retain the right to audit claims and to challenge the Claim Administrator's decision by their mutual agreement or by motion to the Court.*" Settlement Agreement Section 4.8. (emphasis added).

[8] *See also In re Telescopes Antitrust Litig.*, 2025 U.S. Dist. LEXIS 70066, *28-29 (N.D. Cal. Apr. 11, 2025) ("the presence of fraudulent class action settlement claims is a growing and serious concern that could jeopardies the integrity of class action settlements.")

6

Angeion has responded by implementing state-of-the-art fraud detection software creating comprehensive solutions to identifying fraud based on both state-of-the-art technology and analysis of over a decade of historical claims data. *Id*. at ¶¶ 9-13. Indeed, a recent case in this District found "Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." *In re Novartis*, 2024 U.S. Dist. LEXIS 132677, *15 (S.D.N.Y. Jul. 26, 2024). Moreover, during a Fairness Hearing in April of this year, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"…further stating that "absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid."[9] Class Counsel has reviewed Angeion's fraud detection process and has been in constant contact with Angeion throughout the claims process regarding claim denials, and is fully confident that Angeion's process is thoughtfully designed to reduce false positives and is necessary to protect the Class. *See* Sultzer Decl. ¶ 28.

Further, Mr. Zhen undermines his own objection. As set forth in his objection, when his claim was denied, Angeion notified him that there were inconsistencies with his submission and instructed him to try again or contact Angeion or Class Counsel. Angeion's records reflect that Mr. Zhen did not attempt to resubmit his claim or to contact Angeion. Burrows Decl. ¶ 21. Indeed, Mr. Zhen confirmed to Class Counsel that he did not make a second attempt to submit his claim and did not reach out to Angeion or Class Counsel to find out why his claim had been rejected. Sultzer Decl. ¶ 17. And, when Class Counsel offered to assist Mr. Zhen in processing his claim, he refused. *Id*. at ¶ 18. Moreover, Class Members whose claims are rejected have the opportunity

---

[9] *Jimenez v. Artsana USA, Inc.*, No. 7:21-cv-07933-VB (S.D.N.Y.)

7

to opt-out of the Settlement to preserve their claims or object to the Settlement (as Mr. Zhen has done here). *See* Dkt. 13-1, § 6.

Nor, as Mr. Zhen claims, does Class Counsel have any conflict of interest regarding fraud detection or the acceptance or denial of claims. Rather, Class Counsel has a fiduciary duty to ensure that valid claims are processed *and* that invalid claims are rejected in order to protect the Class and the integrity of the claims process. Moreover, Class Counsel does not have any financial interest in the number of claims that are deemed valid or invalid, and given that the Settlement ensures there is no reversion to the Defendant, the number of rejected claims is of no moment to the Defendant.

### 2. Distribution of Unclaimed Funds

Mr. Zhen objects to the provisions of the Settlement Agreement (Section 4.10) that distribute the funds from unclaimed checks to a *cy pres* recipient on the grounds that such funds should escheat to the state by law. As an initial matter, this objection is moot because only approximately ten claimants requested checks as a method of payment. *See* Sultzer Decl. ¶ 20. When Mr. Zhen learned of the low number of checks that were issued during his meet-and-confer with Class Counsel, he agreed to withdraw this objection. *Id*.

Even if that were not the case, the Second Circuit Court of Appeals has made it clear that distribution of settlement funds to a *cy pres* recipient is permissible and indirectly benefits class members. *See Hyland v. Navient Corp.,* 48 F.4th 110, 121 (2d Cir. 2022) (approving settlement where the *entire* settlement fund was distributed to a *cy pres* recipient).[10] Moreover, both the

---

[10] *See also* In re Remicade Antitrust Litig., No. 17-CV-04326, 2023 WL 2530418, at *20 (E.D. Pa. Mar. 15, 2023) (rejecting similar objection as "baseless"); *Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *7 (S.D.N.Y. Apr. 20, 2022) (finding cy pres to be an "appropriate manner" to dispose of uncashed checks and paypal provisions and rejecting objection that asked for uncashed checks to be re-distributed, not sent to unclaimed property funds).

NACA Class Action Guidelines and the ALI Principles of the Law of Aggregate Litigation disfavor escheating to the state because it fails to provide an indirect benefit to the class in the way that *cy pres* distribution does.[11]

### 3. Debit Card Terms and Conditions

Mr. Zhen further complains that the Settlement permits Class Member to receive reimbursement on prepaid debit cards, but does not disclose the terms of those cards, which he alleges are issued by companies that engage in schemes to defraud card holders.[12] As an initial matter, Mr. Zhen selected Venmo as his preferred payment method when he attempted to make a claim, and he does not purport to be aware of any Class Members who experienced any freezes, fees, or any other issues with the debit cards they received. Accordingly, while Mr. Zhen may be personally unhappy with the companies that manage the debit cards, any injury to the Class Members is purely hypothetical. Moreover, contrary to Mr. Zhen's claims, as part of the claim submission process, the terms and conditions of the debit cards are made available at the time of payment election for each of the payment options available for the administration, and the terms are extremely simple and straightforward. *See* Dkt. 44 Ex. L.

---

[11] *See* The NACA Guidelines, Guideline 6 & discussion; ALI Principles § 3.07 cmt. b ("*A cy pres* award to a recipient whose interests closely approximate those of the class is preferable to either [escheat to the state or reversion to the defendant]."). *See also First Albany Corp. v. Am. Integrity Corp.*, 2015 U.S. Dist. LEXIS 164559, *4 (E.D. Pa. Dec. 8, 2015) (declining to order unclaimed funds in class action settlement to escheat to the state even though it was potentially mandated by Pennsylvania law because it would be impracticable); *Highland Homes Ltd. v. State*, 448 S.W.3d 403, 414 (Tex. Aug. 29, 2014) (holding that Texas law did not require unclaimed class action settlement funds to escheat to the estate).

[12] As one judge in this Circuit has noted, the ease of receiving payment electronically or by card is a benefit to the Class. *Goldstein v. Henkel Corporation et al.*, No. 3:22-cv-00164-AWT (D. Conn.) (ECF No. 98) ("[w]ith respect to 23(e)(2)(C), I was struck by the fact that to submit -- the class members only need to submit a simple form and that they had a variety of options for the way in which they receive the settlement payment. I thought that was a very good feature of how things were structured.")

4. *Waiver of Unknown Claims*

Mr. Zhen also objects to the Settlement on the grounds that it contains a waiver of unknown claims, including waiver of rights under California Civil Code section 1542. *See* Dkt. 13-1; § 8.3. The Agreement, however, makes it clear that Class Members' potential personal injury claims related to consuming Defendant's contaminated food products are not waived. *See id.* § 8.1 ("The Released Claims exclude claims for bodily injury."). Moreover, as one court recently noted in another case in which Mr. Zhen filed an objection, "California Civil Code § 1542 waivers are commonplace in class action settlements. Such waivers are uncontroversial in the class action context because, like all class settlements, the extent of any release is constrained by the identical factual predicate doctrine." *In re Telescopes Antitrust Litig.*, 2025 U.S. Dist. LEXIS 70066, at *29.[13] Indeed, courts in this Circuit regularly approve class action settlement with similar releases of unknown claims.[14] Regardless, when Class Counsel explained the scope of the waivers to Mr. Zhen during their meet-and-confer, Mr. Zhen agreed to withdraw this objection as well. Sultzer Decl. ¶ 21.

5. *Supplemental Objection to the Objection Process*

Finally, Mr. Zhen's "Supplemental Objection," which is untimely, complains that the claim notice instructs Class Members that they can object by filing an objection on the ECF system, but

---

[13] *See also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 243, 260 (D. Del. 2002) (rejecting objection to release of unknown claims and waiver of Cal. Civ. Code § 1542 in class action where plaintiffs released all claims "that relate to the marketing, promotion or sale of Coumadin during the Class Period that were or could have been asserted" because "the release language clearly limits it to the subject matter of this litigation") , *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 244 (D.N.J. 2005) ("To the extent objectors argue that the Settlement is not fair because the scope of the release is too broad, including claims not pled in the Complaint or unknown to the Class Member, the Court finds these objections without merit. The Court recognizes that in class action settlements, releases may include all claims that arise out of the same course of conduct alleged in the Complaint.").

[14] *See, e.g., Delcid v. TCP Hot Acquisition LLC,* No. 1:21-CV-09569-DLC, 2023 WL 3159598, at *3 (S.D.N.Y. Apr. 28, 2023) (approving release with nearly identical language in consumer class action alleging benzene contamination in deodorant products); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 107 (2d Cir. 2005) ("class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct.") (internal citations omitted).

that non-parties are prevented from filing on ECF in the White Plains Division of the Southern District of New York.  As Mr. Zhen notes, however, the notice also informs Class Members that they can lodge objections by mailing them to the Court, which is exactly what Mr. Zhen did in this case.  Accordingly, Class Members are given ample opportunity to object to the Settlement, just as Mr. Zhen did.  Moreover, to the extent Mr. Zhen complains that mailing his objection to the Court is inadequate because it will not be publicly filed on the docket, that objection is directed at the procedure of the Court clerk rather than the Settlement. Nor is there any specific rule Class Counsel is aware of requiring that objections be placed on the public docket, or that requires class action notice to explain the Court's local rules or ECF procedures.  In any event, Mr. Zhen's objection has been placed on the public docket where it can be reviewed by the Class, so this complaint is moot.

### V.     Conclusion

For the reasons set forth herein, Mr. Zhen's objections should be denied in their entirety and the Settlement Agreement should be granted final approval.

Dated: July 21, 2025                                Respectfully submitted,

By: */s/ Jason P. Sultzer*
Jason P. Sultzer

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

**REESE LLP**
>Michael R. Reese
>100 West 93rd Street, 16th Floor
>New York, New York 10025
>Tel: (212) 643-0500
>*mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
>Nick Suciu III, Esq.
>6905 Telegraph Road, Suite 115
>Bloomfield Hills, Michigan 48301
>Tel: (313) 303-3472
>*nsuciu@milberg.com*

**POULIN WILLEY ANASTAPOULO**
>Paul Doolittle
>32 Ann St,
>Charleston, SC 29403
>Telephone: (800) 313-2546
>Email: *pauld@akimlawfirm.com*

**LEVIN SEDRIN & BERMAN**
>Charles E. Schaffer
>510 Walnut Street, Suite 500
>Philadelphia, Pa. 19106
>Telephone: (215) 592-1500
>Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**
>Joshua Arisohn
>1330 A venue of the Americas, 32 Floor
>New York, NY 10019
>Telephone: 646-837-7103
>*jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**
>Jeffrey S. Goldenberg
>4445 Lake Forest Drive, Suite 490
>Cincinnati, Ohio 45242
>Telephone: 513-345-8297
>*jgoldenberg*@gs-legal.com

**LEEDS BROWN LAW, P.C.**
>Jeffrey K. Brown
>One Old Country Road, Suite 347

Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Settlement Class*