Pat Zhen
PO Box 366047
San Juan PR 00936
legal@patzhen.com
(787) 523-8040



Objector

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                    Case No.: 7:24-cv-00526
Defendant.

### OBJECTIONS TO THE SETTLEMENT AGREEMENT AND ADMINISTRATION THEREOF

Objector Pat Zhen (hereinafter "Objector") respectfully submits this objection to the Settlement Agreement and its administration, stating that he was a consumer and regular purchaser of Quaker Chewy Yogurt Variety Pack and Quaker Assorted Chewy 48 pack prior to March 13, 2025, and thus qualifies as a member of the settlement class. These objections apply to all class members.

As outlined in the Settlement Agreement, which has been agreed upon by Class Counsel and the Defendant, the terms of the agreement represent an unconscionable contract that fails to afford Class Members

due process concerning their claims, particularly when those claims are denied by the Settlement Administrator. In addition, the settlement is against public policy and violates escheat laws of the 50 states. Finally, it improperly waives unknown claims.

## I. THE CLAIMS PROCESS VIOLATES DUE PROCESS

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." As show below, the method of processing class-member claims is not appropriate and it is unfair.

### 1. Vague and Undefined Terms in Paragraph 4.8

Paragraph 4.8 of the Settlement Agreement provides:

"The Claim Administrator shall reject any Claim ... that the Class Administrator identifies as duplicative or fraudulent. The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of duplicative or fraudulent claims and to pay only Valid Claims."

The phrase "adequate and customary procedures and standards" is vague and undefined within the context of the Settlement Agreement. Class Members cannot be required to accept a term that lacks specificity, especially when it directly impacts their ability to seek redress in the event their claims are rejected as fraudulent. Without clear definition, there is no means for Class Members to challenge a determination that their claims were incorrectly flagged as fraudulent. As written, this provision leaves no recourse for Class Members to ascertain whether the "customary procedures and standards" were applied reasonably or in good faith in their specific case. Moreover, there is no transparency or opportunity for Class Members to contest decisions made by the Settlement Administrator.

## 2. Denial of Notice and Right to Appeal

The same paragraph further states:

"The Class Administrator shall retain sole discretion in accepting or rejecting claims, and shall have no obligation to notify Class Members of rejected claims unless otherwise ordered by the Court."

This provision grants the Settlement Administrator unchecked discretion to deny claims as "fraudulent" without any obligation to inform the affected Class Members. Consequently, Class Members are denied the opportunity to appeal the denial or present evidence to refute the decision. The lack of notification deprives Class Members of their due process rights and undermines the integrity of the claims process. Furthermore, the provision that "The Claims Administrator's decision as to the validity of claims shall be final and binding," coupled with the lack of mandatory notification, effectively eliminates any meaningful recourse for Class Members whose claims are wrongfully denied.

The procedure outlined where claims can be denied without notice of an opportunity to challenge that denial violates the class member's due process rights. "[E]ach class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves." *Klier v. Elf Atochem*, 658 F3d 468, 474 (5th Cir. 2011), *citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807–08 & 812–13 (1985); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–30 (1982).

In this case, the property right will be denied without notice and without recourse.

Moreover, the proposal violates Rule 23(e)(2)(D) which requires, for a settlement to be approved, that "the proposal treats class members equitably relative to each other" because some class members will be paid and others will be denied and will not be paid, without notice.

### 3. Limited Oversight, Lack of Class Member Protection, and Conflict of Interest

The clause (also in Paragraph 4.8) stating that "The Claims Administrator's decision as to the validity of claims shall be final and binding, except that Class Counsel and Defendant shall retain the right to audit claims and to challenge the Claim Administrator's decision by their mutual agreement or by motion to the Court." is insufficient to protect Class Members' interests. Neither Class Counsel nor the Defendant has a direct financial stake in ensuring the proper processing of individual claims. As a result, Class Members—the very parties most affected by the Settlement—have no mechanism to ensure their claims are processed fairly and accurately. Without notice of denied claims or the ability to appeal, the Settlement Agreement fails to safeguard Class Members' right to a fair and transparent claims process.

In addition, to allow Class Counsel and the Defendant to arbitrarily confederate and conspire to audit claims on their own and challenge the decision of the claims administrator is not appropriate. Class Counsel purports to represent the class members and this creates a conflict of interest. Class members have been told that they are represented by

attorneys – Class counsel. Specifically the notice to class members explains, "Do I have a lawyer in this case? Yes, the Court has appointed these law firms to represent the settlement class....." However, under this provision, the lawyers who represented to consumers that they have lawyers are actually working against them to overrule the claims administrator and to audit and deny claims.

This type of behavior violates Fed. R. Civ. Proc. 23(g)(4)'s provision that explains, "Class counsel must fairly and adequately represent the interests of the class." Class Counsel cannot act as judge against their own client. Class Counsel should have no adjudicative authority.

For the reasons stated above, the Settlement Agreement does not adequately protect the rights and interests of the Settlement Class it is intended to serve. It is unreasonable, unconscionable, and should be rejected or substantially amended to ensure that the due process rights of Class Members are upheld.

## II. THE ONLINE CLAIMS SYSTEM IS BROKEN, VIOLATES DUE PROCESS, AND IS UNFAIR

On June 26, 2025, Objector attempted to file his claim online. He filled out the payment method, verified his email, and spent over 20 minutes entering all of the information. When Objector submitted the data, he received the following message, "We have detected inconsistencies with your submission and/or interactions with the website. Please try again or on a different device (and disable any privacy settings). If the problem persists, please contact us by clicking the Contact form (or emailing Info@FoodRecallSettlement.com) and include this submission ID: 5fe85434-37d9-4334-abd4-2090e01d3696."

It appears that this message is provided in many cases, causing the claimant to give up. This website needs fixed, clear information given as to

any blocks or requirements for the claimant's browser, and an extended claims deadline to address the issues.

Prior to approving the settlement and claims process, this Court needs to obtain statistical data as to the number of people having their claims rejected due to "inconsistencies".

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

### III. THE SETTLEMENT PROVISIONS THAT STATE THAT A CLASS MEMBER DOES NOT CASH THEIR CHECK IN 120 DAYS VIOLATES DUE PROCESS AND MANDATORY ESCHEAT LAWS OF THE VARIOUS STATES.

The settlement agreement, Section 4.10, specifically states that a claimant that does not cash his check within 120 days will have the check voided and "shall not be entitled to any further payment under this agreement." Checks in this case are being mailed without any form of tracking using either regular mail. Checks are lost in the mail. Therefore, this provision takes away a property right the class members possess.

More importantly, it violates various state escheat laws. State escheat laws apply to uncashed checks in class actions. *All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011). "Every state and the District of Columbia has a set of escheat laws, under which holders of abandoned property must turn such property over to the State 'to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner.'" *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017) (quoting *N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012)).

"The *right* of appropriation by the state of abandoned property has existed for centuries in the common law." *Conn. Mut. Life Ins. Co. v.*

*Moore,* 333 U.S. 541, 547 (1948). In *Texas v. New Jersey,* 379 U.S. 674, 677 (1965), the Supreme Court first considered the question of when a state has the right and jurisdiction to escheat unclaimed intangible property. Importantly, the Supreme Court recognized that unclaimed property is the "debt" that is owed by the debtor to the creditor. *Id* at 680. Reasoning that a debt is the property of the creditor and not the debtor, the Supreme Court established a "primary rule" that "the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records." *Id* at 680-681. The Supreme Court chose this primary rule because it "involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided." *Id*. The Supreme Court affirmed these rules in *Pennsylvania v. New York,* 407 US 206 (1972)(dispute between states over uncashed money orders) and *Delaware v. New York,* 507 US 490 (1993)(dispute over uncashed dividend checks).

Here, the uncashed checks are no different than the dispute in *Delaware v. New York,* and the unclaimed property laws of the claimant's last known address apply.

Class Counsel cannot, by agreement, avoid these laws that govern uncashed checks. Some of the laws carry heavy fines and even criminal penalties. The settlement cannot stand.

### IV. THE CY PRES PORTION OF THE AGREEMENT IS INAPPROPRIATE

Section 4.10 of the Agreement states, "Funds from uncashed checks shall be paid to a cy pres charity to be agreed upon between the parties and approved by the Court." For the reasons above, first money must be escheated to unclaimed property so the claimants to receive it. Some small amounts are exempt from some states. In this case, the money is usually paid *pro rata* to the approved claimants, not given so fast to *cy pres*.

American Law Institute's Principles of Aggregate Litigation, note 28, § 3.07(b), explains that, "cy pres was appropriate where some class members were compensated directly" and "further individual distributions are economically infeasible."

In this case, we do not know at this time whether a further distribution to other class members would be economically unfeasible.

## V. THE SETTLEMENT AGREEMENT DOES NOT EXPLAIN WHAT HAPPENS TO UNCLAIMED ELECTRONIC PAYMENTS OR ERRORS IN THE TRANSMISSION

While the settlement agreement addresses uncashed checks, similar situations happen with electronic payments such as Zelle, Paypal, and even non-received prepaid gift cards. There is no explanation as to what will happen in the case of non-deliverable electronic payments. These, too, should be escheated if the claimant does not respond after outreach.

## VI. FEES AND TERMS OF THE PREPAID DEBIT CARD ARE NOT DISCLOSED

The recent trend in class actions is to provide a prepaid debit card. However, consumers are not advised of the terms and conditions of the card or the fees attached. Most of these cards are issued by two enterprises with poor reputations that joined together: Pathward N.A. and Blackhawk Network. Pathward issues the cards blindly to people as Blackhawk directs then provides Blackhawk unfettered discretion as to administration of the cards. Blackhawk routinely freezes the cards and denies consumers access to them citing unknown "security" concerns. The cards are usually low balance, so consumers do not bother to inquire. When contact is made with

Pathward/Blackhawk, they demand photocopies of ID, utility bills, and they even attempt to re-audit the claim. Blackhawk/Pathward cite an agreement that the cardholder never agreed to in filing the claim and they state that the claims administrator agreed to said terms. The consumer has no remedy to cancel the agreement or obtain their money off the card being bound by an agreement they did not know in advance.

After freezing the balance, Pathward/Blackhawk start to charge an "inactivity fee" depleting the card balance.

When Pathward/Blackhawk engage in this scheme, they provide no letter to the claimant. Rather, they just deny transactions. A consumer would actually have to call a toll free number and speak to a call center in El Salvador to make any form of inquiry.

No privacy policy as to the cards, the calls, etc. are provided to the consumer.

Other prepaid cards act similarly, but Class Counsel desires for claimants to choose this option without advising the Court or the consumers of the terms.

### VII. THE DEADLINE TO FILE CLAIMS AND OPT OUT SHOULD BE EXTENDED TO A DATE AFTER THE COURT APPROVES THE FINAL SETTLEMENT AGREEMENT AND DISTRIBUTION TERMS

A person should not have to go through the tedious process of filing a claim prior to the court's approval. Moreover, the terms of a settlement often change to address objections and other issues brought up during the approval process. Similarly, a person should not have to opt out until a date after the court approves and sets the final terms of the settlement.

Here, a person is required to opt out even though they do not know what this court approved. If there is a modification to the terms, the person opting out might change their mind. Similarly, a person who previously

chose to participate may decide to opt out if this court makes any modification to the agreement or distribution plan.

Furthermore, as stated above, there are error messages people are receiving en mass when they try to file a claim.

### VIII. IMPROPER WAIVER OF UNKNOWN CLAIMS

Section 8.3 of the Settlement Agreement contains a waiver of unknown claims, which is inappropriate in a case like this. California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital…that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed. California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159–1161 (2011).

Respectfully submitted,



_____

Pat Zhen