Pat Zhen
PO Box 366047
San Juan PR  00936
(787) 547-5010
legal@patzhen.com



Objector

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                    Case No.: 7:24-cv-00526
Defendant.

## SUPPLEMENTAL OBJECTIONS TO THE SETTLEMENT
## AGREEMENT AND  ADMINISTRATION THEREOF

Objector Pat Zhen (hereinafter "Objector") respectfully submits these

supplemental objections to the settlement.[1]  These objections could not be

filed earlier because the Objector could not have been aware of the

deviation from ordinary procedure or that a shadow docket was created by

---

[1] Objector's original objections mentioned the purchase of a single type of Quaker Oats product.  This is because the claim form limited the claim without receipts to two purchases.  The reality is that, during the claims period, Objector purchased the various products from retailers in the United States and its territories:  Quaker Big Chewy Bars Chocolate Chip, Quaker Big Chewy Bars Variety Pack, Quaker Chewy Bars Chocolate Chip, Quaker Chewy Bars Chocolate Chunk, and other Quaker granola products eligible for a claim.

either the Clerk's Office, the *pro se* office, or (the most unlikely reason) pursuant to directions from this Court's chambers.  This objection applies to the entire class:

## I.    __Background__

This is a nationwide class action involving Quaker Oats products. Due to the multiple Quaker Oats products at issue – nearly 70 of them – and a liberal purchase timeline, most households made at least one purchase at stores within the United States entitling them to participation. Nevertheless, under the proposed settlement, the class only received $6,750,000 *prior to* the deduction of expenses and attorney fees.

When a case is settled, any class member maintains the right to object.  Fed. R. Civ. Proc. 23(e)(5)(A).[2]

Class Counsel submitted a so-called *Long Form Notice* to the public for this Court's approval and ultimate dissemination to the public.   Buried on page 6 of that Notice, class members who desired to comment, or object to, the settlement were instructed as follows:

OBJECT TO OR COMMENT ON THE SETTLEMENT

19. How do I tell the Court that I do not like the Settlement?
If you are a member of the Settlement Class and you do not exclude yourself, you can object to the Settlement if you don't like any part of it. You cannot ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. You can also object to Class Counsel's request for attorneys' fees and expenses and/or to the service award for the Class Representatives. The Court will consider your views.

Your objection and supporting papers must be in writing and must include: a caption or title that identifies it as "Objection to Class settlement in Kessler, et al. v. The Quaker Oats

---

[2] The rule states, "Any class member may object to the proposal if it requires court approval under this subdivision (e).

Company, No. 7:24-cv-00526"; information sufficient to identify and contact you or your attorney if represented; information sufficient to establish your standing as a Settlement Class Member; a clear and concise statement of your objection, as well as any facts and law supporting the objection; your signature; and the signature of your counsel, if any.

Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection.

If any Settlement Class Member wishes to object to the Settlement, **the Settlement Class Member must electronically file via the Court's ECF system** or deliver to the Clerk of the Court by mail, express mail, or personal delivery, a written notice of objection. To be timely, the objection must be received by the Clerk of the Court (not just postmarked or sent) prior to June 27, 2025.

White Plains Courthouse Clerk's Office[3]
300 Quarropas Street
White Plains, NY 10601-4150

This Court approved a notice to the Class providing instructions on how to file objections. At Entry 34, paragraph 11, this Court found, "The Notice is reasonably drafted, under the circumstances, to apprise the Settlement Class of the pendency of this litigation; the effects of the proposed Settlement on their rights (including the Released Claims contained therein); Class Counsel's upcoming motion for attorneys' fees, expenses, and service awards; of their right to submit a Claim Form; of their right to exclude themselves; **and of their right to object to any aspect of the proposed Settlement**" (emphasis added).

In the early morning of June 26, 2025, Objector utilized the PACER/ECF system to open up filing objections for him in this case. On that same day, Objector received a notice that his request was "rejected."

---

[3] Ordinarily, a person addresses mail to, "Clerk, United States District Court," not "White Plains Courthouse Clerk's Office" because there is also a bankruptcy court at the address.

Account Number: 8530650
Court: NEW YORK SOUTHERN DISTRICT COURT
Date/Time Submitted: 06/26/2025 00::36:17 CDT
Transaction ID: 201841
Request: Registration
Transaction Status: **Rejected**

In the comments to email rejecting the ability to use ECF to file

objections, the Clerk of Court noted:

> You must file a motion for permission for electronic case filing for pro se cases in your
> case. Please copy and paste this link into your browser to acquire the motion
> http://nysd.uscourts.gov/file/forms/motion-for-permission-for-electronic-case-filing-for-pro-se-cases.
> You should register for our Introduction to ECF Class
> (http://nysd.uscourts.gov/ecf_training.php) and attach your certificate of completion to
> your motion. Once the motion is granted by the judge, we will activate your e-filing
> access for the SDNY in your PACER account.

However, nowhere in the Long Form Notice to class members was

filing a motion or taking a course on ECF procedures mentioned as a

requirement to electronically file objections.

Therefore, in order to preserve his rights, Objector had to jump

through hoops and expend high costs to have a courier service deliver the

objections to the Court.  On June 27, 2025, the objections were delivered by

Federal Express at 9:27 a.m. and signed for by "C.Vipetg."

Nevertheless, the Clerk of Court failed to comply with Fed. R. Civ.

Proc. 79(a)(2) and did not docket the objections.  Instead, the Clerk's Office

forwarded the documents to the "*pro se* Office."  Because the *pro se* Office

did not see Objector as a party, instead of complying with Rule 79(a)(2) and

allowing the Court to give whatever weight to the filing it deemed

appropriate, the *pro se* Office instead forwarded the physical document to Your Honor's chambers where it sits in some form of secondary Shadow Docket.

Since that time, in violation of Rule 79(a)(2), Chambers[4] apparently continues to possess said objections, failed to post them on the public docket, and did not even notify Class Counsel of their existence.[5]

On July 8, 2025, Objector contacted the Clerk's Office. The deputy clerk expended significant time trying to track down the package and determine why it was not filed. The deputy clerk investigated and ultimately learned that the *pro se* office forwarded the filing to chambers and that it was up to the judge whether to file it, ignore it, make it public, or act on it.

When Objector asked about the procedure to lodge a complaint as to this procedure considering that neither Rule 79(a)(2) or Rule 23 contemplates gatekeeping as to class action objections, Objector was told to write a letter to the Chief Judge or to the Clerk of Court.

When Objector pressed the issue, he was transferred to "Nick" at the *pro se* Office. Nick informed Objector that, in cases where the filing party is not listed on the docket, the practice of the Southern District of New York is to forward documents (apparently *ex parte*) to Chambers to see if leave is

---

[4] So sayeth the Court's *pro se* office.

[5] Nothing in the Federal Rules of Civil Procedure provides for this type of gatekeeping or *de facto* review process.

granted to file said document.  According to Nick, only if Chambers specifically approves the filing is it placed on the docket.  Nick advised that (1) ECF filings cannot occur without a formal motion being filed by the applicant; and (2) Paper documents are not filed by non-parties without the district judge specifically approving it.  Nick stated they knew of no standing order in this case to accept said objections and place them on the docket notwithstanding the language of paragraph 11 of ECF 34.  Nick apparently is completely unaware that the Clerk's Office had a duty under Rule 79(a)(2) to file all documents received in chronological order onto the docket, and he was unfamiliar with the instructions on the Long Form Notice.

At Entry 37, filed July 10, 2025, Class Counsel admitted that they had no notice of the filing of the Objections until July 8, 2025 (when Objector emailed them a letter complaining of the Clerk's failure to comply with Fed. R. Civ. Proc. 79(a)(2)).

## II. **Discussion**

For the reasons set forth below, Objector objects to this archaic and outmoded gatekeeping and Shadow Docket procedure:

## A. DIRECTING OBJECTORS TO USE ECF TO TIMELY FILE CLAIMS, THEN DENYING THEM THE ABILITY TO DO SO, CHILLS THE OBJECTIONS PROCESS AND MAY HAVE RESULTED IN LOST OBJECTIONS

The Long Form Notice directed class members to use ECF to file their objections. Apparently, nobody informed the ECF Help Desk, the Clerk's Office, or the *pro se* Office. Instead, objectors seeking to comply with the Long Form Notice received rejections. Objector had a chat-based conversation with another Objector who advised him that he also tried to obtain ECF approval and received a rejection as well.

The Long Form Notice did not mention that a motion needed to be filed to use ECF or that a course needed to be taken.[6]

Rule 23(c)(2)(B) explains that the settlement notices are to use "easily understood language." Certainly, telling people to use ECF but then rejecting their attempts to do so, requiring a motion and a course, is not easily understood and contravenes the intent to Rule 23.

Because of the vast number of people affected by these settlements, coupled with the extremely low payment that class members will ultimately receive, providing misinformation, or incomplete information, to class members as to how to file objections is prejudicial and oppressive. If ECF was available only to attorneys, the Long Form Notice should have stated that. Instead, potential objectors relied on the information provided in the

---

[6] Objector uses ECF to file with other district courts and federal appellate courts. Most court's eliminated the course requirement in the late 1990s.

Notice. Therefore, the rejection of all attempted ECF filings by objectors violated due process.

Unfortunately, not everyone can afford to submit their objections to this Court by expensive overnight courier in a case that will provide the claimants only a small amount of money.

### B. THE CLERK'S FAILURE TO COMPLY WITH RULE 79(a)(2) AND THE PRACTICE OF FORWARDING OBJECTIONS TO CHAMBERS *EX PARTE* WAS PREJUDICIAL, BURDENSOME, AND OPPRESSIVE

Rule 79(a)(2) is not discretionary. Documents received for filing must be placed on the docket in chronological order. Nothing in Rule 79(a)(2) contains an exception providing the district judge with discretion as to what documents are filed and what documents are placed in an unknown receptacle in an unknown location of the courthouse. If someone files an inappropriate document, the authority of the district judge is to strike it or seal it, not suppress its entire existence from the public.

In this case, despite receiving the objection on July 27, 2025, it still has not been placed on the docket. Worse, Class Counsel never received notice of the objection until Objector notified them. This created a time consuming process of forcing an Objector to spend an excessive amount of time tracking down the objection, speaking to multiple people at the courthouse, and having to deal with the *pro se* Office who established this gatekeeping procedure in violation of Rule 79(a)(2).

Objector suspects the *pro se* office held, failed to file, and otherwise suppressed objections from other claimants.

By literally advertising how to file objections, and then having the clerk not file said objections, the integrity of the settlement process contemplated by Rule 23 has been improperly interfered with.

Objector would like to review the objections of third parties to determine whether to join said objections and to better understand the instant settlement.

### C. THE SHADOW DOCKET PROCEDURE DESCRIBED ABOVE VIOLATES CLASS MEMBERS, THE PUBLIC, AND MEMBERS OF THE PRESS RIGHT TO ACCESS THE COURT DOCKET

It's 2025. People file documents, they are placed on the docket, and the public downloads said documents using PACER. The Clerk's policy of ignoring this procedure, mandated by Rule 79(a)(2), infringes on the public's right to access court documents. Objector's objections, and probably other objections by class members, have literally been suppressed from the docket and are not available to be viewed. Hiding the documents on a Shadow Docket maintained by Chambers despite the filing over two weeks ago – due to arbitrary policies that have no basis in the rules – infringes on the rights of the public and the press.

The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). There is a qualified First Amendment right of access to certain judicial proceedings and documents. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). "Any restriction on the right of public access 'is . . . evaluated under strict scrutiny.'" *See In re Avandia Marketing*, 924 F.3d 662, 673 (3d Cir. 2019).

Here, there is no ability to access the documents because they do not exist in the case file. A person reviewing the docket would not see an entry, so they could not request a copy or read the document. It simply does not exist.

In this case, the suppression of documents has no legitimate basis.[7]

### III. **Conclusion**

This Court needs to: (1) Extend the objections deadline; (2) Direct the Clerk to approve ECF requests from objectors; (3) Direct Class Counsel to place notice of the ended deadline on the class member information website; and (4) Direct the Clerk of Court and the *pro se* Office to comply with Rule 78(a)(2) rather than delegating filing authority to wherever the documents may have landed.

---

[7] The general rule is that *pro se* documents are held to less stringent standards, *Haines v. Kerner,* 404 U.S. 520 (1971), not held in a Shadow Docket, in an unknown location, purportedly in this Court's Chambers.

## IV.  **<u>Declaration</u>**

I, Pat Zhen, declare and state under the penalty for perjury that the foregoing is true and correct to the best of my knowledge.  28 USC 1746.


Respectfully submitted,

_____

Pat Zhen

## extGen CM/ECF Registration Status

| | |
|---|---|
| From | do_not_reply@psc.uscourts.gov |
| To | zz@patzhen.com |
| Reply-To | help_desk@nysd.uscourts.gov |
| Date | 2025-06-26 12:34 |

This email is notification that your NextGen CM/ECF electronic filing registration has been processed. You may check your E-Filing Status by visiting the "Manage My Account" section of the PACER web site and selecting "Check E-File Status" option from the "Maintenance" tab or use this link, https://pacer.psc.uscourts.gov/pscof/manage/efileStatus.jsf.


    Account Number: 8530650
    Court: NEW YORK SOUTHERN DISTRICT COURT
    Date/Time Submitted: 06/26/2025 00:36:17 CDT
    Transaction ID: 201841
    Request: Registration
    Transaction Status: Rejected
    Comment: We received your request for a non-attorney e-filing account. Please include the case number for the case in which you need to file. You must file a motion for permission for electronic case filing for pro se cases in your case. Please copy and paste this link into your browser to acquire the motion http://nysd.uscourts.gov/file/forms/motion-for-permission-for-electronic-case-filing-for-pro-se-cases. You should register for our Introduction to ECF Class (http://nysd.uscourts.gov/ecf_training.php) and attach your certificate of completion to your motion. Once the motion is granted by the judge, we will activate your e-filing access for the SDNY in your PACER account. If you need view only access, submit a request for a PACER account at www.pacer.gov. If you have any questions about the ECF class please email helpdesk@nysd.uscourts.gov.

NOTE: Please do not reply to this message. This is an automated message sent from an unmonitored mailbox. If you have questions or comments, please email them to help_desk@nysd.uscourts.gov.





ORIGIN ID:PYMA    (800) 282-0911
SPECIALTY PROCESS SERVER
OLD DEAN STREET

TAUNTON, MA 02786
UNITED STATES US

TO CLERK OF COURT
US DISTRICT COURT
300 QUARROPAS STREET

WHITE PLAINS NY 10601
(212) 805-0136
INV:
PO:                    REF:

DEPT:

SHIP DATE: 26JUN25
ACTWGT: 1.00 LB
CAD: 101282612/NET4535

BILL SENDER

TRK# 8823 1599 8279    0201

EH NESA

FRI – 27 JUN 10:30A
PRIORITY OVERNIGHT

NY-US
SWF

10601

FedEx
Express

E

J252029040801uv

58GJ1/0CF5/59F2

After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.





July 08, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 882315998279

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | C.Vipetg | Delivery Location: | |
| Service type: | FedEx Priority Overnight | | |
| Special Handling: | Deliver Weekday | | WHITE PLAINS, NY, |
| | | Delivery date: | Jun 27, 2025 09:50 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 882315998279 | Ship Date: | Jun 26, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |

Recipient:                                    Shipper:

WHITE PLAINS, NY, US,                          Taunton, MA, US,

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this
shipment.  Please check again later for a signature.

Ex. 3

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 523-8040

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                    Case No.: 7:24-cv-00526
Defendant.

## OBJECTIONS TO THE SETTLEMENT AGREEMENT AND
## ADMINISTRATION THEREOF

Objector Pat Zhen (hereinafter "Objector") respectfully submits this
objection to the Settlement Agreement and its administration, stating that
he was a consumer and regular purchaser of Quaker Chewy Yogurt Variety
Pack and Quaker Assorted Chewy 48 pack prior to March 13, 2025, and
thus qualifies as a member of the settlement class.  These objections apply
to all class members.

As outlined in the Settlement Agreement, which has been agreed
upon by Class Counsel and the Defendant, the terms of the agreement
represent an unconscionable contract that fails to afford Class Members



due process concerning their claims, particularly when those claims are denied by the Settlement Administrator. In addition, the settlement is against public policy and violates escheat laws of the 50 states. Finally, it improperly waives unknown claims.

## I.    <u>THE CLAIMS PROCESS VIOLATES DUE PROCESS</u>

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." As show below, the method of processing class-member claims is not appropriate and it is unfair.

### 1. Vague and Undefined Terms in Paragraph 4.8

Paragraph 4.8 of the Settlement Agreement provides:

"The Claim Administrator shall reject any Claim ... that the Class Administrator identifies as duplicative or fraudulent. The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of duplicative or fraudulent claims and to pay only Valid Claims."

The phrase "adequate and customary procedures and standards" is vague and undefined within the context of the Settlement Agreement. Class Members cannot be required to accept a term that lacks specificity, especially when it directly impacts their ability to seek redress in the event their claims are rejected as fraudulent. Without clear definition, there is no means for Class Members to challenge a determination that their claims were incorrectly flagged as fraudulent. As written, this provision leaves no recourse for Class Members to ascertain whether the "customary procedures and standards" were applied reasonably or in good faith in their specific case. Moreover, there is no transparency or opportunity for Class Members to contest decisions made by the Settlement Administrator.

## 2. Denial of Notice and Right to Appeal

The same paragraph further states:

"The Class Administrator shall retain sole discretion in accepting or rejecting claims, and shall have no obligation to notify Class Members of rejected claims unless otherwise ordered by the Court."

This provision grants the Settlement Administrator unchecked discretion to deny claims as "fraudulent" without any obligation to inform the affected Class Members. Consequently, Class Members are denied the opportunity to appeal the denial or present evidence to refute the decision. The lack of notification deprives Class Members of their due process rights and undermines the integrity of the claims process. Furthermore, the provision that "The Claims Administrator's decision as to the validity of claims shall be final and binding," coupled with the lack of mandatory notification, effectively eliminates any meaningful recourse for Class Members whose claims are wrongfully denied.

The procedure outlined where claims can be denied without notice of an opportunity to challenge that denial violates the class member's due process rights. "[E]ach class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves." *Klier v. Elf Atochem*, 658 F3d 468, 474 (5th Cir. 2011), *citing Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807–08 & 812–13 (1985); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–30 (1982).

In this case, the property right will be denied without notice and without recourse.

Moreover, the proposal violates  Rule 23(e)(2)(D) which requires, for a settlement to be approved, that "the proposal treats class members equitably relative to each other" because some class members will be paid and others will be denied and will not be paid, without notice.

### 3. Limited Oversight, Lack of Class Member Protection, and Conflict of Interest

The clause (also in Paragraph 4.8) stating that "The Claims Administrator's decision as to the validity of claims shall be final and binding, except that Class Counsel and Defendant shall retain the right to audit claims and to challenge the Claim Administrator's decision by their mutual agreement or by motion to the Court." is insufficient to protect Class Members' interests. Neither Class Counsel nor the Defendant has a direct financial stake in ensuring the proper processing of individual claims. As a result, Class Members—the very parties most affected by the Settlement—have no mechanism to ensure their claims are processed fairly and accurately. Without notice of denied claims or the ability to appeal, the Settlement Agreement fails to safeguard Class Members' right to a fair and transparent claims process.

In addition, to allow Class Counsel and the Defendant to arbitrarily confederate and conspire to audit claims on their own and challenge the decision of the claims administrator is not appropriate.  Class Counsel purports to represent the class members and this creates a conflict of interest.  Class members have been told that they are represented by

attorneys – Class counsel.  Specifically the notice to class members explains, "Do I have a lawyer in this case?  Yes, the Court has appointed these law firms to represent the settlement class....."  However, under this provision, the lawyers who represented to consumers that they have lawyers are actually working against them to overrule the claims administrator and to audit and deny claims.

This type of behavior violates Fed. R. Civ. Proc. 23(g)(4)'s provision that explains, "Class counsel must fairly and adequately represent the interests of the class."   Class Counsel cannot act as judge against their own client.  Class Counsel should have no adjudicative authority.

For the reasons stated above, the Settlement Agreement does not adequately protect the rights and interests of the Settlement Class it is intended to serve. It is unreasonable, unconscionable, and should be rejected or substantially amended to ensure that the due process rights of Class Members are upheld.

## II.  THE ONLINE CLAIMS SYSTEM IS BROKEN, VIOLATES DUE PROCESS, AND IS UNFAIR

On June 26, 2025, Objector attempted to file his claim online.  He filled out the payment method, verified his email, and spent over 20 minutes entering all of the information.  When Objector submitted the data, he received the following message, "We have detected inconsistencies with your submission and/or interactions with the website. Please try again or on a different device (and disable any privacy settings). If the problem persists, please contact us by clicking the Contact form (or emailing Info@FoodRecallSettlement.com) and include this submission ID: 5fe85434-37d9-4334-abd4-2090e01d3696."

It appears that this message is provided in many cases, causing the claimant to give up.  This website needs fixed, clear information given as to

any blocks or requirements for the claimant's browser, and an extended claims deadline to address the issues.

Prior to approving the settlement and claims process, this Court needs to obtain statistical data as to the number of people having their claims rejected due to "inconsistencies".

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

### III.  THE SETTLEMENT PROVISIONS THAT STATE THAT A CLASS MEMBER DOES NOT CASH THEIR CHECK IN 120 DAYS VIOLATES DUE PROCESS AND MANDATORY ESCHEAT LAWS OF THE VARIOUS STATES.

The settlement agreement, Section 4.10, specifically states that a claimant that does not cash his check within 120 days will have the check voided and "shall not be entitled to any further payment under this agreement."  Checks in this case are being mailed without any form of tracking using either regular mail.  Checks are lost in the mail.  Therefore, this provision takes away a property right the class members possess.

More importantly, it violates various state escheat laws.  State escheat laws apply to uncashed checks in class actions.  *All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011).  "Every state and the District of Columbia has a set of escheat laws, under which holders of abandoned property must turn such property over to the State 'to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner.'" *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488(3d Cir. 2017) (quoting *N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012)).

"The *right* of appropriation by the state of abandoned property has existed for centuries in the common law." *Conn. Mut. Life Ins. Co. v.*

*Moore,* 333 U.S. 541, 547 (1948). In *Texas v. New Jersey,* 379 U.S. 674, 677 (1965), the Supreme Court first considered the question of when a state has the right and jurisdiction to escheat unclaimed intangible property. Importantly, the Supreme Court recognized that unclaimed property is the "debt" that is owed by the debtor to the creditor. *Id* at 680. Reasoning that a debt is the property of the creditor and not the debtor, the Supreme Court established a "primary rule" that "the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records." *Id* at 680-681. The Supreme Court chose this primary rule because it "involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided." *Id.* The Supreme Court affirmed these rules in *Pennsylvania v. New York,* 407 US 206 (1972)(dispute between states over uncashed money orders) and *Delaware v. New York,* 507 US 490 (1993)(dispute over uncashed dividend checks).

Here, the uncashed checks are no different than the dispute in *Delaware v. New York,* and the unclaimed property laws of the claimant's last known address apply.

Class Counsel cannot, by agreement, avoid these laws that govern uncashed checks. Some of the laws carry heavy fines and even criminal penalties. The settlement cannot stand.

## IV. THE CY PRES PORTION OF THE AGREEMENT IS INAPPROPRIATE

Section 4.10 of the Agreement states, "Funds from uncashed checks shall be paid to a cy pres charity to be agreed upon between the parties and approved by the Court." For the reasons above, first money must be escheated to unclaimed property so the claimants to receive it. Some small amounts are exempt from some states. In this case, the money is usually paid *pro rata* to the approved claimants, not given so fast to *cy pres.*

American Law Institute's Principles of Aggregate Litigation, note 28, §
3.07(b), explains that, "cy pres was appropriate where some class members
were compensated directly" and "further individual distributions are
economically infeasible."

In this case, we do not know at this time whether a further distribution
to other class members would be economically unfeasible.

## V.  THE SETTLEMENT AGREEMENT DOES NOT EXPLAIN WHAT HAPPENS TO UNCLAIMED ELECTRONIC PAYMENTS OR ERRORS IN THE TRANSMISSION

While the settlement agreement addresses uncashed checks, similar
situations happen with electronic payments such as Zelle, Paypal, and even
non-received prepaid gift cards.  There is no explanation as to what will
happen in the case of non-deliverable electronic payments.  These, too,
should be escheated if the claimant does not respond after outreach.

## VI.  FEES AND TERMS OF THE PREPAID DEBIT CARD ARE NOT DISCLOSED

The recent trend in class actions is to provide a prepaid debit card.
However, consumers are not advised of the terms and conditions of the
card or the fees attached.  Most of these cards are issued by two enterprises
with poor reputations that joined together:  Pathward N.A. and Blackhawk
Network.  Pathward issues the cards blindly to people as Blackhawk directs
then provides Blackhawk unfettered discretion as to administration of the
cards.  Blackhawk routinely freezes the cards and denies consumers access
to them citing unknown "security" concerns.  The cards are usually low
balance, so consumers do not bother to inquire.  When contact is made with

Pathward/Blackhawk, they demand photocopies of ID, utility bills, and they even attempt to re-audit the claim. Blackhawk/Pathward cite an agreement that the cardholder never agreed to in filing the claim and they state that the claims administrator agreed to said terms. The consumer has no remedy to cancel the agreement or obtain their money off the card being bound by an agreement they did not know in advance.

After freezing the balance, Pathward/Blackhawk start to charge an "inactivity fee" depleting the card balance.

When Pathward/Blackhawk engage in this scheme, they provide no letter to the claimant. Rather, they just deny transactions. A consumer would actually have to call a toll free number and speak to a call center in El Salvador to make any form of inquiry.

No privacy policy as to the cards, the calls, etc. are provided to the consumer.

Other prepaid cards act similarly, but Class Counsel desires for claimants to choose this option without advising the Court or the consumers of the terms.

## VII. THE DEADLINE TO FILE CLAIMS AND OPT OUT SHOULD BE EXTENDED TO A DATE AFTER THE COURT APPROVES THE FINAL SETTLEMENT AGREEMENT AND DISTRIBUTION TERMS

A person should not have to go through the tedious process of filing a claim prior to the court's approval. Moreover, the terms of a settlement often change to address objections and other issues brought up during the approval process. Similarly, a person should not have to opt out until a date after the court approves and sets the final terms of the settlement.

Here, a person is required to opt out even though they do not know what this court approved. If there is a modification to the terms, the person opting out might change their mind. Similarly, a person who previously

chose to participate may decide to opt out if this court makes any modification to the agreement or distribution plan.

Furthermore, as stated above, there are error messages people are receiving en mass when they try to file a claim.

## VIII. IMPROPER WAIVER OF UNKNOWN CLAIMS

Section 8.3 of the Settlement Agreement contains a waiver of unknown claims, which is inappropriate in a case like this. California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital...that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed. California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159–1161 (2011).

Respectfully submitted,



_____

Pat Zhen