Pat Zhen
PO Box 366047
San Juan PR 00936
(787) 547-5010
legal@patzhen.com



Objector

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                    Case No.: 7:24-cv-00526
Defendant.

**OBJECTIONS (PROVISIONAL)[1] PURSUANT TO FED. R. CIV.
PROC. 23(h)(2); AND, OBJECTION TO THE SETTLEMENT
BASED ON ATTORNEY FEES[2]**

      Objector Pat Zhen (hereinafter "Objector") respectfully submits these

Objections Pursuant to Fed. R. Civ. Proc. 23(h)(2) to the motion filed at

Entry 46 on July 14, 2025:

---

[1] Objector intends to file more clear and detailed objections if this Court
requires compliance with Rule 23(h) and provides a full and fair opportunity
to object to the fee motion.

[2] The deadline for objecting to the settlement bafflingly expired prior to the
motion for attorney fees being provided to the class effectively preempting
objections to the settlement based on the fee and service award motion.
The Court did not set a schedule to object to Class Counsel's fees which
violates Rule 23 as set forth herein.

## Preamble

Just this month in *Kurtz v. Kimberly Clark*, 142 F.4th 112 (2nd Cir. 2025), the Second Circuit outlined the need for district courts to closely scrutinize fee awards and held, "courts must act as a "protector of the rights of the class," scrutinizing class action settlements to ensure that absent class members and their claims are not shortchanged or undercut. *Id* at 117, *citing  In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir. 1987).  The Court explained that, "Rule 23(e) codifies these judicial duties. Under Rule 23(e)(2), "[a] district court may approve a settlement proposal that binds class members only 'after a hearing and on finding that it is fair, reasonable, and adequate.' *Id.*  The Court explained, "One such new factor is the consideration of attorney's fees: the 2018 Amendments now require courts evaluating settlement fairness to consider the adequacy of class relief while "taking into account … the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii)." *Id* at 118.

## I. Inadequate Notice in Violation of Fed. R. Civ. Proc. 23(h) was Given to the Class and No Instructions to Object to the Fee Award Are Present; Moreover, the Fee Award Motion was filed After the Objection Deadline Preventing and Chilling Objections.

As this Court *might be* aware, the Clerk of Court is not docketing objections filed by class members, but instead placing them into a shadow

file without the ability of the public to view them, without evidence of filing, and without any form of accountability.

On July 14, 2025, Class Counsel filed a motion for attorney fees, costs, etc. This was docketed at Entry 46. Class Counsel set a hearing of some sort for August 4, 2025. This provides about two weeks to *somehow* get objections onto the shadow docket. This Court did not set a notice and objection schedule as to the fee award.

Problematic is that the only notice to class members of the motion is that it was placed in the documents section of the website, itemized by a short description, but no date or other information.[3] The Class Member would have to: (a) Have a reason to access the site after the claims period expired; (b) Be curious enough to review the documents; (c) scroll down to the bottom of the page to find the relevant fee-related documents; and (d) take these actions within days of the filing:

---

[3] https://www.foodrecallsettlement.com/important-documents



More problematic is that there was no notice on the front page of the website[4] which shows the general objections deadline for the settlement. No notice of how to respond to the fee request has been provided:

---

[4] https://www.foodrecallsettlement.com/home



## Notice of Proposed Class Action Settlement

*If you purchased a Quaker Covered Product in the U.S. for personal, family, or household use, and not for resale, you may be part of a class action settlement.*

*This is a Court-authorized Notice. You are not being sued. This is not a solicitation from a lawyer.*



**Important Dates**

June 27, 2025
Submit a Claim Form

June 27, 2025
Exclude Yourself From The Settlement

June 27, 2025
Object To or Comment on The Settlement

August 4, 2025 at 10:00 AM EDT
Final Approval Hearing

- Please read the Notice carefully, which has been approved by the United States District Court for the Southern District of New York. Whether you act or not, your legal rights as a member of the Settlement Class are affected by the Settlement.

- A settlement has been reached in a class action lawsuit against The Quaker Oats Company ("Quaker" or "Defendant"), alleging deceptive marketing and labeling practices in connection with Quaker's voluntary recall of certain food products that had the potential to be contaminated with Salmonella, initiated on December 15, 2023 and expanded on January 11, 2024 (the "Recall"). The action is

The frequently asked questions about attorney fees were not updated.

They still show the following information:[5]



8. What does the Settlement provide?

9. What rights am I giving up by remaining in the Settlement Class?

10. What are the Released Claims?

**How To Get Settlement Benefits—Submitting A Claim Form**

11. How do I make a claim for Settlement benefits?

12. What happens if my contact information changes after I submit a claim?

13. When will the Settlement benefits be issued?

**The Lawyers Representing You**

14. Do I have a lawyer in this case?

15. How will Settlement Class Counsel be paid?

Class Counsel may apply to the Court for an award of an Attorneys' Fees and Expense Payment in a total amount not to exceed one-third of the Settlement Fund, in the aggregate. In no event shall Defendant be liable for any attorneys' fees or expenses in excess of that amount.

Class Representatives may additionally apply to the Court for a Service Award not to exceed $500.00 each as compensation for (a) the time and effort undertaken in and risks of pursuing this litigation, including the risk of liability for the Parties' costs of suit, and (b) the additional release set forth in Paragraph 8.2. of the Settlement Agreement.

Any award of Attorneys' Fees and Expense Payment or Service Awards approved by the Court will be paid out of the Settlement Fund.

Because of this, Zhen did not know about the motion until July 24, 2025, and did not have time to review every aspect of it. With such a short period before the hearing, he could not investigate the relevant case law. Moreover, having been denied access to the ECF despite the Long Form Notice instructing objectors to use it, Zhen was further prejudiced in preparing these objections. The objections cited herein are rushed, incomplete, and premature. Sufficient time is necessary to review all of the materials.

This notice does not comport with Federal Rule of Civil Procedure 23(h)(1) which requires, "Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Burying it on the website without any meaningful announcement does not constitute a reasonable manner.

One of the factors this Court must consider is the amount of attorney fees provided in approving the overall settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii). While the notice advised class members that Class Counsel would seek fees "up to" the specified amount, by not filing the motion until July 14, 2025, does not provide any real ability to object. It is the "motion" that must be reasonably provided to the class, not just a notice that sometime in the future they might file a motion. The filing of a complicated motion, a lengthy memorandum of law, and multiple declarations violates Fed. R. Civ. Proc. 23(h)(2) which states, "A class

member, or a party from whom payment is sought, may object to the motion." Nobody can possibly find the motion buried on the website's documents section, read and comprehend the motion, memorandum, and declarations and provide an intelligible objection.

It is unclear why Class Counsel would set an objection deadline in June 2025 then file their motion for attorney fees on July 14, 2025, after the objection deadline expired. In fact, Class Counsel touts that the undersigned did not object to their fees. ECF 47, page 1, fn. 2. Not so. One cannot object until the motion is filed under Rule 23(h), and nobody can review the lodestar information until the declarations are filed. "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010); *See also Drazen v. Pinto*, 106 F.4th 1302, 1338 (11th Cir. 2024)(adopting *Mercury* and finding manifest disregard of intent of Rule 23(h) and a breach of fiduciary duty by court).

*Drazen* is almost on point except that, instead of Class Counsel filing the fee motion after the objection deadline, Class Counsel filed it before the deadline and the court ruled on it providing, like here, an extremely short time to object. The *Drazen* court made it clear that putting a range of attorney fees in the notices to the class does not satisfy Rule 23(h). On the

contrary, the class must be made aware of the motion and must have a full opportunity to object, not a short period like occurred in this case.

Clearly, this Court should not proceed with the hearing on August 4, 2025, and, instead, must direct Class Counsel to comply with Rule 23(h), *Drazen* and *Mercury Interactive*. This Court must approve the notice procedure that Class Counsel suggested. Class Counsel must provide clear instructions to class members as to how to object considering that the Clerk is denying ECF access and not filing paper documents from class members.

## II.  <u>Class Counsel and this Court's *Pro Se* Office Interfered with the Objection Process</u>

Class Counsel touts a lack of objections in this case. However, as explained in Zhen's second objection to the settlement, Class Counsel's long form notice: (a) Told objectors to use ECF, but the Clerk refuses objectors access; (b) Class Counsel's *Long Form Notice* instructed objectors to address objections to the wrong name of the Clerk; and (c) The Clerk's office did not file objections, but rather held them, returned them, or placed them in a shadow docket. What we do know is that no objections were lodged on the docket as required by the Federal Rules of Civil Procedure, but there is no indication that other persons did not attempt to obtain permission from the Clerk to file by ECF or that they mailed letters in. Class Counsel blames this on court procedures, but if they knew that the notice instructions were not being followed, they had a duty to inform the court.

As to the fee award motion, nobody could object because the deadline expired prior to the filing of the fee motion. *See* Argument I, above. So certainly there are no objections except this one simply because Zhen stumbled on the motion.

### III.    No Reason Exists for Class Counsel to Receive 33.3%

Millions and millions of class members, a horrible 140,000 claims presented, an unknown number of failed claims because Class Counsel and Angeion Group will not release the statistics, no information from the parties about how many products subject to recall were sold, and a tiny settlement of $6,750,000 of which less than $4,000,000 will reach the class. Moreover, "the quality of representation … may be measured in large part by the results that counsel achieved for the classes." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014). Here, the quality of representation is that Class Counsel sold out the class for pennies on each product Quaker Oats sold if the tens of millions of potential claimants knew about the case, but because Angeion Group and Class Counsel will not tell us how many people *tried* to claim money, we only know that 140,000 people participated, most probably because of the low *res* of funds.

In fact, Class Counsel provided no analysis as to how much will actually reach the hands of the few 140,000 claimants in a litigation that should have had millions of claimants. Yet Class Counsel wants to receive

33.3% off the top, being paid first.   The 33.3% uses high hourly rates (many over $1,000) for counsel and a premium over their Lodestar.  Class Counsel provides no expert testimony that the Lodestar presents a fair hourly rate and no itemization of the work done has been provided.

IV.    **Class Counsel Provides no Statistical Data to Demonstrate they Adequately Protected the Absent Class Members to Justify the Large Fee**

**First, Class Counsel did not examine the number of people who attempted to file claims.**  Class Counsel provided the number of approved claims which is shockingly low in a class action where practically half of the households in the United States purchased the products.  There existed nearly 70 products and the time periods that they were eligible to claim at was quite long and included any purchase "between the earliest date of distribution of any Covered Product and the date of Preliminary Approval."

The question Class Counsel should have answered is:  How many people attempted to file claims, but received error messages (or so-called denials) of their claim similar to what Zhen received?  None of this statistical information has been provided that would enable this Court to determine that everyone was treated equally.

The Declaration of Angeion Group's Steven Weisbrot, ECF 44, page 6, paragraph 26, states that "As of July 14, 2025, Angeion received

approximately 140,712 (140,273 online, 439 paper) Claim Form submissions." However, the important statistical data would be those who attempted to submit a claim but could not complete the process.

**Second, Class Counsel did not examine the number of products sold and potential claimants compared to the number of people who were able to file a claim.** Class Counsel misleads this Court by stating, "The total sales of the Products that are the subject of the litigation and which are potentially contaminated and potentially reached consumers' hands during the relevant time period is approximately $27.6 million (using a 5% contamination rate, which is likely higher than the actual contamination rate based on Defendant's representations and Plaintiffs' own testing)." ECF 43, at par. 33. The reality is it does not matter what the contamination rate was because once the recall occurred, nobody would logically play Russian Roulette with the product. The food became worthless.

The approved definition of the class included purchasers of the products not during the recall period, but "between the earliest date of distribution of any Covered Product and the date of Preliminary Approval." The money numbers if this was calculated would be staggering.

Certainly, this involved possibly half of the households in the United States who could file claims under this definition. Yet, only 140,000 people *successfully* filed claims. 140,000 claims in a class action where tens of

millions of potential claimants existed does not demonstrate Class Counsel adequately provided notice of this class to warrant a high fee award. Unfortunately, Class Counsel will not reveal the number of people who *attempted* to file claims but could not since they received a bizarre error message about inconsistencies and telling them to try again.

With less than $4 million being distributed to class members, this end result cannot be justified.  This Court's obligation is to determine the number of potential claimants, compared to the resulting number of claims, and determine the benefit that would have been provided to the proper number of claimants and the amounts actually received.

Yet, Class Counsel and Angeion Group provided no information about what they did, or could have done, to increase the number of claimants.  Perhaps a longer claims deadline, or targeted ad in the coupon section of newspapers, would have been appropriate.

## V.   <u>The Fee Motion Does not Itemize the Work of Class Counsel, Does not Explain How Hours were Kept, and Fails to Justify the Hourly Rates.</u>

Class Counsel submitted several declarations in this case that outline the hours spent to justify their asking for $2,250,000 in fees.  These declarations, however, do not describe in any meaningful way the hours spent, what they were spent on, or why they were necessary to achieve the success in this case.

It is impossible for this Court to fairly conduct a determination of the Lodestar fee award without this information – especially where some attorneys purport to be billing more than $1,000 per hour without real justification.

The most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Without knowing what Class Counsel did, one can neither find the hours or the hourly rate reasonable.

In addition, since Class Counsel provided no itemization, it is unclear how the hours were kept track of. The affidavits filed leave more questions than answers:

1. Did Class Counsel use the fair 6 minute time increments or the outmoded 15 minute time increment calculation?

2. Did Class Counsel keep track using software, manually keep records, or just estimate their time?

3. Did Class Counsel use "off the cuff" timekeeping instead of detailed information for each task, using a uniform format?

4. Did Class Counsel use block billing, vague, or formulaic time entries?

5. Are there inconsistent or missing time records?

6. Did Class Counsel record duplicative or unnecessary work – especially with over ten attorneys on the case?

7. Did Class Counsel bill attorney hours for clerical, administrative, or routine work?

8. Did Class Counsel engage in "long day" billing?

More importantly, the self-identified hourly rates are particularly

suspect with some attorneys billing over $1,000 without real justification

as to exactly what they did.


## VI.    Class Counsel Only Summarizes Expenses

Class Counsel includes $72,000 in expenses in its request, but
provides no itemization for them.   They state the following:

CATEGORY EXPENSE AMOUNT
Computer Research $4,535.73
Filing fees $1,605.50
Postage/Overnight Delivery $17.08
Notary Public $5.00
Travel $14,365.65
Photocopy $4.05
Expert/Testing Fees $27,640.60
Investigation/Consultant Fees $8,000.00
JAMS (Mediation) $15,500.00
Service of Process $38.00
Administrative Costs $150.00
Transcript Fees $142.80
TOTAL $72,003.41

This does not provide any detail.  Amazingly, only $4.05 in

photocopies were incurred.  However, how could one possibly spend

$4,535 in computer research?  The filing fees are evidence from the court

and could easily be docketed.  The expert, testing fees, investigation, and

consulting fees, and travel expenses need itemized.  Even the JAMS

Mediation should be verified that $15,500 was actually spent.  Usually the

fee is split.

The reason the expenses need itemized is because sometimes counsel inflates them. *See Plumbers Union Loc. No. 12, Pension Fund v. Ambassadors Grp., Inc.*, No. CV-09-214-JLQ, 2012 WL 847275 (E.D. Wash. Feb. 28, 2012)(finding that the $15,000 mediation was particularly suspect because of the cost splitting, noting counsel billed the class for $70 bottles of wine, and finding that investigation costs were inflated).

In *Plumbers Union*, at least the court could review the fees. Here, they are hidden. This Court cannot simply accept class counsel's summarization without more. The reason counsel cannot be trusted is because sometimes a belief exists that "usually trial judges do not inquire as to claimed expenses and disbursements in class action settlements." *Plumbers Union Loc. No. 12 Pension Fund v. Ambassadors Grp., Inc.*, 2012 WL 1906384 *2 (E.D. Wash. May 25, 2012).

Where "Counsel has provided no information from which the court can evaluate the reasonableness of this request. In the absence of documentation about how many hours were expended and by whom, how those hours were spent, hourly rates, results obtained, and the use in this case, the court is unable to determine what portion of this large expense is reasonable under the circumstances." *In re Lattice Semiconductor,* 2007 WL 2815443 at *3 (D.Or.2007)(Denying $73905.50 for experts, consultants, and investigators).

This Court owes a fiduciary duty to the class members and needs to require itemization of fees.

## VII. <u>Class Counsel Did Not Thoroughly Investigate the Facts</u>

In this case, over 70 Quaker products were recalled due to contamination. While the parties appear to have spent a lot of time in mediation, it is unclear what facts Class Counsel investigated. Clearly, Class Counsel does not understand the vast scope of the amount of products recalled having settled the case for $6,750,000 with less than $4,000,000 going to the class. If Class Counsel thoroughly investigated the number of consumers affected, it is unclear that they would be pleased with the settlement numbers and the fact that only 140,000 victims filed claims.

While Class Counsel do not need to engage in extensive formal discovery, they must have "conducted sufficient discovery to understand their claims and negotiate settlement terms." *See D'Amato v. Deutsch Bank*, 236 F.3d 78, 87 (2nd Cir. 2001).

Here, Class Counsel has not sufficiently justified the discovery in this action to receive a fee award so large for waiving the rights of so many.

Class Counsel never identified to the class precisely what the class and the class claims consist of, the issues, and the defenses. Class Counsel's notices are too vague for an ordinary person to comprehend that.

The first glaring example of Class Counsel's unfamiliarity with the case are that they stated that Zhen's claim showed he had no standing because the products are not listed as being recalled; however, the yogurt bars Zhen chose are listed in this case. In addition, Zhen chose the best description possible from the list. Class Counsel does not seem to understand that all of Quaker's yogurt bars were recalled regardless of the quantity variations.

The second example is that Class Counsel does not know the dates that the products were eligible. They simply stated that the claims period began at the time the product was first produced. However, a consumer would not know what those dates were or how far back to check their records. If Class Counsel took any steps to determine the gross sales that the defendants had with respect to the products, step one would be to know when they were in production and provide that information to class members.

VIII.   **Class Counsel Improperly Calculates Attorney Fees Using the Full Settlement Amount**

In this case, Class Counsel seeks 33.3% of the gross settlement fund of $6,750,000 for a total of $2,250,000. Class Counsel does not know the final amount of expenses in this case. Class Counsel should receive their award based on the amount of money that the claimants actually will

receive, not the entirety of the settlement funds which includes expenses.

Indeed, there will be an appeal to the Second Circuit that challenges the

way claims were rejected.  On that appeal, it will specifically be requested

that the claims process be based on the claimant's attestations and not the

data they entered in *prior* class action cases.  Certainly, actual fraud should

be rooted out; however, people who have their claims denied, rejected, or

given an error message should receive specific information as to what

needs done.  If the Second Circuit agrees, then the expenses will increase

and, under the settlement agreement, only the claimants will lose money

due to these expenses.  The expenses were unnecessary and occurred

because Class Counsel failed to supervise Angeion Group, did not provide

clear instructions to claimants, and did not propose specifics as to reasons

a claim would be rejected.

For this reason, the 33.3% is grossly excessive and may become, if it

has not already become, a higher percentage when compared to what the

claimants are actually receiving.  Class Counsel's percentage should be paid

based on the benefit to the class post-expense.

IX.    **Class Counsel Engaged in Unethical Behavior**

When considering the fee award, this Court should consider certain

unethical behavior Class Counsel engaged in.  When Zhen notified Class

Counsel that this Court failed to file his objections, they asked for a

telephone call to try to resolve them. Zhen participated in settlement discussions.[6] In violation of F.R.E. 408, Class Counsel disclosed the conversations to the court and provided their opinion about statements which were made. Zhen provided the information to Class Counsel thinking that, as the Long Form Notice stated, they were acting as his attorneys. The information provided was made in confidence. In violation of New York Disciplinary Rule 1.6, Class Counsel disclosed it. To the extent that the mere advising the Court that Zhen did not like the settlement, as the notice said to do, ended Class Counsel's representation of Zhen, Class Counsel should have complied with N.Y. Disciplinary Rule 4.3, "When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding."

Instead, what Zhen received was objector harassment and attempts to discredit and impugn his credibility despite F.R.E. 404(a) and 404(b). The attacks upon Zhen occurred after Class Counsel assured him that it did not engage in this type of behavior. Instead, in violation of N.Y. Disciplinary Rule 4.4(a), Class Counsel sought to embarrass and harm Zhen for no substantial purpose. Class Counsel also violated Rule 4.4(a) by

---

[6] At no time did Zhen request or even suggest he receive any form of money. Zhen only discussed the merits and his legal position. Class Counsel refuses to provide the time and caller identification information of a call they allege to have received.

pulling claims data from other litigations through the claims administrator without permission from the other courts. This "violate[s] the legal rights of such a person." Similarly, Class Counsel pulled informational reports and repeated the data without advising this Court that said reports pull data from multiple sources. Indeed, for instance, Angeion Group uses www.whitepages.com to view telephone number ownership when the site specifically disavows the information they receive. "Whitepages does not verify Public Information, Breach Content or any other Content." *See https://www.whitepages.com/terms-of-service* . Nevertheless, Class Counsel repeated this data in declarations that Zhen cannot see.[7]

The issues relating to Class Counsel's attack on Zhen are minimal when compared to the larger issue: Class Counsel allowed its claims administrator to data-mine information from other judicial settlements for use in claims analysis without obtaining approval from the courts that administered the settlements where the data originated. Nothing in any class action would give a claimant any indication that the claims administrator would retain the claims data and, without any form of notification, use it in other cases resulting in the denial of claims.

---

[7] Zhen is aware of the information only because it was revealed to him in another litigation that Class Counsel and Angeion Group interjected themselves into for no reason other than to harass the Objector.

Class Counsel could not even take the time to formulate a privacy policy as to the claims filed in this case and, without this Court's approval, apparently will allow Angeion Group to use claims submission data to deny or find "inconsistencies" as to claims in future cases.

In other words, Class Counsel and Angeion Group created a consumer reporting agency for class actions without advising any of the claimants. There simply exists no notification to claimants of this situation.

Claimants generally would never suspect that if their telephone number in one case did not match the phone number in a second case that their claim would be rejected with a vague message about inconsistencies that tells them to try again using a browser without privacy enhancements as Class Counsel apparently authorized Angeion Group to do.

## X.   **Class Counsel Received Valuable Indemnification through the Settlement Agreement**

As this Court knows, Class Counsel allowed Angeion Group to data-mine claims submissions in other cases without informing the respective courts and without obtaining permission from the claimants. Angeion Group denied claims based on information not matching claims in other cases such as if the claimant changed their telephone number.

Obviously, Angeion Group and Class Counsel may face a serious liability depending on the extent of the data access, whether the attorneys

and judges in those other cases granted permission, and the state laws relating to investigative consumer reports and consumer reports in general.

Class Counsel suspected that they may be liable for the misconduct of Angeion Group, so despite their obligation to supervise Angeion Group, they actually put the following language into the settlement: "Neither Named Plaintiffs nor Defendant, nor their counsel, shall have any liability whatsoever for any act or omission of the Claim Administrator." ECF 13-1, page 14.

If enforceable, this improper release of liability provides a value to Class Counsel because Class Counsel has knowledge and condoned Angeion Group's accessing claims data from other cases to deny, without notice, claims in this case. An estimated value from this waiver of liability should be a factor in reducing Class Counsel's payment.

## XI. <u>Class Counsel Improperly Restricted the Speech of Absent Class Members without Providing Notice, Subjecting them to Liability</u>

When considering Class Counsel's fee, this Court needs to consider that Class Counsel placed practically every household in the United States at risk of liability if they should discuss Quaker products in a negative way. Buried in the Settlement Agreement, but not mentioned anywhere on the long form or short form notice or Angeion Group's website is the following language:

> *Named Plaintiffs, Settlement Class Members, and Class Counsel*
> *shall make no statements, including statements to the press or any*
> *other public statements, that disparage Defendant, any Released*
> *Party, or any of the Covered Products, or accuse Defendant or any*
> *Released Party of any wrongdoing regarding this Settlement or*
> *Litigation or the subject matter thereof.*

ECF 13-1, page 21.

This waiver of rights to speak provides Quaker Oats with millions of dollars in suppressed negative publicity. Zhen, for one, plans to discuss Quaker products in a disparaging manner and he obviously intends to speak about wrongdoing regarding this settlement.

Class Counsel, in turn, allowed for this language that can be used to subject Zhen to liability and possibly injunctive relief for speaking out about Quaker's massive contamination problem and a settlement where only 140,000 people could successfully file claims while Class Counsel refused to provide true statistics as to the number of people who attempted to file but received rejection messages. Obviously, Zhen intends to publicly speak about what he perceives as collusion, wrongdoing, unethical behavior, and the general absurdity of this settlement including these provisions.

Worse, Class Counsel allowed this language – worth millions to Quaker Oats – knowing that most people know nothing about this class action let alone the provision in the settlement agreement.

Class Counsel fraudulently concealed this non-disparagement clause in the Long Form and other notices provided to the class.

This Court needs to estimate the cost of this provision to the class members and reduce Class Counsel's fee in the same award.

This term, forced upon people without their knowledge, also goes to the quality of the settlement, warranting a reduction in legal fees.

XII.    **The Motion Improperly Asks for $2,500 in Service Awards**

With multiple class action counsel who appeared in the case, it is perplexing that there is no consistency in the numbers presented to this Court. The motion filed by Class Counsel asks for $2,500 to be provided to each plaintiff. *See* ECF 46, page 1. It is unclear if this is a typographical error or otherwise.[8] The memorandum at ECF 47, page 25, asks for $500. The settlement agreement provides for $500 in service fees to the plaintiffs. *See* Section 4.5.3. Docket Entry 13-1, page 11 ("To pay any Service Awards to the Class Representatives, not to exceed $500.00 per Class Representative, as may be ordered by the Court and as described in Paragraph 7.2 below"); *see also id* at Section 7.2, page 18 ("The Class Representatives may additionally apply to the Court for a Service Award

---

[8] Typographical errors happen; however, with multiple attorneys demanding $600 to $1,000 per hour and a Lodestar multiple of 1.4, it would be helpful if someone actually read the pleadings before filing them.

not to exceed $500.00 each as compensation...").    The Frequently Asked

Questions on the website[9] also list $500.00:

| 15. How will Settlement Class Counsel be paid? | ∧ |
| --- | --- |

Class Counsel may apply to the Court for an award of an Attorneys' Fees and Expense Payment in a total amount not to exceed one-third of the Settlement Fund, in the aggregate. In no event shall Defendant be liable for any attorneys' fees or expenses in excess of that amount.

Class Representatives may additionally apply to the Court for a Service Award not to exceed $500.00 each as compensation for (a) the time and effort undertaken in and risks of pursuing this Litigation, including the risk of liability for the Parties' costs of suit, and (b) the additional release set forth in Paragraph 8.2. of the Settlement Agreement.

Any award of Attorneys' Fees and Expense Payment or Service Awards approved by the Court will be paid out of the Settlement Fund.

Considering that the cap on service fees is $500, this Court must

clarify that the amount proposed is per plaintiff. *Cf. Montgomery v. Aetna*

*Plywood, Inc.,* 231 F.3d 399, 410 (7th Cir. 2000) (upholding district court's

decision to reject incentive fee where class counsel did not provide

adequate information regarding incentive fee in notice issued to class

members).

## XIII.    <u>Class Counsel did not Justify or Show the Legality of the Service Awards</u>

$2,500 is excessive in a case where millions of people were eligible to

file claims and only 140,000 did.  $500 sounds more reasonable, but Class

Counsel failed to provide justification for it.  Class Counsel neither provides

any information about the work the named plaintiffs did nor why they

---

[9] https://www.foodrecallsettlement.com/faqs

believe they achieved a victorious settlement. Did these Plaintiffs need to sit for depositions? Respond to interrogatories?

The Court must keep in mind that it is believed that many people were blocked with messages similar to what Zhen received and could not file a claim. Those people earned zero dollars. In reality, if Angeion Group did not implement the barriers to file a claim, and if better advertising occurred, the payment in this case would be just pennies. Instead 140,000 individuals out of millions of purchases will split less than $4 million while everyone who was blocked by Angeion's AngeionAffirm 2.0 blacklist receives only a loss of their rights. The people who do not know of the settlement also receive a loss of their rights and that is millions of people.

The horribleness of the settlement aside, the service awards – if they are legal at all – simply have not been justified.

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and Central Railroad & Banking Co. v. Pettus, 113 U.S. 116 (1885), [the Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). But any payment to compensate representative plaintiffs for their own "personal services" on behalf of a class is both "decidedly objectionable" and "illegally made." *Greenough*, 105 U.S. at 537-38. A representative plaintiff's "claim

to be compensated, out of the fund ... for his personal services" was "rejected as unsupported by reason or authority." *Pettus*, 113 U.S. at 122.

The Eleventh Circuit repeatedly found service fees to be unauthorized. "Supreme Court precedent prohibits incentive awards." *Johnson v. NPAS Solutions*, 975 F.3d 1244, 1255 (11th Cir.2020), *en banc rehearing denied*, 43 F.4th 1138 (11th Cir.2022); *accord, e.g., In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1257 (11th Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 994 n.4 (11th Cir.2020) ("service awards are foreclosed by Supreme Court precedent").

The Second Circuit recognizes such service awards violate Supreme Court precedence, but continues to allow them.  *Hyland v. Navient Corp.*, 48 F.4th 110, 124 (2d Cir.2022); *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 96 (2d Cir.2019).  In *Hyland*, the Second Circuit noted,  "[w]e are bound by Melito's holding unless or until it is overruled by the Supreme Court or the Second Circuit in banc."

While Zhen specifically preserves the issue as to whether service awards are authorized at all so that it can be reviewed by an *en banc* Second Circuit or by the Supreme Court, in this case the awards lack justification even if they were legal.

Class Counsel provided no information that – if the awards are authorized – demonstrates that they would be warranted.  There are no

declarations from the plaintiffs describing the services that were rendered, they do not explain their participation in this case, and we know very little about how and why they became involved.

For instance, Zhen finds himself performing extensive work on the case and in return he received only a vague message from the claims administrator that "inconsistencies" occurred in his claim submission. Zhen, like thousands of others, were denied their due process rights in this case so that a select 140,000 people of millions could receive a benefit and the plaintiffs could receive $500 for, apparently, little more than having their name listed in the caption.

Because the service fees lack justification, it would be an abuse of discretion to allow them.

## <u>CONCLUSION</u>

Based on the above, ruling on the fee request is premature. First comes notice to the class and a fair opportunity to object. Second, if this Court chooses to move forward, it should deny the motion, require supplementation, reduce the fee award for the problems that exist due to Class Counsel's less than diligent actions, and instead base a fair percentage, such as 15%, based on the amount recovered for the class distribution rather than giving class counsel payment off the top of the settlement fund.

## **DECLARATION**

I, Pat Zhen, declare and state under the penalty for perjury that the foregoing is true and correct to the best of my knowledge as is the information below. 28 USC 1746.

I am a class member. I attempted to submit a claim using the online system which rejected the attempt, telling me to try again after turning off privacy features of the browser.

Claimants without receipts were limited to two products. I listed Quaker Chewy Yogurt Variety Pack and Quaker Assorted Chewy 48 pack on the electronic claim form. These products were listed as included in the case. However, in addition to this, I purchased Quaker Big Chewy Bars Chocolate Chip, Quaker Big Chewy Bars Variety Pack, Quaker Chewy Bars Chocolate Chip, Quaker Chewy Bars Chocolate Chunk, and other Quaker granola and chewy bar products while in the United States.

In fact, I reviewed my inventory and I have full, unopened bags of the following Quaker Granola Cereal from 2021 that was subject to recall and is part of the settlement. At the Court, Defendant's, or Class Counsel's request, it can be sent for inspection. I bought this within the United States during the class period, a period that was never defined except to say it began during product inception:







Respectfully submitted,

Pat Zhen