Pat Zhen
PO Box 366047
San Juan PR 00936
(787) 547-5010
legal@patzhen.com



Objector

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,            Case No.: 7:24-cv-00526
Defendant.

### DECLARATION OF PAT ZHEN

I, Pat Zhen, declare and state under the penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief (28 USC 1746):

1. My name is Pat Zhen. I am primarily a resident of Puerto Rico, United States of America. However, I travel frequently and spend significant time in other areas.

2. I am a class member, having bought myriad products by Quaker Oats Co., including but not limited, yogurt granola bars, granola cereal, Quaker Big Chewy Bars Chocolate Chip, Quaker Big Chewy Bars Variety Pack, Quaker Chewy Bars Chocolate Chip, Quaker Chewy Bars

Chocolate Chunk, and many other products. In fact, I coincidentally have two bags of granola cereal that I could send to Defendant's Counsel for inspection and they could certify that they fall into the definition listed in the claims forms. These are listed in the class including the exact serial number. I bought them in 2021 and retained them because of a dispute with Costco. They were bought using a Costco gift card.







3. While I cannot find an Order identifying and certifying the description of the Class, in documents Class Counsel filed and the claim form, it appears that most Quaker Oats products were affected and that, for whatever reason, the time period is the beginning of the product's distribution until March 2025. Therefore, anyone who bought a Quaker granola-type or snack bar product is eligible – likely in the tens of millions of people.

4. The Long Form Notice instructed me to file my objections by ECF; however, less than 48 hours from the objection deadline, the Clerk of Court denied me access to file my objections. This is the message I received:

Court: NEW YORK SOUTHERN DISTRICT COURT
Date/Time Submitted: 06/26/2025 00:36:17 CDT
Transaction ID: 201841
Request: Registration
Transaction Status: **Rejected**

You must file a motion for permission for electronic case filing for pro se cases in your case. Please copy and paste this link into your browser to acquire the motion
http://nysd.uscourts.gov/file/forms/motion-for-permission-for-electronic-case-filing-for-pro-se-cases.
You should register for our Introduction to ECF Class (http://nysd.uscourts.gov/ecf_training.php) and attach your certificate of

completion to your motion. Once the motion is granted by the judge, we will activate your e-filing access for the SDNY in your PACER account.

5. None of the documents I have filed have appeared on the PACER despite the Clerk's office acknowledging that they have received them. The Clerk's office stated that because I am not a named party, they send the documents to this Court's chambers instead of publicly filing them. I notified Class Counsel of the problem by email and advised him that this violated the constitution and the Federal Rule of Civil Procedure 79(a)(2).

6. When I made my initial objections, my main issue was that I wasn't able to file a claim. The only information provided was an error message mentioning "inconsistencies" and advising me to try again and disable browser privacy settings—even though I didn't have any such settings enabled. Additionally, I brought up a few other issues that I was aware of, which were more general frustrations that I felt also deserved attention.

7. Because my claim was blocked with the error message just a few days before the objection deadline, I did not have a chance to thoroughly read the settlement agreement, look at the PACER of the case, or peruse each and every document.

8. I relied on the Long Form Notice and the claim form to provide me with information about the case.

9. Now following additional review, I see that the Settlement Agreement actually enjoins everyone who bought any Quaker Oats granola product from the beginning of distribution of the product until March 2025 from "disparaging" the product or the settlement. This is not mentioned in the Long Form Notice or on the settlement website. The verbiage is: *Named Plaintiffs, Settlement Class Members, and Class Counsel shall make no statements, including statements to the press or any other public statements, that disparage Defendant, any Released Party, or any of the Covered Products, or accuse Defendant or any Released Party of any wrongdoing regarding this Settlement or Litigation or the subject matter thereof.* This language is shocking as I do intend to speak about the settlement as I believe defendants colluded with Class Counsel to waive the claims of the public and the inclusion of this provision is shocking. I also intend to "disparage" the Quaker Oats products and this settlement because it affects millions upon millions of purchasers, but only 140,000 successfully filed their claims. This provision harms me and the public. This Court cannot lawfully approve a settlement that waives the speech rights of millions of people in exchange for a tiny payment to 140,000 people.

10. I am an objector in the case *In re: Telescopes Antitrust Litigation*, 5:20-cv-03639., which is pending in the Northern District of

California. My sole objection included the dismissal of the case with prejudice and on the merits which affects residents of Puerto Rico, which I believe is an antitrust repealer territory. I filed an appeal from the denial of my objection.

11. When I filed my appeal, Class Counsel Thomas Boardman in that case began emailing me threats of sanctions, that they will obtain an appeal bond, that I will be responsible for attorney fees and other intimidation. Similarly to Class Counsel in this case, Boardman demanded my identification.

12. Thereafter, even though the case was terminated with no proceedings in the district court, and without leave of Court as required by Federal Rule of Civil Procedure 27(b), Class Counsel in *Telescope* issued multiple subpoenas to me demanding documents about my appeal and an in person deposition in both Puerto Rico and in Boston, Massachusetts.

13. Class Counsel in the *Telescope* case, in a brazen violation of Federal Rule of Civil Procedure 5-2, submitted the first five digits of my Social Security Number and my month and year of birth onto the public docket.

14. Concurrently with that disclosure, Class Counsel filed an affidavit from Angeion Group. In that declaration, Angeion discussed claims

filed by objectors in the *Telescope* case. They did not discuss *Telescope* claims, but claims in other court cases.

15. In fact, Angeion Group has nothing to do with the *Telescope* case. On the contrary, that case is handled by Veratis, a competitor of Angeion.

16. In the declaration, Angeion Group stated they conducted an investigation of me based on my objections. They admitted they pulled consumer reports, accessed databases, and claims filed in other cases. Angeion disclosed in the *Telescope* case that, "Angeion's records reflect that an individual using the name 'Pat' or 'Patrick Zhen' has submitted claims in connection with other settlements that Angeion has administered in the past. Based on a review of Angeion's records and the results of Angeion's fraud detection processes, claims submitted under the name 'Pat' or 'Patrick Zhen' have been denied on multiple occasions due to indications of fraudulent activity." Angeion testified that they, "conducted a more extensive investigation regarding the objector identified as Pat Zhen." Angeion states it used www.whitepages.com to investigate my telephone numbers. www.whitepages.com makes it clear, "Whitepages does not verify Public Information, Breach Content or any other Content." *See* https://www.whitepages.com/terms-of-service

17. Similarly, Class Counsel infers that the telephone number I used on my original objection belongs to a third party. While I cannot see

Class Counsel's sealed documents, I believe they are referring to 787-523-8040. Contrary to this claim, the telephone number does not belong to any individual. Rather, a simple Google search would show that the telephone number belongs to a company I am affiliated with, not to a person. The Company, Officenter Corp., acts as registered agent for multiple Puerto Rico corporations that list it as their registered agent's telephone number. Officenter is registered with the United States Postal Service as a commercial mail receiving agent and collects and gathers mail for domestic and international businesses. .

18. Since this is the only other case I filed a current objection in, it became clear to me that the involvement of Angeion Group in the *Telescope* case came from Class Counsel in this case working with Counsel in the *Telescope* case to personally attack me.

19. I do not believe that this Court provided permission to provide my information to Class Counsel in the *Telescope* case, which is a case that I did not file a claim in. I certainly did not give Class Counsel and Angeion permission to provide my information. I thought Class Counsel in this case was acting as my attorney per the Long Form Notice.

20. Moreover, I cannot locate a privacy policy approved by this Court in this class action case.

21. Obviously, considering this, I have no intention of providing Class Counsel my identification documents. My decision is well founded based on Angeion Group trolling other class actions to reveal my information.

22. I would be happy to submit the documents under seal to chambers providing that all parties agree that neither Angeion Group nor Class Counsel will be able to examine them. I fear that, without adequate security measures and privacy policies in place, my information will continue to be disseminated publicly by Angeion Group and Class Counsel in this case.

23. Class Counsel sent me an email that he received a call demanding $100,000 to resolve the objections in this case. So that I can attempt to obtain the call records, I asked Class Counsel for the time and date of the call and caller identification information. I pointed out that because my objections were not made public by the court, nobody would know about them. Class Counsel sloughed off the oddity that no-one should know about the objection by writing, "Pat, your name is noted as an objector on the public docket in the letter I emailed to you that was filed with the court." However, Class Counsel still would not advise of the time, date, and Caller ID information from the call.

24. As I did not speak to anyone about my objection, the only people who knew were Class Counsel, the defendants' attorneys, the Angeion

Group Chief Technology Officer and Angeion staff, and the *Telescope* Class Counsel that Class Counsel here inappropriately joined forces with to try to discredit me.

25. I do not believe any call came in and I believe the story is a pretext. Class Counsel should be directed to preserve the records relating to this call including the time, date, caller ID information, and the telephone number that the person called from.

26. I am aware that the Federal Rules of Civil Procedure prohibit a payment to an objector without court approval. I never asked for any money from Class Counsel. If our objections were settled, which none are, I may have asked for reimbursement for actual costs incurred which is about $100. However, I made no such demand.

27. I represent myself pursuant to 28 USC 1654. Nobody can call on my behalf unless I hire counsel and they file an appearance.

28. I believe the disclosure of this purported call, without a time, date, telephone number, or Caller ID information attached, is meant to attempt to discredit me and have the Court ignore my objections as some sort of extortion.

29. I note that in the *Telescope* case, despite Class Counsel there acting in an unethical manner and engaging in objector intimidation, they do not purport to have received any such demands. Therefore, it is

particularly suspect that Class Counsel would spin the tall tale to this Court.

30. I did engage in a conversation with Class Counsel. I believed the conversation was a confidential settlement mediation-type call. I did not authorize Class Counsel to reveal the content of our settlement discussions. I was shocked to see Class Counsel express his opinions about my credibility and claim based on the call for two reasons. The first was that Class Counsel represents me. In the Long Form Notice, Question 14, "Do I have a Lawyer in this Case?" Class Counsel wrote, "Yes," and identified themselves. Second, I believed the purpose of the call was so that they could understand my objections and we could work on solutions. I do not believe that the content of these privileged communications are admissible and I believe it was unethical for Class Counsel to opine that I was not credible based on the settlement conversation.

31. Class Counsel points to a term in the Settlement Agreement to the effect that where Angeion suspects fraud, additional information could be requested. At no point did Angeion group request additional information about my purchases. Rather, it simply blocked the completion of my claim by stating that "inconsistencies" existed and that I should try again using a different browser with privacy settings turned off. I had no privacy settings turned on.

32. I did attempt to call Angeion Group to complain, but no human exists on the site. Rather, I spent over five minutes listening to redundant information only to be given an answering machine. Here is what a consumer needs to listen to just to get to the beep tone to leave a message for a call back:

Welcome to the Kessler v. Quaker Oats Company Administration settlement support line. This toll-free line has been established to provide class members with information regarding the class action settlement. More information is available at the settlement website www.foodrecallsettlement.com. This is the main menu. Please listen to the following options. You may make your selection at any time. You may return to this menu at any time by pressing the star key.

To hear why you received a notice, please press 1 now. To hear what this lawsuit is about, please press 2 now. To hear if you are a class member, please press 3 now. To hear what the settlement provides and what you can receive, please press 4 now. To hear how you can file a claim and receive a benefit, please press 5 now. To hear how to exclude yourself from the settlement, please press 6 now. To hear how to object to the settlement, please press 7 now. To hear information about the attorneys in this case, please press 8 now. To hear when and where the court will decide whether to approve the settlement, please press 9 now.

To get more information or leave a message, please press 0 now.

&lt;DIAL 0&gt;

This recording summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www.foodrecallsettlement.com if you have questions about the proposed settlement or anything in the notice, you may contact the claim administrator. Claim administrator 1615 The Arch Street, Suite 2210 Philadelphia, Pennsylvania 19103 or email info at food recall settlement.com. Please do not contact the court or the clerk's office to inquire about the settlement or the claim process.

If you would like to leave a message for a live operator, please press the pound key now.

&lt;Dial #&gt;

If you would like to request a paper claim form be mailed to you after the tone, please begin your message by saying, I am requesting a claim form and provide the full name and mailing address to which the claim form should be sent. Please note, a PDF of the claim form is also available for download at the settlement website. Or you may submit your claim online through the claims filing portal. If you are not requesting a claim form, please leave a message including your name, the nature of your question, and a phone number where you may be reached during business hours, and we will return your call. Please speak slowly and clearly. After you have left your message, please hang up to disconnect the call.

&lt;Beep&gt;

33. I accessed the website to contact Angeion Group. It has options to contact, but not for problems when submitting a claim.



34. No place on the website does it provide contact information for Class Counsel, as if claimants are supposed to dig this information up to file their claim valued based on two Quaker products that they purchased.

35. This is a case where most people would believe they are going to receive pennies considering the large number of people eligible to file

claims and the small settlement pool. Potential claimants were not aware that, due to gatekeeping by Angeion Group and an underfunded media campaign, only 140,000 claims would be made.

36. Prior to being personally attacked by Class Counsel warranting a thorough investigation, I would not have – and ordinarily claimants would not – spend hours trying to figure out why their claim received the vague and odd message from Angeion Group. The claim would ordinarily be assumed to net a consumer a very small amount of money.

37. Nowhere in Angeion Group's notice did it advise Claimants to contact Class Counsel.

38. Class Counsel states that I refused to accept assistance in determining why my claim was rejected. First, Class Counsel still never fully explained why the system automatically rejected my claim. Second, while Class Counsel offered assistance, it appears that he simply wanted my identification documents to share with the *Telescope* Class Counsel.

39. During the settlement call – a call I thought was confidential as mediation to resolve the problems – I did not decline assistance but a second call was scheduled. We never reached the point where Class Counsel explained the reason for the denial other than vague assertions.

40. I have reviewed the Long Form Notice, the settlement website, and the settlement agreement. In response to my objections, Class Counsel infers that people who have their claims rejected by Angeion Group's system can opt out and preserve their claims. I can find nothing that supports that conclusion. This Court should email persons who received the inconsistencies message and advise them that they can opt out. People are entitled to know they can do this.

41. A more fair procedure would be that if a claimant's claim was not processed by Angeion Group due to "inconsistencies," the claimant should automatically be opted out and able to sue in small claims court for their damages due to Quakert's tainted products.

42. I do not withdraw my objection based on the unclaimed funds. During the confidential settlement call, Class Counsel represented that nobody requested a paper check. We now see that was a false representation. I also explained that the objection was not just about paper checks, but also electronic payments.

43. Class Counsel stated that there would be no unclaimed electronic payments because if a payment failed they would be given a choice to choose another method. Class Counsel inferred that there would be no money reverting.

44. This does not appear to be true. Nothing in the agreement or on the docket supports this.

45. Secondly, even if it were true, if an electronic payment (such as a Zelle) was not successful, and the person did not receive the email offering a second option, that money would be unclaimed. It should be escheated to the states if not claimed after a reasonable time period.

46. I suggested I would withdraw the objection if there was going to be a 100% chance of claimants receiving their payments. We were to discuss this further on the next call. To date, Class Counsel has not demonstrated that there will not be unclaimed electronic payments.

47. In both cases, electronic or paper payments, if a person submitted a valid claim, they are entitled to the money. It should not be redistributed, given as additional attorney fees, or provided to a *cy pres*.

48. I have reviewed Class Counsel's documents showing the fees charged to the Pathward/Blackhawk debit card. This is a fee sheet, it is not the agreement that consumers are forced into when they choose prepaid card as a payment method. I have attached a sample Blackhawk/Pathward agreement used in Class Action cases. This does not govern this debit card, but shows the type of terms including arbitration agreements and consent to Blackhawk/Pathward closing the account without notice. Once they close or freeze the account, they continue to charge dormancy fees eating the funds on the card.

49. I have personally experienced this deceptive practice. Pathward and Blackhawk issue the cards electronically, many people do not receive the email as it goes into their SPAM box, they never activate them, and then Blackhawk charges fees to eat up the balance. The dormancy fees start when the card is issued, not when it is activated or the terms accepted. Therefore, if you do not accept the terms, the card sits dormant and Blackhawk/Pathward charges the fees. Thus, if you do not receive the email notification, the funds are eaten up. It is perplexing that Blackhawk/Pathward can start charging fees prior to the consumer accepting the card or the terms, but when a consumer complains, Blackhawk/Pathward state that Angeion Group accepted the terms and knew them. These facts should be disclosed as well as the full terms and conditions, not just a summary page.

50. Another problem that I experienced using Blackhawk/Pathward cards is that if you buy a product and return it for a refund, Blackhawk/Pathward freezes the account and demands justification, identification, and proof of address including utility bills. None of this is in the account agreement. Considering Blackhawk has admittedly suffered multiple data breaches, who would provide that for a $15 card? Then the fees start and Blackhawk/Pathward take dormancy fees even from frozen cards.

51. Class Counsel chooses not to address this or the fact that they bind all persons who chose the prepaid card payment option to the contract.

52. Based on Class Counsel's representations during the call where he represented the agreement specifically settled only economic claims from the product purchase, I stated it may be appropriate to withdraw the objection. However, we never finalized that. Another one of the Class Counsel on the telephone admitted the terms were hard to read and understand. I have since reviewed the terms. They do not say what Class Counsel inferred. The agreement only "carves out" personal injury claims, but it is not defined. Unless the carve-out is clarified to include all non-economic claims, including emotional distress, Zhen cannot withdraw this objection.

53. I believe that Class Counsel engaged in extreme bad faith in this case, violated the privacy of all class members by allowing Angeion Group to provide claims data to attorneys in other cases without this court's permission, not having any privacy policy or rules, data mining, pulling consumer reports on objectors, allowing non-disparagement clauses in the settlement that enjoins class members from speaking out about Quaker products or the poor nature of the settlement, settling the case for a small payout despite tens of millions of people being eligible for filing a claim but using blockers to prevent a large number of claims without giving clear

instructions to potential claimants, including terms that absolve Class Counsel from liability for the actions of their claims administrator Angeion Group which could be the subject of a class action lawsuit for privacy issues, not having the definition certified, filing a fee motion after the deadline for objections, not advising class members of the fee motion, among the myriad other failures in this case.

54. Worse is that Class Counsel provided incorrect instructions for objectors to object and has taken no action to assure that objections reach the docket for public viewing.

Dated this 27th day of July, 2025.

Respectfully submitted,

_____
Pat Zhen