**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**Raymond Kessler, Hartence Hill, Lazaro**
**Rodriguez, Teresa Herendeen, and Barbara Abreu**
**individually and on behalf of all**
**others similarly situated,**

        **Plaintiffs,**

**v.**                                **Case No.: 7:24-cv-00526**

**The Quaker Oats Company,**

        **Defendant.**

-----------------------------------------------------------x

## DECLARATION OF JASON SULTZER IN RESPONSE
## TO THE OBJECTION OF PAT ZHEN

      I, Jason P. Sultzer, submit this Declaration in response to the objection of Pat Zhen to the Class Action Settlement, and affirm that the following is truthful and accurate:

      1.    I am one of the attorneys principally responsible for the handling of this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

      2.    Pursuant to the Court's July 10, 2025 Order (Dkt. 38), I submit this declaration, along with the declarations of Derek Burrows of the Angeion Group ("Angeion") and Michael Charles, as well as a memorandum of law, in response to the objection of Pat Zhen to the class action settlement in this matter.

      3.    As the Court is aware, this proposed class action settlement would resolve the claims of purchasers of Defendant The Quaker Oats Company ("Quaker" or "Defendant") food products ("Covered Products").  Plaintiffs seek to represent a nationwide class of consumers

1

who purchased the Covered Products.

4.      As set forth in Plaintiffs' motion for final approval (Dkt. 42), the Settlement (Dkt. 13-1) provides extraordinary relief for the Class, both by putting money directly into the pockets of class members in an amount greater than the average purchase price of the Covered Products, and by achieving non-monetary relief which will help prevent bacterial contamination in Defendant's food products in the future.

5.      The Settlement and the plan for the Claims Administrator (Angeion Group) to provide notice to the Class and administer claims was preliminarily approved by the Court on March 13, 2025 (Dkt. 34).

6.      Angeion implemented the Court-approved notice plan and direct notice reached a high percentage (an estimated 79.6-85.96%) of the Settlement Class, and the reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 140,712 Settlement Class Members that made Valid Claims, only fifteen made valid requests to be excluded.

7.      On July 8, 2025, Class Counsel received an email from an individual identifying himself as and purporting to be "Pat Zhen."

8.      In his email, Mr. Zhen asserted that he was a Class Member and that he had attempted to file an objection to the Settlement with the Court via ECF but had been unable to do so because non-parties are not permitted to file documents to ECF in the White Plains division of the Southern District of New York.

9.      Mr. Zhen further stated that after being unable to file his objection via ECF he followed the instructions on the Class Action Notice and mailed his objection to the Court Clerk. Mr. Zhen attached a copy of the objection to his email.

10.      Mr. Zhen's objections do not relate to the substantive aspects of the Settlement

Agreement (i.e. the relief provided to the Class) or to Class Counsel's requested fee award, but rather largely focus on technical aspects of the claims process administered by Angeion.

11.     On July 11, 2025, Mr. Zhen emailed to class counsel a "Supplemental Objection" related to the process for filing objections.    Without waiver, Class Counsel addresses this objection despite it being received after the objection deadline of June 27, 2025, and it therefore being untimely

12.     Mr. Zhen's objection, as well as his "Supplemental Objection" are annexed hereto as **Exhibits 1 and 2**, respectively**.**

13.     Following receipt of Mr. Zhen's objections, Class Counsel reached out to Mr. Zhen by email to schedule a meet-and-confer to discuss the objections and see if they could be resolved.  A true and accurate copy of Class Counsel's emails with Mr. Zhen are attached hereto as **Exhibit 3.**

14.     Mr. Zhen agreed to participate in a meet-and-confer on July 10th, on the condition that it take place telephonically, and not via Zoom or Teams or any other video platform.  Mr. Zhen also demanded that the meeting not be recorded in any way.

15.     I (along with defense counsel and several other Class Counsel) spoke with Mr. Zhen by telephone on July 10, 2025.

16.     During that phone call I asked Mr. Zhen which of the Covered Products he had purchased, where he had purchased them, and if he had proof of purchase.  Mr. Zhen was unable to identify specifically which product or products he had purchased, or the store or state in which he had purchased the products.  He also asserted that he did not have proof of purchase.

17.     During that phone call, we also discussed the denial of Mr. Zhen's claim.  Mr. Zhen asserted that when his claim was denied, Mr. Zhen was provided a message that there were

inconsistencies with his submission and to try again or contact Angeion or Class Counsel.  Mr. Zhen confirmed to Class Counsel that he did not make a second attempt to submit his claim and did not reach out to Angeion or Class Counsel to find out why his claim had been rejected.

18.     Class Counsel offered to assist Mr. Zhen in resubmitting and processing his claim for reimbursement, which Mr. Zhen refused.

19.     Class Counsel also discussed each of Mr. Zhen's objections with him in order to understand the bases of Mr. Zhen's complaints.

20.     During this meet-and-confer, I explained that Angeion had issued very few paper checks to Class Members in this case, and as a result Mr. Zhen's objections regarding the distribution of unclaimed checks were largely moot.  Mr. Zhen agreed and represented that he would withdraw those objections.

21.     Additionally, I explained to Mr. Zhen that the release in the Settlement Agreement did not release claims for personal injuries suffered by Class members who may have been injured by consuming Defendant's food products potentially contaminated with *Salmonella*.  Mr. Zhen represented that he would withdraw his objection to the Settlement's waiver of unknown claims as well.

22.     Class Counsel and Mr. Zhen agreed to speak again on July 14, 2025 to continue to discuss the objections and whether Mr. Zhen's issues with the Settlement and claims process could be resolved.

23.     Following the July 10th call with Mr. Zhen, I received a phone call from an unknown individual demanding $100,000 in exchange for withdrawing the objection.

24.      Class Counsel then requested that the July 14th meet-and-confer be held using Zoom, and that Mr. Zhen provide his identification.  Class counsel offered Mr. Zhen the

4

opportunity to validate his identity in any way that he was comfortable with. Class Counsel further explained that verifying Mr. Zhen's identity was necessary in light of the phone call demanding payment and the fact that his initial claim had been denied as a result of indicia of fraud.

25.    Mr. Zhen refused to participate in the meet-and-confer by Zoom or to provide any form of identification and terminated discussions with Class Counsel. *See* **Exhibit 3.**

26.    On July 17, 2025 Mr. Zhen emailed Class Counsel what purported to be a "Litigation Hold Notice" demanding that Class Counsel retain communications and other evidence related to "future legal action and pre-litigation investigation relating to various privacy breaches, invasions of privacy, violations of New York's SHIELD Act, violations of various state privacy laws, abuse of process, civil conspiracy, breach of duty, legal malpractice, and the federal Fair Credit Reporting Act and state statutes with respect to the disclosure of various information to third-parties by [Class Counsel] and [their] agents, Angeion Group ("Angeion"), including, but not limited to, information provided to agents of attorneys in other class actions by [Class Counsel] and [their] agent, Angeion." A true and accurate copy of Mr. Zhen's July 17, 2025 email is annexed hereto as **Exhibit 4.**

27.    As set forth in the accompanying Declaration of Derek Burrows, Mr. Zhen's claim for reimbursement under the Settlement was rejected by Angeion for a number of reasons that led Angeion to believe that his claim was invalid.

28.    Class Counsel has reviewed Angeion's fraud detection process and has been in constant contact with Angeion throughout the claims process regarding claim denials, and is fully confident that Angeion's process is thoughtfully designed to reduce false positives and is necessary to protect the Class.

29.     Following the receipt of Mr. Zhen's objection, Mr. Zhen's refusal to provide his identification, and the phone call demanding payment both Class Counsel's independent investigator, Michael Charles and Angeion conducted investigations into Mr. Zhen. The findings of those investigations are set forth in the accompanying Declarations of Mr. Charles, Mr. Burrows, and the accompanying memorandum of law.

30.     Based on the investigations and findings described above, both Angeion and Class Counsel's own investigator have concluded that there is substantial information reasonably indicating that the objection filed under the name Pat Zhen is highly suspicious and that his claim was correctly rejected.

31.     Moreover, Mr. Zhen recently filed an objection in another case, *In re Telescopes Antitrust Litig.*, which was denied.  2025 U.S. Dist. LEXIS 70066, at *30 (N.D. Cal. Apr. 11, 2025).  Counsel for the class in that matter also conducted an investigation into Mr. Zhen that found indicia of fraud, the results of which are set forth in the Declaration of Class Counsel in that matter, annexed hereto as **Exhibit 5.**

32.     As set forth in the accompanying memorandum of law, Mr. Zhen's objections should also be denied because he lacks standing to raise them because he did not purchase a Covered Product (Mr. Zhen's claim submission claimed that he purchased two of Defendant's products:  1) the Quaker Chewy Yogurt Yogurt Variety Pack Chewy (14 Ct) (17.2 Oz) and; 2) the Quaker Assorted Chewy (48 Ct) (48.32 Oz).) and therefore is not a member of the Class.

33.     Finally, even setting aside Mr. Zhen's lack of standing, his objections should be denied inasmuch as they attack necessary fraud prevention processes or complain about minor procedural issues that are largely moot.

34.     The Declaration of Derek Burrows of the Angeion Group is annexed hereto as

**Exhibit 6.**

35.     The Declaration of Michael Charles is annexed hereto as **Exhibit 7.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July, 2025 in Poughkeepsie, New York.

/s/ Jason Sultzer                                    

Jason Sultzer

# EXHIBIT 1

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 523-8040

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                      Case No.: 7:24-cv-00526
Defendant.

## OBJECTIONS TO THE SETTLEMENT AGREEMENT AND
## ADMINISTRATION THEREOF

Objector Pat Zhen (hereinafter "Objector") respectfully submits this
objection to the Settlement Agreement and its administration, stating that
he was a consumer and regular purchaser of Quaker Chewy Yogurt Variety
Pack and Quaker Assorted Chewy 48 pack prior to March 13, 2025, and
thus qualifies as a member of the settlement class.  These objections apply
to all class members.

As outlined in the Settlement Agreement, which has been agreed
upon by Class Counsel and the Defendant, the terms of the agreement
represent an unconscionable contract that fails to afford Class Members

due process concerning their claims, particularly when those claims are denied by the Settlement Administrator.  In addition, the settlement is against public policy and violates escheat laws of the 50 states.  Finally, it improperly waives unknown claims.

## I.   <u>THE CLAIMS PROCESS VIOLATES DUE PROCESS</u>

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  As show below, the method of processing class-member claims is not appropriate and it is unfair.

### 1. Vague and Undefined Terms in Paragraph 4.8

Paragraph 4.8 of the Settlement Agreement provides:

"The Claim Administrator shall reject any Claim ... that the Class Administrator identifies as duplicative or fraudulent. The Claim Administrator will use adequate and customary procedures and standards to prevent the payment of duplicative or fraudulent claims and to pay only Valid Claims."

The phrase "adequate and customary procedures and standards" is vague and undefined within the context of the Settlement Agreement. Class Members cannot be required to accept a term that lacks specificity, especially when it directly impacts their ability to seek redress in the event their claims are rejected as fraudulent. Without clear definition, there is no means for Class Members to challenge a determination that their claims were incorrectly flagged as fraudulent. As written, this provision leaves no recourse for Class Members to ascertain whether the "customary procedures and standards" were applied reasonably or in good faith in their specific case. Moreover, there is no transparency or opportunity for Class Members to contest decisions made by the Settlement Administrator.

## 2. Denial of Notice and Right to Appeal

The same paragraph further states:

"The Class Administrator shall retain sole discretion in accepting or rejecting claims, and shall have no obligation to notify Class Members of rejected claims unless otherwise ordered by the Court."

This provision grants the Settlement Administrator unchecked discretion to deny claims as "fraudulent" without any obligation to inform the affected Class Members. Consequently, Class Members are denied the opportunity to appeal the denial or present evidence to refute the decision. The lack of notification deprives Class Members of their due process rights and undermines the integrity of the claims process. Furthermore, the provision that "The Claims Administrator's decision as to the validity of claims shall be final and binding," coupled with the lack of mandatory notification, effectively eliminates any meaningful recourse for Class Members whose claims are wrongfully denied.

The procedure outlined where claims can be denied without notice of an opportunity to challenge that denial violates the class member's due process rights. "[E]ach class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves." *Klier v. Elf Atochem*, 658 F3d 468, 474 (5th Cir. 2011), *citing Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807–08 & 812–13 (1985); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–30 (1982).

In this case, the property right will be denied without notice and without recourse.

Moreover, the proposal violates  Rule 23(e)(2)(D) which requires, for a settlement to be approved, that "the proposal treats class members equitably relative to each other" because some class members will be paid and others will be denied and will not be paid, without notice.

### 3. Limited Oversight, Lack of Class Member Protection, and Conflict of Interest

The clause (also in Paragraph 4.8) stating that "The Claims Administrator's decision as to the validity of claims shall be final and binding, except that Class Counsel and Defendant shall retain the right to audit claims and to challenge the Claim Administrator's decision by their mutual agreement or by motion to the Court." is insufficient to protect Class Members' interests. Neither Class Counsel nor the Defendant has a direct financial stake in ensuring the proper processing of individual claims. As a result, Class Members—the very parties most affected by the Settlement—have no mechanism to ensure their claims are processed fairly and accurately. Without notice of denied claims or the ability to appeal, the Settlement Agreement fails to safeguard Class Members' right to a fair and transparent claims process.

In addition, to allow Class Counsel and the Defendant to arbitrarily confederate and conspire to audit claims on their own and challenge the decision of the claims administrator is not appropriate.  Class Counsel purports to represent the class members and this creates a conflict of interest.  Class members have been told that they are represented by

attorneys – Class counsel.  Specifically the notice to class members explains, "Do I have a lawyer in this case?  Yes, the Court has appointed these law firms to represent the settlement class….."  However, under this provision, the lawyers who represented to consumers that they have lawyers are actually working against them to overrule the claims administrator and to audit and deny claims.

This type of behavior violates Fed. R. Civ. Proc. 23(g)(4)'s provision that explains, "Class counsel must fairly and adequately represent the interests of the class."   Class Counsel cannot act as judge against their own client.  Class Counsel should have no adjudicative authority.

For the reasons stated above, the Settlement Agreement does not adequately protect the rights and interests of the Settlement Class it is intended to serve. It is unreasonable, unconscionable, and should be rejected or substantially amended to ensure that the due process rights of Class Members are upheld.

## II.  THE ONLINE CLAIMS SYSTEM IS BROKEN, VIOLATES DUE PROCESS, AND IS UNFAIR

On June 26, 2025, Objector attempted to file his claim online.  He filled out the payment method, verified his email, and spent over 20 minutes entering all of the information.  When Objector submitted the data, he received the following message, "We have detected inconsistencies with your submission and/or interactions with the website. Please try again or on a different device (and disable any privacy settings). If the problem persists, please contact us by clicking the Contact form (or emailing Info@FoodRecallSettlement.com) and include this submission ID: 5fe85434-37d9-4334-abd4-2090e01d3696."

It appears that this message is provided in many cases, causing the claimant to give up.  This website needs fixed, clear information given as to

any blocks or requirements for the claimant's browser, and an extended claims deadline to address the issues.

Prior to approving the settlement and claims process, this Court needs to obtain statistical data as to the number of people having their claims rejected due to "inconsistencies".

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

## III. THE SETTLEMENT PROVISIONS THAT STATE THAT A CLASS MEMBER DOES NOT CASH THEIR CHECK IN 120 DAYS VIOLATES DUE PROCESS AND MANDATORY ESCHEAT LAWS OF THE VARIOUS STATES.

The settlement agreement, Section 4.10, specifically states that a claimant that does not cash his check within 120 days will have the check voided and "shall not be entitled to any further payment under this agreement." Checks in this case are being mailed without any form of tracking using either regular mail. Checks are lost in the mail. Therefore, this provision takes away a property right the class members possess.

More importantly, it violates various state escheat laws. State escheat laws apply to uncashed checks in class actions. *All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011). "Every state and the District of Columbia has a set of escheat laws, under which holders of abandoned property must turn such property over to the State 'to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner.'" *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488(3d Cir. 2017) (quoting *N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012)).

"The *right* of appropriation by the state of abandoned property has existed for centuries in the common law." *Conn. Mut. Life Ins. Co. v.*

*Moore,* 333 U.S. 541, 547 (1948). In *Texas v. New Jersey*, 379 U.S. 674, 677 (1965), the Supreme Court first considered the question of when a state has the right and jurisdiction to escheat unclaimed intangible property. Importantly, the Supreme Court recognized that unclaimed property is the "debt" that is owed by the debtor to the creditor. *Id* at 680. Reasoning that a debt is the property of the creditor and not the debtor, the Supreme Court established a "primary rule" that "the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records." *Id* at 680-681. The Supreme Court chose this primary rule because it "involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided." *Id.* The Supreme Court affirmed these rules in *Pennsylvania v. New York*, 407 US 206 (1972)(dispute between states over uncashed money orders) and *Delaware v. New York,* 507 US 490 (1993)(dispute over uncashed dividend checks).

Here, the uncashed checks are no different than the dispute in *Delaware v. New York*, and the unclaimed property laws of the claimant's last known address apply.

Class Counsel cannot, by agreement, avoid these laws that govern uncashed checks. Some of the laws carry heavy fines and even criminal penalties. The settlement cannot stand.

## IV. THE CY PRES PORTION OF THE AGREEMENT IS INAPPROPRIATE

Section 4.10 of the Agreement states, "Funds from uncashed checks shall be paid to a cy pres charity to be agreed upon between the parties and approved by the Court." For the reasons above, first money must be escheated to unclaimed property so the claimants to receive it. Some small amounts are exempt from some states. In this case, the money is usually paid *pro rata* to the approved claimants, not given so fast to *cy pres*.

American Law Institute's Principles of Aggregate Litigation, note 28, §

3.07(b), explains that, "cy pres was appropriate where some class members

were compensated directly" and "further individual distributions are

economically infeasible."

In this case, we do not know at this time whether a further distribution

to other class members would be economically unfeasible.

## V.  THE SETTLEMENT AGREEMENT DOES NOT EXPLAIN WHAT HAPPENS TO UNCLAIMED ELECTRONIC PAYMENTS OR ERRORS IN THE TRANSMISSION

While the settlement agreement addresses uncashed checks, similar

situations happen with electronic payments such as Zelle, Paypal, and even

non-received prepaid gift cards.  There is no explanation as to what will

happen in the case of non-deliverable electronic payments.  These, too,

should be escheated if the claimant does not respond after outreach.

## VI.  FEES AND TERMS OF THE PREPAID DEBIT CARD ARE NOT DISCLOSED

The recent trend in class actions is to provide a prepaid debit card.

However, consumers are not advised of the terms and conditions of the

card or the fees attached.  Most of these cards are issued by two enterprises

with poor reputations that joined together:  Pathward N.A. and Blackhawk

Network.  Pathward issues the cards blindly to people as Blackhawk directs

then provides Blackhawk unfettered discretion as to administration of the

cards.  Blackhawk routinely freezes the cards and denies consumers access

to them citing unknown "security" concerns.  The cards are usually low

balance, so consumers do not bother to inquire.  When contact is made with

Pathward/Blackhawk, they demand photocopies of ID, utility bills, and they even attempt to re-audit the claim. Blackhawk/Pathward cite an agreement that the cardholder never agreed to in filing the claim and they state that the claims administrator agreed to said terms. The consumer has no remedy to cancel the agreement or obtain their money off the card being bound by an agreement they did not know in advance.

After freezing the balance, Pathward/Blackhawk start to charge an "inactivity fee" depleting the card balance.

When Pathward/Blackhawk engage in this scheme, they provide no letter to the claimant. Rather, they just deny transactions. A consumer would actually have to call a toll free number and speak to a call center in El Salvador to make any form of inquiry.

No privacy policy as to the cards, the calls, etc. are provided to the consumer.

Other prepaid cards act similarly, but Class Counsel desires for claimants to choose this option without advising the Court or the consumers of the terms.

## VII. THE DEADLINE TO FILE CLAIMS AND OPT OUT SHOULD BE EXTENDED TO A DATE AFTER THE COURT APPROVES THE FINAL SETTLEMENT AGREEMENT AND DISTRIBUTION TERMS

A person should not have to go through the tedious process of filing a claim prior to the court's approval. Moreover, the terms of a settlement often change to address objections and other issues brought up during the approval process. Similarly, a person should not have to opt out until a date after the court approves and sets the final terms of the settlement.

Here, a person is required to opt out even though they do not know what this court approved. If there is a modification to the terms, the person opting out might change their mind. Similarly, a person who previously

chose to participate may decide to opt out if this court makes any modification to the agreement or distribution plan.

Furthermore, as stated above, there are error messages people are receiving en mass when they try to file a claim.

## VIII. IMPROPER WAIVER OF UNKNOWN CLAIMS

Section 8.3 of the Settlement Agreement contains a waiver of unknown claims, which is inappropriate in a case like this. California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital…that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed. California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.,* 200 Cal.App.4th 1146, 1159–1161 (2011).

Respectfully submitted,



_____

Pat Zhen

# EXHIBIT 2

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 523-8040

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,
Plaintiffs,

v.

The Quaker Oats Company,                           Case No.: 7:24-cv-00526
Defendant.

## SUPPLEMENTAL OBJECTIONS TO THE SETTLEMENT
## AGREEMENT AND  ADMINISTRATION THEREOF

Objector Pat Zhen (hereinafter "Objector") respectfully submits these

supplemental objections to the settlement.  These objections could not be

filed earlier because the Objector could not have been aware of the

deviation from ordinary procedure or that a shadow docket was created by

either the Clerk's Office, the *pro se* office, or pursuant to directions from

this Court's chambers.   This objection applies to the entire class:

# I.  **Background**

This is a nationwide class action involving Quaker Oats products. Due to the multiple Quaker Oats products at issue – nearly 70 of them – and a liberal purchase timeline, most households made at least one purchase at stores within the United States entitling them to participation. Nevertheless, under the proposed settlement, the class only received $6,750,000 *prior to* the deduction of expenses and attorney fees.

When a case is settled, any class member maintains the right to object.  Fed. R. Civ. Proc. 23(e)(5)(A).[1]

Class Counsel submitted a so-called *Long Form Notice* to the public for this Court's approval and ultimate dissemination to the public.   Buried on page 6 of that Notice, class members who desired to comment, or object to, the settlement were instructed as follows:

OBJECT TO OR COMMENT ON THE SETTLEMENT

19. How do I tell the Court that I do not like the Settlement?
If you are a member of the Settlement Class and you do not exclude yourself, you can object to the Settlement if you don't like any part of it. You cannot ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. You can also object to Class Counsel's request for attorneys' fees and expenses and/or to the service award for the Class Representatives. The Court will consider your views.

Your objection and supporting papers must be in writing and must include: a caption or title that identifies it as "Objection to Class settlement in Kessler, et al. v. The Quaker Oats Company, No. 7:24-cv-00526"; information sufficient to identify and contact you or your attorney if represented; information sufficient to establish your standing as a Settlement Class Member; a clear and concise statement of your objection, as well as any facts and law supporting the objection; your signature; and the signature of your counsel, if any.

---

[1] The rule states, "Any class member may object to the proposal if it requires court approval under this subdivision (e).

Failure to include documents or testimony sufficient to establish membership in the Settlement Class shall be grounds for overruling and/or striking the objection on grounds that the objector lacks standing to make the objection.

If any Settlement Class Member wishes to object to the Settlement, **the Settlement Class Member must electronically file via the Court's ECF system** or deliver to the Clerk of the Court by mail, express mail, or personal delivery, a written notice of objection. To be timely, the objection must be received by the Clerk of the Court (not just postmarked or sent) prior to  June 27, 2025.

White Plains Courthouse Clerk's Office[2]
300 Quarropas Street
White Plains, NY 10601-4150

This Court approved a notice to the Class providing instructions on how to file objections.  At Entry 34, paragraph 11, this Court found, "The Notice is reasonably drafted, under the circumstances, to apprise the Settlement Class of the pendency of this litigation; the effects of the proposed Settlement on their rights (including the Released Claims contained therein); Class Counsel's upcoming motion for attorneys' fees, expenses, and service awards; of their right to submit a Claim Form; of their right to exclude themselves; and of their right to object to any aspect of the proposed Settlement."

In the early morning of June 26, 2025, Objector utilized the PACER/ECF system to open up filing objections for him in this case.  On that same day, Objector received a notice that his request was "rejected."

Account Number: 8530650
Court: NEW YORK SOUTHERN DISTRICT COURT
Date/Time Submitted: 06/26/2025 00:36:17 CDT
Transaction ID: 201841
Request: Registration
Transaction Status: **Rejected**

---

[2] Ordinarily, a person addresses mail to, "Clerk, United States District Court," not "White Plains Courthouse Clerk's Office" because there is also a bankruptcy court at the address.

In the comments to email rejecting the ability to use ECF to file objections, the Clerk of Court noted:

> You must file a motion for permission for electronic case filing for pro se cases in your case. Please copy and paste this link into your browser to acquire the motion http://nysd.uscourts.gov/file/forms/motion-for-permission-for-electronic-case-filing-for-pro-se-cases. You should register for our Introduction to ECF Class (http://nysd.uscourts.gov/ecf_training.php) and attach your certificate of completion to your motion. Once the motion is granted by the judge, we will activate your e-filing access for the SDNY in your PACER account.

However, nowhere in the Long Form Notice to class members was filing a motion or taking a course on ECF procedures mentioned as a requirement to electronically file objections.

Therefore, in order to preserve his rights, Objector had to jump through hoops and expend high costs to have a courier service deliver the objections to the Court.  On June 27, 2025, the objections were delivered by Federal Express at 9:27 a.m. and signed for by "C.Vipetg."

Nevertheless, the Clerk of Court failed to comply with Fed. R. Civ. Proc. 79(a)(2) and did not docket the objections.  Instead, the Clerk's Office forwarded the documents to the "*pro se* Office."  Because the *pro se* Office did not see Objector as a party, instead of complying with Rule 79(a)(2) and allowing the Court to give whatever weight to the filing it deemed appropriate, the *pro se* Office instead forwarded the physical document to Your Honor's chambers where it sits in some form of secondary Shadow Docket.

Since that time, in violation of Rule 79(a)(2), Chambers simply continues to possess said objections, failed to post them on the public docket, and did not even notify Class Counsel of the existence of the objections.

On July 8, 2025, Objector contacted the Clerk's Office.  The deputy clerk expended significant time trying to track down the package and determine why it was not filed.  The deputy clerk investigated and ultimately learned that the *pro se* office forwarded the filing to chambers and that it was up to the judge whether to file it, ignore it, make it public, or act on it.

When Objector asked about the procedure to lodge a complaint as to this procedure considering that neither Rule 79(a)(2) or Rule 23 contemplates gatekeeping as to class action objections, Objector was told to write a letter to the Chief Judge or to the Clerk of Court.

When Objector pressed the issue, he was transferred to "Nick" at the *pro se* Office.  Nick informed Objector that, in cases where the filing party is not listed on the docket, the practice of the Southern District of New York is to forward documents (apparently *ex parte*) to Chambers to see if leave is granted to file said document.  Nick advised that (1) ECF filings cannot occur without a formal motion being filed by the applicant; and (2) Paper documents are not filed by non-parties without the district judge specifically approving it.  Nick stated they knew of no standing order in this

case to accept said objections and place them on the docket notwithstanding the language of paragraph 11 of ECF 34. Nick apparently completely unaware that the Clerk's Office had a duty under Rule 79(a)(2) to file all documents received in chronological order onto the docket.

At Entry 37, filed July 10, 2025, Class Counsel admitted that they had no notice of the filing of the Objections until July 8, 2025 (when Objector emailed them a letter complaining of the Clerk's failure to comply with Fed. R. Civ. Proc. 79(a)(2)).

## II.   **Discussion**

For the reasons set forth below, Objector objects to this archaic and outmoded procedure:

### A.  **DIRECTING OBJECTORS TO USE ECF TO TIMELY FILE CLAIMS, THEN DENYING THEM THE ABILITY TO DO SO, CHILLS THE OBJECTIONS PROCESS AND MAY HAVE RESULTED IN LOST OBJECTIONS**

The Long Form Notice directed class members to use ECF to file their objections. Apparently, nobody informed the ECF Help Desk, the Clerk's Office, or the *pro se* Office. Instead, objectors seeking to comply with the Long Form Notice received rejections. Objector had a chat-based conversation with another Objector who advised him that he also tried to obtain ECF approval and received a rejection as well.

The Long Form Notice did not mention that a motion needed to be filed to use ECF or that a course needed to be taken.[3]

Because of the vast number of people affected by these settlements, coupled with the extremely low payment that class members will ultimately receive, providing misinformation, or incomplete information, to class members as to how to file objections is prejudicial and oppressive.  If ECF was available only to attorneys, the Long Form Notice should have stated that.  Instead, potential objectors relied on the information provided in the Notice.  Therefore, the rejection of all attempted ECF filings by objectors violated due process.

Unfortunately, not everyone can afford to submit their objections to this Court by expensive overnight courier in a case that will provide the claimants only a small amount of money.

## B. THE CLERK'S FAILURE TO COMPLY WITH RULE 79(a)(2) AND THE PRACTICE OF FORWARDING OBJECTIONS TO CHAMBERS *EX PARTE* WAS PREJUDICIAL, BURDENSOME, AND OPPRESSIVE

Rule 79(a)(2) is not discretionary.  Documents received for filing must be placed on the docket in chronological order.  Nothing in Rule 79(a)(2) contains an exception providing the district judge with discretion as to what documents are filed and what documents are placed in an unknown receptacle in an unknown location of the courthouse.  If someone

---

[3] Objector uses ECF to file with other district courts and federal appellate courts.  Most court's eliminated the course requirement in the late 1990s.

files an inappropriate document, the authority of the district judge is to strike it or seal it, not suppress its entire existence from the public.

In this case, despite receiving the objection on July 27, 2025, it still has not been placed on the docket.  Worse, Class Counsel never received notice of the objection until Objector notified them. This created a time consuming process of forcing an Objector to spend an excessive amount of time tracking down the objection, speaking to multiple people at the courthouse, and having to deal with the *pro se* Office who established this gatekeeping procedure in violation of Rule 79(a)(2).

Objector suspects the *pro se* office held, failed to file, and otherwise suppressed objections from other claimants.

By literally advertising how to file objections, and then having the clerk not file said objections, the integrity of the settlement process contemplated by Rule 23 has been improperly interfered with.

Objector would like to review the objections of third parties to determine whether to join said objections and to better understand the instant settlement.

## C. THE SHADOW DOCKET PROCEDURE DESCRIBED ABOVE VIOLATES CLASS MEMBERS, THE PUBLIC, AND MEMBERS OF THE PRESS RIGHT TO ACCESS THE COURT DOCKET

It's 2025.  People file documents, they are placed on the docket, and the public downloads said documents using PACER.  The Clerk's policy of

ignoring this procedure, mandated by Rule 79(a)(2), infringes on the public's right to access court documents. Objector's objections, and probably other objections by class members, have literally been suppressed from the docket and are not available to be viewed. Hiding the documents on a Shadow Docket maintained by Chambers despite the filing over two weeks ago – due to arbitrary policies that have no basis in the rules – infringes on the rights of the public and the press.

The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). There is a qualified First Amendment right of access to certain judicial proceedings and documents. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). "Any restriction on the right of public access 'is . . . evaluated under strict scrutiny.'" *See In re Avandia Marketing*, 924 F.3d 662, 673 (3d Cir. 2019).

Here, there is no ability to access the documents because they do not exist in the case file. A person reviewing the docket would not see an entry, so they could not request a copy or read the document. It simply does not exist.

In this case, the suppression of documents has no legitimate basis.[4]

---

[4] The general rule is that *pro se* documents are held to less stringent standards, *Haines v. Kerner,* 404 U.S. 520 (1971), not "held in a Shadow Docket" in an unknown location, allegedly with Chambers.

## III.  **Conclusion**

This Court needs to:  (1) Extend the objections deadline; (2) Direct the Clerk to approve ECF requests from objectors; (3) Direct Class Counsel to place notice of the ended deadline on the class member information website; and (4) Direct the Clerk of Court and the *pro se* Office to comply with Rule 78(a)(2) rather than delegating filing authority to wherever the documents may have landed.

## IV.  **Declaration**

I, Pat Zhen, declare and state under the penalty for perjury that the foregoing is true and correct to the best of my knowledge.  28 USC 1746.

Respectfully submitted,



_____

Pat Zhen

# EXHIBIT 3

### Outlook

---

## Re: Quaker Oats Class Action

---

**From** Jason Sultzer <sultzerj@thesultzerlawgroup.com>

**Date** Sun 7/13/2025 10:59 PM

**To** pzhen <pzhen@pm.me>

**Cc** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz <Markowitzd@thesultzerlawgroup.com>; nsuciu@milberg.com <nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>; mreese@reesellp.com <mreese@reesellp.com>; benjamin.fleming@hoganlovells.com <benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com <lauren.colton@hoganlovells.com>; marc.marinaccio@hoganlovells.com <marc.marinaccio@hoganlovells.com>; Joseph Lipari <Liparij@thesultzerlawgroup.com>; Jeremy Francis <francisj@thesultzerlawgroup.com>; Paul Doolittle <paul.doolittle@poulinwilley.com>; Joseph Marchese <jmarchese@bursor.com>; Jeff Goldenberg <jgoldenberg@gs-legal.com>

---

Pat, your name is noted as an objector on the public docket in the letter I emailed to you that was filed with the court. My offer stands to continue our discussions if you can satisfy our request. Otherwise if you don't dismiss your objections we will respond accordingly and wish you the best of luck. Thanks

---

**From:** pzhen <pzhen@pm.me>
**Sent:** Sunday, July 13, 2025 10:36 PM
**To:** Jason Sultzer <sultzerj@thesultzerlawgroup.com>
**Cc:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz <Markowitzd@thesultzerlawgroup.com>; nsuciu@milberg.com <nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>; mreese@reesellp.com <mreese@reesellp.com>; benjamin.fleming@hoganlovells.com <benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com <lauren.colton@hoganlovells.com>; marc.marinaccio@hoganlovells.com <marc.marinaccio@hoganlovells.com>; Joseph Lipari <Liparij@thesultzerlawgroup.com>; Jeremy Francis <francisj@thesultzerlawgroup.com>; Paul Doolittle <paul.doolittle@poulinwilley.com>; Joseph Marchese <jmarchese@bursor.com>; Jeff Goldenberg <jgoldenberg@gs-legal.com>
**Subject:** Re: Quaker Oats Class Action

I know many people with popular names, but none are aware of the objection which raises suspicion about the call.  The only persons who know of the objection are those attached to this email, the pro se office of SDNY, and the judge's chambers.

Do you have a Caller ID and/or ANI of the call?  I assune you entered it in your billing time sheet and it would be discoverable. What was the time and date of the alleged call?

Interestingly, when I called your firm prior to emaling, I received a voice mail box and nost probably a call to you would be futile.

PZhen

---

-------- Original Message --------
On 7/13/25 10:04 PM, Jason Sultzer wrote:

Pat, the troubling call I received was directly related to your objection. It was from someone named "Karla" claiming to be calling on behalf of the "Zhen" objection. Do you know anyone by that name? Thanks.

---

**From:** pzhen <pzhen@pm.me>
**Sent:** Sunday, July 13, 2025 9:24 PM
**To:** Jason Sultzer <sultzerj@thesultzerlawgroup.com>
**Cc:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz <Markowitzd@thesultzerlawgroup.com>; nsuciu@milberg.com <nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>; mreese@reesellp.com <mreese@reesellp.com>; benjamin.fleming@hoganlovells.com <benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com <lauren.colton@hoganlovells.com>; marc.marinaccio@hoganlovells.com <marc.marinaccio@hoganlovells.com>; Joseph Lipari <Liparij@thesultzerlawgroup.com>; Jeremy Francis <francisj@thesultzerlawgroup.com>; Paul Doolittle <paul.doolittle@poulinwilley.com>; Joseph Marchese <jmarchese@bursor.com>; Jeff Goldenberg <jgoldenberg@gs-legal.com>
**Subject:** Re: Quaker Oats Class Action

If I interpret your email correctly, there appear to be other undocketed objections.  I would request that all objections be made public for the integrity of the docket.

 If you are inferring that an individual offered to withdraw my objection for a fee, that would be hard for them because it was never docketed and is not known to the public.  I am aware that Rule 23 requires court approval for any payment to a class member who provides benefit to the class.  Considering the level of service awards to the plaintiffs in this case will not exceed $500, it should be plain as day that I did not file my objections to achieve a service award.  To be clear, I neither asked for nor will I ask for any form of payment.  My objections were filed to compel better administration and judicial oversight of a flawed process.

As I informed you, the particular claims administrator you used has a skewed and ever expanding definition of fraud.  I can only assume their definition of identity theft is similarly imaginary or based on a flawed artificial intelligence-based system using erroneous data points. What is happening is professional fraudsters are able to defeat these systems, but legitimate claimants are excluded due to the flaws in their system (a new system you incorrectly called "customary" in the settlement) .   While I am unaware of the other settlements you mention (as you do not identify the case), in this case, the claim will pay a small amount and practically every household in the United States is eligible because of the wide variety of products.  I verily believe that you excluded a large percentage of legitimate claimants and you should  have candor and disclose the statistics to the court.

PZhen

On Sunday, July 13th, 2025 at 8:40 PM, Jason Sultzer <sultzerj@thesultzerlawgroup.com> wrote:

> Pat, sorry you feel this way. But one of the many reasons your claim was initially rejected for fraud and other grounds is because the  phone number that you provided to Angion is linked to another individual. And one of your addresses is  linked to an individual who also objects to class actions including with a group that could potentially be involved in identity theft. I also received a call the other day demanding money to make the objection go away by an individual that is also associated  with one of your addresses that you submitted to Angion in other cases. So although we are not accusing you of anything, and as much as I enjoyed our

conversation, I am sure you can understand and appreciate that we need to protect the class and integrity of the claims administration process. We have offered you multiple times throughout the claims process and up until now to help us validate your identity. If you don't want to do that on Zoom, I am open to any other suggestion you have. This will solve the issue and we can move forward and further discuss your objection.

But as we explained to you during our last call, we are very confident that the settlement will ultimately be approved. To that end, we are hopeful that you will withdraw all of your objections (two of which you already seemed to agree to dismiss regarding cy pres and the release language) so we don't waste more time. Otherwise we will vigorously oppose your remaining objections. Thanks.

---

**From:** pzhen <pzhen@pm.me>
**Sent:** Sunday, July 13, 2025 6:32 PM
**To:** Jason Sultzer <sultzerj@thesultzerlawgroup.com>
**Cc:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz <Markowitzd@thesultzerlawgroup.com>; nsuciu@milberg.com <nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>; mreese@reesellp.com <mreese@reesellp.com>; benjamin.fleming@hoganlovells.com <benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com <lauren.colton@hoganlovells.com>; marc.marinaccio@hoganlovells.com <marc.marinaccio@hoganlovells.com>; Joseph Lipari <Liparij@thesultzerlawgroup.com>; Jeremy Francis <francisj@thesultzerlawgroup.com>; Paul Doolittle <paul.doolittle@poulinwilley.com>; Joseph Marchese <jmarchese@bursor.com>; Jeff Goldenberg <jgoldenberg@gs-legal.com>
**Subject:** Re: Quaker Oats Class Action

Ok, this is beyond the pale. I made it clear that I had no desire to engage in Zoom or do anything other than discuss the objeclolions.

I am ending these discussions as they are not in good faith. You have not requested this data routinely from claimants (or at all) and the case involves the potential for a $20 payout.

Contrary to the representations your firm made on the call, it is clear you are launching an attack on the objector rather than a response on the objections. I will respond to said planned attack through appropriate responses and, if necessary, an appeal.

Also please forward me the privacy policy that governs claims and related matters. Apparently there are serious privacy issues at hand that may be appropriate for an additional objection.

Respectfiully,
PZhen

-------- Original Message --------
On 7/13/25 12:42 PM, Jason Sultzer wrote:

Pat, both plaintiffs and defense counsel request that tomorrow's call be on zoom or teams so we can all see each other. Please let me know if that's good for you because we need to verify your identity with a government issued ID before we can further engage in any

additional discussions with you. We appreciate your cooperation.
Thanks.

---

**From:** pzhen <pzhen@pm.me>
**Sent:** Friday, July 11, 2025 1:03 AM
**To:** Jason Sultzer <sultzerj@thesultzerlawgroup.com>
**Cc:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz
<Markowitzd@thesultzerlawgroup.com>; nsuciu@milberg.com
<nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>;
mreese@reesellp.com <mreese@reesellp.com>;
benjamin.fleming@hoganlovells.com
<benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com
<lauren.colton@hoganlovells.com>; marc.marinaccio@hoganlovells.com
<marc.marinaccio@hoganlovells.com>; Joseph Lipari
<Liparij@thesultzerlawgroup.com>; Jeremy Francis
<francisj@thesultzerlawgroup.com>; Paul Doolittle
<paul.doolittle@poulinwilley.com>; Joseph Marchese
<jmarchese@bursor.com>; Jeff Goldenberg <jgoldenberg@gs-legal.com>
**Subject:** Re: Quaker Oats Class Action

Counsel:

Please see attached my supplemental objections that I have to file to
preserve the issue as to the court's bizarre filing procedures.
Unfortunately, the conversation we had today that this procedure is
common in SDNY raises more concerns.  I realize that these
procedures are not the fault of Class Counsel and may be the status
quo; however, they affect the integrity of the settlement/objection
process and must be addressed.  I would encourage you to agree to
enlarge the objection time and post notices on the website about the
error in telling objectors to use ECF.

Pzhen

On Wednesday, July 9th, 2025 at 8:39 AM, Jason Sultzer
<sultzerj@thesultzerlawgroup.com> wrote:

> Pat, thanks for your email. Please let us know if your are
> available to discuss your objections either tomorrow
> anytime after 2 pm eastern or on Friday before 2 pm
> eastern. Thanks. Jason
>
> ---
>
> **From:** pzhen <pzhen@pm.me>
> **Sent:** Tuesday, July 8, 2025 5:10 PM
> **To:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel
> Markowitz <Markowitzd@thesultzerlawgroup.com>; Jason
> Sultzer <sultzerj@thesultzerlawgroup.com>;
> nsuciu@milberg.com <nsuciu@milberg.com>;
> rbusch@milberg.com <rbusch@milberg.com>;
> mreese@reesellp.com <mreese@reesellp.com>;
> benjamin.fleming@hoganlovells.com
> <benjamin.fleming@hoganlovells.com>;
> lauren.colton@hoganlovells.com
> <lauren.colton@hoganlovells.com>;
> marc.marinaccio@hoganlovells.com
> <marc.marinaccio@hoganlovells.com>
> **Subject:** Quaker Oats Class Action

Dear Counsel:

I am sure that Class Counsel and the defendants believe that they have accomplished a settlement with zero objections in the Quaker Oats Class Action. However, you are quite wrong and are heading the litigation into disaster through your lack of procedural oversight.

The long form notice states that objections must REACH the court by June 27, 2025 (most settlements use a post-mark for timely objections, but Class Counsel appears to want to make things difficult for potential objectors). Alternatively, it tells people to file the objections by ECF no later than June 27, 2025. This language was found to provide class members with notice of their right to object. See Entry 34, paragraph 11.

What you did not put in the notice is that the Clerk's office has denied all applications for ECF filing access to objectors because the local rules are that ECF cannot occur unless a "motion" is first filed BY MAIL with the Court. The long form notice does not state, "Objectors can file objections by ECF *but only after mailing a formal motion to the court and getting express approval from the court*". On June 26, 2025, I was personally denied ECF access to file my objection, see attached. I have read in a class action channel that at least seven other people have been similarly denied and now it is too late for them to mail said objections.

Being shocked and bewildered by the ECF rejection June 26, 2025 despite the Notice's clear instructions to use it to file a timely objection, I immediately caused a filing company to deliver my objections by Federal Express to the court. Fortunately, on June 27, 2025, my objections reached the address YOU provided to objectors on the long form notice (although you completely botched the way the envelope should be addressed saying only CLERK which is not correct considering there are multiple clerks e.g. bankruptcy court. Fortunately, I knew to address it to the Clerk of the District Court instead of just "clerk" like your notice suggested).

My objection reached the District Court's Clerk on June 27, 2025. Instead of filing the document onto the docket as one would expect (see F.R.Cv.P. 79(a)(2)), the White Plains District Court Clerk has a policy to "not file any document from a non-party without specific instructions from the judge." You should have known that before you issued the Notice and obtained a standing order so that the objections did not enter the vast area of SDNY chaos and confusion at the federal courthouse there.

Therefore, without notice to me, the Clerk simply sent the document to chambers with no record of its timely filing, without publicly filing the document, and without giving others the opportunity to join or oppose the objections. So not only does the Clerk ignore Rule 79, they don't even keep a record of the documents they receive but just forward to chambers to be ignored, lost, docketed, or

whatever chambers might choose to do. (This procedure is not recognized as proper).

I spoke with "Nick" in the "pro se" office, and he confirmed that, contrary to the instructions in the long form notice: (1) ECF filings cannot occur without a formal motion being filed by the applicant; and (2) Paper documents are not filed by non-parties without the district judge specifically approving it. Nick stated they knew of no standing order in this case to accept said objections and place them on the docket notwithstanding the language of paragraph 11 of ECF 34.

One would think that Class Counsel, knowing their fiduciary duty, would have obtained a standing order in the case PRIOR TO PUBLISHING THE LONG FORM NOTICE so that people can receive ECF access to file objections and that all objections would be timely docketed.

So as it stands, there is no public record of my timely objection -- or the other objections that people tried to file -- and apparently I have to file a mandamus with the Second Circuit to rectify this due process violation and/or an appeal from any granted settlement on the basis that the objection procedure violates due process and the clear instructions in your Notice.

Class Counsel has a duty to rectify this by: (1) Asking the Court to direct the clerk to allow objectors to file their objections by ECF without a motion; (2) Having the Clerk comply with Rule 79 and docket all filings received by class members as they are able to make filings and even appeal the decision to the Second Circuit; (3) Extending the objection deadline to rectify the contradiction between the Long Form Notice and the refusal of the Clerk to provide ECF or file paper objections; (4) Placing a notice on the website as to exactly how to file objections considering the incorrect information contained in the Long Form Notice.

I need to hear from you forthwith or I have to proceed to mandamus in the Second Circuit to seek a stay of the upcoming fairness hearing and to have the Court comply with the long form notice (a notice I assume that the court approved either without reading or possibly without knowing that the Clerk's office sends non-party filings into oblivion).

PZhen

# EXHIBIT 4

## Outlook

---

## Fw: Litigation Hold Notice

**From** Jason Sultzer <sultzerj@thesultzerlawgroup.com>

**Date** Thu 7/17/2025 7:23 AM

**To** Jeremy Francis <francisj@thesultzerlawgroup.com>

Let's discuss later

---

**From:** pzhen <pzhen@pm.me>
**Sent:** Thursday, July 17, 2025 12:57 AM
**To:** Jason Sultzer <sultzerj@thesultzerlawgroup.com>
**Cc:** cschaffer@lfsblaw.com <cschaffer@lfsblaw.com>; Daniel Markowitz <Markowitzd@thesultzerlawgroup.com>;
nsuciu@milberg.com <nsuciu@milberg.com>; rbusch@milberg.com <rbusch@milberg.com>;
mreese@reesellp.com <mreese@reesellp.com>; benjamin.fleming@hoganlovells.com
<benjamin.fleming@hoganlovells.com>; lauren.colton@hoganlovells.com <lauren.colton@hoganlovells.com>;
marc.marinaccio@hoganlovells.com <marc.marinaccio@hoganlovells.com>; Joseph Lipari
<Liparij@thesultzerlawgroup.com>; Jeremy Francis <francisj@thesultzerlawgroup.com>; Paul Doolittle
<paul.doolittle@poulinwilley.com>; Joseph Marchese <jmarchese@bursor.com>; Jeff Goldenberg
<jgoldenberg@gs-legal.com>
**Subject:** Litigation Hold Notice

**NOTICE TO PRESERVE DOCUMENTS
AND ELECTRONIC INFORMATION**

Dear Counsel:

This is a matter of the utmost importance. I require your assistance with regard to preserving information
relating to a probable future legal action and pre-litigation investigation relating to various privacy breaches,
invasions of privacy, violations of New York's SHIELD Act, violations of various state privacy laws, abuse of
process, civil conspiracy, breach of duty, legal malpractice, and the federal Fair Credit Reporting Act and state
statutes with respect to the disclosure of various information to third-parties by your offices and your agents,
Angeion Group ("Angeion"), including, but not limited to, information provided to agents of attorneys in other
class actions by your offices and your agent, Angeion.

Effective immediately, you are hereby required to retain and preserve any and all documents and data of any
kind that relate in any way to communications with attorneys from other class actions, Angeion, or other third
parties (or between the plaintiffs and defendants in this case) that mention, pertain to, or otherwise relate to
my claim in this case, communication with me, claims I filed in this case or that have been alleged to have
been filed in other cases, objections I filed in other cases, or alleged communications purportedly received by
a third party claiming to be on my behalf and supposedly asking for a cash payment relating to my
objections.

Please be advised that the requirements of this letter supersede any document retention and destruction
policy that conflicts with the terms of this notice. You must immediately suspend your normal document
retention/destruction policies and preserve all evidence related to this claim including, but not limited to:
Written documents (including memoranda, letters, transcripts, reports, evaluations, plans, permits, citations,
databases, calendars, telephone logs, manager information, internet usage files, etc.); Photographs,
videotape, audiotape, digital recordings; Electronic documents (e-mail, word docs, spreadsheets, etc.); and

All other electronic information maintained, created, or received by your firm's computer systems, including desktop and laptop computers, cell phones, PDAs, flash or thumb drives, and work telephones.

The duty to preserve evidence extends to all evidence within your possession, custody and control. That means all documents in your open files, closed files, warehoused files, and documents saved to compact disk or microfiche. This duty also extends to documents held by third parties over which you have control. This includes any consultants performing work for your firms.

If you believe that these third parties may have documents or other evidence in their possession that is relevant to the potential litigation, you must forward a copy of this letter to them and make certain that these instructions are followed.

In order to comply with its legal obligations, your firm must immediately preserve all existing documents and data relevant to the matters described above and suspend deletion, overwriting, or any other possible destruction of relevant documents. Electronically stored data, i.e. emails, are an important and irreplaceable source of discovery and/or evidence in this matter.

You must take every reasonable step to preserve this information until further notice from the undersigned. Failure to adhere to these evidence preservation instructions could result in serious legal consequences for your firm. Therefore, you should assign this task high priority and make sure that the work is properly supervised. Responsibility for preserving relevant evidence attaches to the department that creates or maintains this evidence.

To better understand your legal obligations in this matter, please see the federal case of *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) and the New York case *Dagro Assoc. I, LLC, v. Chevron USA*, 206 A.D. 793 (2nd Dep. 2022).  If this correspondence is in any respect unclear, please contact the undersigned.

Pat Zhen

# EXHIBIT 5

1  Adam J. Zapala (SBN 245748)
   **COTCHETT, PITRE & McCARTHY, LLP**
2  840 Malcolm Road
   Burlingame, CA 94010
3  Telephone: (650) 697-6000
   azapala@cpmlegal.com
4
   Kalpana Srinivasan (Bar No. 237460)
5  **SUSMAN GODFREY L.L.P.**
   1900 Avenue of the Stars, Ste. 1400
6  Los Angeles, CA 90067
   Telephone: (310) 789-3100
7  ksrinivasan@susmangodfrey.com

8  Lin Y. Chan (SBN 255027)
   **LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
9  275 Battery Street, 29th Floor
   San Francisco, CA 94111
10 Telephone: (415) 956-1000
   lchan@lchb.com
11
12 *Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

13

14              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
15                    **SAN JOSE DIVISION**

16

17 | | |
   IN RE: TELESCOPES ANTITRUST          **Case No. 5:20-cv-03639-EJD**
18 LITIGATION

19                                      **DECLARATION OF ADAM J. ZAPALA**
                                        **IN SUPPORT OF INDIRECT**
20                                      **PURCHASER PLAINTIFFS' MOTION**
                                        **FOR APPEAL BOND**
21
   THIS DOCUMENT RELATES TO:            **Dept.: Courtroom 4**
22                                      **Judge: Hon. Edward J. Davila**
   All Indirect Purchaser Actions       **Date: August 14, 2025**
23                                      **Time: 9:00 a.m.**

24

25

26

27

28

---

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;
Case No. 5:20-cv-03639-EJD**

I, Adam J. Zapala, declare as follows:

1.      I, Adam J. Zapala, am a partner at Cotchett, Pitre & McCarthy, LLP., one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2.      I submit this Declaration in support of the IPPs' Motion for Appeal Bond.

3.      On or around the date for objections and opt-outs/exclusions that was set by the Court for final approval of the proposed IPP settlement, counsel for the IPPs received approximately five objections. Many of the objections that counsel for the IPPs received raised indicia of potential fraud, and this caused counsel for the IPPs to look further into information concerning the alleged identities of the persons or entities submitting claims or objections. In this Declaration, I have attempted to summarize our efforts to investigate these issues.

4.      As an initial matter, counsel for the IPPs initially decided to hire an outside investigator, Brian Hedley, to investigate the alleged claims and objections of two alleged class members—"Elman Barnes" and the entity "National Woodlands Preservation, Inc.," along with its alleged CEO, "Karla Luna."

5.      Based on Federal Rule of Appellate Procedure 39 and Circuit Rule 39-1, the fact that the appeals have not yet and may not ever be consolidated, and my firm's expenses printing, copying, and mailing briefs in other recent Ninth Circuit appeals, I conservatively estimate that printing, copying, and mailing the briefs in each appeal will cost $175. In two other recent cases the firm spent $95.20 and $136 on printing and copying. In both those cases the firm also spent $60 on Federal Express costs. A more accurate estimate is impossible, since the cost depends on the length, in pages, of briefs that have yet to be written.

## ELMAN BARNES

6.      **Objection.** As noted, counsel for IPPs received an objection from a person purporting to be named "Elman Barnes." Attached as **Exhibit A** is a true and correct copy of the objection received by counsel for the IPPs. Also attached as **Exhibit A** is a true and correct copy

of the cover letter to "Mr. Barnes's" purported objection.

7.      As the objection reveals, "Mr. Barnes" purportedly objected to the double authentication process that the Court-appointed claims administrator imposed due to fraudulent claims being submitted.

8.      Despite "Mr. Barnes" contending that the process was overly burdensome, he was undoubtedly able to submit a claim form. Verita has confirmed that a "Mr. Barnes" submitted a claim form. A true and correct copy of the claim for "Mr. Barnes" is attached hereto as **Exhibit B**.

9.      "Mr. Barnes" subsequently withdrew a portion of his objection. A true and correct copy of his notice of withdrawal is attached hereto as **Exhibit C**. Despite saying that "he" lives in the Sacramento area, and depsite claiming that his return address is the "401 21st Street" address, the envelope to his withdrawal shows that it was sent from "Santa Clarita." *See id.* Santa Clarita is in Southern California.

10.      **Investigation.**  Several aspects of "Mr. Barnes's" claim and objection appear suspect to Class Counsel. Accordingly, Class Counsel began conducting an investigation into "Mr. Barnes" to determine who he is and whether he exists at all.

11.      First, Class Counsel performed an internet search of the name "Elman Barnes" to see if results would come back to better understand who he is. The internet search for an "Elman Barnes" revealed that "Mr. Barnes" had no online presence whatsoever. Aside from documents associated with "his" objection in this case, a search for the name "Elman Barnes" returned no hit results. In this day and age, in Class Counsel's experience, this absence of an online presence by itself is highly irregular.

12.      Next, Class Counsel looked into the address that "Mr. Barnes" utilized in connection with his objection. As this Court knows, in order to submit an objection, putative objectors were supposed to provide their residential address information.

13.      In connection with his objection, and the notice of withdrawal of his objection, "Mr. Barnes" lists his address as "401 21st Street, Ste. R, Sacramento, CA 95811." *See* ECF Nos. 399, 399-1.  Class Counsel investigated this address and determined that no such location exists in Sacramento. This lack of a real address is a further indicia of fraud in the claims process with

1    respect to Mr. Barnes.

2    14.    Additionally, Mr. Barnes appears to have mis-cited his address information in

3    connection with the submission of his objection and claim. As stated above, his cover letter and

4    objection itself list his address as "401 21st Street, Ste. R, Sacramento, CA 95811," but, as noted,

5    that address does not exist at all.  He did, however, also submit the claim form that he submitted to

6    the Court-appointed claims administrator in connection with his objection. *See* ECF No. 399 at pg.

7    9 of 12. In that claim form, he informed Verita that his address was "*1*401 21st Street, Ste. R,

8    Sacramento, CA 95811." (empahsis added) That address does exist. Thus, it appears as though

9    "Mr. Barnes" erroneously listed his own purported address—multiple times—in the submission to

10    the Court.

11    15.    Notwithstanding these errors, Class Counsel nevertheless investigated the address

12    that "Mr. Barnes" listed in his claim form—"1401 21st Street, Ste. R, Sacramento, CA 95811."

13    This address is not a residence. Instead, this address corresponds to the business "Registered

14    Agents of California." A true and correct copy of a print out from "Registered Agents of

15    California's" website demonstrating that it occupies that address is attached hereto as **Exhibit D**.

16    16.    Further, a true and correct copy of the webpage of "Registered Agents of

17    California" is attached hereto as **Exhibit E**, showing the type of business in which it engages.

18    Apparently, "Mr. Barnes" utilizes "Registered Agents of California" as a registered agent for

19    service of process. The use of a registered agent is something an individual does when attempting

20    to conceal their real address information. The fact that Mr. Barnes provided Class Counsel with

21    his address through a registered agent, rather than his real address, is further indicia of fraud.

22    17.    Class Counsel also investigated the alleged email address that "Mr. Barnes"

23    submitted in connection with his objection. "Mr. Barnes" listed his email address as

24    "elmanmethod@theacheivementcoaches.com." Class Counsel conducted an online search for the

25    email address: "elmanmethod@theacheivementcoaches.com." The online search resulted in no

26    hits for this alleged email address, which is also exceedingly rare in this day and age. The fact that

27    Class Counsel could not locate "Mr. Barnes's" alleged email address online was further indicia of

28    fraud. A true and correct copy of the search for Mr. Barnes's email address is attached hereto as

**Exhibit F**.

18.     Next, Class Counsel investigated the URL of "Mr. Barnes" email adddress to determine whether it is a legitimate webpage. The "achievementcoaches.com" URL is not a real or active website and is registered to a person/organization whose name has been redacted for privacy. When persons or entities buy a domain name, as the registrant, the purchaser must disclose certain data, like contact information. The person/organization who bought this domain name, however, took the extra step of USING a third party to purchase the domain name to keep their contact information private. This unusual step, to Class Counsel, was further indicia of fraud.

19.     After "Mr. Barnes" submitted his objection but before the hearing on Final Approval, as part of Class Counsel's investigatory process, Class Counsel sought to meet and confer with "him." In doing so, Class Counsel asked—several times—to have a video link call with "Mr. Barnes", including through web interface sites like Zoom or Microsoft Teams. On each occasion "Mr. Barnes" refused a video link call. This refusal to meet-and-confer by video is further indicia of fraud.

20.     Given Class Counsel's concerns about representations that "Mr. Barnes" made in connection with his claim and objection in this litigation, Class Counsel directed an internal investigator and an outside investigator to determine whether they could locate a legitimate person named "Elman Barnes." Both investigators, whose declarations accompany this Motion, could locate no legitimate person named "Elman Barnes" who they believed was the person submitting this claim and objection. Their inability to locate "Elman Barnes" is further indicia of fraud.

21.     Finally, as part of Class Counsel's investigatory process, we compared the various signatures that "Mr. Barnes" has purportedly affixed to various filings in this matter. For example, "Mr. Barnes" submitted his signature in connection with his objection. *See, e.g.*, ECF No. 399. "He" also submitted a signature in connection with his withdrawal of a portion of his objection. *See, e.g.*, ECF No. 405. Finally, "Mr. Barnes" submitted his signature in connection with the group "Notice of Appeal" "he" allegedly filed with three other objectors. *See, e.g.*, ECF No. 421. If one compares the signatures submitted with respect to ECF Nos. 399 and 405, with the signature submitted in connection with "his" notice of appeal, one sees that the signatures differ

radically and likely were not executed by the same person, or at least not a person named "Elman Barnes." *Compare* ECF Nos. 399, 405 *with* ECF No. 421. The radically different signatures that "Mr. Barnes" has submitted in connection with these filings is further indicia of fraud.

22.     Moreover, even after he submitted his claim form with the registered agent as his address, he continued to mis-cite his address information in connection with filings with the Court. For example, in connection with the withdrawal of portions of his objection, he continued to erroneously list his address as "401 21st Street" in Sacramento. *See, e.g.*, ECF No. 405. He did so again with respect to the envelope he submitted to the Court. *See, e.g.*, ECF No. 405-1. As noted, that address does not exist. These facts are further indicia of fraud.

23.     Elman Barnes did not appear at the fairness hearing, nor request the ability to do so via phone or video. The fact that he did not appear (but now appeals) is further indicia of fraud.

### NATIONAL WOODLANDS PRESERVATION, INC.

24.     In addition to "Mr. Barnes's" claim and objection, Class Counsel also received the purported objection of "National Woodlands Preservation, Inc." Their objection was signed by its purported "CEO," "Karla Luna." A true and correct copy of "National Woodlands Preservation, Inc.'s" objection is attached hereto as **Exhibit G**. Despite claiming that they exist in West Virginia, the envelope accompanying "National Woodlands Preservation, Inc." shows that the objection was mailed from Providence, Rhode Island, not West Virginia. *See id.*

25.     "National Woodlands Preservation, Inc." purportedly objected on the ground that business entities were ineligible to participate. *See id.* But that objection simply misunderstands the settlement and the settlement class. As those two documents make clear, businesses are able to participate in the settlement. And notwithstanding "National Woodlands Preservation Inc.'s" objection, the Claims Administrator explained to it that businesses are eligible to participate, and it submitted a claim.

26.     In connection with "National Woodlands Preservation Inc's" objection, it was supposed to provide address information, an email, and a telephone number so that Class Counsel or the Claims Administrator could contact it. Despite these requirements, "National Woodlands

1   Preservation Inc." did not submit an email address or phone number. This omission, to Class

2   Counsel, was further indicia of fraud.

3       27.    Although it did not submit an email address or phone number, "National

4   Woodlands Preservation Inc's" objection did include an address: 110 James Street, Hinton, West

5   Virginia 25951.

6       28.    Class Counsel conducted an investigation into the address in West Virginia and

7   determined that the address is not associated with "National Woodlands Preservation Inc." or any

8   entity with a similar name. Instead, the occupant of that address is a law firm: Ziegler & Ziegler

9   LC. A true and correct copy of a picture of that address is attached hereto as **Exhibit H**. The two

10  investigators engaged by Class Counsel also have confirmed the information relevant to this

11  address.

12      29.    Class Counsel found a phone number associated with the address that "National

13  Woodlands Preservation, Inc." provided as part of their objection. To be clear, this number is not a

14  phone number that "National Woodlands Preservation, Inc." provided. Instead, this number is a

15  phone number associated with the physical address "National Woodlands Preservation, Inc."

16  provided. When Class Counsel called that number, the person that answered told Class Counsel

17  that they "just work with a service company that uses their address for a bunch of businesses."

18  When Class Counsel tried calling the service company, the service company refused to provide

19  contact information for any of their alleged clients, including "National Woodlands Preservation

20  Inc." This is further indicia of fraud.

21      30.    Given the above facts as they relate to "National Woodlands Preservation Inc.,"

22  Class Counsel conducted further investigation into the existence of an entity allegedly named

23  "National Woodlands Preservation Inc." An internet search of that entity's name yielded no

24  results, aside from filings in this very case. A true and correct copy of the internet search for

25  "National Woodlands Preservation Inc." is attached hereto as **Exhibit I**. It is very rare in this day

26  and age for a company or entity not to have any online presence. This lack of an online presence is

27  further indicia of fraud.

28      31.    Neither "National Woodlands Preservation Inc.," or its alleged CEO Karla Luna,

appeared at the fairness hearing, nor did they request the ability to do so via phone or video. This failure to appear (despite now appealing) is further indicia of fraud.

## PATRICK ZHEN

32.     Patrick Zhen alleges that he is a citizen of Puerto Rico. Mr. Zhen argued that the settlement should not be approved because it does not include indirect purchasers from Puerto Rico.

33.     But, as Class Counsel pointed out at the fairness hearing, IPPs' complaint never included damages claims for purchasers of Puerto Rico and never asserted Puerto Rican claims or included a Class Representative from Puerto Rico. The settlement class defined in the Settlement Agreement also does not include purchasers from Puerto Rico, and thus does not release such claims either. Accordingly, even crediting Mr. Zhen's allegation that he purchased a qualifying telescope, he lacks standing to object and appeal under longstanding black-letter law in the Ninth Circuit.

34.     Mr. Zhen purports to have purchased a telescope. He does not indicate what kind of telescope he purchased, when he purchased it, or whether it was a telescope manufactured by a Defendant. This failure to substantiate his purchase is indicia of fraud.

35.     Class Counsel investigated Mr. Zhen's residential address in Puerto Rico for purposes of serving Mr. Zhen with discovery. During that process, Class Counsel requested that an internal investigator run a search to determine Mr. Zhen's residential address in Puerto Rico. A fuller description of that process is provided in the Declaration of Nirav Engineer, accompanying this Motion. A true and correct copy of the report generated from the search for Mr. Zhen's residential address is attached hereto as **Exhibit J**.

36.     In connection with that search, it was discovered that a female by the name of "Karla Corea" is linked to Patrick Zhen. In a separate case pending before Judge Breyer, which involved some of the same law firms as Class Counsel in this case, that court found a claim linked to Ms. Corea was potentially fraudulent. Judge Breyer denied the entity's claim, finding that it was not in fact a class member. Ms. Corea—the woman linked to Mr. Zhen in the investigator's report—was associated with the claim in that case. *See In re Transpacific Passenger Air*

1    *Transportation Antitrust Litig.*, No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1348, 1391. This is

2    further indicia of fraud.

3        I declare under the penalty of perjury that the foregoing is true and correct. Executed on

4    this 14th day, July 2025 in Burlingame, California.

5

6                                               /s/ *Adam J. Zapala*

7                                               Adam J. Zapala

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;   8**
**Case No. 5:20-cv-03639-EJD**

# EXHIBIT A

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

Objector

**FILED**

FEB 1 2 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST
LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

### OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") hereby states that he purchased an Orion telescope for approximately $250 at the Country Club Centre Walmart Supercenter in Sacramento in 2013 and is a member of the settlement class.

### I. The Claims Process is Designed to Discourage Participation and Improperly Discriminates Against Retail Purchasers

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Objector never received a mailed notification about the settlement nor otherwise received a claim number. The reason for this is obvious: Like many indirect purchasers shopping retail, the manufacturer would not know the name of the purchaser. Indeed, if Objector purchased the

item directly from a manufacturer, he would not be eligible for participation in the indirect settlement.[1]

Objector found out about the settlement online and visited the settlement website to find out more.  Objector found that to enter a claim online he needed a ***claim number***, which he does not possess since he is not one of the 4% of the potential class members on the Settlement Administrator's list of 166,875 purchasers.   See https://veritaconnect.com/telescopesettlement/Claimant

In re Telescopes Antitrust Litigation Indirect Purchaser Actions Settlement          Fil

uments    Important Dates & Deadlines    Frequently Asked Questions    Contact Information

What do you want to do?
*Required Fields
*Select one:

○ I have a claim number and I would like to securely file a claim online.

○ I have a claim number and I would like to download a personalized claim form, print it out, and mail it in. (You will only be asked to supply contact information.)

○ I DO NOT have a claim number, but I would like to download a personalized claim form, print it out, and mail it in. (You will only be asked to supply contact information.)

Because Objector did not have a claim number, he selected the third option to download a personalized claim form.  The claim form generated is attached hereto and incorporated herein by reference as Exhibit B.  The claim form is a true and correct copy of the resulting claim form downloaded from the website.

The generated claim form states on Page 2, under the "Payment Selection" heading:

---

[1] The Settlement Administrator noted there are approximately 4,000,000 potential claimants and that 2,500,000 persons consist of Amazon.com purchasers.  The Settlement Administrator stated that notice could be provided via Amazon, but it is unclear if the Amazon customers received the claims codes needed to file their claim online.  Class Counsel should provide additional information in this regard.  Furthermore, the Settlement Administrator maintains a class list of 166,875 records, about 4 percent of the potential claimants.  Everyone else is prohibited from filing an online claim and must provide a paper claim via mail.

"If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com."

Objector *can't* submit his claim online because he does not have a claim number. Thus, the objector *can't* obtain a non-check form of payment.

This creates a situation where some class members who are contained on the small list of 166,875 class members are: (1) Provided an easy method to submit their claim; and (2) Are able to receive an easy form of payment such as electronic payment. For the other 96% of potential claimants like Objector, they must go through an onerous process.

Objector thus falls into the following subclass of class members: "Class members who purchased a telescope but do not appear on the list of 166,875 class members maintained by the settlement administrator."

Because of the favorable treatment provided to the 166,875 class members who received a claim number including an easy online form to fill out and different payment options, retail purchasers falling into Objector's sub-class are being discouraged from participation due to the onerous paper claims process and requirement to receive a paper check.

In addition, the 166,875 purchasers who received a claim number and the sub-class who did not necessarily means that the proposal does not treat "class members equitably relative to each other" in violation of Rule 23(e)(D). 96% of potential claimants fall into the paper-claim only group (unless the Amazon purchasers received actual claim numbers).

This also demonstrates that the named class members may "fairly and adequately protect the interests of the" 166,875 Class Members with claim numbers, but they clearly are not protecting the interests as to the Class Members who did not receive a claim number.

Indeed, by making onerous and difficult provisions as to persons who did not receive the claim number, Class Counsel is violating Rule 23(g)(4) by not adequately representing the interests of the class members, but only the 166,875 favored class members who received a claim number.

Certainly, forcing the normal retail buyer to submit a claim by paper and limiting them to receiving payment by paper check while other claimants received special and favored treatment, will discourage participation in this action by those forced to jump through hoops that the favored list of claimants do not have to.[2]

## II.   If the Favored List is Appropriate, Class Counsel and the Settlement Administrator Must be More Diligent in Providing Claim Numbers

As explained, the list of Class Members who can be identified include 166,875 persons of a potential 4,000,000 claimants.  However, only the favored persons receive claim numbers enabling an online claim and an electronic payment.

This Court should require full disclosure and determine whether Class Counsel and the Settlement Administrator can proactively obtain additional names to provide claim numbers to so that maximum reach occurs.  Indeed, there will be a large disproportionate participation rate as to the select group of claimants who received a claim number and those who purchased the item retail and are not contained on any preferred claimant list.

This Court must also explore whether the 1,500,000 Amazon purchasers received claim forms or whether they were simply directed to the website and forced to download a paper form, fill it out, and mail it in.  If so, why could the Settlement Administrator not provide claim numbers to these identifiable individuals?

Furthermore, why could the Settlement Administrator not have obtained similar lists from websites such as Walmart.com (which allows third-party vendors to sell their items and Walmart is used only as a checkout), e-Bay.com (which allows vendors to sell new products), etc.

It is clear that having a list of 166,875 potential claimants, giving them claims numbers and electronic payment choices, and then forcing all of the rest of the claimants to download a paper form, fill it out, mail it in, and then receive a paper check is not adequate to achieve a fair response and large number of claims.

### III. The Settlement Improperly Contains a Waiver of Civil Code 1542 Provisions

Paragraph 13 of the Settlement Agreement states that to participate in the settlement, Class Members must waive California Civil Code § 1542. It is unreasonable to force consumers to voluntarily waive legal provisions that the legislature has bestowed upon them. Unknown claims should be excluded from the release provided by Class Members to the defendants.

There are then listed categories of causes of action that the settlement does not resolve such as product liability and personal injury claim, but the so-called "unknown" claims encompassed in the Section 1542 waiver is undefined and without any explanation.

California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital…that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104

Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed.  California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159–1161 (2011).

In this case, since the Class Action only resolves and relates to antitrust matters including unjust enrichment stemming from the antitrust claims, this Court must ask itself, "What purpose does the 1542 waiver of 'unknown' claims serve?"

For this reason, the settlement should be disallowed unless the waiver is removed.

### IV.   **The Claim Form Improperly Asks for the State of Residence**

The paper claim form that claimants have to fill out asks the misleading question, "State of residence at time of purchase."  This is to determine if the purchase qualified as one in a repealer state.

The "State of Residence" is not relevant.  The relevant question is the state where the purchase occurred.  As an example, a claimant "residing" in northern Pennsylvania does not live in a repealer state; however, if he made the purchase just over the border in New York state, the antitrust tort occurred in New York and his purchase would be eligible.

On the other hand, a person who is "residing" in New York, but purchased the item in Pennsylvania, would not be eligible.

The website uses the phrase that the settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in [the relevant states]." This language is more accurate, because a person is located in the state where they made the purchase at the time of the purchase, but it is still confusing and ambiguous language because a person might consider themselves located in New York because they have an apartment there, but they are technically ineligible if they drove to Pennsylvania to make the purchase.

The danger of the claim form is that it discourages persons who are eligible not to file because they do not "reside" in a non-repealer state. The proper language on the claim form must be: "What state did you purchase the telescope in?" Or "Did you purchase the telescope while in one of the following states: XXXXX."

It is imperative that this Court rectify the matter and require the claim form and settlement to specify that the eligible claimants are based on the place of purchase and/or where the consumer received the product, and **not** the place of residence as the claim form so wrongly demands certification of.

### V. This Court Should Appoint Counsel for the Sub-Classes

Lastly, it would appear that there is a reasonable possibility that, upon review of this objection, Settlement Administrator veritas might proceed to issue Objector with a claim number so that he can proceed to file his claim online, so as to moot his objection. While Objector would certainly appreciate being made able to file his claim online, Objector respectfully requests that the Court declare that Objector is part of a similarly situated sub-class of Class Members that were never provided with any claim number, and that Class Counsel be directed to direct

Settlement Administrator Veritas to make the necessary changes to the claims process overall so as not to violate Rule 23 and thereby create subclasses that are being treated unfairly as compared to the rest of the Class.  Or if current Class Counsel is unwilling or unable to direct the Settlement Administrator in this regard, then separate counsel should be appointed for the sub class.

Respectfully submitted,

Elman Barnes

# EXHIBIT B



Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

**CEHI**

61101012701

VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE

*In re Telescopes Antitrust Litigation Indirect*
*Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CEHI-61101012701

Elman Barnes

1401 21st St STE R

Sacramento, CA 95811

US

Case No. 5:20-cv-03639-EJD
**Must Be Postmarked**
**No Later Than**
**May 20, 2025**

# Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

## CLASS MEMBER INFORMATION:

First Name                                    M.I.        Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City                                                    State        ZIP Code

Email Address

Area Code          Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator,*
*will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on*
*the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at* 1-833-419-3506 *or*
admin@telescopesettlement.com.



61101012701

1

| FOR CLAIMS PROCESSING ONLY | OB | | CB | | DOC | RED |
| | | | | | LC | A |
| | | | | | REV | B |

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

○ Yes *(Proceed to Question 2)*    ○ No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1, please enter your purchase information below:

Make

Model

___ / ___ / ___
Date of purchase

State of residence at time of purchase

$ ___ . ___
Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

○ **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

## OR

○ **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____    Dated (mm/dd/yyyy): _____

Print Name: _____


61101012701

2

**Appendix A**

61101012701

**THIS PAGE INTENTIONALLY LEFT BLANK.**

# EXHIBIT C

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

Objector

**FILED**

MAR 1 3 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST
LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

RE:  Entries 404 and 399

## RESPONSE TO MOTION TO APPROVE AND PARTIAL WITHDRAWAL OF OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") respectfully requests that his objection entered onto the docket on February 12, 2025 (399) be modified in part to withdraw item IV **"The Claim Form Improperly Asks for the State of Residence."** The claim form has been modified by adding a field for state of purchase, and Objector believes that the current iteration of the form should not create any confusion among Class Members regarding this point.

Other points of objection remain a concern. Class Counsel has entered a Motion to Approve the settlement on February 28, 2025 (404). In that document Class Counsel argues that Objector's concerns are without merit.

For example, they state that "Verita Diligently Provided Claim Numbers," and refer to Objector's own case in which Objector did in fact complain about not having received a claim number, and was then issued a claim number (a week later). This is true, however it is not an adequate solution to Objector's concerns. The indisputable fact of the matter is that most class members DO NOT HAVE A CLAIM NUMBER. The

only mention of the possibility of obtaining a claim number was placed on the website after Objector's objections were entered.  Now when one clicks the "File a Claim" button there is verbiage at the bottom of the page that says "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one."

While everyone shares the Settlement Administrator's concern about fraudulent claims, making the claims process more onerous for legitimate Class Members is not an adequate solution because it discourages participation, and it has always been the case that only a very small percentage of eligible Class Members participate in consumer class actions by entering a claim.  Fraud concerns aside, the goal should be to increase Class Member participation, not to decrease it.  The vast majority of Class Members are not going to call in to get a Claim Number.

Both my objection with regards to ease of participation by Class Members as well as the Settlement Administrator's concerns with regards to fraud could easily be remedied by simply placing a button on the website that says "Class Members click here to receive your Claim Number in order to participate" and then providing a simple form with an automated email verification process to ensure that the request is being made by a real person and not by a robot, and when this process is completed successfully the claim number is emailed to the verified email address.  This would eliminate fraudulent participation by bots, would eliminate the hurdle of making Class Members call the Settlement Administrator, and since it is automated would also result in potentially lower administration costs since it would reduce the need for physical staff to actually attend phone calls by the Class.

With regards to the matter of the § 1542 Waiver, Class Counsel cites In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig., No. 10-md-02151, 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013), as follows: "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment to class settlement. . . . [T]he Court is dubious as to whether the class claims

could be settled absent such a waiver."

With due respect to this Court and to the Court in In re Toyota Motor Corp. Unintended Acceleration..., whether or not settlements could be reached without a § 1542 waiver should not be a factor in whether or not such waivers are routinely allowed. Rather, the intent of the California legislature in its construction of the law, and the constitutionality of that law should be the factors taken into consideration by the Court. Legislated legal protections should not be and arguably cannot legally be willy nilly waived by the courts merely for expediency's sake and the convenience of facilitating settlements.

Respectfully submitted,

Elman Barnes

# EXHIBIT D

Registered Agents of California | Start a Business | Resources | About Us | Contact

Sign In | Hire Us

# Contact



1401 21st Street Suite R
View larger map

## Contact Info

1401 21st Street STE R
Sacramento, CA, 95811
(530) 768-2211

## Or send us a message:

First Name

Last Name

Email

Company Name (optional)

Phone Number (optional)

Message

I'm not a robot

reCAPTCHA
Privacy - Terms

SEND MESSAGE

Questions? Call: (530) 768-2211

1401 21st Street STE R, Sacramento, CA, 95811



Registered Agents Of California

**Privacy Policy**      **Terms & Conditions**

# EXHIBIT E



Registered Agents of California | Start a Business | Resources | About Us | Contact

Sign In | Hire Us

# Registered Agents of California

## The Fairest Price in California

Ready to begin your California business adventure? At Registered Agents of California, we offer comprehensive registered agent service for an affordable price. For just $50 a year, you'll get all the tools needed to thrive in the Golden State without breaking the bank.

- **Privacy protection.** Get a professional business address you can list (instead of your home address) on state forms.

- **Security & convenience.** With your free online account, you can view your documents from one secure location. And, with 24/7 access anytime, anywhere, you'll never have to worry about missing anything important.

- **California Business Presence.** Get a 90-day free trial of our web & phone services to create an online presence.

- **Compliance support.** For zero upfront fees, our expert team will file your biennial or annual Statement of Information on behalf of your company, ensuring you're never subject to state penalties.

Get California Registered Agent Service

### Our Service Includes:

- Instant Registered Agent Service

- Business Address Included

- Secure Online Account

- Compliance Service Enrollment (no upfront fees)

- Use Our Address, Not Yours

- $50 Per Year

GET A REGISTERED AGENT

# Reliable Local Expertise Since 2005

Do you want us to form your new company or register your existing company? Registered Agents of California can do that too for just $150 plus state fees.

**Start a New Business in California**

**Register an Existing Business in California**

# What is a Registered Agent in California? Everything You Need to Know

A California registered agent is simply an individual or an entity that accepts service of process—legal notice of a lawsuit—and other official documents on behalf of a business. A California registered agent is also known as a California corporate agent, a California agent for service of process, or a California statutory agent.

Basically, if your business gets sued, the State of California wants to make sure the court can reliably contact you. The law requires that the owners of a business are properly notified.

# California Business Address & Registered Agent Services – Best Solutions

Let's be honest. If you're starting a business, you need a California registered agent to fulfill your statutory requirement with the Secretary of State. A registered agent service should protect your privacy. Sadly, many companies out there simply don't.

When you hire us, we also provide a **business address** to use anywhere on your formation documents. This is a serious perk that most companies don't offer. It can help you keep your home address off the public record (and spare you from being the target of aggressive marketing campaigns or — worse yet — surprise visitors at your doorstep). Use of our business address is included at no extra cost when you hire us for registered agent service.

We charge one price. The price doesn't go up year after year. There are no add-ons or up-sells. Just one fair price for a registered agent who protects your privacy: $50.

**What do you get with Registered Agents of California's $50 California services?**

- Immediate Access to Digital Client Portal
- Use of Our Address for your California Business Address
- Compliance Service Enrollment (no upfront fees)
- All State Forms and Templates in Your Portal
- All Corporate Documents we receive are scanned to you in Real Time
- Cancel for Free Anytime

Our fees are low because we keep overhead down and operate with a small but efficient staff. Our business model is simple: excellent customer service leads to repeat business. If you stay with us year after year, then we do well. If we don't meet your needs, you go somewhere else, and our business suffers.

That's our plan in a nutshell.

**Registered Agent California + Free Business Address**

# California Registered Agent Legal Compliance – Requirements & Duties

1. **We Accept Service of Process & Legal Notices**
   When your company is sued, we accept the service of process sent by the court. We scan it and upload it to your client portal and notify you immediately. This gives you ample time to respond to the lawsuit.

2. **We Accept Business Mail & Compliance Reminders**
   We scan and upload all official business mail and state notifications, like tax documents and compliance reminders sent by the Secretary of State. Then, when the time comes, our local experts will submit your Statement of Information on your behalf for $100 plus state fees, ensuring your business remains compliant and avoids hefty late fees. You'll pay ZERO upfront fees and can easily cancel this service inside your secure account.

3. **We Prepare & Submit Additional California Business Filings**
   As our client, you will have access to our full database of California business filings. You can download these forms and file them yourself whenever you need, or you can hire us to prepare and submit them for you. These include filings like amendments to your formation documents or registering a Trade Name (DBA).

4. **We Protect Your Reputation**
   Even the most upstanding companies receive frivolous lawsuits. As your registered agent, we accept legal notices on behalf of your company, which means that such notifications are never served in front of your customers or clients.

5. **We provide a California Business Address**
   You'll have to list a business address on your formation documents, and that address will become part of the public record. To protect your privacy, we provide a <u>California business address</u> for you to use on your filings.

# Hire a California Registered Agent – Legal Compliance Made Easy

Having a registered agent is necessary for businesses in California (CA Corp Code § 1700-1702). But having a *great* registered agent can make life a little easier. So, what do you get for $50 a year?

- ## The Fastest, Most Reliable Compliance Alert System

  Probably the worst thing that can happen is for your registered agent to fail to deliver your service of process in a timely manner. Believe it or not, this is common in the industry, as there are no real standards for registered agents. Late delivery can lead to a default judgment against your business and losing your legal authority to do business in California. This is why we have designed the quickest, most efficient alert system in the business.

  Your service of process is scanned and uploaded into your client portal immediately after we receive it. This instantly kicks in our alert notification system, and you will receive an update the same day: email, phone, fax, text, mail — whichever method you prefer. Want us to contact your lawyer? Business partners? Spouse? Simply add them to the list, and we will notify all of them.

- ## A Secure Client Portal for Storing & Managing Business Documents

  Your client portal is for more than viewing service of process. You can order any California business filing you

ever need from your client portal, and we will store all of
these filings in your account for you to view whenever
you need. All of your official documents, business mail
and legal correspondence can be stored in your client
portal, giving you a single secure center to manage all
your business documents throughout the life of your
company.

- ## Easy Expansion Into Other States

  As your business grows, you may find yourself ready to
  expand into other states. This will require registration
  with those state's governing agencies. We can prepare
  and file all the necessary paperwork for every state in
  America, ensuring that you are fully compliant with
  those states' laws. In addition, we can provide the same
  compliance notices for additional states as we do for
  California.

- ## Total Customer Support Throughout the Year

  If you ever have a question about our service, California
  business filings, or other related topics, you can give us a
  call anytime. We know every aspect of California
  business, and you can always get us on the phone.
  Customer service is our number one priority.

  **Get Your Registered Agent Today – Quick, Easy,
  Done Right.**

# How to Change Your Registered Agent in California – Step-by-Step Guide

To change your registered agent in California, you'll have to
file a Statement of Change with the California Secretary of
State. Here's the process & cost breakdown for changing your
registered agent in California:

1. Inform your current registered agent that you no longer need their services

2. Access your company's account with bizfile Online*

3. Complete and submit the Statement of Change document in your online account

Or, change your California Registered Agent in a single step:

1. Hire us! We'll take care of everything for you.

*If you don't have an online account and need help setting one up, you can follow the directions provided by bizfile Online Account Setup and User Access Guide.

**Hire Us – Change Your Registered Agent with One Easy Step**

# California Registered Agent FAQ

Why Hire A California Registered Agent Service?

Why Do I Need a Registered Agent?

Can I Be My Own Registered Agent?

What Does a Registered Agent Do?

How Does Service of Process Work?

How Are You Different From a Statutory Agent?

Can I Change My Registered Agent in California at Any Time?

What is Legally Required of a Registered Agent?

Can an LLC Be Its Own Registered Agent?

Do You Charge More for High-Volume Clients?

How Does the SOS Know My Registered Agent?

How Do I Cancel Service?

# Why Hire A California Registered Agent Service?

### You Don't Have a Physical Office

This is the law. You have to list a physical address in California. If you're a web-based business or someone who works from home, then hiring a registered agent solves this problem.

### You Don't Work Regular Hours

A registered agent is required to keep regular business hours. If you work a non-government schedule, then you'll need a registered agent.

### You Desire More Privacy

You can be your own registered agent in California, but you'll have to list your name and address in the public record. Many business owners don't want the hassle that comes with this (unsolicited phone calls, junk mail offers, etc.). Hiring a registered agent keeps your information out of the public record.

### You Don't Want the Hassle

Your registered agent handles a wide range of business paperwork, logs these important documents and tracks your compliance deadlines. Many business owners find it simpler to hire an agent instead of doing this themselves.

# Why Do I Need a Registered Agent?

The California Corporation Code Section § 1700-1702 requires that all corporations, LLCs and other business entities appoint and maintain a registered agent. You can't start a business

without one (unless you're a sole proprietor, in which case you don't have to form an entity at all).

Additionally, a registered agent is required to have a physical address in California, and this office must be kept open throughout the year during regular business hours. This ensures that certified mail can be delivered in a reasonable time frame.

# Can I Be My Own Registered Agent?

Absolutely! Many small business owners will designate themselves as their own registered agent. There are, however, a few drawbacks to be aware of:

- Your information is entirely public. This includes your full name and address and contact information.
- You must have a physical address in the State. If you don't have a business office, you must list your home.
- You must keep regular business hours, so you may be at a disadvantage if you keep odd business hours.

# What Does a Registered Agent Do?

As a registered agent, we put our name and address on the public state record as a point of contact for your business. We accept your legal and state notices, and contact you promptly. That's our legal requirement and commitment, but here at California Registered Agent, we offer a lot more than what the state requires.

We offer a full suite of professional services to be **a one-stop-shop for your California business**. From state filing services to federal filings, like trademarks and EINs, we are here to handle what you need or just offer support and tools. We also extend beyond filing services to offer state of the art tools to manage, market and grow your business with address and virtual office services, as well as everything you need to build

your online business presence, like domains, customizable websites, professional email addresses, and business phone services.

## How Does Service of Process Work?

When a lawsuit is brought against your business, a court will issue a service of process: an official notice that your company is being sued. A process server will look up your company's state registration documents and find your registered agent. The process will then be served to your agent.

Serving your registered agent is considered legal notification of a lawsuit. Even if your agent fails to notify you, the court will assume that you are aware of lawsuit and you will be expected to respond appropriately.

## How Are You Different From a Statutory Agent?

We're the same thing. There are a number of names for registered agents:

- Agent for Service of Process
- Statutory Agent
- Commercial Agent
- Resident Agent

All of these terms refer to the same service.

## Can I Change My Registered Agent in California at Any Time?

Of course. You can change your California registered agent at any time by filing a Statement of Information with the California Secretary of State. This can be done easily online.

Corporations and LLCs have a regular filing window for submitting a Statement of Information. If the only thing you are changing is your agent and you file outside of your normal window, then the filing is free. Otherwise, the fee is $25 for corporations and $20 for LLCs.

# What is Legally Required of a Registered Agent?

California registered agents are required by law to:

- Maintain a California registered office (a physical address, not a PO box)
- Keep regular business hours all year long
- Maintain a California mailing address
- Accept service of process and legal correspondence on behalf of clients
- Contact clients when documents are accepted
- Forward documents to clients in a timely manner

# Can an LLC Be Its Own Registered Agent?

Not in California. State law specifically forbids LLCs from serving as registered agents in California.

# Do You Charge More for High-Volume Clients?

No.

No matter how much correspondence we receive on behalf of your business, we charge you the same amount each year. Our rates don't go up, and we have no per-doc fees.

We serve many high-volume clients who get dozens of services of process each year. One of the reasons they remain satisfied with our service is because we don't charge them extra for handling their correspondence.

# How Does the SOS Know My Registered Agent?

When you appoint a California registered agent, you make this designation on official formation documents which are filed with the Secretary of State. For LLCs, this document is called Articles of Organization. For corporations, it is called Articles of Incorporation.

The only other way to inform the Secretary of State is if you are changing agents, in which case you file your Statement of Information and make the change there.

# How Do I Cancel Service?

We've done everything we can to make canceling our California registered agent service a simple process. Simply log into your online account and cancel service with a one-click button. You don't have to call us or listen to a hard sell proposition. We'd love to keep your business, but we hate when canceling service is tough, so there's no way we'd do that to our own clients.

Questions? Call: (530) 768-2211        1401 21st Street STE R, Sacramento, CA, 95811

# R A C

## Registered Agents Of California

Privacy Policy      Terms & Conditions

# EXHIBIT F

"elmanmethod@theacheivementco  ✕  🎤  📷  🔍          ⚙️  ⠿  Sign in

AI Mode    All    Images    Videos    Shopping    Short videos    News    More ⌄                    Tools ⌄

Did you mean: "**_elman method_**@theacheivementcoaches.com"

No results found for "**elmanmethod@theacheivementcoaches.com**".

Results for **elmanmethod@theacheivementcoaches.com** (without quotes):

🔍     ## Your search did not match any documents

**Need help?** Check out other tips for searching on Google.

You can also try these searches:

🔍     weather tomorrow

🔍     spanish to english

🔍     time in tokyo

🔍     hardware store near me

🔍     plane tickets

🔍     breaking news

🔍     persian cat

🔍     air fryer

🔍     anime backgrounds

7/11/25, 4:25 PM
Case 5:24-cv-00663-KK-DTB Document 52-11 Filed 07/21/25 Page 87 of 118
elmanmethod@theacheivementcoaches.com" - Google Search

**Burlingame, California** - From your IP address - Update location

Help     Send feedback     Privacy     Terms

# EXHIBIT G

**FILED**

FEB 14 2025 — URT

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST    No. 5:20-cv-03639-EJD

LITIGATION

This Document Relates to:

Indirect Purchaser Actions

## OBJECTIONS TO THE SETTLEMENT

National Woodlands Preservation, Inc., a West Virginia corporation,

objects to proposed settlement pursuant to Federal Rule of Civil Procedure

23(e)(2)(C)(ii) because the "method of processing class-member claims"

and the "proposed method of distributing relief to the class" appears

defective with respect to non-individual entities.

Specifically, corporations, business entities, colleges, universities,

educational institutions, government agencies, and similar

non-individuals purchased telescopes during the class period.[1]  However, neither the physical claim form nor the online claim form provides the ability of an entity to lodge a claim.  The form only allows individuals to file a claim.  There is no place to lodge a business name.

In addition, the settlement website uses verbiage that infers the settlement is open only to individuals.  It states, "Did **you** purchase a telescope from January 1, 2005 to September 6, 2023?"  "**You** need to make a desicion [sic] about the settlement. To make the best decision for **yourself**, read on."  This infers the settlement is open only to individuals.

Finally, no form of advertising was targeted to the types of institutions and businesses – primarily education and research entities – to provide them notice of the class action or allow them to understand that the class action is open to them and not just individuals.

Therefore, this Court must:  (1) Direct modification of the claim form to allow business claims; (2) Direct modification of the website to make it clear that entities can file claims; (3) Direct advertisement and media to businesses such as schools, astrology research centers, planetariums, etc.,

---

[1] During 2019 and 2020, National Woodlands Preservation Inc. purchased two telescopes that are subject to this class action.  The purchases were made from distributors of telescopes in West Virginia and not directly from a manufacturer.

and make it clear that institutional and entity claims are allowed; and (4)

Expand the deadline for businesses to file claims to provide the same

opportunities that businesses had.

Respectfully submitted,

K. Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 James Street
Hinton WV  25951

**Current Address Continued**

*City

*Country

UNITED STATES

*State

Select

*Zip Code

Telescopes Antitrust Litigation
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172



**CEHI**



61102158701

CEHI-61102158701

k luna

110 james street

hinton, WV 25951

US

VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE

*In re Telescopes Antitrust Litigation Indirect
Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD

**Must Be Postmarked
No Later Than
May 20, 2025**

# Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com**.

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

## CLASS MEMBER INFORMATION:

First Name        M.I.    Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City        State    ZIP Code

Email Address

—      —

Area Code    Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator,
will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on
the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at 1-833-419-3506 or
admin@telescopesettlement.com.*



1

| FOR CLAIMS PROCESSING ONLY | OB | | CB | DOC | RED |
|---|---|---|---|---|---|
| | | | | LC | A |
| | | | | REV | B |

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

   Yes *(Proceed to Question 2)*      No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1. please enter your purchase information below:


   Make


   Model

   _____ / _____ / _____
   Date of purchase


   State of residence at time of purchase

   $ _____ . _____
   Amount


   Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

   **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

## OR

   **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____      Dated (mm/dd/yyyy): _____

Print Name: _____



2

# EXHIBIT H



*Figure 1: 104 James Street, Hinton, Virginia* (Google Maps)[1]

---

[1] https://www.google.com/maps/@37.6717279,-
80.8907679,3a,47.3y,124.25h,93.4t/data=!3m7!1e1!3m5!1sdA3gdyjdV1wSOjKSTJoONA!2e0!6shttps:%2F%2Fstreetviewpixels-
pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D-
3.397672402822792%26panoid%3DdA3gdyjdV1wSOjKSTJoONA%26yaw%3D124.24673607567848!7i16384!8i8192?entry=ttu&g
_ep=EgoyMDI1MDcwOS4wIKXMDSoASAFQAw%3D%3D

# EXHIBIT I



"National Woodlands Preservation ✕ 🎤 📷 🔍 ⚙️ ⠿ Sign in

AI Mode  All  Images  News  Maps  Shopping  Short videos  More ▾  Tools ▾


telescopesettlement.com
https://www.telescopesettlement.com › media › n...

### Case 5:20-cv-03639-EJD Document 407-1 Filed 03/21/25 ... <small>PDF</small>

Mar 21, 2025 — Objector **National Woodlands Preservation, Inc**. never responded to the two certified letters requesting to meet and confer that Settlement ...


telescopesettlement.com
https://www.telescopesettlement.com › media › n...

### Case 5:20-cv-03639-EJD Document 407 Filed 03/21/25 Page 1 of 7 <small>PDF</small>

Id. **National Woodlands Preservation, Inc**. ("Woodlands"). Woodlands failed to provide a phone number, current address, or email at which to contact it ...


CaseMine
https://www.casemine.com › ... › 2025 › April

### Hightower v. Celestron Acquisition, LLC et al | 5:2020cv03639

... **National Woodlands Preservation, Inc**. ("Woodlands"), Elman Barnes, Pat Zhen, and Mike Sussman. a. DPPs. Counsel for two of the DPPs in Spectrum Scientifics ...

*In order to show you the most relevant results, we have omitted some entries very similar to the 3 already displayed.*
*If you like, you can repeat the search with the omitted results included.*

**Burlingame, California** - From your IP address - Update location

Help    Send feedback    Privacy    Terms

# EXHIBIT J

# Table of Contents

Person Summary ...................................................................................................2
At a Glance ...........................................................................................................2
Name Variations, SSN Summary and DOBs ......................................................2
Physical Description .............................................................................................2
Address Summary (1 current, 4 prior) .................................................................2
Phone Summary (1 phones) .................................................................................3
Licenses/Voter (0 licenses) .................................................................................3
Driver Licenses - 0 licenses ................................................................................3
Other Licenses - 0 licenses .................................................................................3
Real Property (2 current, 0 prior)........................................................................3
Personal Property (0 current, 0 prior) ..................................................................5
Possible Education (0 records found) ...................................................................5
Possible Criminal/Arrest (0 filings) ....................................................................5
Bankruptcy (0 active, 0 closed)...........................................................................5
Judgment / Liens (0 active, 0 closed) ..................................................................5
UCC Filings (0 debtor, 0 creditor).......................................................................5
Associates (1 records) ..........................................................................................5
Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0 ......................5
Person Associates - 1 records found ....................................................................5
Neighbors - 0 records found .................................................................................6
Business Connections - 0 records found ...............................................................6
Possible Employers - 0 records found. .................................................................6
Business Associates - 0 records found. ................................................................6
Sources (37 sources)............................................................................................6



**1 OF 1 RECORD(S)**

## SmartLinx®Person Report

Report Created: 6-23-2025 6:37 PM EST | FOR INFORMATIONAL PURPOSES ONLY | Copyright © 2025 LexisNexis, All rights reserved.

Report created for:Cotchett Pitre & McCarthy LLP

### Person Summary

| Name | Address | County | Phone |
|------|---------|--------|-------|
| Zhen, Pat | 503 Calle Modesta Apt 303<br>San Juan, PR 00924-4511 | | 904-729-6256 |
| **LexID** | **SSN** | **DOB** | **Email** |
| 1925-9531-9192 | ███XXXX ⁀ **(SSN potentially randomly issued by the SSA)** | (Age: 54)<br><br>(Male) | |

### At a Glance

| Real Property | 2 | Criminal/Arrest | 0 |
|---------------|---|-----------------|---|
| Personal Property | 0 | Bankruptcy | 0 |
| Professional Licenses | 0 | Judgments/Liens | 0 |
| Business Connections | 0 | Foreclosure/Notice of Default | 0 |

### Name Variations, SSN Summary and DOBs

| Name Variations | SSN Summary | Reported DOBs |
|-----------------|-------------|---------------|
| Zen, Pat<br>Zhen, Pat<br>Zhen, Patrick | ███████<br>⁀ **(SSN potentially randomly issued by the SSA)** | ████ |

### Physical Description

### Address Summary (1 current, 4 prior)

| No. | Address | Status | To-From | Phone |
|-----|---------|--------|---------|-------|
| 1. | 503 Calle Modesta Apt 303<br>San Juan, PR 00924-4511 | Current | 06/2021 - 04/2025<br>(Current Residence) | |
| | | | | |
| 2. | 395 Eaton St<br>Providence, RI 02908-2153<br>Providence County<br><br>(Residential) | Prior | 06/2020 - 04/2025 | |
| **Neighborhood Profile**<br>Average Age: 44<br>Median Household Income: $53,026 | | | | |

pat_zhen

| | | | | |
|---|---|---|---|---|
| Median Home Value: $238,824<br>Average Years of Education: 14 | | | | |
| 3. | 503 Calle Modesta 303<br>Green Cove Springs, FL 32043 | Prior | 10/2022 | |
| **Neighborhood Profile**<br>Average Age: 44<br>Median Household Income: $69,853<br>Median Home Value: $233,036<br>Average Years of Education: 13 | | | | |
| 4. | 411 Walnut St Unit 7353<br>Green Cove Springs, FL 32043-3443<br>Clay County<br><br>(Business) 🖋 (Hotel or motel)<br>🖋 (Addressing or letter service)<br>🖋 (Packaging service)<br>🖋 (Hunting, trapping, & game service)<br>🖋 (Newspaper facility)<br>🖋 (Library)<br>🖋 (Home Health Care Facility) | Prior | 09/2014 - 06/2022 | |
| **Neighborhood Profile**<br>Average Age: 38<br>Median Household Income: $61,530<br>Median Home Value: $171,649<br>Average Years of Education: 13 | | | | |
| 5. | 500 Calle Modesta Ste LC3<br>San Juan, PR 00924-4483 | Prior | 07/2024 - 10/2024 | |

**Phone Summary (1 phones)**

| No. | Phone | To-From | Line Type | Listing Name | Carrier |
|---|---|---|---|---|---|
| 1. | 904-729-6256. | 10/2018 - 3/2025. | Possible Wireless. | ECUADOR IMPORT EXPORT CONSULTANTS INC. | . |

**Licenses/Voter (0 licenses)**
**Driver Licenses - 0 licenses**
**Other Licenses - 0 licenses**

**Real Property (2 current, 0 prior)**

| No. | Address | Status | Purchase Price | Sale Price | State |
|---|---|---|---|---|---|
| 1. | 395 Eaton St<br>Providence, RI 02908-2153<br>County/FIPS: PROVIDENCE/44007<br>Source: A | Current | $270,500.00 | | RI |

pat_zhen

**Owner Info**

**Zhen, Patrick**

**Legal Info**

Parcel Number: PROV-000118-000000-000131
Sale Date: 06/18/2020
Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Sfr
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Description: Deed Of Trust
Lender Name: CITIZENS BK CITIZENS BK
Loan Type: Conventional
Recording Date: 10/16/2020
Contract Date: 09/23/2020
Transaction Type: Refinance

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

**Mortgage Info 3**

Description: Grant Deed
Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

| 2. | 395 Eaton St<br>Providence, RI 02908-2153<br>County/FIPS: PROVIDENCE/44007<br>Source: B | Current | $270,500.00 | | RI |
|---|---|---|---|---|---|

**Owner Info**

**Zhen, Patrick**

395 Eaton St
Providence, RI 02908-2153

**Legal Info**

Parcel Number: PROV M:118 L:131

pat_zhen

Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Single Family Residential
Mortgage Lender Name: CITIZENS BANK
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Lender Name: CITIZENS BANK
Loan Type: Credit Line (Revolving)
Recording Date: 10/16/2020
Contract Date: 09/23/2020

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020

**Personal Property (0 current, 0 prior)**

**Possible Education (0 records found)**

**Possible Criminal/Arrest (0 filings)**

**Bankruptcy (0 active, 0 closed)**

**Judgment / Liens (0 active, 0 closed)**

**UCC Filings (0 debtor, 0 creditor)**

**Associates (1 records)**
**Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0**
**Person Associates - 1 records found**

| No. | Full Name | Address | Role |
|-----|-----------|---------|------|
| 1. | Corea, Karla E<br><br>LexID: 1952-2476-7335 | 116 Calle Manuel Domenech Apt 2013<br>San Juan, PR 00918-3503 | Associate |

pat_zhen

**Neighbors - 0 records found**


**Business Connections - 0 records found**


**Possible Employers - 0 records found.**


**Business Associates - 0 records found.**


**Sources (37 sources)**

| All Sources | 37 Source Documents |
|---|---|
| Deed Transfers | 5 Source Documents |
| Historical Person Locator | 2 Source Documents |
| Person Locator 1 | 1 Source Documents |
| Person Locator 5 | 13 Source Documents |
| Tax Assessor Records | 16 Source Documents |


Key
🛆 High Risk Indicator. These symbols may prompt you to investigate further.
☞ Moderate Risk Indicator. These symbols may prompt you to investigate further.
☞ General Information Indicator. These symbols inform you that additional information is provided.
✔ The most recent telephone listing as reported by Electronic Directory Assistance.


**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.


Your DPPA Permissible Use: Litigation
Your Secondary DPPA Permissible Use: None
Your GLBA Permissible Use: Legal Compliance


Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.


**End of Document**

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RAYMOND KESSLER, HARTENCE HILL, LAZARO RODRIGUEZ, TERESA HERENDEEN, and BARBARA ABREU individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE QUAKER OATS COMPANY,

Defendant.

**CASE NO. 7:24-CV-00526**

**DECLARATION OF DEREK BURROWS OF ANGEION GROUP, LLC RE: FRAUD DETECTION & PREVENTION**

I, DEREK BURROWS, hereby declare the following:

1.      I am the Chief Operating Officer with the class action notice and administration firm, Angeion Group, LLC ("Angeion"), located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. I am over 21 years of age and am not a party to this action. I am fully familiar with the facts contained herein based upon my personal knowledge, as well as information that has been provided to me by my colleagues in the ordinary course of business at Angeion.

2.      Angeion was appointed as Claim Administrator and directed to carry out the Notice Plan in conformance with the Class Action Settlement Agreement And Release (Dkt. No. 13-1) ("Agreement"), and to perform all other tasks required by the Agreement. *See* Preliminary Approval Order (Dkt. No. 34).

3.      The purpose of this declaration is to provide the Parties and the Court with information regarding Angeion's fraud detection and prevention efforts and information pertaining to *pro se* objector, Pat Zhen.

### COURT REQUEST FOR ADDITIONAL DETAIL

4.      This declaration includes anonymized references to information and identity-linked data concerning non-parties, including individuals who are neither objectors nor class members of record.

5.      Should the Court wish to review the information represented by these anonymized references, the Angeion is prepared to submit additional information regarding the facts at issue for in camera review and to assist in determining what portions, if any, may appropriately be filed publicly. Angeion also stands ready to respond to any requests for additional material about AngeionAffirm 2.0 or Angeion's fraud prevention protocols.

## COMBATTING AND RESPONDING TO AN EVOLVING FRAUD LANDSCAPE

6.      Since the summer of 2023, there has been a significant increase in the volume of attempted fraudulent claim submissions in class action settlement administration. Advancing technology has enabled increasingly sophisticated and rapidly evolving tactics employed, in both large-scale operations and smaller, targeted efforts.

7.      At Angeion, we have invested significant resources into developing and enhancing systems to detect and prevent fraud throughout the administration process. This includes the development of Angeion's proprietary fraud detection system, AngeionAffirm 2.0.

8.      Angeion has also observed an emerging trend in which individuals whose claim activity raises fraud concerns attempt to engage not only with counsel but directly with the Court, potentially lending an appearance of legitimacy to their efforts.

## ANGEIONAFFIRM 2.0

9.      In response to the evolving fraud landscape, Angeion has pioneered real-time fraud detection and prevention technology that is designed to block the submission of fraudulent claims at the time of filing – AngeionAffirm 2.0.  This technology increases efficiency and reduces the costs of administration associated with traditional, back-end fraud review processes. Early-stage deployment also provides a truer view of claims volumes as the administration progresses by significantly reducing the possibility of large-scale rejections of claims resulting from delayed review. Angeion continues to invest in the research and development of these systems, responding in real time to new tactics employed by fraud actors.

10.     AngeionAffirm 2.0 is a comprehensive solution to identify fraud based on both state-of-the-art technology and analysis of over a decade of historical claims data. Key highlights of AngeionAffirm 2.0 include (1) implementing enhanced, machine-learning-based fraud prevention

Declaration of Derek Burrows of Angeion Group                                                    2

mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities before they enter the claim workflow; (2) employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions to help ensure claims are genuine; (4) analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) leveraging third party identity validation to corroborate the information provided by the claimant; (6) analyzing over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies and known bad actors, that may signify fraudulent intent or deviate from expected claimant profiles; and (7) utilizing multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

11.    Angeion's defense-in-depth approach to fraud prevention seeks to balance robust fraud prevention and ease of use for legitimate claimants. By embedding fraud detection into the claim submission workflow, while simultaneously offering accessible customer support for individuals whose claims are flagged, Angeion strives to preserve both efficiency and fairness in class action administration. This strategy has proven effective; AngeionAffirm 2.0's false positive rate is only 0.064% of all claims submitted.

## COURT RECOGNITION AND APPROVAL OF ANGEIONAFFIRM 2.0

12.    Courts have recognized the success of AngeionAffirm 2.0. By way of example, during an April 8, 2025, Fairness Hearing, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"…further stating that "**absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid.**"[1] (Emphasis added).

13.    In addition, the success and effectiveness of Angeion's fraud detection efforts were recognized by United States Magistrate Judge Stewart D. Aaron. In his July 26, 2024, Report and Recommendation, Judge Aaron stated that, **"[t]he Court finds that the claims process**

---

[1] Jimenez v. Artsana USA, Inc., No. 7:21-cv-07933-VB (S.D.N.Y.)

administered by Angeion has integrity and has been carried out in a diligent and thorough manner…Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case… Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims."[2] (Emphasis added).

## DESCRIPTION OF ANGEION CLAIM SUBMISSION PROCESS AND INTERACTION WITH ANGEIONAFFIRM 2.0

14.     AngeionAffirm 2.0 identifies indicia of fraud during the online claim submission process. When such indicators are detected, the system generates a real time alert, *i.e.*, the Error 403 message. The real time alert informs the claimant that inconsistencies and/or anomalies were identified and that they can attempt to re-submit their claim (electronically or via paper claim) or contact us for further assistance.

15.     Angeion's staff is trained extensively to assist individuals who receive the real-time alert. In addition, our team is continuously monitoring instances in which the alert is triggered, both to refine detection parameters and to identify any behavioral patterns that may help reduce the likelihood of genuine claimants receiving the alert.

16.     Notably, this alert system has only flagged a fraction of one percent of total submissions from actual individuals. We believe this approach provides a more equitable and fair process for legitimate claimants, while adapting to the increasing sophistication of fraud tactics. This approach also greatly reduces the possibility that a valid claim may be mistakenly rejected during a later stage analysis, when fewer remedial options may be available resolve or cure their claim.

## OBJECTOR PAT ZHEN

17.     Angeion's records reflect that an individual using the name "Pat Zhen" or "Patrick Zhen" has submitted or attempted to submit claims in multiple other settlements that Angeion has administered. Angeion's fraud detection processes flagged the submissions. Based on those assessments, certain submissions were rejected or marked for additional review in accordance with

---

[2] *See* In re: Novartis and Par Antitrust Litigation, No. 1:18-cv-04361-AKH-SDA (S.D.N.Y.), Report and Recommendation, ECF No. 667.

the applicable settlement protocols.

18.     In this Settlement, the contact information provided by Pat Zhen with the attempted claim submission differs from the contact information provided in the objection and claim submissions in other matters. The attempted claim submission in this matter was flagged as having indicia of fraud.

19.     The mailing address provided on the attempted claim submission was located but listed as invalid due to missing secondary information, such as an apartment or suite number.

The contact information also differs from other contact information provided by Pat Zhen in various other settlements administered by Angeion. For example, an oft-used mailing address provided by Pat Zhen on attempted claim submissions is not a residential address but rather a commercial mail forwarding service.

20.     Additionally, a phone number frequently associated with Pat Zhen claim submissions, is different from the phone number listed on the objection and attempted claim submission in this Settlement. According to third-party data sources, that number used frequently in other submissions is not associated with Pat Zhen.

21.     When the attempted claim submission was flagged by AngeionAffirm 2.0, the system issued the 403 message (discussed in paragraph 13 above) notifying the user of inconsistencies and with details on how to contact the administrator to resolve issues with the attempted submission. Pat Zhen did not contact or communicate with Angeion in response to this message or the attempted claim submission, nor was a paper claim submitted in this matter.

## FURTHER INVESTIGATION OF PAT ZHEN

22.     As noted, Angeion has previously encountered instances in which individuals whose claims were flagged as potentially fraudulent submissions have engaged directly with counsel or appeal to the Court regarding fraud prevention protocols and claim review procedures. In such circumstances, Angeion conducts additional review using public records, reputable third-party data sources, and proprietary resources to validate its findings and assess any underlying anomalies.

23.     Included in the Zhen objection is the following contact information provided by the

Declaration of Derek Burrows of Angeion Group                                                   5

objector:

Pat Zhen
PO Box 366047
San Juan, PR 00936
legal@patzhen.com
(787) 523-8040

24.     Angeion personnel performed a reverse lookup of the telephone number provided. The results of this search indicate that the number is registered to *Individual 1* at a different address from that provided by Zhen in this matter or any other submissions to Angeion ("Address 1").

25.     Angeion verified that *Individual 1* was associated with the *Address 1* through records available from the Pennsylvania Department of State Business Search portal, which list *Individual 1* as the President and Treasurer of a corporation, with its registered office at that address.

26.     According to Allegheny County (Pennsylvania) property records, the property is listed as being owned by an estate.

Obituaries for both decedents of the estate list among their survivors an individual named *Individual 2*, who was identified at the time of publication of the obituary as residing in outside of the United States of America.

27.     Publicly available materials confirm that *Individual 2* is connected to *Address 1*.

28.     Additional public court filings reflect that *Individual 2* has been named in multiple legal proceedings over the years, including some involving allegations of fraudulent or deceptive conduct. These include criminal, regulatory, and civil matters, some of which reference *Individual 2's* use of the mail or legal threats in financial disputes. Angeion makes no legal conclusions regarding the disposition or accuracy of those allegations but includes this information solely to contextualize public records involving contact details linked to *Individual 2*.

29.     Angeion also conducted a review of court filings for entries associated with Pat Zhen. Notably in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143 (N.D. Cal.) ("Optical Disk Drives"), Zhen filed a motion that included a telephone number that, similar to the telephone number provided by Zhen on the objection in this matter is not registered to Zhen. A reverse lookup reveals that the number is registered to *Individual 2*.

30.      Angeion also conducted a deeper review of the contact information provided by Pat Zhen

with the attempted claim submission in this matter.  In this instance, a search of publicly available records shows that the telephone number provided by Zhen is registered to Pat Zhen at another address located within the continental United States of America ("Address 2").

31.    Public property records show that Pat Zhen was granted ownership of *Address 2* by warranty deed, in which he listed his contact address as *Address 3* in Puerto Rico. According to publicly available records maintained by the Department of State of Puerto Rico, *Address 3* is associated with a corporation, of which *Individual 1* is identified as the president and treasurer.

32.    Further, a search using the Registration Data Access Protocol[3] shows that the corporation is the registered owner of a particular internet domain.  The record lists as the mailing address – *Address 3*. *Individual 1's* telephone number, the number provided by Zhen in the instant objection, is also connected to the corporation's internet domain.

## CONCLUSION

33.    The objection and attempted claim submission by Pat Zhen exhibit several indicia consistent with patterns Angeion has previously observed in connection with submissions later determined to be invalid under applicable review procedures.

34.    As detailed above, the telephone number provided in Pat Zhen's objection appears to be registered to *Individual 1* at *Address 1*, a location confirmed by public records to be associated with *Individual 1*. *Address 1* is owned by the estate of *Individual 2's* parents. Public records indicate that a telephone number used in an objection submitted under the name Pat Zhen in another matter is registered to *Individual 2*. The telephone number provided with Zhen's attempted claim submission can be connected to *Individual 1* through association with *Address 3*.

35.    *Individual 1* also has been associated with Pat Zhen in a separate class action where Pat Zhen's objection to the settlement was overruled.[4]  Angeion understands that the objection in that matter was overruled but does not draw any conclusions as to *Individual 1's* role or involvement beyond what is reflected in the record.

36.    Finally, Angeion's records show that other submissions under the name Pat Zhen have used

---

[3] https://lookup.icann.org/en is a domain lookup tool that shows the registration of a domain name.
[4] *See* In re: Telescopes Antitrust Litigation, No. 5:20-cv-03639-EJD (N.D. Cal.), ECF Nos. 419 and 429.

differing and/or invalid mailing addresses and contact information, including some contact information that appears to be associated with other individuals. As a result, certain submissions were rejected or marked for additional review in accordance with the applicable settlement protocols.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 21, 2025

_____

DEREK BURROWS

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,

                 Plaintiffs,

v.                                   Case No.: 7:24-cv-00526

The Quaker Oats Company,

                 Defendant.

-------------------------------------------------------------x

## DECLARATION OF MICHAEL CHARLES

I, Michael Charles, submit this Declaration in response to the objection of Pat Zhen to the Class Action Settlement, and affirm that the following is truthful and accurate:

1.     I am a private investigator licensed in the State of New York (license no. 11000022686). I have been a licensed private investigator for more than 30 years. I chiefly perform private investigative work for various law firms. Previously, I served with the New York City Police Department for nearly 20 years, including 18 years as a detective.

2.     On or about July 11, 2025, I was retained by Sultzer & Lipari, PLLC to investigate an individual who had contacted the firm by email and phone purporting to be "Pat Zhen" in reference to a rejected claim for reimbursement related to a Class Action Settlement Agreement involving certain Quaker Oats food products.

3.     Pursuant to my investigation I searched public sources for information regarding

1

the name "Pat Zhen," the phone numbers, emails, and physical addresses associated with Mr. Zhen, as well as other individuals associated with those emails, phone numbers, and addresses. The results of my investigation are set forth below.

4.      I first performed a Lexis search for "Pat Zhen," as well as the email address he used to contact Sultzer & Lipari, PLLC. The Lexis search also reflects that Mr. Zhen is associated with a number of different names, including "Pat Zhen," "Patrick Zhen," and "Pat Zen" as well as at least two physical addresses.   Moreover, according to Lexis and other third-party data sources, the phone number Mr. Zhen provided is associated with an individual who is not "Pat Zhen."

5.      I then searched in other public databases for information regarding Mr. Zhen and his associates.  A reverse lookup of the telephone number listed for Pat Zhen revealed that the number was associated another individual (not Pat Zhen) with an address different from the one Mr. Zhen provided in his claim submission.

6.      I then searched property records for that address, which indicate that the property is owned by a deceased individual who was survived by his son.

7.      Publicly available court filings further reflect that the son has been involved in multiple legal proceedings alleging various fraudulent and deceptive activities, including criminal and civil matters involving his use of the mail or legal threats in financial disputes.

8.      Finally, I reviewed public federal court docket entries for Pat Zhen and found that he   filed documents in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143. In that matter, Zhen filed a motion with contact information that included a phone number that is not registered to

2

Zhen. Rather, a reverse lookup reveals that the number is registered to the above-mentioned individual described in Paragraph 7.

9.      Based on my investigation described above and my professional experience, it is my opinion that there is substantial information indicating that the "Pat Zhen" who contacted Sultzer & Lipari is highly suspicious and that his claim for reimbursement under the Settlement was correctly rejected.


Executed this 21st day of July, 2025 in Carle Place, New York.

_____
Michael Charles