UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND KESSLER, *et al.*,

                    Plaintiffs,

        v.

THE QUAKER OATS COMPANY,

                    Defendant.

24-CV-526 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

      On March 13, 2025, this Court preliminarily approved a settlement (the "Settlement") between The Quaker Oats Company (the "Company") and a class of plaintiffs (the "Class") who purchased some of the Company's products. (Preliminary Approval Order (Dkt. No. 34).) Pat Zhen, who claims he is a member of the Class, filed multiple objections to the settlement, primarily raising issues with its claims distribution process. (Objections to Settlement Agreement & Administration Thereof (Dkt. No. 61).) This Court overruled Zhen's objections in its Order Granting Plaintiffs' Motion for Final Approval of Class Settlement (Dkt. No. 66) for reasons stated at its Final Approval of Settlement hearing ("Settlement Approval Hearing") on August 4, 2025, (Dkt. No. 72). Zhen has appealed the Court's Final Approval, (Notice of Appeal (Dkt. No. 76)), and Plaintiffs move this Court to require him to post an appeal bond, (Mem. of Law in Supp. Re: Mot. for Bond ("Bond Mot.") (Dkt. No. 81)).

     "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "The purpose of Rule 7 appears to be to protect the rights of appellees brought into appeals courts" by appellants who "pose[] a payment risk" and may not pay the costs taxed against them if they lose on appeal. *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *see also* Fed. R. App. P.

39(a)(3) ("[I]f a judgment is affirmed, costs are taxed against the appellant[.]"). Courts imposing Rule 7 bonds will typically base the amount of those bonds on a forecast of those costs. *See Adsani*, 139 F.3d at 75 ("In ordinary civil litigation where a bond is justified, appellees would be able to secure bonds for all of the funds to which they would be entitled after judgment in their favor."). In "deciding whether to require . . . an appeal bond, district courts consider several factors including: (1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *accord Stillman v. InService Am. Inc.*, 838 F. Supp. 2d 138, 140 (S.D.N.Y. 2011).

This Court concludes a bond is warranted. First, Zhen "ha[s] not presented any evidence demonstrating that [he] lack[s] the financial ability to post a bond. Accordingly, [his] ability to do so is presumed." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293. (*See generally* Resp. in Opp. to Bond Mot. (Dkt. No. 83) (presenting no evidence of financial hardship beyond conclusory statements); Resp. in Opp. to Bond Mot., Ex. 1 (Dkt. No. 83) (same).) This factor accordingly weighs in favor of a bond. Second, there appears to be considerable risk Plaintiffs will not recover their costs from Zhen if the judgment is affirmed, considering difficulties they have faced in confirming his identity both in and out of the claims process. (*See, e.g.*, Bond Mot. 9–10; Letter from Jason P. Sultzer to Court (July 31, 2025) 1–2 (Dkt. No. 59).) So this factor, while closer, also weighs in favor of a bond. Third, Zhen's objections, and thus his appeal, lack merit. This Court considered each objection at the Settlement Approval Hearing, finding "none of the objector's complaints regarding the [claims] process to have any merit" and objections received after June 27, 2025, to be both meritless and

untimely. (Settlement Approval Hearing Tr. 16–20, 33.) This factor also accordingly weighs in favor of a bond. Fourth, while "a demonstration of 'bad faith' or even 'vexatious conduct' is not required for a bond to be awarded," *Stillman*, 838 F. Supp. 2d at 140, there have been examples of both throughout Zhen's participation in the litigation. (*See, e.g.*, Resp. in Opp. to Bond Mot. 10 (Dkt. No. 83) ("absolutely refus[ing]" to substantiate his identification during the claims process); Opp. Br. Re: Memo Endorsement 3 (Dkt. No. 57) (describing, in a sworn affidavit, a call to Class Counsel from an unknown number following a meet-and-confer between Zhen and Class Counsel, "demanding $100,000 in exchange for withdrawing Mr. Zhen's objection"); *see also* Suppl. Objs. to Settlement Agreement and Administration Thereof (Dkt. No. 62); Objs. (Provisional) Pursuant to Fed. R. Civ. Proc. 23(h)(2) (Dkt. No. 63) (repeatedly submitting objections after the deadline).) Under this factor, courts also consider whether the appellant is a "serial objector," *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 294, and this case is not Zhen's first (or second) unsuccessful objection to a class settlement. (*See* Bond Mot. 20–21.) *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 ("[P]rofessional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement . . ."); *see also In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991) ("Objectors, constituting about two percent of their own class and an infinit[e]simal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal."). Accordingly, each factor weighs in favor of imposing a bond.

Here, plaintiffs seek a bond of "at least $46,620.00," which represents the "administrative costs [the Claims Administrator] will incur as a result of the delay caused by" Zhen's appeal. (Bond Mot. 21–22.) "Damages for delay," however, "cannot be included in Rule 7 bonds where no underlying statute provides for the inclusion of such costs," as here. *In re Initial Pub.*

*Offering Sec. Litig.*, 728 F. Supp. 2d at 297; *accord In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, No. 02-cv-5575, 2007 WL 2741033, at *4 (S.D.N.Y. Sep. 20, 2007) ("In this case, there is no relevant underlying statute that provides for the awarding on appeal of costs incident to delay, and such costs are not listed in Appellate Rule 39."); *see also Adsani*, 139 F.3d at 75 ("We do not think it either bizarre or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed.").[1]  To justify including delay costs, Plaintiffs point to Federal Rule of Appellate Procedure 38, which allows courts of appeals to "award just damages," including costs of delay, "and single or double costs" to an appellee where an appeal is frivolous.  (Pls.' Reply Mem. of Law in Further Supp. of Bond Mot. 7–8.)  But for this Court to make that determination in setting a Rule 7 bond "would infringe on the authority that [Rule 38] explicitly grants to the Court of Appeals."  *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 297 (citing *In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, 2007 WL 2741033, at *5).  Accordingly, this Court does not consider the costs of delay in setting the bond amount.

Nevertheless, Plaintiffs note "the printing and administrative costs associated with responding to the appellate brief . . . will not be insignificant," though a "precise estimate of Class Counsel's costs on appeal is not possible at this stage, as the ultimate cost will depend on the length of briefs that have yet to be written."  (Bond Mot. 22).  "Courts are not limited to printing costs in calculating an appeal bond and may include additional costs in the calculation where merited," although printing and administrative costs are those ordinarily contemplated by

---

[1] Some courts in this Circuit take a different approach.  *See, e.g.*, *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476, 2016 WL 2731524, at *19 (S.D.N.Y. Apr. 26, 2016) ("[W]hen an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal.") (citing *In re Gen. Elec. Co. Sec. Litiq.*, 998 F.Supp.2d 145, 153 (S.D.N.Y.2014)).  But these cases did not discuss the plain text of Rule 38, which is directed at *circuit*, not district, courts.  *See* Fed. R. App. P. 38; *cf. Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 557 (2010) ("[I]t is the text of the Rule that controls.") (Scalia, J., concurring).  So while Zhen may well ultimately be responsible for the $46,620 Plaintiffs estimate the delay will cause, that will depend upon a finding of frivolity by the Second Circuit.

the rule. *In re Petrobras Sec. Litig.*, 363 F. Supp. 3d 426, 436 (S.D.N.Y. 2019).  As Plaintiffs do not estimate their administrative costs in defending the appeal, this Court looks to the sizes of bonds imposed in similar circumstances. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 ("With regard to taxable costs . . . the appeal will entail significant costs, including copying costs for briefs and compilation of the voluminous record. . . . plaintiffs assert that copying costs will amount to at least tens of thousands of dollars.  I conclude that $25,000 [jointly and severally for six groups of objectors constituting 140 class members] is likely sufficient to cover these taxable costs."); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) ("Given the voluminous record and the number of appellants . . . this Court orders the nine appellants of an appeal bond of $50,000 [jointly and severally] to cover the taxable costs of the appeals."); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09–MD–2023, 2013 WL 4735641, at *3 (E.D.N.Y. Sep. 3, 2013) ("The Court finds that plaintiffs' request of $25,000 is excessive. . . . [T]here is no evidence to suggest that this appeal will involve as much printing or copying as was necessary in *In re Initial Public Offering Securities Litigation*. Therefore . . . $5,000 would be sufficient to cover any such taxable costs.") (citing *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, No. 09-CV-0890, 2011 WL 917519, at *4 (E.D.N.Y. Mar. 9, 2011) ("Taxed at the Second Circuit rate . . . the court finds that an appeal bond in the amount of $5,000 is sufficient to protect all of the defendants' costs on appeal should they prevail.")).  Given similarities between this case and *Bayer*, a comparable class action with a less voluminous record and fewer appellants than *Currency Conversion* or *Initial Public Offering*, this Court takes the same estimate and finds $5,000 an appropriate sum.

Accordingly, Plaintiffs' motion for a Rule 7 appeal bond is GRANTED in part, and Zhen is ordered to post an appeal bond of $5,000. The Clerk of Court is respectfully directed to close the pending motion (Dkt. No. 85).

SO ORDERED.

Dated: October 16, 2025
      White Plains, New York

                                                KENNETH M. KARAS
                                              United States District Judge